**DURRETT, ROSEHILL & MA, LLP**

JONATHAN S. DURRETT      (3184)
ADAM G. LANG              (9375)
SHAUNA L. SILVA BELL      (7004)
Davies Pacific Center
841 Bishop Street, Suite 1101
Honolulu, Hawaii  96813
Tel.: (808) 526-0892
Fax: (808) 533-4399
jdurrett@drmhawaii.com
alang@drmhawaii.com
sbell@drmhawaii.com

**STORZER & GREENE, P.L.L.C.**

ROMAN P. STORZER
ROBERT L. GREENE
*Applications for admission pro hac vice pending*
1025 Connecticut Avenue, Northwest
Suite One Thousand
Washington, D.C.  20036
Tel.: (202) 857-9766
Fax: (202) 315-3996
storzer@storzerandgreene.com

Attorneys for Plaintiffs
SPIRIT OF ALOHA TEMPLE
and FREDRICK R. HONIG

## IN THE UNITED STATES DISTRICT CIRCUIT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPIRIT OF ALOHA TEMPLE, a Hawaii nonprofit corporation, and FREDRICK R. HONIG, | Civil No. CV14-00535 |
| Plaintiffs, | COMPLAINT |
| vs. | |
| COUNTY OF MAUI, and MAUI PLANNING COMMISSION, | |
| Defendants. | |

## COMPLAINT

Plaintiffs SPIRIT OF ALOHA TEMPLE, a Hawaii nonprofit corporation, (the "Temple") and FREDRICK R. HONIG ("Honig") (collectively, "Plaintiffs"), by and through their attorneys, Durrett, Rosehill & Ma, LLP, hereby complains of Defendants COUNTY OF MAUI, and MAUI PLANNING COMMISSION (collectively, the "Defendants") as follows:

### NATURE OF ACTION

1.      This action is commenced by Plaintiffs to redress violations of its civil rights, as protected by the Free Exercise, Free Speech and Equal Protection Clauses of the United States Constitution, 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), and Article I §§ 4-5 of the Hawaii Constitution caused by the Defendants' burdensome, discriminatory and unreasonable land use regulations and intentional conduct that has prohibited and continues to prohibit the Spirit of Aloha Temple from conducting religious services and activities in exercise of its religious beliefs in already existing structures on its property at 800 Haumana Road, Haiku, Maui, Hawaii (the "Property").

2.      The Maui County Planning Department (the "Planning Department" or "Department"), based on substantial review, comments by other governmental

agencies, and proposed conditions to mitigate any land use impacts, recommended approval of the Plaintiffs' application for a State Land Use Commission Special Permit (the "Permit") to allow the religious use.  Nevertheless, the Planning Commission denied the Permit based on the affirmative vote of three of its eight members, and the abstaining of two of its members.

3.     By its denial of the Plaintiffs' Permit to conduct religious observances at the Property (which is currently being used as a botanical garden open to the public), the Planning Commission has determined that groups of people may visit the Property for various secular purposes, have the same land use impacts, and to engage in any number of other activities permitted by Maui County Code § 19.30A.050(B)(11), but not to engage in religious observances.

4.     Plaintiffs allege that the Planning Commission's denial of the Permit—which satisfied all criteria under the relevant zoning regulations—was based on misapplication of state and local laws, ad hoc factors specifically and specially designed to prevent religious exercise on the Property, and unequal treatment as compared to similarly situated entities in Maui County.

5.     Plaintiffs further allege that the denial of the Permit, which would allow Plaintiffs to operate a place of worship for religious observance, services and education, substantially burdens the Plaintiffs' religious exercise without using the least restrictive means of achieving the compelling governmental interest that the

Planning Commission alleges exists to deny the Permit.

6.     Plaintiffs also allege that the Planning Commission's application of unwritten and ad hoc "standards," particularly with respect to traffic standards, to deny the Permit constitutes a prior restraint on the Plaintiffs' protected First Amendment activity, does not provide reasonable notice to Permit applicants of whether proposed places of worship meet the standards for a Permit, and is therefore vague and allows for unbridled discretion on the part of the Commission.

## PARTIES

7.     Plaintiff SPIRIT OF ALOHA TEMPLE, INC. is a domestic nonprofit corporation formed under the Laws of the State of Hawaii on September 17, 2007.

8.     Plaintiff FREDRICK HONIG resides at 800 Haumana Road, Maui, Hawaii, and is a licensed minister.

9.     Defendant COUNTY OF MAUI is a local governmental entity organized under Hawaii law.

10.    Defendant MAUI PLANNING COMMISSION is a Planning Commission established pursuant to Titles 6 and 13 of the Hawaii Statutes.

## JURISDICTION AND VENUE

11.    The subject matter jurisdiction of this Court is founded upon 28

U.S.C. § 1331 (federal question jurisdiction) in that this action is brought under 42 U.S.C. § 2000cc *et seq.*, and 42 U.S.C. § 1983.  This Court also has supplemental jurisdiction of Counts VIII, IX and X under 28 U.S.C. § 1367(a) for claims brought under Hawaii law.

12.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all of the events giving rise to the claims herein occurred in this District and the Defendants are subject to personal jurisdiction in this District as of the commencement of this action.

## FACTUAL ALLEGATIONS

### Plaintiffs' Religious Exercise

13.   The Spirit of Aloha Temple, Inc., incorporated in 2007, is a religious assembly and institution.

14.   The Temple and Honig's religious faith and practices are known as "Integral Yoga."

15.   Integral Yoga is a path of integral seeking of the Divine whose adherents believe that all people are in the end liberated out of the ignorance and its undivine formations into a truth beyond the mind, a truth not only of highest spiritual status but of a dynamic spiritual self-manifestation in the universe.

16.   Integral Yoga was described in several works in the early part of the

4

twentieth century by Sri Aurobindo, an Indian yogi and guru.

17.    Sri Aurobindo's vision, shared by the Plaintiffs, was the evolution of human life into a life divine. He believed in a spiritual realization that not only liberated man but also transformed his nature, enabling a divine life on earth.

18.    Integral Yoga International was established in the United States, by Sri Swami Satchidananda in 1966 and is a worldwide religious organization.

19.    Adherents of Integral Yoga believe that the goal and the birthright of all individuals is to realize the spiritual unity behind the diversity throughout creation and to live harmoniously as members of "one universal family."

20.    This goal is attained through *asanas* (yoga postures), *pranayama* (extension of the life force), the chanting of holy names, self-discipline, selfless action, *mantra japa* (sacred utterances), meditation, study, and reflection.

21.    Honig, also known as Swami Swaroopananda, is a licensed minister and teacher of Integral Yoga.

22.    Honig was ordained in 1977 by the acclaimed ecumenical leader,  Sri Swami Satchidananda, who was ordained in 1949 by the renowned Sri Swami Sivananda, Founder of The Divine Life Society and The All-World Religions Federation.

23.    For twenty years, starting at age 21, Honig lived, studied, taught and served as a monastic member of Satchidananda Ashrams and Integral Yoga

Institutes.

24.     For the past twenty years, Honig has served the Spirit of Aloha Temple, Botanical Gardens and Bird Sanctuary on the north shore of Maui. The Gardens are dedicated to living in harmony with Nature, through alignment with its 12 Organizing Principles: Peace, unity, gratitude, humility, respect, simplicity, cooperation, honesty, happiness, love, responsibility, and freedom.

25.     Plaintiffs believe that these twelve universal truths are the essence of all world religions, and also derive inspiration from the accomplishments of orders from varied traditions such as the Hindu Missions of Swami Vivekananda, Swami Sivananda and Swami Satchidananda; the Christian missions of Saint Francis, Saint Damian, Mother Teresa, Thomas Mertin as well as the Shaker Communities; the Jewish Missions of The Essenes; the Islamic Missions of the Sufis; and the Buddhist Missions of The Dalai Lama and the Tibetan Monasteries.

26.     The Spirit of Aloha Temple, Inc., an Internal Revenue Code, Section 501(c)(3) tax-exempt organization, was incorporated as a church in 2007 to further the principles of Integral Yoga, and specifically (as stated in its Bylaws) "[t]o promote Individual and Global Health, Harmony and Well-Being through Education, Instruction, Guidance and Research."

27.     A significant element of the Temple's ministry is to be a living classroom for sustainable organic horticulture and plant-based nutrition, which is

in furtherance of its religious beliefs.

28.    In furtherance of these beliefs, the Plaintiffs seek to engage in various religious practices, including holding customary religious services such as weekly meetings and weddings, offering classes on their spiritual beliefs, and holding communal meals.

29.    Other than the subject Property, the Temple does not own or operate any other facilities for purposes of its religious worship and exercise.

30.    The Plaintiffs have no other location in which to hold weekly church services.

31.    The Plaintiffs have no other location to conduct sacred programs, educational, inspirational and spiritual, and spiritual commitment ceremonies.

32.    The Plaintiffs have no other location to operate spiritual classes.

33.    The lack of a place of worship severely burdens the religious exercise of the Plaintiffs because the Temple lacks any facility to hold its worship services, events and classes.

34.    In order to accommodate its religious exercise, the Temple requires a facility that can accommodate its members and others for such religious worship and activities.

35.    The Property is uniquely capable of accommodating the Plaintiffs' religious exercise.

The Property and Current Uses

36.     The Property is approximately 11 acres located at 800 Haumana Road, Haiku, Maui.

37.     The Property is described as Tax Map Key No. (2) 2-8-004:032.

38.     The Property is located in the State Agricultural District, Paia-Haiku Community Plan, and the County Agricultural Zone.

39.     The Property's Land Use Category is Agriculture.

40.     The Property is located within the Special Management Area.

41.     The Property is approximately one mile makai of the Hana Highway.

42.     It contains a main farm dwelling, second farm dwelling, a potting shed, a building denominated the Waterfall Pavilion, Potting Shed, and other accessory buildings, all duly permitted by the County.

43.     The Property is owned by the Fredrick R. Honig Revocable Living Trust (the "Trust").

44.     The Trust leases the Property to The Spirit of Aloha Temple, Inc. through a perpetual lease that is recorded with the State Bureau of Conveyances.

45.     Currently, the property is used for limited "secular" uses, including a botanical garden, bird sanctuary and staff housing.

46.     The Temple operates the Property in accordance with its religious beliefs, which include aligning with "Nature's Organizing Principles."

8

47.     The Property is stewarded by a volunteer team of "Nature Guardians," who see God as Nature and their service to Nature as worship.

48.     This also includes promoting Hawaiian plant-based horticulture and nutrition, and restoring the historic Taro Lo'i.   Such activities are currently permitted by the Defendants.

49.     Plaintiffs additionally seek to use the Property as a "Church" use, which would include religious services, meetings, lectures and events for small numbers of people.

50.     The soil productivity rating of the Property according to the Land Study Bureau is mostly "C9" with some "E97" on a scale with "A" being the best agricultural land and "E" the worst. H.R.S. § 205-4.5 provides different use limitations for parcels with various soil productivity ratings, higher scores being more restricted.

51.     According to the Land Study Bureau Detailed Land Classification for the Island of Maui (1967), the Property is assigned an overall productivity rating of "C", indicating moderate productive capacity, and rRR, indicating very low overall productive capacity.

52.     The Plaintiffs had previously applied (SUP 2007/0009) for a special use permit to conduct religious activities on the Property, which was denied by the Planning Commission on March 23, 2010 with reconsideration also denied on

December 14, 2010. A findings of fact, conclusions of law and decision and order was issued on February 8, 2012.

53.   The components of Plaintiffs' proposed religious use at issue in Plaintiffs' special use permit application discussed *infra* are interdependent and inseparable from the current "agricultural" uses of the Property.

54.   Providing worship services, classes and ceremonies at another location would be wholly impracticable, given Plaintiffs' religious beliefs and exercise.

55.   The Temple does not have any realistic opportunity to purchase land elsewhere on Maui in order to construct its proposed religious facility with botanical use, and any such course of action would involve unreasonable delay, uncertainty, and expense due to the Defendants' land use regulations listed *infra*.

<u>The Relevant Land Use Regulations</u>

56.   The Subject Property is located in the State Agricultural District with a Land Use Classification of "Agricultural."

57.   A use on the Property must be permitted by the Hawaii Revised Statutes, the Maui County Code, and because within the Special Management Area, by the Community Plan.

58.   Permitted uses in the Agricultural District include Agricultural Parks.

Permitted accessory uses include Parks and Open land recreation including: hiking; noncommercial camping; fishing; hunting; equestrian activities; rodeo arenas; arboretums; greenways; botanical gardens; guided tours that are accessory to principal uses, such as farm or plantation tours, petting zoos, and garden tours; hang gliding; paragliding; and mountain biking.  M.C.C. § 19.30A.050.

59.     The Plaintiffs' botanical garden on the Property is a permitted use in the Agricultural District.

60.     "Guided garden tours" are permitted on the Property under H.R.S. § 205-2(d)(12) and as an accessory use of "open land recreation" under M.C.C. § 19.30A.050(B)(11).

61.     The County has informed the Plaintiffs that "uses such as weddings, special events, seminars, group instructions . . . are not permitted" on the Property.

62.     The County has also informed the Plaintiffs that "classes, demonstrations, conferences, and seminars on plant-based nutrition, health and well-being (e.g., yoga, meditation)" are not permitted on the Property.

63.     Bed and breakfast homes are permitted in the Agricultural zone in conjunction with a bona fide agricultural operation.

64.     Special permit uses in the Agricultural District include, among others, Farmer's markets, Public and quasi-public institutions that are necessary for agricultural practices; Major utility facilities as defined in section 19.04.040 of this

11

title; Open land recreation uses including commercial camping, gun or firing ranges, archery ranges, skeet shooting, paint ball, bungee jumping, skateboarding, rollerblading, playing fields, accessory buildings and structures; Cemeteries, crematories, and mausoleums; Mining and resource extraction; Landfills; Solar energy facilities that are greater than fifteen acres; and Short-term rental homes. M.C.C. § 19.30A.060.

65.    H.R.S. § 205-2(d) states "Agricultural districts shall include . . . [a]gricultural tourism on a working farm, . . .[a]agricultural tourism activities, . . . [o]pen area recreational facilities, . . . and [a]gricultural-based commercial operations," among others.

66.    Churches and religious institutions are also permitted as a special use in the Agricultural district.

67.    The Plaintiff's application for a State Land Use Commission Special Permit is governed by H.R.S. §§ 205, 205A and 226, 15-15-95 H.A.R., and Maui County Code Chapter 19.30A.

68.    The relevant land use regulations permit Plaintiffs to conduct tours on its property as part of its botanical garden use.

69.    The applicable land use regulations do not limit the number of persons that may use the Property for such tours.

70.    The Temple does conduct such tours as part of its botanical garden

use, with an average of twenty people participating, and up to a maximum of 120 people.

71.     The certificate of occupancy for Spirit of Aloha's multi-purpose tent structure permits occupancy of 176 persons.

72.     H.R.S. § 205-6(a) provides that a "county planning commission may permit certain unusual and reasonable uses within agricultural and rural districts other than those for which the district is classified."

73.     The Maui County Planning Department noted that "[t]he State Land Use Law provides flexibility in allowing for unusual conditions that have evolved since a property was classified in the State Agricultural District."

74.     Section 15-15-95 of the Hawaii Administrative Rules lists the following guidelines established in determining an "unusual and reasonable use":

     i.    The use shall not be contrary to the objectives sought to be accomplished by chapters 205 and 205A, HRS, and the rules of the Land Use Commission;

    ii.    The desired use would not adversely affect surrounding property;

    iii.    The use would not unreasonably burden public agencies to provide roads and streets, sewers, water, drainage, and school improvements, and police and fire protection;

    iv.    Unusual conditions, trends and needs have arisen since the district

13

boundaries and rules were established; and,

v.    The land upon which the proposed use is sought is unsuited for the uses permitted within the district.

75.    H.R.S. § 205-6(c) states that a "county planning commission may, under such protective restrictions as may be deemed necessary, permit the desired use, but only when the use would promote the effectiveness and objectives of this chapter; provided that a use proposed for designated important agricultural lands shall not conflict with any part of this chapter."

76.    Maui County Code § 19.510.070(B) states that the standards for a special use permit to be used by the planning commission required that each of the following criteria must be met:

1. The proposed request meets the intent of the general plan and the objectives and policies of the applicable community plan of the county;

2. The proposed request is consistent with the applicable community plan land use map of the county;

3. The proposed request meets the intent and purpose of the applicable district;

4. The proposed development will not adversely affect or interfere with public or private schools, parks, playgrounds, water

14

5.  The proposed development will not adversely impact the social, cultural, economic, environmental, and ecological character and quality of the area;

6.  That the public shall be protected from the deleterious effects of the proposed use;

7.  That the need for public service demands created by the proposed use shall be fulfilled; and

8.  If the use is located in the state agricultural and rural district, the commission shall review whether the use complies with the guidelines established in section 15-15-95 of the rules of the land use commission of the State.

77.    Maui County Code § 19.510.070(E) permits the planning commission to "impose conditions on the granting of a request for a special use if the conditions are reasonably conceived to mitigate the impacts emanating from the proposed land use."

78.    These land use regulations allow the Defendant Planning Commission to make individualized assessments of all applications for Special Permits.

79.     The inherently subjective land use regulations governing special use permits give the Defendant Planning Commission broad discretion over any decision on a special use permit application, enabling it to accept or reject applications on a case-by-case basis according to its own unwritten and ad-hoc standards.

80.     It is the policy of the State of Hawaii, as described in H.R.S. § 205-41, that "There is a compelling state interest in conserving the State's agricultural land resource base and assuring the long-term availability of agricultural lands for agricultural use to achieve the purposes of: (1) Conserving and protecting agricultural lands; (2) Promoting diversified agriculture; (3) Increasing agricultural self-sufficiency; and (4) Assuring the availability of agriculturally suitable lands, . . . ."

81.     Furthermore, H.R.S. § 205-6(f) states that "Land uses substantially involving or supporting educational ecotourism, related to the preservation of native Hawaiian endangered, threatened, proposed, and candidate species, that are allowed in an approved habitat conservation plan under section 195D-21 or safe harbor agreement under section 195D-22, which are not identified as permissible uses within the agricultural district under sections 205-2 and 205-4.5, may be permitted in the agricultural district by special permit under this section, on lands with soils classified by the land study bureau's detailed land classifications overall

(master) productivity rating class C, D, E, or U."

82.    H.R.S. § 205-12 states: "The appropriate officer or agency charged with the administration of county zoning laws shall enforce within each county the use classification districts adopted by the land use commission and the restriction on use and the condition relating to agricultural districts under section 205-4.5 and shall report to the commission all violations."

83.    Additionally, "[a]ny person who violates any provision under section 205-4.5, or any regulation established relating thereto, shall be fined not more than $5,000, and any person who violates any other provision of this chapter, or any regulation established relating thereto, shall be fined not more than $1,000." H.R.S. § 205-13.

84.    Thus, Hawaii and Maui law provide for various mechanisms to ensure that their land use goals are protected.


Plaintiffs' Special Use Permit Application

85.    On November 21, 2012 the Plaintiffs filed an application (the "Application") for a State Land Use Commission Special Permit (SUP2 2012/0032) to hold weekly church services for up to 20 people on Saturdays from 10:00am to 2:00pm, operate a living classroom for nature guardian skills for up to 23 people 4 times per week, and conduct sacred programs, educational,

inspirational and spiritual, and spiritual commitment ceremonies such as weddings for up to 80 persons 24 times per year and up to 40 persons 24 times per year at the Property.

86.     The Plaintiffs proposed to use the existing structures for purposes of the church use.

87.     Groups of people of the same size or larger are currently permitted on the Property for non-religious purpose of visiting the botanical garden.

88.     The Plaintiffs amended their application regarding events to request only 12 events per year for up to 20 people, 12 events per year for up to 40 people, 12 events per year for up to 60 people, and 12 events per year for up to 80 people.

89.     The Planning Department provided its recommendation to the Planning Commission, recommending approval of the Application, with 21 conditions.

90.     After consultation with the Maui County Planning Department, the Plaintiffs agreed to further limit the proposed use as follows:

> i.     The classroom was to be limited to use by no more than 24 persons, including staff;
>
> ii.    There were to be no more than four classes per week, all between the hours of 10:00 a.m. and 2:00 p.m.;
>
> iii.   Church services were to be limited to one per week with a

maximum of 24 attendees and would usually be conducted on Saturdays between the hours of 10:00 a.m. and 2:00 p.m.;

iv. No more than 48 church-related events per year, of those no more than half could have between 25 and 40 participants and staff;

v. No more than two events with 25 to 40 persons could be conducted per month;

vi. There could be no more than four church-related events per month,

vii. All church-related events were to take place between 10:00 a.m. and 8:00 p.m.;

viii. Shuttle buses were to be used to transport participants to the church-related events that involved between 25 and 40 participants;

ix. The shuttles would use privately owned facilities, not public ones, for drop off and pick up;

x. There would be no more than 25 people on the Property except for 59 days a year;

xi. The attendance would further be limited by the waste water system's limits;

xii. Records of events, dates, attendance and type would be maintained and submitted to two separate County agencies each year. Failure

19

to submit them could result in revocation of the permit;

 xiii. Obtaining approvals from the State Historic Preservation Division;

 xiv. Several specific Department of Health Safe Water Drinking Branch Test results for a variety of chemicals and bacteria;

 xv. Approval of the Department of Health Environmental Health Services Division regarding all food consumed on the premises;

 xvi. No food was to be prepared on the premises for any event;

 xvii. A parking plan had to be approved by the Zoning and Enforcement Division and submitted to the Planning Department;

 xviii. The permit would expire on March 31, 2016, subject to applications for renewal; and

 xix. A hardened driveway approved by the Fire Department and Department of Public Works.

91. After extensive revision of the Application from November 2012 through February 2014, on February 11, 2014 the Maui Planning Department deemed the application complete and scheduled a public hearing before the Maui Planning Commission for March 25, 2014.

92. On February 21, 2014, Plaintiffs mailed the requisite notice of public hearing to owners and lessees adjacent to the Property and across the street.

93. A notice of hearing on the application was published in the Maui

News on February 21, 2014 by the Planning Department.

94.    The Planning Department issued a Report and Recommendation ("Recommendation") that the Permit be issued.

95.    The Planning Department noted that no new buildings or structures were proposed, that the church use will use the existing structures in a shared use arrangement, and that "[t]he church is intended to complement and support the existing agricultural uses of the property and the open and rustic setting of the area."

96.    The Department also determined that "[i]f approved with conditions, the applicant will implement mitigative measures to limit impacts on the surrounding area, including noise, traffic and burdens on public service."

97.    State and County agency review comments were provided regarding potable water availability, wastewater capacity, traffic, police and fire department access, archeology, and adherence with the agricultural zoning of the Property.

98.    The Department noted that the use would "place little burden on public sewers, water systems, drainage systems or educational facilities."

99.    With respect to the narrow road conditions of Haumana Road, the Planning Department stated: "the Department has worked with the applicant and public safety agencies to limit the number of visitors, events, and hours of events."

100.    With respect to the State zoning statutes, the State Plan, H.R.S.

    i.    Improving opportunities to experience natural beauty and biodiversity for present and future generations;

    ii.    Educating residents about responsible stewardship and interconnections with the environment;

    iii.    Improving land use management;

    iv.    Preserving and enriching residents' quality of life;

    v.    Protecting the Island's natural beauty;

    vi.    Improving its economy;

    vii.    Strengthening the Island's sense of place; and

    viii.    Protecting and enhancing architectural and landscape characteristics.

101.   The Department also considered the Application in light of the local Paia-Haiku Community Plan and again found that it promoted the goals of that land use plan.

102.   The Department also reviewed the requirements for a Special Use

22

Permit in the Agricultural District, found in H.R.S. §§ 205 and 205A. It specifically found that the proposed use meets those standards, that it will complement and support agricultural use, and that it will not adversely affect surrounding property or burden public services.

103.   The Recommendation noted that any concern about possible vehicular and pedestrian traffic impact had been addressed by both the Police and Fire Departments. It states that "[i]n light of these comments the Department discussed the matter with public safety agencies and developed conditions to mitigate the effect on traffic and public services."

104.   In order to mitigate traffic impacts along Haumana Road, the Department of Public Safety/Police Department recommended that the number of visitors and hours of operation for church related events be limited. Those limitations were adopted and made part of the Application as finally submitted.

105.   Significantly, the Department's Recommendation quoted the Police Department's comment as stating: "There is no objection to the progression of this project at this time, from the police standpoint in regards to pedestrian and vehicular movement."

106.   The Recommendation also noted that "the proposed church and agricultural education uses will complement existing agricultural uses of the property using existing buildings and structures."

23

107.   The Department's Recommendation  included a conclusion of law that "[t]he application for a State Land Use Commission Special Permit complies with the applicable standards for an 'unusual and reasonable' use within the State Agricultural District."

108.   With regard to impact on surrounding properties, the Recommendation stated: "If approved with conditions the applicant will implement mitigative measures to limit impacts on the surrounding area, including noise, traffic and burdens on public service."

109.   That Recommendation further noted that "[c]hurch or related uses are not uncommon in the State Agricultural District under the provisions of a State LUC Special Use Permit."

110.   Plaintiffs' proposed use would be consistent with the policy goals of H.R.S. § 205-41.

111.   However, there was substantial public opposition by nearby residents to the Plaintiffs' use.

112.   On March 25, 2014 the Commission held a public hearing on the Application.

113.   During the March 25 hearing and at the request of Planning Commissioner Wakida, William Spence, Director of the Maui Planning Department, testified:

That botanical garden use it's supposed to–it's an accessory use listed under in the Agricultural Zoning Code. So whatever farming, whatever agricultural activities are going on as a part of that and that could be, you know, agriculture is pretty broadly defined. They could have people down there to, you know, as with other botanical gardens you could, you know, see the different species and take a tour and those kinds of things.

Minutes of Maui Planning Commission, March 25, 2014 at 72.

114.   There are no limitations in the relevant state and county land use regulations that regulate the number of persons who may attend the non-religious use of the botanical garden.

115.   There are no limitations in the relevant state and county land use regulations that regulate specifically how persons may arrive at the non-religious use of the botanical garden.

116.   At the conclusion of the public hearing, the following comments and motion of the Planning Commission took place:

Mr. Freitas: I'd like to make a motion to deny and I have a . . . (inaudible) . . . reason why I am voting to deny. I run a tow business and road safety is so important to me and that road I feel is not safe with pedestrians walking up and down the highway and people with bicycles and what have you. And I have been on that road with our tow truck and it is a very narrow . . . especially when it rains. So that's my prime reason for making the motion to deny the applicant.

Mr. Medeiros: I second.

Chairperson Lay: Motion by Commissioner Freitas to deny, seconded by Commissioner Medeiros. Any discussion on the motion? Commissioner Wakida?

Ms. Wakida: I concur with Mr. Freitas about the concern for safety on the road. And we've heard from neighbors that they feel the road is unsafe for a certain amount of excess traffic which the applicant sounds like he will generate. And as well, there seems to be some issues raised about water and wastewater that I think are of concern.

Chairperson Lay: Any more discussion on the motion? Director can repeat? Oh, Commissioner Medeiros?

Mr. Medeiros: Yeah, I seconded the motion mostly because while I respect his rights to religion, it's not safe. <u>Okay, maybe the Planning Commission, the State Department of Health recommended all of these things to us as satisfactory, but it's still not safe not to the degree where I would be comfortable with</u>. Okay. I respect human life. I wanna protect it.

Minutes of Maui Planning Commission, March 25, 2014, pp. 80-81 (emphasis added).

117.   The motion passed with six ayes voting for denial and two excused. The special use permit was denied.

118.   Plaintiffs thereafter requested reconsideration of the denial.

119.   The Plaintiffs submitted a reduction in the church events in support of its request for reconsideration as follows: 6 programs per month for up to 4 hours and for up to 24 participants, from 10 a.m. to 4 p.m. and 2 programs per month for up to 6 hours and up to 40 participants (1 from 10 a.m. to 4 p.m, and 1 from 10 a.m. to 8 p.m.).

120.   On April 8, 2014, the Commission reconsidered the Application.

121.   Plaintiffs again amended their application to further reduce the

number and size of church related events that they would hold.

122.   A motion to rescind the previous denial passed by a vote of 5 to 1 with 2 excused.

123.   Plaintiffs orally amended the Application to reduce the proposed number of church events to include eight per month with a maximum of ten cars per event.  Two of the events could have up to 40 people and the remaining six events could have up to 24 people.  Seven of the eight events would end by 4 p.m., with the remaining event ending by 8 p.m.

124.   The Planning Department again recommended approval of the Application, subject to conditions.

125.   At the conclusion of the deliberations on reconsideration, a motion was made to deny the State Land Use Commission Special Use Permit.

126.   Initially, in the first vote only two members of the Planning Commission assented to the Motion to deny the permit.  Three members abstained.  Three members dissented.

127.   After this vote, the Planning Commission determined that the Chair needed to vote and could not abstain, so another vote was taken.

128.   K. Ball assented in this second vote and voted to deny the application.

129.   The second vote was three assents to the Motion, two abstentions, and three dissents.

130.   Thus, only three of eight members of the Planning Commission voted to deny the special use permit.

131.   However, under the Maui County Planning Commission Rules of Practice and Procedure, § 12-201-24(c), an abstention (unless as a result of disqualification for conflict of interest) is counted as an affirmative vote. Thus the vote to deny the Permit passed 5-3.

132.   On October 30, 2014, the Commission issued its Findings of Fact, Conclusions of Law and Decision and Order, SUP 2012/0032.   It made the following Conclusions of Law:

> i.    "[A]fter hearing testimony from neighbors that live adjacent to or nearby the Property and after questioning the Applicant and Consultant, the Commission concluded that the uses requested in the Application did not constitute an 'unusual and reasonable' use in the Agricultural District."
>
> ii.   "The Commission found that the uses proposed in the Application would adversely affect the surrounding properties in conflict with 15-15-95(2) HAR.  The Commission received substantial negative written testimony from nearby property owners on Haumana Road and North Holokai Road.  Additionally during the hearing nearby

property owners submitted additional oral visual and written testimony regarding concerns about the safety of Haumana Road for both potential visitors and property owners along Haumana Road.   The Commission found such testimony reliable and compelling."

iii.   "The Commission found that granting the uses would increase traffic and burden public agencies providing roads and streets, police and fire protection, in conflict with 15-15-95(3), HAR, and gave the following reasons for a denial of the Application on that basis: significant concerns about the narrowness of Haumana Road and vehicle and pedestrian safety both to potential visitors to the property and property owners along Haumana Road and the fact that and the fact that the Property is at the terminus of Haumana Road and therefore traffic to the Property would negatively impact residents safety and use of Haumana Road."

133.   Thus, the Planning Commission stated that it denied the Plaintiffs' special use permit based on the traffic impacts of such proposal.

134.   The only evidence presented to the Planning Commission regarding traffic, other than that from the government agencies as described above, was the

135.   The Planning Commission's decision and order states that "[t]he Commission was concerned about the number of objection letters received from property owners in the nearby neighborhood and noted the paucity of support letters from adjacent neighbors."

136.   Issues relating to Haumana Road are due to encroachment by adjoining property owners.

137.   Safety concerns regarding the Application were addressed and confirmed by government agency comment letters.

138.   The Planning Department included as a condition of approval:

> That in order to reduce the amount of traffic on Haumana Road, the applicant shall use a shuttle system (vans and limousines) to bring guests to and from the property for all events that will have more than 25 persons in attendance.  Every effort should be taken to shuttle or carpool event guests to all activities.  Shuttles shall use privately owned facilities, such as hotels, for their operations such as drop-offs and pick-ups.

139.   The Plaintiffs were and continue to be willing to accept any reasonable condition to address perceived impacts on traffic and other governmental interests.

140.   The Planning Commission was informed about the applicability of RLUIPA to the Application.

141.   The County, through its Planning Department, stated that "the

Religious Land Use and Institutionalized Persons Act (RLUIPA) is a federal law protecting a person's religious liberties and right to assembly."

142.   Nevertheless, the Planning Commission determined that the burden on the Temple's religious exercise was justified by the "compelling" governmental interest in traffic.

143.   The Commission's refusal to permit religious exercise on the Property is irrational, arbitrary, capricious and not rationally related to any compelling governmental interest.

144.   The Commission's stated traffic justification for the denial of the special use permit application is arbitrary, capricious, discriminatory and does not give reasonable notice to applicants of the standards for a special use permit.

145.   Plaintiffs made numerous concessions limiting their proposed church use, adequately addressing any purported governmental interests.

146.   The proposed church use would have less impact on surrounding properties and governmental interests than the existing, permitted botanical garden use.

147.   The Planning Commission had the authority to impose further conditions on Plaintiffs' proposed use.

148.   Another condition recommended by the Planning Department was that the "Maui Planning Commission may modify, suspend or revoke this permit for

31

good cause."

149.   The Planning Department Planner Kurt Wollenhaupt had begun to review potential conditions of approval of the Application, including enforcement of potential conditions and on revising the number of permitted events on the Property.

150.   However, the Planning Commission failed to use any less restrictive means of achieving governmental interests and voted to deny the Application outright.

## Differential Treatment of Plaintiffs

151.   The Maui Planning Department's Report noted that "[c]hurches or related uses are not uncommon in the State Agricultural District under the provisions of a State LUC Special Use Permit."

152.   Upon information and belief, organized wedding services are conducted at a minimum of five other botanical gardens on the Island of Maui, presumably with appropriate approvals from the Defendants.

153.   Upon information and belief, traffic conditions at several of these locations are less safe than at the subject Property.

154.   Furthermore, Maui County Code § 19.30A.050.B.11 permits gatherings of many types, without limitation as to size in the Agricultural District

and even on the subject Property.

155.   Thus, the Commission's refusal to permit religious exercise on the Property discriminates against religious assembly uses.

156.   There are other churches on similar types of roads in Maui County.

157.   For example, Kaulanapueo Church and Door of Faith Church in Huelo, Maui are accessed by Door of Faith Road, which at points is approximately 10 feet wide.

158.   The denial of Plaintiffs' special use permit was based on no objective criteria or standards for road requirements.

159.   The Planning Commission's refusal to allow the Temple to use its facility for religious purposes severely impedes and prevents the Plaintiffs' exercise of its religion.

160.   Defendants, through their land use regulations and the actions of the Planning Commission, have rendered the Temple's religious exercise effectively impracticable.

161.   The use of the Property as a place of worship would affect interstate commerce, including its use as a site for ongoing fundraising; its receipt of charitable donations from persons working or living outside of the State of Hawaii; providing a place of worship for the families of congregants visiting from other states; providing religious education to individuals from other states; the use of

33

means of interstate communication to facilitate its ongoing operations; the employment of any part-time or full-time employees; the purchase of goods and services related to the Temple's ongoing operations and maintenance; and the hosting of any religious leaders visiting the Temple from out of state.

162.   The Defendants' actions described above all took place under color of state law.

163.   The harm to the Temple caused by the Defendants' laws and actions, which prevent it from operating a place of worship to accommodate its religious needs, is immediate and severe.

164.   Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' wrongful laws and actions.

## COUNT I

**Violation of Religious Land Use and Institutionalized**

**Persons Act of 2000 – "Substantial Burdens," 42 U.S.C. § 2000cc(a)**

165.   Paragraphs 1 through 163 are incorporated by reference as if set forth fully herein.

166.   Defendants have deprived and continue to deprive the Spirit of Aloha Temple and Frederick Honig of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations in a

manner that places substantial burden on the Plaintiffs' religious exercise without using the least restrictive means of achieving a compelling governmental interest.

## COUNT II

### Violation of Religious Land Use and Institutionalized

### Persons Act of 2000 – "Nondiscrimination," 42 U.S.C. § 2000cc(b)(2)

167.   Paragraphs 1 through 166 are incorporated by reference as if set forth fully herein.

168.   Defendants have deprived and continue to deprive the Spirit of Aloha Temple and Frederick Honig of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations in a manner that discriminates against the Plaintiff on the basis of religion and religious denomination.

## COUNT IV

### Violation of Religious Land Use and Institutionalized

### Persons Act of 2000 — "Equal Terms," 42 U.S.C. § 2000cc(b)(1)

169.   Paragraphs 1 through 168 are incorporated by reference as if set forth fully herein.

170.   Defendants have deprived and continue to deprive Spirit of Aloha

Temple and Frederick Honig of their right to the free exercise of religion, as secured by RLUIPA, by treating the Plaintiffs on less than equal terms as nonreligious assemblies and institutions.

## COUNT V

### United States Constitution

### 42 U.S.C. § 1983: First Amendment -- Prior Restraint

171.   Paragraphs 1 through 170 are incorporated by reference as if set forth fully herein.

172.   The standards set forth in the County of Maui's zoning regulations governing special permits for places of worship, and the standards applied by the Commission in reviewing and denying Spirit of Aloha Temple and Frederick Honig's Special Use Permit do not provide a person of ordinary intelligence a reasonable opportunity to understand whether such land uses are permitted or prohibited and, as such, constitutes an unconstitutional prior restraint on Plaintiff's protected expression and religious exercise under the First Amendment.   Such standards unconstitutionally afford the Commission unbridled discretion in its review of a Special Use Permit application for a place of worship.

## COUNT VI

36

**United States Constitution**

**42 U.S.C. § 1983: First Amendment -- Free Exercise of Religion**

173.   Paragraphs 1 through 172 are incorporated by reference as if set forth fully herein.

174.   Defendants have deprived and continue to deprive the Spirit of Aloha Temple and Frederick Honig of their right to free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by substantially burdening Plaintiffs' religious exercise without using the least restrictive means of achieving a compelling governmental interest, and by discriminating against the Plaintiffs on the basis of religion.

175.   Defendants have further deprived and continue to deprive the Plaintiffs of their right to free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by burdening their religious exercise in a manner that is not rationally related to a legitimate governmental interest.

**COUNT VII**

37

**United States Constitution**

**42 U.S.C. § 1983: Fourteenth Amendment -- Equal Protection**

176.   Paragraphs 1 through 175 are incorporated by reference as if set forth fully herein.

177.   Defendants have deprived and continue to deprive the Spirit of Aloha Temple and Frederick Honig of their right to equal protection of the laws, as secured by the Fourteenth Amendment to the United States Constitution, by discriminating against Plaintiffs in the imposition and implementation of their land use regulations.

**COUNT VIII**

**Hawaii Constitution Article I § 4 -- Free Exercise of Religion**

178.   Paragraphs 1 through 177 are incorporated by reference as if set forth fully herein.

179.   Defendants have deprived and continue to deprive the Spirit of Aloha Temple and Frederick Honig of their right to free exercise of religion, as secured by Article I § 4 of the Hawaii  Constitution by substantially burdening their religious exercise without using the least restrictive means of achieving a compelling governmental interest, and by discriminating against the Plaintiffs on the basis of religion.

## COUNT IX

### Hawaii Constitution Article I § 5

### Equal Protection of the Law

180.   Paragraphs 1 through 179 are incorporated by reference as if set forth fully herein.

181.   Defendants have deprived and continue to deprive the Spirit of Aloha Temple and Frederick Honig of their right to equal protection of the laws, as secured by Hawaii Constitution Article I § 5 by discriminating against Plaintiffs in the imposition and implementation of their land use regulations.

## COUNT X

### H.R.S. § 91-14

### Appeal from Agency Action

182.   Paragraphs 1 through 181 are incorporated by reference as if set forth fully herein.

183.   Defendant Maui Planning Commission's Final Decision and Order dated October 28, 2014 denying Plaintiffs' Special Use Permit was based on Findings of Fact that were clearly erroneous and not supported by necessary reliable, probative and substantial evidence of the whole record.

184.   Finding of Fact No. 68 provides the MPC's basis for denying the SUP

application by stating in pertinent part as follows:

> The Commission finds that there is evidence of record that the proposed uses expressed in this Application should they be approved would increase vehicular traffic on Haumana Road, which is narrow, winding, one-lane in areas, and prone to flooding in inclement weather.   The Commission finds that Haumana Road is regularly used by pedestrians, including children who use the road to access the bus stop at the top of the road.   The Commission that granting the Application would adversely affect the health and safety of residents who use the roadway, including endangering human life.   The Commission finds that the health and safety of the residents' and public's use of Haumana Road is a compelling government interest and that there is no less restrictive means of ensuring the public's safety while granting the uses requested in the Application.

185.   Based on the record of the hearing, this finding of fact appears to

solely be based on the anecdotal testimony provided by residents of Haumana

Road who neighbor the site of Spirit of Aloha Temple and as such have significant

biases to denying Spirit of Aloha's SUP.  The Findings of Fact make no mention of

the supplemental evidence of reports from the Maui Police Department and Maui

Fire Department, disinterested expert parties, stating that they had no objections to

the SUP in regard to pedestrian and vehicular movement.   These reports were

made based on the original SUP application that included a larger number of

events, people and vehicles.

186.   Disinterested reports from the Maui Police Department and the Maui

Fire Department concluded that vehicular and pedestrian safety were not

endangered by the scope of activities proposed in Spirit of Aloha's SUP application.

187.  The Maui Department of Planning recommended approval of the SUP application with the reduced events with several conditions.

188.  Finding of Fact No. 68 states that Haumana Road is "prone to flooding"; however, the evidence in the record states that the water runs off into a culvert and that the road drains well.

189.  Finding of Fact No. 68 states that Haumana Road is "one-lane in areas" and while this is supported by evidence in the record, this statement fails to account for the context that while the asphalt may only be as wide as one-lane in certain areas, the road still is passable as the road maintains a recorded 20-foot right of way and vehicles are able to pass each other by pulling narrowed width is the result of encroachment by property owners along Haumana Road.

190.  Finding of Fact No. 67 described the voting results on the Motion to Deny the State Land Use Commission Special Use Permit from the April 8, 2014 Maui Planning Commission meeting.  It states that J. Freitas and W. Hedani assented to the Motion; M. Tsai, I. Lay, and K. Ball abstained; and J. Medeiros, P. Wakida, and R. Higashi dissented.  However, the signatures at the end of the Decision and Order include Commissioner Ball's signature in the "In Agreement" category rather than in the "Abstained" category.  All other signatures for

agreement or disagreement with the Motion corresponded to how the commissioners voted, or abstained, in the minutes of the hearing and as reported in Finding of Fact No. 67.

191.   Conclusion of Law No. 5 states, "The Commission found that granting the uses would increase traffic and burden public agencies providing roads and streets, police, and fire protection . . . ."   No evidence was presented to support the finding that the burden of public agencies providing roads and streets, police and fire protection would be increased.

192.   The Maui police and fire departments both provided reports that were in support of the SUP application.   Therefore, this finding is not supported by any probative or reliable evidence.

193.   Conclusion of Law No. 9 states, "The Commission further found that there were compelling public health and safety issues implicated by the likely significant increase in traffic attributable to the uses proposed by the Application, creating conditions that would be foreseeably dangerous or potentially deadly to drivers and pedestrians, including children walking on the road to and from the bus stop at the top, using the small rural roadway."   These findings are not based on probative, reliable and substantial evidence particularly as it pertains to children walking to and from the bus stop since the proposed start & end times for the events included in the SUP Application do not coincide with normal school

start/end times.

194.   Conclusion of Law No. 9 states, "The Commission found that these compelling public health and safety issues could not be adequately addressed by the implementation of any permit condition or use restriction," to support its position that the denial of the SUP was the least restrictive means of furthering the compelling governmental interest in protecting the health, lives and safety of the public.   However, while the Commission based its findings primarily on the narrowness of Haumana Road, little if any discussion was conducted pertaining to conditions regarding making the road wider or safer.   Therefore, less restrictive means were not explored.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1.   A declaration that the denial of the Spirit of Aloha Temple and Frederick Honig's Special Use Permit application is void, invalid and unconstitutional on the ground that it violates the Free Exercise and Free Speech Clauses of the First Amendment to the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Religious Land Use

43

and Institutionalized Persons Act, and the Hawaii Constitution Article
I §§ 4 and 5;

2.      A declaration that the standards set forth in the land use regulations
governing Special Use Permit applications for religious exercise, and
the standards applied by the Commission in reviewing and denying
the Spirit of Aloha Temple and Frederick Honig's Application are an
unconstitutional prior restraint on protected expression and religious
exercise under the First Amendment;

3.      An order sustaining Plaintiffs' zoning appeal pursuant to H.R.S. 91-
14, and finding the Planning Commission's action in denying
Plaintiffs' Special Use Permit application to be unlawful;

4.      An order directing the Planning Commission to grant the Spirit of
Aloha Temple and Frederick Honig, Inc. the Special Use Permit
necessary to conduct church activities on the Property as applied for
in its Application;

5.      An order enjoining the Defendants, their officers, employees, agents,
successors and all others acting in concert with them from applying
their laws in a manner that violates the Free Exercise and Free Speech
Clauses of the First Amendment to the United States Constitution, the
Equal Protection Clause of the Fourteenth Amendment to the United

44

States Constitution, the equivalent protections of the Hawaii Constitution, and the Religious Land Use and Institutionalized Persons Act, or undertaking any and all action in furtherance of these discriminatory and disparate acts, and specifically enjoining the Defendants to approve all plans and applications submitted by the Plaintiffs in furtherance of its development of the Property without delay;

6.     An award of compensatory damages against Defendants in favor of  the Spirit of Aloha Temple and Frederick Honig, Inc. in such amount as the Court deems just for the loss of the Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution, the Religious Land Use and Institutionalized Persons Act, and the Hawaii Constitution incurred by the Spirit of Aloha Temple and Frederick Honig, and caused by the Defendants' laws and actions;

7.     An award to the Spirit of Aloha Temple and Frederick Honig, Inc. of full costs and attorneys' fees arising out of Defendants' actions and land use decisions and out of this litigation; and

8.     Such other and further relief as this Court may deem just and appropriate.

45

DATED:  Honolulu, Hawaii; November 26, 2014.

                                           */s/ Jonathan S. Durrett*
                                           JONATHAN S. DURRETT
                                           ADAM G. LANG
                                           SHAUNA L. SILVA BELL
                                           Attorneys for Plaintiffs
                                           SPIRIT OF ALOHA TEMPLE
                                           and FREDRICK R. HONIG