IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SPIRIT OF ALOHA TEMPLE AND FREDRICK R. HONIG, | ) ) ) | CIVIL NO. 14-00535 SOM/RLP |
| Plaintiffs, | ) ) ) | ORDER GRANTING MOTION TO DISMISS AND/OR FOR PARTIAL SUMMARY JUDGMENT |
| vs. | ) ) | |
| COUNTY OF MAUI AND MAUI PLANNING COMMISSION, | ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING MOTION TO DISMISS AND/OR FOR
PARTIAL SUMMARY JUDGMENT**

**I.       INTRODUCTION.**

Plaintiffs Spirit of Aloha Temple and Fredrick R. Honig applied for a State Land Use Commission Special Permit to build a church and hold religious events on a parcel of land located in the County of Maui.  After the application was denied by Defendant Maui Planning Commission, Plaintiffs filed their Complaint in this court, asserting federal and state claims against both the Planning Commission and Defendant County of Maui.

Before the court is Defendants' Motion to Dismiss and/or for Partial Summary Judgment, requesting that the Planning Commission be dismissed from the action, or all claims against it be dismissed with prejudice.  The motion to dismiss is granted.

II.        **BACKGROUND.**

Spirit of Aloha is a 501(c)(3) tax-exempt organization that was incorporated as a church in 2007 to promote "Integral Yoga." See ECF No. 1, PageID #s 5, 7.  Honig is a licensed minister and teacher of Integral Yoga.  See id., PageID # 6.

Spirit of Aloha owns an eleven-acre parcel located in Haiku, Maui.  See id., PageID # 9.  The parcel is zoned "Agriculture" and is in a Special Management Area.  See id.  The property is being used for limited "secular" purposes, including a botanical garden, bird sanctuary, and staff housing.  See id.

In 2010, Plaintiffs applied for a special use permit to use the property as a church.  See id., PageID #s 10-11. Churches are permitted as a special use in an agricultural district.  See id., PageID # 13.  Plaintiffs propose to use the property for religious services, meetings, lectures, and events such as weddings.  See id., PageID #s 10-11.  Plaintiffs' application was denied by the Planning Commission on various grounds.  See id., PageID #s 10-11.

On November 21, 2012, Plaintiffs filed another application for a special permit to use the property for the same religious purposes.  See id., PageID # 10.  The Maui Planning Department issued a report and recommendation that the permit be issued.  See id., PageID # 22.  However, after a public hearing in which several residents in the surrounding area expressed

concern about road safety given increased traffic to and from the property, various zoning violations by Plaintiffs, and the impact of increased numbers of visitors on community resources, see id., PageID #s 26-27, the Planning Commission voted to deny the application, see id., PageID # 28.  The Planning Commission set forth its findings and conclusions in its Decision and Order of October 30, 2014 ("October 2014 Decision").  See id., PageID #s 29-30.

          After its application was denied, Plaintiffs chose not to seek review of the October 2014 Decision in state court under Haw. Rev. Stat. § 91-14.  Instead, Plaintiffs filed their Complaint in this court on November 26, 2014.  See ECF No. 1. The Complaint asserts claims for violations of federal law under the Religious Land Use and Institutionalized Persons Act of 2000 and 42 U.S.C. § 1983, and violations of the Hawaii constitution. See id., PageID #s 35-44.  In addition, Count X seeks review of the Planning Commission's October 2014 Decision pursuant to Haw. Rev. Stat. § 91-14.[1]  See id., PageID # 44.  Plaintiffs seek monetary damages, injunctive relief, and attorney's fees from both the County and the Planning Commission.  See id., PageID #s 44-46.

----

          [1]    The numbering of the counts in the Complaint includes an error, as the Complaint does not include a Count III.  ECF No. 1, PageID # 36.  This order uses the count numbers in the Complaint.

3

Defendants filed the present motion to dismiss the Planning Commission because it is not an independent legal entity that can be sued separately from the County.  See ECF No. 33, PageID # 146.

**III.      STANDARD.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  Courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted

4

deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  Sprewell, 266 F.3d at 988; Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  The complaint must "state a

5

claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

IV.     ANALYSIS.

     A.     Dismissal of Counts I to IX Against the Planning Commission.

     Defendants seek dismissal of all claims against the Planning Commission, arguing that the Planning Commission is not an independent legal entity apart from the County that is capable of being sued. See ECF No. 33, PageID # 154. The parties appear to have agreed that the Planning Commission can be dismissed as a party as to Counts I through IX. At the hearing on the motion, Plaintiffs stated they would agree to the dismissal of these counts if the County agreed to stand by any judgment or injunctive order applicable to the Planning Commission. See ECF No. 47, PageID #s 220-23; ECF No. 80, PageID # 521. The County agreed to this proposal. See ECF No. 80, PageID # 522. Under these circumstances, the court grants Defendants' motion to dismiss the Planning Commission as a Defendant in Counts I to IX. Counts I to IX remain pending against the County.

     B.     Count X.

     Count X seeks appellate review of the October 2014 Decision pursuant to Haw. Rev. Stat. § 91-14. See ECF No. 1,

PageID #s 40-44.  Defendants argue that this court lacks the
jurisdiction to entertain such an action.  See ECF No. 52, PageID
#s 241, 244-45.  This court concludes that it has supplemental
jurisdiction over Count X.  However, this court declines to
exercise its discretion to retain supplemental jurisdiction over
the claim.

### 1.   The Court Has Supplemental Jurisdiction over Count X.

City of Chicago v. International College of Surgeons,
522 U.S. 156 (1997), addressed whether a federal district court
may exercise supplemental jurisdiction over a claim seeking
federal court review of a state administrative agency action.
Id. at 174.  The City of Chicago had removed to federal court a
lawsuit that included claims raising federal questions as well as
state-law claims seeking review of a city agency's denial of the
plaintiff's request to redevelop two historic buildings.  Id. at
159-61.  The city argued that the applicable ordinance, which
resembles Haw. Rev. Stat. § 91-14 in providing that judicial
review of a municipal agency decision lies with the state court,
deprived the federal district court of jurisdiction to conduct
deferential appellate review of the agency action.  Id. at 159,
166.  The federal district court exercised supplemental
jurisdiction over the state-law claims and ruled on them.  Id. at
161.  The Seventh Circuit reversed and remanded the case to state
court, concluding that the district court had been without

7

jurisdiction.  Id.

The Supreme Court reversed.  Id. at 174.  The Court explained that a federal district court has supplemental jurisdiction to review state administrative challenges so long as those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Id. at 165 (quoting 28 U.S.C. § 1367).

The Court nonetheless clarified that just because a district court may exercise supplemental jurisdiction over a cross-system appeal does not mean that it always should.  The Court noted that a federal district court's decision to assert supplemental jurisdiction was a discretionary one:

> Of course, to say that the terms of § 1367(a) authorize the district courts to exercise supplemental jurisdiction over state law claims for on-the-record review of administrative decisions does not mean that the jurisdiction must be exercised in all cases.  Our decisions have established that pendent jurisdiction "is a doctrine of discretion, not of plaintiff's right," [United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)], and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons, id., at 726-27.

522 U.S. at 172-73 (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("As articulated by Gibbs, the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in

8

the manner that most sensibly accommodates a range of concerns and values.")).

In addition, <u>City of Chicago</u> noted that principles of comity may warrant abstention:

> In addition to their discretion under § 1367(c), district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by this Court applies.  Those doctrines embody the general notion that "federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, for example where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996) (citations and internal quotation marks omitted).

522 U.S. at 174.  The Court cautioned that "there may be situations in which a district court should abstain from reviewing local administrative determinations even if the jurisdictional prerequisites are otherwise satisfied."  <u>Id.</u>

There is no dispute that this court has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.  Accordingly, under <u>City of Chicago</u> and 28 U.S.C. § 1367, this court may exercise supplemental jurisdiction over the state administrative claim so long as it and the other claims "form part of the same case or controversy," as evidenced by the sharing of a common nucleus of operative facts.  28 U.S.C.

9

§ 1367; <u>City of Chicago</u>, 522 U.S. at 165.  The state administrative review claim and the federal claims in this action share a common nucleus of operative facts; they all arise out of Plaintiffs' attempts to obtain a special use permit to use its property as a church.

Defendants do not attack this aspect of the jurisdictional analysis, but maintain that there are other problems requiring this court to refrain from exercising supplemental jurisdiction over Count X.  Defendants allege that Plaintiffs' appeal of the October 2014 Decision was untimely and inadequate.  They note that Rule 72 of the Hawaii Rules of Civil Procedure required Plaintiffs to satisfy several steps, including the filing of its appeal within thirty days of the October 2014 Decision, the serving of a certified copy of the notice of appeal on Defendants, and the designating of the record on appeal. Defendants contend that these requirements have not been met. <u>See</u> ECF No. 52, PageID #s 242-43.

It is clear, however, that at least in this court it is the Federal Rules of Civil Procedure that govern Count X, not the Hawaii Rules of Civil Procedure.  <u>See, e.g.</u>, <u>Nathan v. Boeing Co.</u>, 116 F.3d 422, 423 (9th Cir. 1997) (Federal Rules of Civil Procedure govern state law claims over which courts have supplemental jurisdiction); <u>Laidlaw Waste Sys., Inc. v. Mallinckrodt, Inc.</u>, 925 F. Supp. 624, 634 (E.D. Mo. 1996)

("Federal courts apply the Federal Rules of Civil Procedure to matters of procedure when considering non-federal questions, whether in a diversity action or as here when a state claim is heard under supplemental jurisdiction."); New.Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1099 (C.D. Cal. 2004) (same).

There is no federal equivalent to Rule 72 of the Hawaii Rules of Civil Procedure.  Plaintiffs say that it would be absurd to require them to perfect their appeal in this court by preparing and presenting a designation to the clerk of the state circuit court, as required by Rule 72 of the Hawaii Rules of Civil Procedure.  See ECF No. 55-1, PageID # 261.  This court concludes that Plaintiffs' noncompliance with Rule 72 does not affect this court's jurisdiction over Count X.

While this court concludes that it has the power to exercise supplemental jurisdiction in this case, that does not mean this court should exercise that power.

## 2. The Court Declines to Exercise Supplemental Jurisdiction Over the State Law Claims.

Unlike federal question or diversity jurisdiction, supplemental, or pendent, jurisdiction is not mandatory.  The power to adjudicate state-law claims "need not be exercised in every case in which it is found to exist.  It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."  Gibbs, 383 U.S. at 726. In weighing whether to exercise supplemental jurisdiction over a

11

state-law claim, courts should factor in "considerations of judicial economy, convenience and fairness to litigants . . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Id.

Under 28 U.S.C. § 1367(c), a court may decline to exercise supplemental jurisdiction over a state-law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

City of Chicago noted that the "statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" 522 U.S. at 173 (citation omitted).

"Each of the section 1367(c) bases is an independent reason through which a court may decline supplemental jurisdiction." Wisey's # 1 LLC v. Nimellis Pizzeria LLC, 952 F. Supp. 2d 184, 189 (D.D.C. 2013).

12

### a.   § 1367(c)(1).

Section 1367(c)(1) asks if the state-law claim presents novel and complex issues of state law.  Count X does.

Plaintiffs say there is nothing novel about the state-laws issues in this case, given the more than a thousand Hawaii cases that refer to Haw. Rev. Stat. § 91-14.  See ECF No. 91, PageID # 823.  This argument is inapposite.  Haw. Rev. Stat. § 91-14 merely provides the procedural requirements a party must follow, and the standards of review a state circuit court must apply when it considers an appeal from an administrative agency's decision.  Haw. Rev. Stat. § 91-14 says nothing about the substantive law in each case, which is what this court must analyze in determining whether there are novel or complex issues of state law under § 1367(c)(1).

The state law implicated in Count X is clearly complex. Although Plaintiffs characterize the October 2014 Decision as being as "mundane an administrative decision as one finds in municipal decision-making," see ECF No. 91, PageID # 820, Plaintiffs seek a special use permit in a special management area for a religious use.  This is not the typical appeal.

In fact, Plaintiffs acknowledge in their Complaint that the Planning Commission could only grant a special use permit if all of the following criteria were met:

> 1.   The proposed request meets the intent of
>      the general plan and the objectives and

policies of the applicable community plan of the county;

2.    The proposed request is consistent with the applicable community plan land use map of the county;

3.    The proposed request meets the intent and purpose of the applicable district;

4.    The proposed development will not adversely affect or interfere with public or private schools, parks, playgrounds, water systems, sewage and solid waste disposal, drainage, roadway and transportation systems, or other public requirements, conveniences and improvements;

5.    The proposed development will not adversely impact the social, cultural, economic, environmental, and ecological character and quality of the area;

6.    That the public shall be protected from the deleterious effects of the proposed use;

7.    That the need for public service demands created by the proposed use shall be fulfilled; and

8.    If the use is located in the state agricultural and rural district, the commission shall review whether the use complies with the guidelines established in section 15-15-95 of the rules of the land use commission of the State.

See ECF No. 1, PageID #s 15-16 (alleging that "Maui County Code § 19.510.070(B) states that the standards for a special use permit to be used by the planning commission required that each of the following criteria must be met").  This list of criteria makes it clear that the reviewing court must engage in a

complicated assessment of multiple factors that are not only highly factual, but also involve the interplay among various state, county, and community land use policies.  By itself, section 19.510.070(B) raises complex issues of state and local law.

However, because Plaintiffs' property is located in a state agricultural district, this court would additionally have to review the Planning Commission's decision in light of the guidelines established in section 15-15-95 of the rules of the State of Hawaii's Land Use Commission.  See Maui County Code § 19.510.070(B); Haw. Admin. R. § 15-15-95.  Section 15-15-95(c) required the Planning Commission to determine whether Plaintiffs' proposal was an "unusual and reasonable use" under the following guidelines:

> (1) The use shall not be contrary to the objectives sought to be accomplished by chapters 205 and 205A, HRS, and the rules of the commission;
> (2) The proposed use would not adversely affect surrounding property;
> (3) The proposed use would not unreasonably burden public agencies to provide roads and streets, sewers, water drainage and school improvements, and police and fire protection;
> (4) Unusual conditions, trends, and needs have arisen since the district boundaries and rules were established; and
> (5) The land upon which the proposed use is sought is unsuited for the uses permitted within the district.

Haw. Admin. R. § 15-15-95(c).

The need for this analysis, apart from further complicating this court's task, would also inject into the case what appears to be an unsettled issue of law.  In <u>Save Sunset Beach Coal. v. City & County of Honolulu</u>, 102 Haw. 465, 78 P.3d 1 (2003), the Hawaii Supreme Court instructed that "guidelines" in an ordinance or statute "denote individual factors that are not mandatory in themselves, but instead provide direction or guidance with respect to the ultimate decision[.]"  78 P.3d at 15.  Subsequently, in an unpublished opinion, the Hawaii Supreme Court relied on this proposition to hold that the Hawaii County Planning Commission's omission of a conclusion directly addressing the suitable-use guideline in Haw. Admin. R. § 15-15-95(b)(5) did not invalidate its decision.  See <u>Geiger v. Hawai'i County Planning Comm'n</u>, 109 Haw. 295, 125 P.3d 1060 (2005).[2]

---

[2] This court is aware of federal, Ninth Circuit, and Hawaii rules that prohibit the citation of unpublished opinions filed prior to a certain date as precedent.  <u>See</u> Fed. R. App. P. 32.1; Ninth Circuit Rule 36-3; Haw. R. App. P. 35(c)(1).  This court cites to <u>Geiger</u>, a 2005 unpublished Hawaii Supreme Court case, not for its precedential value, but instead to show that there appears to be a lack of precedent in Hawaii's appellate courts regarding whether Haw. Admin. R. § 15-15-95(c)(1) must be directly addressed by a planning commission in deciding a special use permit application.  Recognizing that Ninth Circuit Rule 36-1 and Rule 32.1 of the Federal Rules of Appellate Procedure do not speak to this citation, as they are limited to the citation of unpublished federal cases, this court acknowledges the citation restrictions in Rule 35(c)(1) of the Hawaii Rules of Appellate Procedure, but concludes that citing <u>Geiger</u> here does not conflict with the apparent purpose of that rule.

It is still unclear to this court, however, whether section 15-15-95(1), unlike section 15-15-95(b)(5) and the other "guidelines," must be directly addressed.  After all, section 15-15-95(c)(1) is distinct in that it uses the mandatory directive "shall" in stating, "The use <u>shall</u> not be contrary to the objectives sought to be accomplished by chapters 205 and 205A, HRS, and the rules of the commission."  (Emphasis added). <u>See</u> <u>Malahoff v. Saito</u>, 111 Haw. 168, 191, 140 P.3d 401, 424 (2006), <u>as corrected</u> (Sept. 19, 2006) ("It is well-established that, where a statute contains the word 'shall,' the provision generally will be construed as mandatory.").  While section 15-15-95(1) is an administrative rule rather than an ordinance or statute, it appears to articulate a mandatory directive.

The Planning Commission, in denying the application, cited to some of the guidelines set forth in Haw. Admin. R. § 15-15-95 and concluded that the proposed use was not an "unusual and reasonable use."  <u>See</u> ECF No. 76, PageID # 473.  But the Planning Commission never directly addressed section 15-15-95(c)(1).  <u>See</u> <u>id.</u>  If this court adjudicated the appeal, this court might have to decide whether the Planning Commission's omission of a conclusion directly addressing this subsection invalidated the decision.  While a state court would similarly lack clear guidance on this issue from the Hawaii Supreme Court, a state trial court would know that its decision could be appealed to a

17

state appellate court.  By contrast, in the absence of an existing controlling state precedent, a federal district court would hear from a state appellate court only if the federal district court certified a question to the Hawaii Supreme Court.

The obstacles to a special use permit are formidable. As the Hawaii Supreme Court noted in <u>Curtis v. Board of Appeals, County of Hawaiʻi</u>, 90 Haw. 384, 397, 978 P.2d 822, 835 (1999), <u>as amended</u> (June 15, 1999), "such a permit is appropriate only in an 'exceptional situation' that does not contravene the general purpose of an agricultural district."  Despite what Plaintiffs say, Count X brings with it the need to engage in a complex analysis of statutes, ordinances, and rules as applied to the facts of this case, not to mention the policy objectives influencing every level of state government.  Such novel and complex state-law issues are better resolved, in the first instance, in a state court.

### b.   § 1367(c)(2).

Under § 1367(c)(2), this court may decline to exercise supplemental jurisdiction over a state-law claim that "substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(2).  "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the

remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." <u>Gibbs</u>, 383 U.S. at 726.  This court concludes that Count X substantially predominates over the claims over which the district court has original jurisdiction.

First, Count X substantially predominates in terms of "the scope of the issues raised."  Indeed, the heart of Plaintiffs' Complaint is that the Planning Commission's denial of their special use permit application was unconstitutional:

> Plaintiffs allege that the Planning Commission's denial of the Permit—which satisfied all criteria under the relevant zoning regulations—was based on misapplication of state and local laws, ad hoc factors specifically and specially designed to prevent religious exercise on the Property, and unequal treatment as compared to similarly situated entities in Maui County.
>
> Plaintiffs further allege that the denial of the Permit, which would allow Plaintiffs to operate a place of worship for religious observance, services and education, substantially burdens the Plaintiffs' religious exercise without using the least restrictive means of achieving the compelling governmental interest that the Planning Commission alleges exists to deny the Permit.
>
> Plaintiffs also allege that the Planning Commission's application of unwritten and ad hoc "standards," particularly with respect to traffic standards, to deny the Permit constitutes a prior restraint on the Plaintiffs' protected First Amendment activity, does not provide reasonable notice to Permit applicants of whether proposed places of worship meet the standards for a

19

Permit, and is therefore vague and allows for
unbridled discretion on the part of the
Commission.

ECF No. 1, PageID #s 3-4.

For instance, Plaintiffs' federal claim for

unconstitutional prior restraint, in violation of 42 U.S.C.

§ 1983, alleges:

The standards set forth in the County of
Maui's zoning regulations governing special
permits for places of worship, and the
standards applied by the Commission in
reviewing and denying Spirit of Aloha Temple
and Frederick Honig's Special Use Permit do
not provide a person of ordinary intelligence
a reasonable opportunity to understand
whether such land uses are permitted or
prohibited and, as such, constitutes an
unconstitutional prior restraint on
Plaintiff's protected expression and
religious exercise under the First Amendment.
Such standards unconstitutionally afford the
Commission unbridled discretion in its review
of a Special Use Permit application for a
place of worship.

See ECF No. 1, PageID # 37.  This court, in fact, is unable to

discern from Plaintiffs' Complaint any theory of liability with

regard to the federal claims that does not rely on the October

2014 Decision.

Given these circumstances, if the court retained

supplemental jurisdiction over Count X, the court would likely

address the merits of the administrative appeal before addressing

the merits of the federal claims.  If this court affirmed the

October 2014 Decision, it is hard to see how Plaintiffs could

succeed on their federal claims.

Second, Count X predominates in terms of "the comprehensiveness of the remedy sought." Plaintiffs' federal claims, although also seeking money damages, primarily seek to invalidate the October 2014 Decision, and to have their special permit application approved.

Third, even in terms of proof, the administrative appeal predominates, both because the federal claims turn on the administrative record, and because Count X would likely require the most extensive review of the administrative record. Haw. Rev. Stat. § 91-14 provides:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
> (2) In excess of the statutory authority or jurisdiction of the agency; or
> (3) Made upon unlawful procedure; or
> (4) Affected by other error of law; or
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Haw. Rev. Stat. § 91-14(g).

Count X alleges that the Planning Commission's decision

was based on clearly erroneous findings.  <u>See</u> ECF No. 1, PageID # 40.  Under Haw. Rev. Stat. § 91-14(5), the reviewing court must determine whether the findings at issue are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."  That is, Count X requires a court to review the entire record to determine whether the Planning Commission's findings were clearly erroneous.  Although the administrative record is not presently before the court, the record apparently is voluminous, spanning seven years of proceedings, hearings, and other evidence, such as lengthy county and state agency comments, written testimony by various stakeholders, settlement agreements between the county and Spirit of Aloha, extensive draft and final plans, and other reports by local departments and the parties themselves.  <u>See</u> ECF Nos. 67-80; ECF No. 66, PageID # 340.

Relatedly, the Hawaii Supreme Court has instructed, with regard to Haw. Rev. Stat. § 91-14:  "'Where the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action.'"  <u>Nihi Lewa, Inc. v. Dep't Of Budget And Fiscal Services</u>, 103 Haw. 163, 168, 80 P.3d 984, 989 (2003) (quoting <u>Agsalud v. Lee</u>, 66 Haw. 425, 430, 664 P.2d 734, 738 (1983)).  To accomplish what Plaintiffs request, which is the vacating of the Planning Commission's decision, this court would first have to consider whether there were other factual or legal reasons to affirm the

Planning Commission's ruling, which would necessitate an
exhaustive legal and factual inquiry.  The court points this out
not in aid of skirting any duty, but rather as strong evidence
that Count X predominates over the federal claims.

### c.    Other factors.

Comity presents another reason for this court to
decline jurisdiction over this cross-system appeal.  "Comity
'reflects a proper respect for state functions, a recognition of
the fact that the entire country is made up of a Union of
separate state governments, and a continuance of the belief that
the National Government will fare best if the States and their
institutions are left free to perform their separate functions in
separate ways.'"  Levin v. Commerce Energy, Inc., 560 U.S. 413,
130 S.Ct. 2323, 2330 (2010).  "Notions of comity and federalism
demand that a state court try its own lawsuits, absent compelling
reasons to the contrary."  Thatcher Enterps. v. Cache Cnty.
Corp., 902 F.2d 1472, 1478 (10th Cir. 1990).

Comity is especially important when a state claim
concerns an area of substantial state or local interest such as
land use planning.  Cf. Mission Oaks Mobile Home Park v. City of
Hollister, 989 F.2d 359, 360 (9th Cir. 1993), overruled on other
grounds by Green v. City of Tucson, 255 F.3d 1086 (9th Cir. 2001)
(staying proceedings because they implicated important state
interest in enforcing its own land use regulations).  This court

is mindful that retaining Count X would not only deprive the parties of the opportunity to litigate the claim before a state circuit court that is more experienced in handling such matters, it would also deprive the state appellate courts of the opportunity to weigh in on the complex legal and factual issues of state concern, if the decision were appealed.  This court once again turns to the guidance provided in <u>Gibbs</u>, 383 U.S. at 726, which stated, "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."

Nor does this court find that considerations of fairness or convenience tip the balance in favor of retaining jurisdiction.  Considerations of fairness would favor retention of Count X if, for example, Plaintiffs were unable to pursue their administrative appeal in another forum.  But this is not the case.  Under 28 U.S.C. § 1367(d), the period of limitation is tolled while Count X is pending in this court and for thirty days after it is dismissed, unless state law provides for a longer time period.  Plaintiffs therefore appear to be able to assert Count X in state court upon dismissal by this court.

Furthermore, it is not at all clear that dismissing Count X and staying the case will prejudice Plaintiffs.  The record does not suggest that a dismissal by this court will

materially delay resolution of Count X.  There is no reason for this court to think that its own decision-making calendar is different from that of a state court.  In fact, this court may well take longer than a state court to reach a trial of this case because federal trial dates in civil cases are on occasion continued to allow the court to try criminal cases in accordance with 18 U.S.C. § 3161.  By contrast, state circuit courts have divisions reserved exclusively for civil cases that are not susceptible to such delays and thus may be able to provide the parties with firmer and earlier civil trial dates than this court.

Dismissal of Count X would not materially inconvenience the parties.  Although Plaintiffs insist that dismissal of Count X would result in the hardship of having to litigate on two fronts, this is not the case.  As discussed below, the court intends to stay the remaining claims pending the resolution in state court of the administrative appeal.  Count X is more properly addressed in state courts.

C.   **This Court Abstains from Deciding The Constitutional Issues Pending Resolution of Count X in State Court.**

Because the court declines to exercise supplemental jurisdiction over Count X and dismisses it so that Plaintiffs may raise the claim in state court, the court must decide whether it should abstain from adjudicating and stay Plaintiffs' other

claims pending resolution of the administrative appeal.  Although the parties have not moved for abstention, federal courts may raise the issue <u>sua sponte</u>.  <u>See, e.g.,</u> <u>Bellotti v. Baird</u>, 428 U.S. 132, 143-44 n. 10 (1976).  This court has already permitted the parties to address the possibility of a stay, meaning that, while raising the issue <u>sua sponte</u>, this court is not deciding it <u>sua sponte</u>.

Plaintiffs, citing to 28 U.S.C. § 1367(d), submit that there is no reason to stay the other claims pending the resolution of the state administrative agency appeal because Plaintiffs "would likely not file such action in state court unless and until they were unsuccessful on their federal claims and after an appeal was decided."  <u>See</u> ECF No. 91, PageID # 829.

Section 1367(d) provides, "The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  28 U.S.C. § 1367(d).  If Plaintiffs do not file in state court until the federal claims are decided, their administrative appeal may well become time-barred.

Plaintiffs insist that, even if this court dismisses Count X, the statute of limitations will be tolled for as long as

the other claims remain pending in federal court.  For this proposition, Plaintiffs cite to the California Court of Appeals' statement in Kendrick v. City of Eureka, 98 Cal. Rptr. 2d 153, 154 (Cal. Ct. App. 2000), that "section 1367(d) continues to toll the state statute of limitations during the federal appeal period provided as a matter of statutory right, but tolling ceases once the district court decision is affirmed by the federal appellate court."

Plaintiffs assign broad meaning to Kendrick.  In making the above statement, the California court was only noting that § 1367(d) tolls a state statute of limitations through an appeal to a federal court of appeals, but not during the time until the Supreme Court denies a petition for writ of certiorari.  Id. at 156-57.  Kendrick did not say that a limitations period is stayed with respect to a dismissed claim when a litigant chooses to let the thirty-day period in § 1367(d) expire with respect to a claim that is arguably no longer "pending" in federal court.  Kendrick does not address the issue of whether a claim can be said to be "pending" once it is dismissed if the remainder of the case is stayed and no appeal is taken from the partial dismissal. Plaintiffs are free to rely on the possibility that the Ninth Circuit will agree with them that Kendrick indeed stands for that proposition, but if they consequently do not file an administrative appeal within thirty days of dismissal, they may

be risking losing the opportunity for judicial review of the October 2014 Decision.

This court analyzes the issue of whether to stay the remaining claims in light of Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941).  A federal court may apply Pullman abstention to "postpone the exercise of federal jurisdiction when 'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'"  VH Prop. Corp. v. City of Rancho Palos Verdes, 622 F. Supp. 2d 958, 962 (C.D. Cal. 2009) (quoting Pearl Inv. Co. v. City and Cnty. of San Francisco, 774 F. 2d 1460, 1462 (9th Cir. 1985), and C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir. 1983)).  Pullman abstention is an "equitable doctrine that allows federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions."  San Remo Hotel v. City and Cnty. of San Francisco, 145 F.3d 1095, 1104 (9th Cir. 1998).  It is also a discretionary doctrine that flows from the court's equity powers.  Potrero Hills Landfill, Inc. v. Cnty. of Solano, 657 F.3d 876, 888 (9th Cir. 2011) (citing Baggett v. Bullitt, 377 U.S. 360, 375 (1964), and Smelt v. Cnty. of Orange, 447 F.3d 673, 678 (9th Cir. 2006)).

Pullman abstention is warranted if three conditions are satisfied:  "(1) the federal plaintiff's complaint requires

28

resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." Potrero Hills Landfill, 657 F.3d at 888 (quoting Spoklie v. Montana, 411 F.3d 1051, 1055 (9th Cir.2005)).

This court has recently had occasion to abstain pursuant to Pullman in an unrelated case in which a state agency's ruling was at the core of the dispute. See Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n, No. CIV. 11-00414 SOM, 2012 WL 1109046 (D. Haw. Mar. 30, 2012), aff'd, Bridge Aina Le'a, LLC v. Chock, 590 Fed. Appx. 705 (9th Cir. 2014). The present case similarly presents both federal constitutional law claims and state-law claims relating to an administrative decision. Pullman abstention is equally called for here.

## 1. This Case Involves Sensitive Question of Federal Constitutional Law.

The Ninth Circuit has consistently held that "land use planning is a sensitive area of social policy that meets the first requirement for Pullman abstention." San Remo Hotel, 145 F.3d at 1105 (quoting Sinclair Oil Corp. v. Cnty. of Santa Barbara, 96 F.3d 401, 409 (9th Cir. 1996), and citing Sederquist v. City of Tiburon, 590 F.2d 278, 281-82 (9th Cir. 1978), and Rancho Palos Verdes Corp. v. City of Laguna Beach, 547 F.2d 1092, 1094-95 (9th Cir. 1976)). See also VH Prop., 622 F. Supp. 2d at

962.  This case directly implicates land use planning, as
Plaintiffs are asking this court to determine whether an action
taken by the Planning Commission violated various federal
constitutional rights as well as state law.  The first Pullman
requirement is therefore satisfied.

> ## 2.    A State Court Ruling May Narrow or Alter Some Federal Constitutional Issues.

The second Pullman abstention requirement involves a
"state law question that has the potential of at least altering
the nature of the federal constitutional questions."  C-Y Dev.,
703 F.2d at 378.  "In land use cases, the Ninth Circuit has
frequently found this requirement satisfied where a favorable
decision on a state law claim would provide plaintiff with some
or all of the relief he seeks."  VH Prop., 622 F. Supp. 2d at
963.

In VH Property, the plaintiffs alleged that the City of
Rancho Palos Verdes had violated their rights under the United
States and California constitutions and California law by denying
land development applications submitted by VH.  Id. at 960.  The
court found the second requirement satisfied: "it is possible
that resolution of VH's state constitutional takings claim in its
favor will obviate the need to rule on its federal claims,
particularly if VH finds the compensation awarded by the state
court satisfactory."  Id. at 963.  The court noted,
"Alternatively, the state court may issue a writ of mandamus

30

directing the City to approve VH's development plans, mooting

VH's federal claims to the extent they seek redress for a

permanent, rather than temporary, deprivation of property

rights." Id.

VH Property relied on two Ninth Circuit cases, Sinclair

Oil, 96 F.3d at 405, and C-Y Development, 703 F.2d at 378-80,

both of which addressed challenges to land use decisions. C-Y

Development is particularly relevant here. As explained in VH

Property:

> [I]n C-Y Development, plaintiff challenged
> the City of Redlands' denial of its
> applications for building permits, seeking,
> among other things, a writ of mandamus
> requiring the city to issue the permits. C-Y
> Development, 703 F.2d at 378. The court held
> that the second requirement for Pullman
> abstention was met, observing that a writ of
> mandate directing the city to issue the
> permits would moot some of the federal issues
> in the case. Id. at 380. The fact that
> "following such hypothetical state
> adjudication [plaintiff] might return to
> federal court to seek damages for the alleged
> temporary deprivation of its property rights"
> did not render Pullman abstention
> inappropriate. Id.

622 F. Supp. 2d at 963.

If Plaintiffs prevail in their administrative appeal,

they will obtain some of the relief they seek in this case. That

might moot out, or at least affect, some of the constitutional

claims. In their federal claims in this action, Plaintiffs seek

injunctive and monetary relief. They seek an order invalidating

the Planning Commission's decision, as well as an order directing the Planning Commission to grant its special use permit.  A state court's decision in favor of Plaintiffs on Count X would presumably ensure that the denial would be voided, or may even direct the Planning Commission to approve the permit, mooting out at least some of the injunctive relief claims.  Furthermore, "The fact that 'following such hypothetical state adjudication plaintiff might return to federal court to seek damages for the alleged temporary deprivation of its property rights' [does] not render _Pullman_ abstention inappropriate.'"  _VH Prop._, 622 F. Supp. 2d at 963.

As the Ninth Circuit noted in _Sinclair Oil_, 96 F.3d at 409, a ruling by a state court need not be "absolutely certain to obviate the need for considering federal constitutional issues." It is enough for purposes of satisfying the second _Pullman_ abstention requirement if "state law issues might 'narrow' the federal constitutional questions." _Id._  The second _Pullman_ abstention requirement is met here.

### 3. How the State-Law Issues Will Be Resolved is Uncertain.

The third _Pullman_ factor goes to the uncertainty of issues of state or local law.  "Relying on the local nature of land use claims, and the fact that they involve interpretation of various state and local land use laws, the Ninth Circuit has required only a minimal showing of uncertainty to satisfy the

32

third Pullman factor in land use cases." <u>VH Prop.</u>, 622 F. Supp. 2d. at 964 (discussing <u>Sinclair Oil</u>).  In determining whether determinative issues of state or local law are uncertain, the Ninth Circuit says that "a local government's enactment of land use regulations 'is by nature a question turning on the peculiar facts of each case in light of the many [applicable] local and state-wide land use laws . . . .'" <u>Sinclair Oil</u>, 96 F.3d at 410 (quoting <u>Santa Fe Land Improvement Co. v. City of Chula Vista</u>, 596 F.2d 838, 841 (9th Cir. 1979)).

In <u>Sinclair Oil</u>, the Ninth Circuit, addressing whether abstention was appropriate in a case asserting takings claims under the United States and California constitutions, found the third requirement satisfied even though the state takings claim was not "particularly extraordinary or unique."  96 F.3d at 410 (citing <u>Kollsman v. City of Los Angeles</u>, 737 F.2d 830, 826 n.18 ("[A]bstention often will be appropriate when state land use regulations are challenged on state and federal grounds.")).

In <u>San Remo Hotel</u>, the Ninth Circuit similarly found the third requirement met, noting that the plaintiff's claim could be rendered moot under a local law that was being addressed in a pending state-court action.  145 F.3d at 1105.  That case involved an ordinance that imposed conditions on converting a hotel from one that housed permanent residents to one that served transient tourists.  The owners of the San Remo Hotel were

33

required by the ordinance to obtain a permit to convert hotel units to nonresidential, or tourist, use.  Id. at 1099.  In addition, local zoning laws required conditional use authorization to establish a tourist hotel.  Id.  Because the San Remo Hotel had been zoned for solely residential use before the zoning law was enacted (even though it had actually been used as both a residential and tourist hotel), the City Planning Commission, affirmed by the Board of Permit Appeals, rejected the plaintiffs' argument that operating as a tourist hotel would be a "prior non-conforming use" and required the plaintiffs to obtain a conditional use permit to convert the hotel rooms to "tourist use."  Id. at 1099-1100.  The plaintiffs ultimately obtained the required permit, but it was subject to three conditions.  Id. at 1100.

The plaintiffs then filed two actions, seeking, ultimately, to unconditionally convert the rooms to tourist use. The first action sought a writ of mandamus in state court challenging the Board of Permit Appeals' determination that the hotel was properly zoned for only residential use.  Id.  The second action, filed in federal court, asserted, among other claims, that the ordinance constituted a facial taking without just compensation under the United States Constitution.  Id.

The Ninth Circuit remanded the case and instructed the district court to abstain with respect to the takings challenge.

34

Characterizing the plaintiffs' case as a challenge to "the applicability of the [ordinance] and the need to obtain a conditional use permit," the Ninth Circuit noted that the case hinged on the designation of the San Remo Hotel as "residential," the precise subject of the pending state mandamus action. Id. at 1106. The third Pullman abstention requirement was met because the state mandamus action required the state court to interpret an ordinance and municipal zoning laws, as well as to determine what effect to give particular facts. Id. The Ninth Circuit concluded that those were "uncertain issues of state law." Id.

The special use permit application in this case has not yet been challenged in state court. VH Prop., 622 F. Supp. 2d at 964; see also Sinclair Oil, 96 F.3d at 410. While there is no pending companion case in state court for this court to take note of, the state claims present issues of unsettled state law. How a state court will decide the issues in Count X is unclear. Plaintiffs' appeal will turn, at least in part, on how the state court interprets state and local laws and administrative rules, and what effect the state court gives to the actions taken by the Planning Commission. For example, the reviewing court will have to determine whether the proposal by Plaintiffs constitutes an "unusual and reasonable use" under Haw. Admin. R. § 15-15-95 and whether the application satisfies every criterion under Maui County Code § 19.510.070(B). This court does "not claim the

35

ability to predict whether a state court would decide that the [Planning Commission] here abused its discretion" or otherwise erred.  Sinclair Oil, 96 F.3d at 410.  Whether the Commission complied with state and local law presents uncertain issues of state law.

This court, concluding that all three requirements are met, abstains under Pullman with respect to Plaintiffs' federal claims.  Permitting a Hawaii court to determine the state and local issues underlying the Complaint may potentially narrow the federal constitutional issues presented.  The principles of comity and federalism underlying Pullman therefore support this court's decision to abstain.  VH Prop., 622 F. Supp. 2d at 966-67.

Moreover, this court sees no reason that it cannot also stay the state claims in Counts I to IX against the County that this court is exercising supplemental jurisdiction over pursuant to 28 U.S.C. § 1367.  The state-law claims are similar to the federal claims in that both are based on allegations that the Planning Commission's decision violated religious and other rights.  This court has the discretion to manage this case in an orderly and efficient manner.  Thus, the court stays Plaintiffs' state claims in the interest of sensible management of this case. Appropriate abstention, unlike dismissal or remand, "does not constitute abnegation of judicial duty."  Louisiana Power & Light

36

Co. v. City of Thibodaux, 360 U.S. 25, 29 (1959).  When
warranted, abstention may be a productive "postponement of
decision for its best fruition."  Id.

**V.      CONCLUSION.**

         Counts I to IX against the Planning Commission are
dismissed, and those counts against the County are stayed.  The
court declines to exercise supplemental jurisdiction over Count X
and dismisses Count X without prejudice to Plaintiffs' pursuing
of that claim in state court pursuant to 28 U.S.C. § 1367(d).
The court stays the present case pending the state circuit
court's determination of the matters raised in Count X.  The
court administratively closes this case and terminates all
pending motions.  All scheduled matters, including the settlement
conference set for March 1, 2016, are taken off the calendar.
The case will be reopened upon the parties' submission of written
statements either attaching a final state-court decision, or
explaining a change in circumstances that warrants the reopening
of this case.

         When this case is reopened, any unadjudicated matter
stayed by this order may, upon written request by a party, be
reset for such supplemental briefing and/or hearing as may be
appropriate, without the need to refile papers already in the
case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 27, 2016.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

Spirit of Aloha Temple, et al. v. County of Maui, et al., Civ. No. 14 00535 SOM/RLP; ORDER GRANTING MOTION TO DISMISS AND/OR FOR PARTIAL SUMMARY JUDGMENT