IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SPIRIT OF ALOHA TEMPLE AND FREDRICK R. HONIG, | ) ) ) | CIVIL NO. 14-00535 SOM/RLP |
| Plaintiffs, | ) ) | ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT |
| vs. | ) ) | |
| COUNTY OF MAUI, | ) ) | |
| Defendant. | ) ) ) | |

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**

**I.        INTRODUCTION.**

Plaintiff Fredrick R. Honig bought land on Maui zoned for agricultural use.  Honig leased the land to Plaintiff Spirit of Aloha Temple, which, in turn, applied for a Special Use Permit to build a church and hold religious events on the land, uses not allowed without a Special Use Permit in the agricultural zone in which the land was located.  After the requested Special Use Permit was denied, Plaintiffs filed this action, asserting religious discrimination.  Counts I, II, IV, V, VI, VII, VIII, and IX against Defendant County of Maui remain for adjudication.[1]

Before the court are motions for summary judgment filed by Plaintiffs and the County of Maui.  Both motions are denied.

---

[1]No Count III is asserted in the Complaint.

II.     **BACKGROUND.**

Well Being International Inc. was incorporated in February 1993 for the purpose of "perform[ing] research and instruction for individual and global peace, harmony, and health." It specializes in "Yoga, Meditation, Stress Management, Vegetarian Diet, and Drug Free Living." ECF No. 183-2, PageID # 2512. Honig was listed as its president and one of three directors. *Id.*, PageID # 2513.

In September 1994, Honig purchased property on Haumana Road in Haiku, Hawaii. *See* ECF No. 183-2, PageID #s 2479-87.[2] For State Land Use District purposes, the property was mostly designated for agricultural use, with a portion designated for conservation use. With respect to the Paia-Haiku Community Plan and County of Maui zoning, the property was designated for agricultural use. *See* ECF No. 183-3, PageID # 2584. Honig knew the property was designated for agricultural and conservation use when he purchased it. Honig Depo. at 43. In fact, Honig had asked his realtor to locate agricultural land for him to purchase. *Id.*

In March 2003, Honig transferred the property to the Trustee of The Frederick R. Honig Revocable Living Trust Dated

---

[2]The Haumana Road property has had two numerical designations, but there is no dispute that it is the same property. *See* Videotaped Deposition of Frederick R. Honig, ECF No. 183-2, PageID # 2426.

October 1, 1996.  The document stated that Honig was also known as Swami Swaroopananda.  *See* ECF No. 183-2, PageID #s 2503-10.

In July 2002, Honig, on behalf of Well Being International, applied for the trade name of Maui Gay Weddings, stating that the nature of the business was "Counseling and commitment ceremonies."  ECF No. 183-2, PageID # 2518.  In April 2003, Honig renewed the Maui Gay Weddings trade name on behalf of Well Being International.  *Id.*, PageID # 2520.  At the same time, Honig, on behalf of Well Being International, applied for the trade name of A Marriage Made in Heaven, again stating that the purpose of the business was "Counseling and commitment ceremonies."  *Id.*, PageID # 2522.  A little more than a month later, Honig, on behalf of Well Being International, applied for the trade name of Maui Wedding Planners, this time stating that the nature of the business was "Wedding Planning & Services."  *Id.*, PageID # 2524.  In July 2007, Honig, on behalf of Well Being International, renewed the trade name of A Marriage Made in Heaven.  *Id.*, PageID # 2525.  Honig admits that these trade names were created so that Well Being International could advertise for weddings or sacred unions.  *See* Honig Depo. at 73, ECF No. 183-2, PageID # 2439.  Between September 8, 1996, and December 5, 2015, over 500 weddings were performed on Honig's property.  *See* ECF No. 183-16, PageID #s 3037-51.

In November 2005, Honig signed a lease of the Haumana Road property to Well Being International on behalf of himself as lessor and as the president of the lessee. The lease rent was $3,400 per month and the lease ran through September 30, 2010. The lease provided that use of the property was "To Be in accordance with Agricultural zoning and Maui County ordinances." ECF No. 183-2, PageID #s 2550-56. At the time the lease was signed, the property was apparently owned by the Trustee of The Frederick R. Honig Revocable Living Trust Dated October 1, 1996, not Honig individually. *See* ECF No. 183-2, PageID #s 2503-10.

In September 2007, Spirit of Aloha Temple, Inc., was incorporated; Honig was listed as its Senior Minister. *Id.*, PageID #s 2557-72; Decl. of Frederick R. Honig ¶ 4, ECF No. 185-1; PageID # 3123. Honig and Spirit of Aloha Temple practice "Integral Yoga," which "integrates the eight branches of Yoga into a holistic approach to experiencing Unitive Consciousness." Honig Decl. ¶ 5, ECF No. 185-1; PageID # 3123. For purposes of the present motions, the County of Maui does not contest the validity of Honig's religion or the sincerity of his beliefs. Thus, William Spence, of the County of Maui, stated during his deposition that the County was expressing no opinion as to the sincerity of Plaintiffs' religious beliefs. *See* Deposition of William Spence at 130, ECF No. 185-5, PageID # 3206. He did note, however, that some of the proposed uses might not be

religious in nature, such as a commercial wedding business or helicopter flights. *Id.* at 131-32, PageID #s 3207-08. The number of weddings held on the property causes the County of Maui to characterize Plaintiffs as conducting a commercial wedding venture on the property.

The County of Maui also believes that the Special Use Permit was not actually sought for church functions. For example, the County of Maui points out that Honig's sister, Meenakshi Honig, who testified that she is a board member of Spirit of Aloha Temple, has never seen the lease for the property. *See* ECF No 183-10, PageID #s 2925, 2932. She further testified that there are no regular congregations of church members on the property. *Id.*, PageID # 2936. She also testified that performimg weddings is "not essential to the belief system" of Integral Yoga. *Id.*, PageID # 2937.

On October 12, 2007, Spirit of Aloha Temple, through Honig, applied for a Special Use Permit for the property to be used for a "Church, church operated bed and breakfast establishment, weddings, special events, day seminars, and helicopter landing pad." ECF No. 183-3, PageID # 2592. The application stated that the property was currently being used for a "Botanical Garden & Agriculture." *Id.* On June 30, 2008, Spirit of Aloha Temple amended the Special Use Permit application to include the development of the Spirit of Aloha Temple,

5

stating, "Church activities would include a weekly service, classes, special events, day programs and weddings." ECF No. 183-3, PageID # 2593. The court notes that, at the time of the 2007 application, the property appears to have been leased to Well Being International, not Spirit of Aloha Temple. *See* ECF No. 183-2.

On August 28, 2008, the County sent the Special Use Permit application out for agency comment. *See* Concise Statement ¶ 12; Plaintiff's Concise Counter Statement, ECF No. 193, PageID # 3799 (admitting same).

On March 30, 2010, the Planning Commission for the County of Maui held a hearing on the Special Use Permit application. *See* Findings of Fact, Conclusions of Law and Decision and Order of Maui Planning Commission. *See* ECF No. 183-3, PageID # 2583. The Maui Planning Commission voted 5 to 3 to deny the application, reasoning that a proposed heliport was not allowed under the Maui County Code, that many of the buildings on the property lacked permits, and that agricultural property was not intended for commercial purposes. *Id.*, PageID #s 2586-87; 2590.

On May 17, 2010, Plaintiffs unsuccessfully sought reconsideration of the denial of the Special Use Permit, arguing that the denial violated the Religious Land Use and Institutionalized Persons Act of 2000 and proposing that the

permit be amended to include only a church and related church activities.  *Id.*. PageID # 2587-88; 2590.

In December 2011, Honig, as Trustee of The Frederick R. Honig Revocable Living Trust, leased the property to Spirit of Aloha Temple, Inc., for $5,000 per month through December 1, 2019.  ECF No. 183-2, PageID # 2575-78.  The lease stated that the property was to be used "As a Botanical Garden[] in accordance with Agricultural zoning and Maui county ordinances." *Id.*, PageID # 2575.  Honig says that Spirit of Aloha Temple did not look at any other properties before leasing the Haumana Road property.  According to Honig, the property is sacred and is the world's "most perfect property."  *See* Honig Depo. at 142-43, ECF No. 183-2, PageID # 2456; Honig Decl. ¶ 27, ECF No. 185-1; PageID # 3128 ("The Property itself is uniquely sacred to me and the Spirit of Aloha Temple.").  He says that, in the 23 years that he has owned the property, the spiritual significance of it has grown through the spiritual activity that has occurred on the property.  *See* Honig Decl. ¶ 22, ECF No. 185-1; PageID # 3127. This spiritual activity includes religious services, sacred events such as weddings and baptisms, and classes on spiritual beliefs.  *Id.* ¶ 31, PageID # 3129.  In addition, the founder of Integral Yoga, Sri Swami Satchidananda, blessed the property in 1997.  *Id.* ¶ 23, PageID # 3127.  Honig says that Plaintiffs do

not own other property where they can practice their religion.
*Id.* ¶ 47, PageID # 3132.

In September 2012, the County of Maui issued Honig
three violation notices for building a structure without the
proper permit, conducting transient vacation rentals on property
where such rentals are not allowed, and conducting commercial
weddings on property where such weddings are not allowed.  The
County of Maui ordered Honig to cease and desist the conduct.
*See* ECF No. 183-8, PageID #s 2877-78.  The County of Maui and
Honig ultimately settled these matters.  *See id.*, PageID #s 2877-
83.

On November 21, 2012, Spirit of Aloha Temple, through
Honig, submitted a second Special Use Permit application to use
the property for church activities.  ECF No. 183-6, PageID #2803.
Spirit of Aloha Temple sought to use the property for a classroom
on weekdays; a weekly church service; and educational,
inspirational, and spiritual events, including "Hawaiian Cultural
Events, such as Hula performances, Seminars on Hawaiian Plant
Based Nutrition, Cultural Music Performances, and Spiritual
commitment ceremonies including Weddings."  *Id.*, PageID # 2811.

The Maui Planning Department issued a report to the
Maui Planning Commission that recommended approving the 2012
Special Use Permit application with conditions.  *See* ECF No. 183-
7, PageID # 2842-62.  The staff report examined the applicable

statutes and regulations, noting that the proposed use was not permitted in a state agricultural district. *Id.*, PageID # 2849. It noted that, under section 205-6 of Hawaii Revised Statutes, "unusual and reasonable uses" were allowed when a State Land Use Commission Special Use Permit was approved. *Id.*, PageID #s 2849 and 2854. The staff report indicated that there were "guidelines" for determining whether there was an "unusual and reasonable use." *Id.*, PageID # 2854. These "guidelines" were set forth in Hawaii Administrative Rules § 15-15-95. The staff report examined all of the "guidelines." In relevant part, the staff report indicated that the proposed use satisfied the second and third guidelines, and that the proposed uses would not affect surrounding properties or unreasonably burden public agencies by requiring provision of roads, sewers, water, drainage, school improvements, or police and fire protection. *Id.*, PageID #s 2854-55.

The staff report ultimately recommended granting the requested Special Use Permit with conditions:

> Classroom
>
> - Events permitted for a total of 24 attendees (including employees/staff) and that classes shall be limited to four (4) per week usually between 10 AM and 4 PM
>
> Church Service
> - Events permitted for a total of 24 attendees (including employees/staff) and that a church service shall be limited to one

> (1) per week usually between 10 AM and 2 PM
> on Saturdays
>
> Church Related Special Events Such as
> Weddings/Inspirational Events Shall be
> Limited by the following:
> Maximum number of church related events per
> year - 48
> - 24 events out of a total of 48 events may
> have a total of between 25 to 40 participants
> including employees/staff
> - Events permitted for a total of 25 to 40
> participants are limited to two (2) per month
> - The remainder of 24 church related events
> shall be limited for up to 24 people,
> including employees/staff
> - In no case may there be more than four (4)
> church related events per month
> - Shuttles must be employed to transport
> participants for events with 25 or more
> people
> - Church related events shall be held between
> 10 AM and 8 PM

*Id.*, PageID # 2844.

The Maui Planning Commission then examined the 2012 Special Use Permit request, receiving testimony supporting and opposing it. Concerns were raised with respect to the limitations and dangers of Haumana Road, pedestrian and child safety, weddings, parties, and alcohol on the property. *See* Concise Statement ¶ 35; Counter Concise Statement ¶ 35 (admitting same).

Specifically, the Maui Planning Commission's Findings of Facts and Minutes noted that: (1) Jessica Caudill had expressed concern that the proposed uses would dramatically increase traffic on Haumana Road (where cars have to pull off the

10

road to let other cars pass), would have negative effects on
pedestrian safety, and raised child safety concerns by bringing
strangers to the area; (2) Antonio Piazza had expressed concern
that Plaintiffs had been using the property for unpermitted
commercial wedding operations even after Honig's earlier request
to conduct weddings on the property had been denied, increasing
traffic in the area and creating danger because partygoers drank
alcohol; (3) Nancy Gilgoff had expressed concern that, because
alcohol was being served at events, there was increased traffic
and an increased likelihood of vehicle and pedestrian accidents;
(4) Stephanie Gilgoff had expressed concern with respect to
increased traffic, road safety, and the impact on the quiet
neighborhood; (5) William Knowlton had recalled that earlier
cliffside weddings had blocked ocean access, and there were past
illegal commercial weddings, transient vacation rentals, and yoga
classes; and (6) Daniel Mizner had noted that the proposed uses
were inconsistent with the agricultural zoning and had expressed
concern about roadway safety because the road was only 10 feet
wide at points.  Lani Starr, on the other hand, supported the
proposed permit.  *See* ECF No. 185-9, PageID #s 3280-82; ECF No.
183-9, PageID #s 2905-13.

    Robbie Naish, Plaintiffs' neighbor, told the Planning
Commission in March 2010 that low-speed accidents occurred on the
road all the time, that he had had near misses, and that he had

personally seen two overturned cars on the narrow Haumana Road.
He complained that people drove too fast on the road and noted
that there was no place to pull off the road.  ECF No. 183-4,
PageID #s 2708-09.

Various departments also commented on Plaintiffs'
Special Use Permit application.  For example, although the Maui
Police Department did not object to the issuance of the permit,
it noted that the road to the Haumana Road property was "narrow
with no lane markings and no street lights."  It further noted
that the road was so narrow that it "could not accommodate two
vehicles to pass through the road at the same time."  The Police
Department recommended that the road be widened because, if cars
parked on the road, emergency vehicles would not be able to pass
them and reach the property.  It also suggested that street
lighting be installed.  ECF No. 183-9, PageID # 2894-95.

The Historic Preservation Division of the Department of
Land and Natural Resources also commented on the 2012 Special Use
Permit application, noting that its approval was needed before
any of the proposed activities began.  *See* ECF No. 183-9, PageID
# 2898-99.

The State of Hawaii Department of Health, Safe Drinking
Water Branch, noted that it had been dealing with Honig for
several years.  It stated that, if the average daily number of
people visiting the proposed temple over 60 days was 25 or more,

the temple would be required to comply with all requirements for public water systems. That is, such requirements would be mandatory if the temple had more than 60 events in a year with 25 or more attendees. ECF No. 183-9, PageID # 2900-01. Officials also expressed concern about the quality of the water at the temple and recommended testing the water. *Id.*, PageID # 2902.

The State of Hawaii's Office of Planning stated:

Pursuant to HRS Chapter 205, lands in the Agricultural District are limited to agricultural uses and activities that support agricultural uses. The proposal calls for non-agricultural uses. In addition, business uses may bring additional traffic to the property. These non-agricultural uses will eventually impact the existing botanical garden activities, since the school, weddings, and other commercial performances may be more profitable than the botanical garden activities on-site. Other potential impacts may result from large numbers of people to groundwater resources related to the need for wastewater capacity.

*Id.*, PageID # 2903.

The Maui Planning Commission denied the 2012 application, with 3 commissioners expressing concerns about roadway safety, as well as about the impact on health and human safety. *See* ECF No. 185-9, PageID # 3283. Honig asked the Commission to rescind that decision; the Spirit of Aloha Temple then orally amended its permit application. The Commission vacated its decision. *Id.*, PageID # 3286.

To address the Commission's concerns, Spirit of Aloha Temple offered to reduce the number of special events to 8 per month with a maximum of 10 cars per event. Two of the 8 events could have up to 40 people, with the remaining 6 events having up to 24 people. Seven of the 8 events would conclude by 4 p.m., with the last event concluding by 8 p.m. *Id.*, PageID # 3287. Even with these amendments, the Commission once again denied the application, stating:

> The Commission finds that there is evidence of record that the proposed uses expressed in this Application should they be approved would increase vehicular traffic on Haumana Road, which is narrow, winding, one-lane in areas, and prone to flooding in inclement weather. The Commission finds that Haumana Road is regularly used by pedestrians, including children who use the road to access the bus stop at the top of the road. The commission finds that granting the Application would adversely affect the health and safety of residents who use the roadway, including endangering human life. The Commission finds that the health and safety of the residents' and public's use of Haumana Road is a compelling government interest and that there is no less restrictive means of ensuring the public's safety while granting the uses requested in the Application.

ECF No. 185-9, PageID # 3288-89.

Like the staff report, the Maui Planning Commission noted that section 205-6 of Hawaii Revised Statutes allows certain "unusual and reasonable uses" within agricultural and rural districts, in addition to uses for which the property is classified. *Id.*, PageID # 3289. The Maui Planning Commission

stated that, to determine whether a proposed use is an "unusual and reasonable use," section 15-15-95 of Hawaii Administrative Rules sets forth "guidelines."  Those guidelines address whether the proposed use "would not adversely affect surrounding property" and "would not unreasonably burden public agencies to provide roads and streets, sewers, water, drainage, and school improvements, and police and fire protection."  *Id.*, PageID # 3290 (quoting Haw. Admin. R. § 15-15-95(2) and (3)).

The Commission concluded that two guidelines in section 15-15-95 were not satisfied.  Specifically, the Commission said that the proposed uses "would adversely affect the surrounding properties" given concerns about the safety of Haumana Road, and that the proposed uses would increase traffic and burden public agencies in charge of roads and streets, and in charge of police and fire protection.  *Id.*, PageID # 3290.

The Commission then stated:

The Religious Land Use and Institutional Persons Act ("RLUIPA"), 42 U.S.C. §2000cc(a)(1), requires that a state or local government may not impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution unless the government demonstrates that the burden is in furtherance of a compelling governmental interest and is the "least restrictive means" of furthering that interest.  The Commission found that the county has a compelling interest in protecting the health, lives, and safety of the public.  The Commission further found that Haumana Road did not meet the

standard requirements regarding width of
agricultural or rural roads, and additionally
that it was one lane in sections and winding,
which impaired sight distance and
accessibility.  The Commission further found
that there were compelling public health and
safety issues implicated by the likely
significant increase in traffic attributable
to the uses proposed by the Application,
creating conditions that would be foreseeably
dangerous or potentially deadly to drivers
and pedestrians, including children walking
on the road to and from the bus stop at the
top, using the small rural roadway.  The
Commission found that inclement weather would
increase the likelihood of accidents and
human injuries or death.  The Commission
found that these compelling public health and
safety issues could not be adequately
addressed by the implementation of any permit
condition or use restriction.

ECF No. 185-9, PageID # 3291.  The Commission denied the

application, effective April 8, 2014.  ECF No. 185-9, PageID

# 3292.

On November 17, 2016, the Circuit Court of the Second

Circuit, State of Hawaii, affirmed the Maui Planning Commission's

decision.  *See* ECF No. 183-14.  The state court said that it

could not "find clear error in the Maui Planning Commission's

factual findings or error in its legal conclusions.  Moreover,

the Commission's decision does not appear to be arbitrary,

capricious, or an abuse of discretion."  *Id.*, PageID # 3005.  The

state court further noted:

In reviewing the findings of fact, the
Commission's decision, the record on appeal,
and applying Maui County Code § 19.510.07 and
Hawai`i Administrative Rules § 15-15-95,

16

> there is more than sufficient basis for the
> Planning Commission's denial of the Special
> Use Permit.
>
> The Applicants-Appellants argue it was
> clear error for the Commission to base its
> denial on traffic and road safety concerns.
> The Commission had more than enough evidence
> to be concerned about traffic and road
> safety. Numerous individuals expressed
> concern about traffic and road safety.

*Id.* The court takes judicial notice that no appeal was filed

with respect to the circuit court's ruling. *See*

http://hoohiki.courts.hawaii.gov/#/search (input case ID

*2CC161000103).* Moreover, Plaintiffs admitted at the hearing that

the state-court case is now final.

Spirit of Aloha Temple says that the Maui Planning

Commission has treated other groups more favorably. For example,

the Maui Planning Commission approved a Special Use Permit for

Ali`i Kula Lavender Farm to conduct tourism activities (including

agricultural classes and workshops), to operate a gift shop, to

conduct wedding ceremonies, and to have catered receptions and

other special events. *See* ECF No. 185-13, PageID # 3402.

However, the road to that farm is about 18 feet wide. *See* ECF

No. 185-14, PageID # 3412; ECF No. 185-5, PageID # 3229. Randall

S. Okaneku, Plaintiffs' proffered civil engineer expert, says he

measured the road at various points and determined that it ranges

from 12 feet wide to 20 feet wide. *See* Decl. of Randall S.

Okaneku ¶ 27, ECF No. 185-2, PageID# 3144. Haumana Road has an

average width of about 15 feet and narrows to 10 feet at many spots.  *See* ECF No. 183-4, PageID # 2708; ECF No. 185-9, PageID #s 3282.

Spirit of Aloha Temple says that Hale Akua Garden Farm Retreat Center received a Special Use Permit on agricultural land from the Maui Planning Commission for a well-being education operation with overnight accommodations.  *See* ECF No. 185-16, PageID #s 3470, 3484, 3494.  Spirit of Aloha Temple says that access to that farm retreat is via Door of Faith Road, which is approximately 20 feet wide, with short stretches that are narrower.  *Id.*, PageID # 3473; ECF No. 185-5, PageID # 3225. Honig attaches three pictures of parts of Door of Faith Road to demonstrate its narrowness at spots.  ECF No. 185-1, PageID #s 3134-35.  Again, the width of Door of Faith Road may make access to this property distinguishable from that of Haumana Road, which is on average 15 feet wide, narrowing to 10 feet wide at spots. *See* ECF No. 183-4, PageID # 2708; ECF No. 185-9, PageID #s 3282.

**III.     SUMMARY JUDGMENT STANDARD.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position

18

concerning whether a material fact is genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

        The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial.  *T.W. Elec. Serv.*, 809 F.2d at 630.  At least some "'significant probative evidence tending to support the complaint'" must be produced.  *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968)); *see also Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial."  *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).  *Accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating a summary judgment motion, the court must view all evidence and inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.* When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.*

**IV.     ANALYSIS.**

While the bulk of the legal analysis in the motions concerns the application of the strict scrutiny or rational basis tests, this court does not reach the application of those tests. Instead, in several instances, the court identifies questions of fact that must be resolved before the law is applied. In other instances, the parties simply fail to establish what the applicable test is. The result is that the court denies both summary judgment motions.

> **A.     The Record and Arguments Do Not Fully Address Res Judicata and Collateral Estoppel Issues.**

The court has an overarching concern as to the effect that should be given to the state-court judgment. The court raised this concern at the hearing on the motion, asking the parties whether the jurisdictional *Rooker-Feldman* doctrine

21

applied. The court now concludes that that doctrine is inapplicable because this proceeding was filed before the state court issued its order and judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ("The *Rooker-Feldman* doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered **before** the district court proceedings commenced and inviting district court review and rejection of those judgments.") (emphasis added).

However, the court remains concerned that it should be giving full effect to the state-court judgment, perhaps under the res judicata or collateral estoppel doctrines, which are related to the *Rooker-Feldman* doctrine but are not jurisdictional.

Those doctrines preclude parties or their privies from relitigating claims or issues that were or could have been raised in an earlier action in which there is a final judgment on the merits. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). It appears that the County of Maui may have been raising res judicata or collateral estoppel when it argued that Hawaii's circuit court had already determined that the denial of the permit was not arbitrary, capricious, or an abuse of discretion and that the compelling interest test was satisfied. *See* ECF No. 182-1, PageID # 2392. While this court does not require the incantation of "magic words" like "res judicata" or "collateral

22

estoppel," the County of Maui may not prevail by simply raising
the issue without any analysis of the law or any discussion of
how the specific facts of this case fit within that law.  The
Maui Planning Commission denied the Special Use Permit
application, concluding that it did not violate RLUIPA.
Plaintiffs appealed that decision to Hawaii's circuit court,
which determined that the Maui Planning Commission did not err in
its legal conclusions and did not abuse its discretion.  Without
knowing whether claims and/or issues in this case were or could
have been raised in the appeal to Hawaii's circuit court, this
court cannot determine whether it is or is not giving full effect
to the state-court decision.  For that reason, the motions are
denied.

Even turning to the merits of the claims, the court
concludes, for reasons discussed in the present order, that no
party has demonstrated entitlement to judgment as a matter of
law.

B.    Count I--Substantial Burden Under RLUIPA.

Both parties seek summary judgment with respect to
Count I, which asserts a violation of RLUIPA.  Specifically,
Count I asserts that the County of Maui's imposition and
implementation of land use regulations to deny a Special Use
Permit for "CHURCH ACTIVITIES" amounted to a substantial burden
on Honig's and Spirit of Aloha Temple's religious exercise, in

23

violation of 42 U.S.C. § 2000cc(a). In addition to denying the motions with respect to Count I based on the court's concern about giving the state-court judgment effect, the court finds that there are other questions of fact that preclude summary judgment with respect to Count I.

In relevant part, § 2000cc(a) states:

(1) General rule

No government shall impose or implement a
land use regulation in a manner that imposes
a substantial burden on the religious
exercise of a person, including a religious
assembly or institution, unless the
government demonstrates that imposition of
the burden on that person, assembly, or
institution–

    (A) is in furtherance of a compelling
    governmental interest; and

    (B) is the least restrictive means of
    furthering that compelling governmental
    interest.

42 U.S.C.A. § 2000cc(a).

The Ninth Circuit directs that RLUIPA analysis proceed in two sequential steps:

First, the plaintiff must demonstrate that a
government action has imposed a substantial
burden on the plaintiff's religious exercise.
Second, once the plaintiff has shown a
substantial burden, the government must show
that its action was "the least restrictive
means" of "further[ing] a compelling
governmental interest."

*Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1066 (9th Cir. 2011). Courts "examine the particular

burden imposed by the implementation of the relevant zoning code on the claimant's religious exercise and determine, on the facts of each case, whether that burden is 'substantial.'" *Id.* "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015).

RLUIPA itself does not define "substantial burden." *Nance v. Miser*, 700 F. App'x 629, 631 (9th Cir. 2017); *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). The Ninth Circuit has held:

> [A] substantial burden must place more than inconvenience on religious exercise. For a land use regulation to impose a substantial burden, it must be oppressive to a significantly great extent. That is, a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise. A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.

*Int'l Church of Foursquare Gospel*, 673 F.3d at 1067 (quotation marks, alterations, and citations omitted). When a religious institution has no ready alternatives, or when the alternatives require substantial delay, uncertainty, and expense, the complete denial of a permit application "might be indicative of a substantial burden." *Id.* at 1068. In other words, a burden need

25

not be insuperable or insurmountable to be substantial. *Id.* at
1069.

In *Guru Nanak Sikh Society of Yuba City v. County of
Sutter*, 456 F.3d 978, 981 (9ᵗʰ Cir. 2006), the Ninth Circuit
considered a substantial burden challenge under RLUIPA, holding
that the denial of a permit substantially burdened the
plaintiff's religious exercise. The plaintiff had applied for a
conditional use permit to allow the construction of a temple on
residential land. *Id.* at 982. The planning division recommended
to the planning commission that the conditional use permit be
granted with conditions. The planning commission denied the
permit, citing concerns that resulting noise and traffic would
interfere with the neighborhood. *Id.*

The plaintiff then acquired a different property zoned
for agricultural use and sought a conditional use permit to allow
the construction of a temple and assembly hall on the second
property. That second property was surrounded by other
agricultural land, where the plaintiff proposed to hold worship
services and weddings. *Id.* The plaintiff agreed to various
conditions articulated by county and state departments, including
a "no development" buffer area, landscaping, and holding all
ceremonies indoors. *Id.* at 983. The planning commission
approved the permit, but neighboring property owners appealed.
The Board of Supervisors then reversed the approval, reasoning

that the property had been agriculture and should remain so, that the proposed use of the property would not promote orderly growth, and that the proposed temple would be detrimental to surrounding agricultural uses. *Id.* at 983-84.

Guru Nanak Sikh Society challenged the denial of the permit. The United States District Court for the Eastern District of California invalidated the permit denial, and the Ninth Circuit affirmed. The Ninth Circuit determined that the County of Sutter had imposed a substantial burden on Guru Nanak Sikh Society. The Ninth Circuit expressly stated that it was not deciding whether the failure of a government to provide a religious institution "with a land use entitlement for a new facility for worship necessarily constitutes a substantial burden pursuant to RLUIPA." However, it determined that, under the circumstances presented, the County of Sutter had imposed a substantial burden given two considerations:

> (1) that the County's broad reasons given for
> its tandem denials could easily apply to all
> future applications by [the plaintiff]; and
> (2) that [the plaintiff] readily agreed to
> every mitigation measure suggested by the
> Planning Division, but the County, without
> explanation, found such cooperation
> insufficient.

*Id.* at 989.

Spirit of Aloha Temple contends that the denial of a Special Use Permit allowing its church on agricultural land is similarly a substantial burden. The permit at issue involves its

27

second attempt and, like the plaintiff in *Guru Nanak Sikh Society*, Spirit of Aloha Temple says it is willing to comply with all reasonable conditions to get the permit. It thus argues that the County of Maui has imposed a significantly great restriction on its exercise of religion by placing substantial pressure on it to modify its behavior, including by creating delay, uncertainty, and expense through a complete denial of the permit. *See Int'l Church of Foursquare Gospel*, 673 F.3d at 1067-68. Although there do appear to be parallels to *Guru Nanak Sikh Society*, this case presents questions of fact that prevent this court from concluding on the present record that the denial of the Special Use Permit imposes a substantial burden under RLUIPA.

Courts of appeal outside the Ninth Circuit have held that a plaintiff's own actions may be relevant with respect to the substantial burden analysis. In *Livingston Christian Schools. v. Genoa Charter Township*, 858 F.3d 996, 1004 (6th Cir. 2017), the Sixth Circuit stated:

> [W]hen a plaintiff has imposed a burden upon
> itself, the government cannot be liable for a
> RLUIPA substantial-burden violation. For
> example, when an institutional plaintiff has
> obtained an interest in land without a
> reasonable expectation of being able to use
> that land for religious purposes, the
> hardship that it suffered when the land-use
> regulations were enforced against it has been
> deemed an insubstantial burden.

The Fourth and Seventh Circuits have similarly ruled that, when a plaintiff obtains an interest in land without a reasonable

28

expectation that it will be allowed to build a religious institution on the property, any burden imposed on the religious institution is self-imposed and not a substantial burden caused by a government entity. *See Andon, LLC v. City of Newport News, Va.*, 813 F.3d 510, 515 (4th Cir. 2016) (ruling that because, when the property was purchased, a church was not a permissible use and a church would have violated a setback requirement, a religious group could not have had a reasonable expectation that a variance would be granted to allow the building of a church on the property); *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007) (the plaintiff was not substantially burdened when it purchased property in an industrial zone for use as a church after having been told that its special-use application would be denied).

Honig purchased the land in issue here in September 1994, knowing that it was zoned for agricultural and conservation use. In 2011, after its initial Special Use Permit application was denied, Spirit of Aloha Temple entered into an agreement to lease the property from Honig. It arguably knew or should have known that it might not get a Special Use Permit for the proposed temple. Spirit of Aloha Temple may have reasonably believed that it would nevertheless receive the permit because it was amenable to any reasonable condition and it actually orally amended the permit application to have fewer events and to end most of those

29

events during daylight hours.  But whether it was reasonable for Spirit of Aloha Temple to expect that it would get the Special Use Permit under these circumstance or whether it created its own burden are questions of fact not resolvable on the present record.

Given issues of fact, this court has no reason to rule on whether the County of Maui satisfies the strict scrutiny test. The court does, however, recognize that the County of Maui has asked this court to rule that, even if it did impose a substantial burden, it had a compelling interest in the health and safety of its citizens and used the least restrictive means of furthering that interest.  On the present record, the court cannot determine that, as a matter of law, the County of Maui used the least restrictive means in denying the permit application.  Whether viable less restrictive means were available is yet another question of fact.  For example, Randall S. Okaneku posits that sight lines along Haumana Road could have been improved by cutting back vegetation or widening the road. *See* Decl. of Randall S. Okaneku ¶¶ 16-17, ECF No. 185-2, PageID# 3141.  Okaneku also says that traffic in the area could have been mitigated by reducing the number of events and employing shuttles.  *Id.* ¶ 19, PageID # 3142.

The court therefore denies both motions for summary judgment with respect to Count I.

### C. Count II--Nondiscrimination Under RLUIPA; and Count VII--Equal Protection Violation Under § 1983.

Defendants move for summary judgment with respect to Counts II and VII of the Complaint, which assert religious discrimination. Specifically, Count II asserts a violation of 42 U.S.C. § 2000cc(b)(2), which prohibits the imposition or implementation of "a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." Count VII asserts a violation of the Equal Protection Clause of the Fourteenth Amendment, which commands that no State shall deny to any person within its jurisdiction the equal protection of the laws. This is essentially a direction that all persons similarly situated be treated the same. *See High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 570-71 (9th Cir. 1990). Constitutional violations are actionable under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress, except that in any action brought
> against a judicial officer for an act or
> omission taken in such officer's judicial

capacity, injunctive relief shall not be
granted unless a declaratory decree was
violated or declaratory relief was
unavailable.

The essence of both claims involves religious
discrimination.  In addition to the res judicata and/or
collateral estoppel issue discussed earlier, there is a factual
issue as to whether the County of Maui treated secular groups
more favorably than Spirit of Aloha Temple.  The Maui Planning
Commission granted a Special Use Permit to Ali`i Kula Lavender
Farm to conduct tourism activities, including agricultural
classes and workshops, to operate a gift shop, to conduct wedding
ceremonies, and to have catered receptions and other special
events.  See ECF No. 185-13, PageID # 3402.  It also granted a
Special Use Permit to Hale Akua Garden Farm Retreat Center for a
well-being education operation with overnight accommodations.
See ECF No. 185-16, PageID #s 3470, 3484, 3494.  Interpreting the
facts in the light most favorable to the nonmoving party, the
court concludes that the County of Maui has not shown that
differences with these other businesses would preclude a
reasonable jury from finding discrimination.

All three groups sought to use agricultural land for
nonagricultural purposes.  Ali`i Kula Lavender Farm and Hale Akua
Garden Farm Retreat Center received permits for nonagricultural
activities, while Spirit of Aloha Temple did not.  But this court
cannot tell whether the reason Spirit of Aloha Temple was denied

the permit was because of religious discrimination.  Accordingly,
the court denies the County of Maui's motion for summary judgment
with respect to the religious discrimination claims asserted in
Counts II and VII.

### D.    Count IV--Equal Terms Under RLUIPA.

Both parties seek summary judgment with respect to
Count IV of the Complaint, which asserts a violation of 42 U.S.C.
§ 2000cc(b)(1).  That section prohibits government entities from
imposing or implementing "a land use regulation in a manner that
treats a religious assembly or institution on less than equal
terms with a nonreligious assembly or institution."  The Ninth
Circuit has stated that the elements of a § 2000cc(b)(1)
violation are: (1) there must be an imposition or implementation
of a land-use regulation, (2) by a government, (3) on a religious
assembly or institution; (4) on less than equal terms with a
nonreligious assembly or institution.  *See Centro Familiar
Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1170-71
(9th Cir. 2011).

As with the religious discrimination claims discussed
earlier, there is a question of fact as to whether Spirit of
Aloha Temple was treated less favorably than nonreligious groups,
in addition to whether either the res judicata and/or collateral
estoppel doctrine applies.  Ali`i Kula Lavender Farm and Hale
Akua Garden Farm Retreat Center received permits for

nonagricultural activities, while Spirit of Aloha Temple did not. The Maui Planning Commission said it was denying Spirit of Aloha Temple's permit because of concerns about increased traffic on the Haumana Road. Although Ali`i Kula Lavender Farm and Hale Akua Garden Farm Retreat Center had access roads that were also narrow, those roads appear to have been wider than Haumana Road. The road to the Ali`i Kula Lavender Farm may be 18 feet wide. *See* ECF No. 185-14, PageID # 3412; ECF No. 185-5, PageID # 3229. Alternatively, it may range from from 12 to 20 feet wide. *See* Decl. of Randall S. Okaneku ¶ 27, ECF No. 185-2, PageID# 3144. The road to Hale Akua Garden Farm Retreat Center is approximately 20 feet wide, with short stretches that are narrower. *Id.*, PageID # 3473; ECF No. 185-5, PageID # 3225. This differs from Haumana Road, which is on average about 15 feet wide, narrowing to 10 feet at many spots, making it too narrow for two cars to pass in many places. *See* ECF No. 183-4, PageID # 2708; ECF No. 185-9, PageID #s 3282. Thus, there are differing road sizes for the religious and secular groups. This court cannot tell whether the roads are sufficiently similar such that a reasonable jury could infer religious discrimination under the circumstances. Accordingly, summary judgment is denied with respect to Count IV.

### E.    Count V--First Amendment Prior Restraint.

Count V asserts that the County of Maui's denial of the Special Use Permit to Spirit of Aloha Temple amounts to a prior restraint in violation of its First Amendment rights, actionable under 42 U.S.C. § 1983.  *See Moonin v. Tice*, 868 F.3d 853, 858 (9th Cir. 2017) (examining First Amendment prior restraint claim asserted under § 1983); *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 903 (9th Cir. 2007) (same).

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. amend. I.  In *Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969), the Supreme Court reversed the Supreme Court of Alabama, explaining that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." Id. at 150-51.

The Ninth Circuit has stated that a regulation is therefore an unconstitutional prior restraint if it "vests unbridled discretion in a government official over whether to permit or deny expressive activity."  *Kreisner v. City of San Diego*, 1 F.3d 775, 805 (9th Cir. 1993) (quotation marks and citation omitted).  In other words, an ordinance or regulation that makes the peaceful enjoyment of First Amendment rights "contingent upon the uncontrolled will of an official--as by

35

requiring a permit or license which may be granted or withheld in
the discretion of such official--is an unconstitutional
censorship or prior restraint." *Epona v. Cty. of Ventura*, 876
F.3d 1214, 1222 (9th Cir. 2017). "That is, absent definite and
objective guiding standards, permit requirements present a threat
of content-based, discriminatory enforcement." *Id.* (quotation
marks and citation omitted). "While permitting guidelines need
not eliminate all official discretion, they must be sufficiently
specific and objective so as to effectively place some limits on
the authority of City officials to deny a permit." *Id.*
(quotation marks and citation omitted).

In *International Church of Foursquare Gospel*, 673 F.3d
at 1069, the Ninth Circuit noted:

> District courts in this circuit have
> recognized that for a religious institution,
> having
>
> > a place of worship . . . is at the
> > very core of the free exercise of
> > religion . . . [and that]
> > [c]hurches and synagogues cannot
> > function without a physical space
> > adequate to their needs and
> > consistent with their theological
> > requirements.  The right to build,
> > buy, or rent such a space is an
> > indispensable adjunct of the core
> > First Amendment right to assemble
> > for religious purposes.

*Id.* (quoting *Vietnamese Buddhism Study Temple in Am. v. City of
Garden Grove*, 460 F. Supp. 2d 1165, 1171 (C.D. Cal.2006)).

The Ninth Circuit has recognized a claim of an impermissible First Amendment prior restraint based on a tattoo parlor's argument that a city had unbridled discretion to grant or withhold a conditional use permit. *See Real v. City of Long Beach*, 852 F.3d 929, 935 (9th Cir. 2017). The Ninth Circuit has also stated that "permitting schemes are subject to facial challenge if they have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat" that protected speech or conduct will be suppressed." *Epona*, 876 F.3d at 1221 (quotation marks and citations omitted).

Section 205-4.5(a) of Hawaii Revised Statutes sets forth permissible uses of property located in agricultural districts. These uses do not include churches or wedding operations. With certain exceptions, section 205-4.5(b) of Hawaii Revised Statutes prohibits uses that are not expressly permitted under section 205-4.5(a). The exception applicable here is a Special Use Permit granted by a county planning commission, as set forth in section 205-6 of Hawaii Revised Statutes. In considering whether to grant or deny Plaintiffs' Special Use Permit application, the Maui Planning Commission was guided by Maui County Code, Title 19, Article II, Chapter 19.30A. https://library.municode.com/hi/county_of_maui/codes/code_of_ordinances?nodeId=TIT19ZO_ARTIICOZOPR_CH19.30AAGDI_19.30A.060SPUS.

Under section 19.30A.060.A.9, churches and religious institutions are permitted in an agricultural district "if a special use permit, as provided in section 19.510.070[B] of this title, is obtained."  Under that section, the Maui Planning Commission may approve such a permit by "review[ing] whether the use complies with the guidelines established in section 15-15-95 of the rules of the land use commission of the State."  *Id.* (available at https://library.municode.com/hi/county_of_maui/codes/code_of_ordinances?nodeId=TIT19ZO_ARTVADEN_CH19.510APPR_19.510.070SPUSPE).

As clarified by their motion for summary judgment, ECF No. 184-1, PageID # 3112, Plaintiffs assert that sections 15-15-95(c)(2) and (3) of the Hawaii Administrative Rules, which the Maui Planning Commission relied on in denying the Special Use Permit application, improperly give unbridled discretion to the Maui Planning Commission.  Those subsections state:

> Certain "unusual and reasonable" uses within agricultural and rural districts other than those for which the district is classified may be permitted.  The following guidelines are established in determining an "unusual and reasonable use":
>
> . . . .
>
> (2) The desired use would not adversely affect surrounding property; [and]
>
> (3) The use would not unreasonably burden public agencies to provide roads and streets, sewers, water drainage and school improvements, and police and fire protection[.]

*Id.* (Nov. 2, 2013) (available at

http://luc.hawaii.gov/wp-content/uploads/2012/09/LUC-Admin-Rules_Chapter15-15_2013.pdf).

Neither side meets the initial burden of demonstrating entitlement to judgment of any kind with respect to Count V. In particular, this court is concerned about the effect, if any, that should be given to the state court order and judgment that determined that the Maui Planning Commission did not abuse its discretion in denying the permit.

On November 17, 2016, the Circuit Court of the Second Circuit, State of Hawaii, affirmed the Maui Planning Commission's decision. *See* ECF No. 183-14. In relevant part, the court ruled that it "cannot find clear error in the Maui Planning Commission's factual findings or error in its legal conclusions. Moreover, the Commission's decision does not appear to be arbitrary, capricious or an abuse of discretion." *Id.*, PageID # 3005. No appeal was taken. To the extent Plaintiffs are now arguing that the Maui Planning Commission's decision is unconstitutional in that the Maui Planning Commission exercised unbridled discretion, such a challenge may well be something that could have been litigated in state court, which examined whether the county had abused its discretion. Because the parties did not sufficiently address the state court administrative appeals process in their briefs, this court cannot tell whether it should

give the state court judgment preclusive effect as to Count V.
At this point, this court denies the motion for summary judgment
with respect to Count V. The court leaves Count V for later
proceedings in which the court can discern the applicability or
inapplicability of the res judicata and collateral estoppel
doctrines or the waiver of those doctrines.

In so ruling, the court recognizes that, at the
hearing, Plaintiffs pointed to their reservation of right to
bring their prior restraint argument. However, this court cannot
tell whether that representation is correct or affects the res
judicata and/or collateral estoppel analysis, as no party briefed
what effect should be given to the state-court ruling in
connection with Count V.

The court also notes that, under Rule 5.1 of the
Federal Rules of Civil Procedure, when a party files a pleading,
written motion, or other paper that questions the
constitutionality of a state statute, the party must file a
notice of constitutional question and serve the notice on the
state attorney general. While Plaintiffs are challenging the
constitutionality of an administrative rule promulgated by the
State of Hawaii Department of Land and Natural Resources, rather
than a state statute, the court, under the circumstances
presented here, orders Plaintiffs to file a Notice of
Constitutional Question that specifically identifies the

constitutional issue being raised with respect to the administrative rule.  Plaintiffs must then serve a courtesy copy of the notice, the Complaint, and this order on the attorney general for the State of Hawaii, along with a cover letter that explains why these documents are being sent to the attorney general.

### F.    Count VI--Free Exercise of Religion.

Count VI asserts that the County of Maui deprived and is depriving Plaintiffs of their First Amendment right to freely exercise their religion.  It asserts that the County of Maui has substantially burdened Plaintiffs' religious exercise by discriminating against them on the basis of their religion.

The Free Exercise Clause of the First Amendment, which applies to states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  It has further been applied to cities enacting ordinances.  *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).  "[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."  *Id.*  A law that is not neutral or is not of general applicability, on the other hand, must be

justified by a compelling governmental interest and must be
narrowly tailored to advance that interest.  *Id.* at 531-32.

The County of Maui argues that the Maui County Code and
Hawaii Administrative Rules provisions at issue are neutral and
of general applicability.  The County of Maui therefore argues
that this court need not apply the compelling interest test.
Plaintiffs, on the other hand, cite *Hale O Kaula Church v. Maui
Planning Commission*, 229 F. Supp. 2d 1056, 1073 (D. Haw. 2002), a
decision by another judge in this district, for the proposition
that whenever there is an individualized exemption from a general
requirement, the compelling interest test must be applied.  While
*Hale O Kaula Church* is factually analogous in that it involved a
denial of a Special Use Permit, this judge is bound by subsequent
Ninth Circuit precedent, specifically, *San Jose Christian College
v. City of Morgan Hill*, 360 F.3d 1024 (9ᵗʰ Cir. 2004).

*San Jose Christian College* involved a free exercise of
religion challenge to land use regulations.  The city had denied
a request by the Christian College to rezone a property for
educational use.  The college asserted a Free Exercise of
Religion Clause challenge.  The Ninth Circuit explained that "a
free exercise violation hinges on showing that the challenged law
is either not neutral or not generally applicable."  360 F.3d at
1030.  The Ninth Circuit then stated that three principles of
First Amendment law may be distilled from case law:

> If the zoning law is of general application
> and is not targeted at religion, it is
> subject only to rational basis scrutiny, even
> though it may have an incidental effect of
> burdening religion.  If such a law burdens
> the free exercise of religion and some other
> constitutionally-protected activity, there is
> a First Amendment violation unless the strict
> scrutiny test is satisfied (i.e., the law is
> narrowly tailored to advance a compelling
> government interest).  This type of First
> Amendment claim is sometimes described as a
> "hybrid rights" claim.  Similarly, if the
> zoning law is not neutral or generally
> applicable, but is directed toward and
> burdens the free exercise of religion, it
> must meet the strict scrutiny test.  Finally,
> if the zoning law only incidentally burdens
> the free exercise of religion, with the law
> being both neutral and generally applicable,
> it passes constitutional muster unless the
> law is not rationally related to a legitimate
> governmental interest.

*Id.* at 1031 (citations omitted).

Neither the County of Maui nor Plaintiffs meet the initial movant's burden on a motion for summary judgment of demonstrating entitlement to judgment as a matter of law.  The motions do not sufficiently discuss the res judicata or collateral estoppel doctrines in the context of the Free Exercise of Religion claim.  It may well be that this case involves neutral zoning regulations of general application such that Count V should be reviewed under the rational basis test, even in the face of at least an incidental burden on Plaintiffs' religion.  But parties must do more than spot issues and conflate arguments to be entitled to summary judgment.

43

G.   **Counts VII and VIII--State Constitutional Claims for Violations of Free Exercise of Religion and Equal Protection.**

The County of Maui moves for summary judgment with respect to Counts VII and VIII without any meaningful discussion of the applicable Hawaii constitutional provisions.  Plaintiffs, on the other hand, seek summary judgment with respect to Count VII but not Count VIII, arguing only that strict scrutiny should be applied.  *See* ECF No. 184-1, PageID # 3088.  Given the paucity of the arguments, as well as the failure to discuss the res judicata and collateral estoppel doctrines, neither party meets its initial burden of demonstrating that there are no material facts in issue and that judgment as a matter of law is appropriate.  Summary judgment is therefore denied with respect to Counts VII and VIII.

V.      **CONCLUSION.**

For the reasons set forth above, the court denies the motions for summary judgment filed by both parties in this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 20, 2018.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Spirit of Aloha Temple, et al. v. County of Maui*, Civ. No. 14 00535 SOM/RLP;
ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT