DURRETT, MA & LANG, LLLP

| | |
|---|---|
| JONATHAN S. DURRETT | 3184-0 |
| ADAM G. LANG | 9375-0 |
| SHAUNA L. SILVA BELL | 7004-0 |

Davies Pacific Center
841 Bishop Street, Suite 1101
Honolulu, Hawaii  96813
Tel.: (808) 526-0892
Fax: (808) 533-4399

Attorneys for Applicants-Appellants
SPIRIT OF ALOHA TEMPLE
AND FREDRICK R. HONIG

RECEIVED
CORPORATION COUNSEL

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2016 FEB 26  PM 2: 18

2016 FEB 25  PM 3: 46

F. OTAKE
EX OFFICIO CLERK

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| SPIRIT OF ALOHA TEMPLE AND FREDRICK R. HONIG,<br><br>   Applicants-Appellants,<br><br>vs.<br><br>COUNTY OF MAUI AND MAUI PLANNING COMMISSION,<br><br>   Agencies-Appellees | Civil No. **16 - 1 - 0 1 0 3 (1)**<br><br>Agency Docket/Case No. SUP2 2012/0032<br><br>NOTICE OF APPEAL TO THE CIRCUIT COURT; STATEMENT OF THE CASE; EXHIBIT "A"; EXHIBIT "B"; DESIGNATION OF RECORD ON APPEAL; ORDER FOR CERTIFICATION AND TRANSMISSION OF RECORD; CERTIFICATE OF SERVICE |

## NOTICE OF APPEAL TO THE CIRCUIT COURT

COME NOW Spirit of Aloha Temple and Fredrick R. Honig, by and through their

undersigned attorneys, pursuant to Hawaii Revised Statues § 91-14, Rule 72 of the Hawaii Rules

of Civil Procedure, and 28 U.S.C § 1367(d), hereby appeals to the Circuit Court of the Second

Circuit from the Findings of Fact, Conclusions of Law and Decision of Order, filed October 28,

2014 as Docket No. SUP2 2012/0032 attached hereto as Exhibit "A".  This Notice of Appeal is

also made pursuant to  the Order Granting Motion to Dismiss and/or for Partial Summary

I do hereby certify that this is a full, true, and correct copy of the original on file in this office.

Clerk, Circuit Court, First Circuit

# EXHIBIT "D"

Judgment, filed January 27, 2016 in the United States District Court for the State of Hawaii as

Civil No. 14-00535 attached hereto as Exhibit "B".

DATED:  Honolulu, Hawai'i, February _25_, 2016


JONATHAN S. DURRETT
ADAM G. LANG
SHAUNA L. SILVA BELL
Attorneys for Applicants-Appellants
SPIRIT OF ALOHA TEMPLE and
FREDRICK R. HONIG

2

**EXHIBIT "D"**

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| SPIRIT OF ALOHA TEMPLE AND FREDRICK R. HONIG, | Civil No. _____ |
| Applicants-Appellants, | Agency Docket/Case No. SUP2 2012/0032 |
| vs. | STATEMENT OF THE CASE |
| COUNTY OF MAUI AND MAUI PLANNING COMMISSION, | |
| Agencies-Appellees | |

### STATEMENT OF THE CASE

COME NOW Spirit of Aloha Temple, Inc. and Fredrick R. Honig ("Appellants"), by and through their undersigned attorney, and pursuant to Rule 72 of the Hawaii Rules of Civil Procedure hereby submits the following statement of the case.

### INTRODUCTION

1. Appellants appeal the Maui Planning Commission's Findings of Fact, Conclusions of Law, Decision and Order Denying a State Land Use Commission Special Permit (the "Decision") denying use of their property located at 800 Haumana Road, Haiku, Maui (the "Property") as a church in Special Use Permit application SUP2 2012/0032 (the "Application").

### PARTIES

2. Appellant Spirit of Aloha Temple, Inc. is a domestic nonprofit corporation formed under the Laws of the State of Hawaii.

# EXHIBIT "D"

3.    Appellant Fredrick R. Honig resides at 800 Haumana Road, Haiku, Maui, and is a licensed minister.

4.    Appellee Maui Planning Commission is a Planning Commission established pursuant to Titles 6 and 13 of the Hawaii Statutes, and is charged with the responsibility of hearing and determining applications for State Land Use Commission Special Use Permits.

5.    Appellee County of Maui is a local governmental entity organized under Hawaii law.

**JURISDICTION**

6.    The Circuit Court has jurisdiction over this appeal pursuant to Hawaii Revised Statutes § 91-14 and Maui Planning Commission Rules § 12-201-32.  Section 91-14(a) provides in pertinent part:

> Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter; . . . .

H.R.S. § 91-14(b) provides that proceedings for review shall be instituted in the circuit court within 30 days after service of the certified copy of the final decision and order of the agency pursuant to rule of court.

7.    The Planning Commission's final Decision and Order in SUP2 2012/0032 was served on October 30, 2014.

8.    This Appeal was originally filed in federal District Court on November 26, 2014 pursuant to 28 U.S.C. § 1367(a), as a claim over which the federal court had supplemental jurisdiction (Count X of the federal Complaint), and was dismissed without prejudice by that

2

**EXHIBIT "D"**

court on January 27, 2016. *Spirit of Aloha Temple v. Cty. of Maui*, No. CV 14-00535 SOM/RLP, 2016 WL 347298 (D. Haw. Jan. 27, 2016).

9.     As described *infra*, the period of limitations for this appeal was "tolled while the claim [wa]s pending" in the United States District Court for the District of Hawaii, "and for a period of 30 days after it is dismissed . . . ." 28 U.S.C. § 1367(d).

## STANDARD OF REVIEW

10.     Hawaii Revised Statutes § 91-14(g) sets forth the standards of review of an administrative court decision. In this case they are whether the Maui Planning Commission's ("Commission") decision is clearly erroneous and arbitrary, capricious, and characterized by abuse of discretion and clearly unwarranted exercise of discretion. Findings of fact are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record. *Alvarez v. Liberty House, Inc.,* 85 Haw. 275, 277, 942 P.2d 1339, 1344 (1997). The courts may freely review an agency's conclusions of law. *Leslie v. Bd. Of Appeals of the Cnty. of Hawaii,* 109 Hawaii 384, 391, 126 P.3d 1071, 1078 (2006). Conclusions of law that present mixed questions of fact and law are reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case. *Price v. Zoning Bd of Appeals of City and County of Honolulu,* 77 Haw. 168, 172, 883 P.2d 629, 633 (1994).

## QUESTION PRESENTED

11.     Whether the Commission's Decision and Order was clearly erroneous and arbitrary, capricious and an abuse of discretion given the Planning Department's recommendation of approval subject to conditions, the reliable, probative and substantial evidence in the complete administrative record, the willingness of the Appellants to agree to

3

# EXHIBIT "D"

various conditions mitigating any impacts of its proposed use, and applicable statutes, ordinances and case law that indicate that the Commission should have granted the Appellants' application for a special use permit.[1]

### GENERAL FACTUAL ALLEGATIONS

13. The property that is the subject of special use permit application SUP2 2012/0032 is approximately 11 acres located at 800 Haumana Road, Haiku, Maui (the "Property"), approximately one mile makai of the Hana Highway.

14. The Property is described as Tax Map Key No. (2) 2-8-004:032.

15. The Property is owned by the Fredrick R. Honig Revocable Living Trust (the "Trust"). The Trust leases the Property to The Spirit of Aloha Temple, Inc. through a perpetual lease that is recorded with the State Bureau of Conveyances.

16. The Spirit of Aloha Temple, Inc., incorporated in 2007, is a non-profit corporation organized for religious purposes.

17. The Property is located in the State Agricultural District, Paia-Haiku Community Plan, and the County Agricultural Zone. The Property's Land Use Category is Agriculture and it is located within the Special Management Area.

18. The Property's current use is a botanical garden, bird sanctuary and staff housing. This use also includes promoting Hawaiian plant-based horticulture and nutrition, and restoring the historic lo`i kalo. The Appellants' botanical garden on the Property is a permitted use in the

---

[1] Appellants reserve for independent adjudication in the federal courts all federal questions, including but not limited to any federal First or Fourteenth Amendment claims, and claims arising under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*, for adjudication before the United States District Court. *See England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964). This District Court stayed the remaining counts in the federal action against the County, and "stay[ed] the present case pending the state circuit court's determination of the matters raised in Count X."

## EXHIBIT "D"

Agricultural District. "Guided garden tours" are permitted on the Property under HRS § 205-2(d)(12) and as an accessory use of "open land recreation" under Maui County Code ("MCC") § 19.30A.050(B)(11).

19.    Appellants additionally seek to use the Property as a "Church" use, which would include religious services, meetings, lectures and events for small numbers of people.

20.    The County has informed the Appellants that "uses such as weddings, special events, seminars, group instructions . . . are not permitted" on the Property. The County has also informed the Appellants that "classes, demonstrations, conferences, and seminars on plant-based nutrition, health and well-being (e.g., yoga, meditation)" are not permitted on the Property.

21.    Churches and religious institutions are permitted as a special use in the Agricultural district.

22.    The Appellants had previously applied (SUP 2007/0009) for a special use permit to conduct religious activities on the Property, which was denied by the Planning Commission on March 23, 2010, with reconsideration also denied on December 14, 2010. The decision and order in that application was issued on February 8, 2012.

23.    The Appellants' application for a State Land Use Commission Special Permit is governed by HRS §§ 205, 205A and 226, Hawaii Administrative Rules ("HAR") § 15-15-95, and MCC Chapter 19.30A.

24.    H.R.S. § 205-6(a) provides that a "county planning commission may permit certain unusual and reasonable uses within agricultural and rural districts other than those for which the district is classified."

5

**EXHIBIT "D"**

25.   The Maui County Planning Department noted that "[t]he State Land Use Law provides flexibility in allowing for unusual conditions that have evolved since a property was classified in the State Agricultural District."

26.   Maui County Code § 19.510.070(E) permits the Planning Commission to "impose conditions on the granting of a request for a special use if the conditions are reasonably conceived to mitigate the impacts emanating from the proposed land use."

27.   On November 21, 2012, the Appellants filed an application (the "Application") for a State Land Use Commission Special Permit (SUP2 2012/0032) to hold weekly church services for up to 20 people on Saturdays from 10:00am to 2:00pm, operate a living classroom for nature guardian skills for up to 23 people 4 times per week, and conduct sacred programs, educational, inspirational and spiritual, and spiritual commitment ceremonies such as weddings for up to 80 persons 24 times per year and up to 40 persons 24 times per year at the Property.

28.   The Appellants proposed to use the existing structures for purposes of the church use.

29.   The Appellants amended their application regarding events to request only 12 events per year for up to 20 people, 12 events per year for up to 40 people, 12 events per year for up to 60 people, and 12 events per year for up to 80 people.

30.   The Planning Department provided its recommendation to the Planning Commission, recommending approval of the Application, with 21 conditions.

31.   After consultation with the Maui County Planning Department, the Appellants agreed to further limit the proposed use as follows:

    a.   The classroom was to be limited to use by no more than 24 persons, including staff;

6

**EXHIBIT "D"**

b. There were to be no more than four classes per week, all between the hours of 10:00 a.m. and 2:00 p.m.;

c. Church services were to be limited to one per week with a maximum of 24 attendees and would usually be conducted on Saturdays between the hours of 10:00 a.m. and 2:00 p.m.;

d. No more than 48 church-related events per year, of those no more than half could have between 25 and 40 participants and staff;

e. No more than two events with 25 to 40 persons could be conducted per month;

f. There could be no more than four church-related events per month,

g. All church-related events were to take place between 10:00 a.m. and 8:00 p.m.;

h. Shuttle buses were to be used to transport participants to the church-related events that involved between 25 and 40 participants;

i. The shuttles would use privately owned facilities, not public ones, for drop off and pick up;

j. There would be no more than 25 people on the Property except for 59 days a year;

k. The attendance would further be limited by the waste water system's limits;

l. Records of events, dates, attendance and type would be maintained and submitted to two separate County agencies each year. Failure to submit them could result in revocation of the permit;

m. Obtaining approvals from the State Historic Preservation Division;

7

**EXHIBIT "D"**

n.  Several specific Department of Health Safe Water Drinking Branch Test results for a variety of chemicals and bacteria;

o.  Approval of the Department of Health Environmental Health Services Division regarding all food consumed on the premises;

p.  No food was to be prepared on the premises for any event;

q.  A parking plan had to be approved by the Zoning and Enforcement Division and submitted to the Planning Department;

r.  The permit would expire on March 31, 2016, subject to applications for renewal; and

s.  A hardened driveway approved by the Fire Department and Department of Public Works.

32.  After extensive revision of the Application from November 2012 through February 2014, on February 11, 2014 the Maui Planning Department deemed the application complete and scheduled a public hearing before the Maui Planning Commission for March 25, 2014.

33.  The Planning Department issued a Report and Recommendation (the "Recommendation") that the Permit be issued.

34.  The Planning Department noted that no new buildings or structures were proposed, that the church use will use the existing structures in a shared use arrangement, and that "[t]he church is intended to complement and support the existing agricultural uses of the property and the open and rustic setting of the area."

8

**EXHIBIT "D"**

35.   The Department also determined that "[i]f approved with conditions, the applicant will implement mitigative measures to limit impacts on the surrounding area, including noise, traffic and burdens on public service."

36.   State and County agency review comments were provided regarding potable water availability, wastewater capacity, traffic, police and fire department access, archeology, and adherence with the agricultural zoning of the Property. All such agencies indicated that they had no objection to the Application

37.   The Planning Department noted that the use would "place little burden on public sewers, water systems, drainage systems or educational facilities."

38.   With respect to the narrow road conditions of Haumana Road, the Planning Department stated: "the Department has worked with the applicant and public safety agencies to limit the number of visitors, events, and hours of events."

39.   With respect to the State zoning statutes, the State Plan, HRS Chapter 226 (which provides guidelines for long-term development of Hawaii), and the County of Maui General Plan, the Planning Department noted that the Application would be permissible as an "unusual and reasonable" use under the State Plan and that it furthered no fewer than eleven Objectives, Goals and Policies of the County Plan.

40.   The Planning Department also considered the Application in light of the local Paia-Haiku Community Plan and again found that it promoted the goals of that land use plan.

41.   The Planning Department also reviewed the requirements for a Special Use Permit in the Agricultural District, found in H.R.S. §§ 205 and 205A. It specifically found that the proposed use meets those standards, that it will complement and support agricultural use, and that it will not adversely affect surrounding property or burden public services.

9

**EXHIBIT "D"**

42.   The Recommendation noted that any concern about possible vehicular and pedestrian traffic impact had been addressed by both the Police and Fire Departments. It states that "[i]n light of these comments the Department discussed the matter with public safety agencies and developed conditions to mitigate the effect on traffic and public services."

43.   In order to mitigate traffic impacts along Haumana Road, the Department of Public Safety/Police Department recommended that the number of visitors and hours of operation for church related events be limited. Those limitations were adopted and made part of the Application as finally submitted. The Recommendation quoted the Police Department's comment as stating: "There is no objection to the progression of this project at this time, from the police standpoint in regards to pedestrian and vehicular movement."

44.   The Recommendation also noted that "the proposed church and agricultural education uses will complement existing agricultural uses of the property using existing buildings and structures."

45.   The Recommendation included a conclusion of law that "[t]he application for a State Land Use Commission Special Permit complies with the applicable standards for an 'unusual and reasonable' use within the State Agricultural District."

46.   With regard to impact on surrounding properties, the Recommendation stated: "If approved with conditions the applicant will implement mitigative measures to limit impacts on the surrounding area, including noise, traffic and burdens on public service."

47.   That Recommendation further noted that "[c]hurch or related uses are not uncommon in the State Agricultural District under the provisions of a State LUC Special Use Permit."

48.   On March 25, 2014 the Commission held a public hearing on the Application.

10

**EXHIBIT "D"**

49.    At the conclusion of the hearing a motion was made to deny the Application. The motion passed with six ayes voting for denial and two excused.  The special use permit was denied.

50.    Appellants thereafter requested reconsideration of the denial.

51.    The Appellants submitted a further reduction in the church events in support of its request for reconsideration as follows: 6 programs per month for up to 4 hours and for up to 24 participants, from 10 a.m. to 4 p.m. and 2 programs per month for up to 6 hours and up to 40 participants (1 from 10 a.m. to 4 p.m, and 1 from 10 a.m. to 8 p.m.).

52.    On April 8, 2014, the Planning Commission reconsidered the Application.

53.    Appellants again amended the Application to further reduce the number and size of church related events that they would hold.

54.    A motion to rescind the previous denial passed by a vote of 5 to 1 with 2 excused.

55.    Appellants orally amended the Application to reduce the proposed number of church events to include eight per month with a maximum of ten cars per event.  Two of the events could have up to 40 people and the remaining six events could have up to 24 people. Seven of the eight events would end by 4 p.m., with the remaining event ending by 8 p.m.

56.    The Planning Department again recommended approval of the Application, subject to conditions.

57.    At the conclusion of the deliberations on reconsideration, a motion was made to deny the State Land Use Commission Special Use Permit.

58.    Initially, in the first vote only two members of the Planning Commission assented to the Motion to deny the permit.  Three members abstained.  Three members dissented.

11

**EXHIBIT "D"**

59.   After this vote, the Planning Commission determined that the Chair needed to vote and could not abstain, so another vote was taken.

60.   K. Ball assented in this second vote and voted to deny the application.

61.   The second vote was three assents to the Motion, two abstentions, and three dissents.

62.   Thus, only three of eight members of the Planning Commission voted to deny the special use permit.  However, under the Maui County Planning Commission Rules of Practice and Procedure, § 12-201-24(c), an abstention (unless as a result of disqualification for conflict of interest) is counted as an affirmative vote. Thus the vote to deny the Permit passed 5-3.

63.   On October 30, 2014, the Commission issued its Findings of Fact, Conclusions of Law and Decision and Order, SUP 2012/0032.   It made the following Conclusions of Law, which included:

> [A]fter hearing testimony from neighbors that live adjacent to or nearby the Property and after questioning the Applicant and Consultant, the Commission concluded that the uses requested in the Application did not constitute an 'unusual and reasonable' use in the Agricultural District.
>
> The Commission found that the uses proposed in the Application would adversely affect the surrounding properties in conflict with 15-15-95(2) HAR.  The Commission received substantial negative written testimony from nearby property owners on Haumana Road and North Holokai Road.  Additionally during the hearing nearby property owners submitted additional oral visual and written testimony regarding concerns about the safety of Haumana Road for both potential visitors and property owners along Haumana Road.  The Commission found such testimony reliable and compelling.
>
> The Commission found that granting the uses would increase traffic and burden public agencies providing roads and streets, police and fire protection, in conflict with 15-15-95(3), HAR, and gave the following reasons for a denial of the Application on that basis: significant concerns about the narrowness of Haumana Road and vehicle and pedestrian safety both to potential visitors to the property and property owners along Haumana Road and the fact that and the fact that the Property is at the terminus of Haumana Road and therefore traffic to the Property would negatively impact residents safety and use of Haumana Road.

12

# EXHIBIT "D"

64.   The Planning Commission's denial of the Appellants' special use permit was based on the traffic impacts of such proposed use.

65.   The only evidence presented to the Planning Commission regarding traffic, other than that from the government agencies as described above, was the anecdotal testimony of local residents opposed to the proposed church use.  The Planning Commission's decision and order states that "[t]he Commission was concerned about the number of objection letters received from property owners in the nearby neighborhood and noted the paucity of support letters from adjacent neighbors."

66.   Safety concerns regarding the Application were addressed and confirmed by government agency comment letters.

67.   The Planning Department had included as a proposed condition of approval:

That in order to reduce the amount of traffic on Haumana Road, the applicant shall use a shuttle system (vans and limousines) to bring guests to and from the property for all events that will have more than 25 persons in attendance.  Every effort should be taken to shuttle or carpool event guests to all activities.  Shuttles shall use privately owned facilities, such as hotels, for their operations such as drop-offs and pick-ups.

68.   On November 26, 2014 (less than 30 days after the service of the certified copy of the final decision and order), the Appellants filed their Complaint in the United States District Court for the District of Hawaii, Civ. No. 14-00535 (SOM) (RLP), both appealing the Commission's action pursuant to Hawaii Revised Statutes § 91-14 as well as challenging the denial and certain land use regulations under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc *et seq.*, the First and Fourteenth Amendments to the United States Constitution, and the Hawaii Constitution Article I §§ 4 and 5.

69.   The United States District Court had supplemental jurisdiction over Count X of the federal complaint (Appellants' appeal pursuant to H.R.S. § 91-14), as it was "related to

13

**EXHIBIT "D"**

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

70.   The District Court subsequently dismissed Count X of the Appellants' federal Complaint without prejudice, holding:

> The court declines to exercise supplemental jurisdiction over Count X and dismisses Count X without prejudice to Plaintiffs' pursuing of that claim in state court pursuant to 28 U.S.C. § 1367(d).

*Spirit of Aloha Temple v. Cty. of Maui*, No. CV 14-00535 SOM/RLP, 2016 WL 347298, at *14 (D. Haw. Jan. 27, 2016).

71.   The District Court further stayed the federal case with respect to the remaining Counts in the federal Complaint.

72.   The federal supplemental jurisdiction statute states:

> (d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d).

73.   The District Court issued its Order on January 27, 2016.  This Appeal is filed within the additional 30-day period during which the period of limitations for Appellants' appeal pursuant to H.R.S. § 91-14 is tolled by 28 U.S.C. 1367(d).

## CLAIM FOR RELIEF

(Violation of H.R.S. § 91-14)

14

# EXHIBIT "D"

74.     Appellee Maui Planning Commission's Final Decision and Order dated October 28, 2014 denying Appellants' Special Use Permit was arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

75.     Appellee Maui Planning Commission's Final Decision and Order dated October 28, 2014 denying Appellants' Special Use Permit was based on Findings of Fact that were clearly erroneous and not supported by necessary reliable, probative and substantial evidence of the whole record.

76.     Finding of Fact No. 68 provides the MPC's basis for denying the SUP application by stating in pertinent part as follows:

> The Commission finds that there is evidence of record that the proposed uses expressed in this Application should they be approved would increase vehicular traffic on Haumana Road, which is narrow, winding, one-lane in areas, and prone to flooding in inclement weather. The Commission finds that Haumana Road is regularly used by pedestrians, including children who use the road to access the bus stop at the top of the road. The Commission that granting the Application would adversely affect the health and safety of residents who use the roadway, including endangering human life. The Commission finds that the health and safety of the residents' and public's use of Haumana Road is a compelling government interest and that there is no less restrictive means of ensuring the public's safety while granting the uses requested in the Application.

77.     Based on the record of the hearing, this finding of fact appears to solely be based on the anecdotal testimony provided by residents of Haumana Road who neighbor the site of Spirit of Aloha Temple and as such have significant biases to denying Spirit of Aloha's SUP. The Findings of Fact make no mention of the supplemental evidence of reports from the Maui Police Department and Maui Fire Department, disinterested expert parties, stating that they had no objections to the SUP in regard to pedestrian and vehicular movement. These reports were made based on the original SUP application that included a larger number of events, people and vehicles.  Such disinterested reports from the Maui Police Department and the Maui Fire

15

# EXHIBIT "D"

Department concluded that vehicular and pedestrian safety were not endangered by the scope of activities proposed in Spirit of Aloha's SUP application.

78.     The Maui Department of Planning recommended approval of the SUP application with the reduced number and sizes of events with several conditions.

79.     Finding of Fact No. 68 states that Haumana Road is "prone to flooding"; however, the evidence in the record states that the water runs off into a culvert and that the road drains well.

80.     Finding of Fact No. 68 states that Haumana Road is "one-lane in areas" and while this is supported by evidence in the record, this statement fails to account for the context that while the asphalt may only be as wide as one-lane in certain areas, the road still is passable as the road maintains a recorded 20-foot right of way and vehicles are able to pass each other by pulling over to the right within the 20-foot right of way.  The narrowed width is the result of encroachment by property owners along Haumana Road.

81.     Finding of Fact No. 67 described the voting results on the Motion to Deny the State Land Use Commission Special Use Permit from the April 8, 2014 Maui Planning Commission meeting.  It states that J. Freitas and W. Hedani assented to the Motion; M. Tsai, I. Lay, and K. Ball abstained; and J. Medeiros, P. Wakida, and R. Higashi dissented. However, the signatures at the end of the Decision and Order include Commissioner Ball's signature in the "In Agreement" category rather than in the "Abstained" category. All other signatures for agreement or disagreement with the Motion corresponded to how the commissioners voted, or abstained, in the minutes of the hearing and as reported in Finding of Fact No. 67.

82.     Conclusion of Law No. 5 states, "The Commission found that the uses proposed in the Application would adversely affect the surrounding properties, in conflict with 15-15-

16

**EXHIBIT "D"**

95(2) [*sic*], HAR.  The Commission received substantial negative written testimony from nearby property owners on Haumana Road and North Holokai Road.  Additionally, during the hearing, nearby property owners submitted additional oral, visual, and written testimony regarding concerns about the safety of Haumana Road for both potential visitors to the Property and property owners along Haumana Road.  The Commission found such testimony reliable and compelling."  This conclusion of law presents a mixed question of fact and law in that the Commission bases its conclusion on a finding regarding the safety of Haumana Road based on the biased testimony of nearby property owners while overlooking the objective testimony and reports provided by other Maui County agencies and departments.

83.    Conclusion of Law No. 6 states, "The Commission found that granting the uses would increase traffic and burden public agencies providing roads and streets, police, and fire protection, . . . ."  No evidence was presented to support the finding that the burden of public agencies providing roads and streets, police and fire protection would be increased.

84.    The Maui police and fire departments both provided reports that were in support of the SUP application.  Therefore, Conclusion of Law No. 6 is not supported by any probative or reliable evidence.

85.    Conclusion of Law No. 9 states that "the likely significant increase in traffic attributable to the uses proposed by the Application [would create] conditions that would be foreseeably dangerous or potentially deadly to drivers and pedestrians, including children walking on the road to and from the bus stop at the top, using the small rural roadway."  These findings are not based on probative, reliable and substantial evidence particularly as it pertains to children walking to and from the bus stop since the proposed start and end times for the events included in the SUP Application do not coincide with normal school start/end times.

17

# EXHIBIT "D"

## RELIEF REQUESTED

Wherefore, Appellants respectfully pray that this Court, pursuant to Haw. Rev. Stat. § 91-14(g), grant the following relief:

1.  An order sustaining Appellants' appeal pursuant to H.R.S. § 91-14, and finding the Planning Commission's action in denying Appellants' Special Use Permit application to be unlawful;

2.  An order directing the Planning Commission to grant the Spirit of Aloha Temple and Frederick Honig, Inc. the Special Use Permit necessary to conduct church activities on the Property as applied for in its Application; and

3.  Grant such further relief as the Court deems appropriate.

DATED:  Honolulu, Hawai'i, February 25, 2016

JONATHAN S. DURRETT
ADAM G. LANG
SHAUNA L. SILVA BELL
Attorneys for Applicants-Appellants
SPIRIT OF ALOHA TEMPLE and
FREDRICK R. HONIG

18

# EXHIBIT "D"

EXHIBIT "A"

# EXHIBIT "D"

BEFORE THE MAUI PLANNING COMMISSION

COUNTY OF MAUI

STATE OF HAWAII

| | |
|---|---|
| In The Matter of The Application of | DOCKET NO.<br>SUP2 2012/0032 |
| FREDRICK R. HONIG<br>SPIRIT OF ALOHA TEMPLE | FREDRICK R. HONIG<br>SPIRIT OF ALOHA TEMPLE |
| To Obtain a State Land Use Commission Special Use Permit to Operate a Classroom and hold Spirit of Aloha Temple Church Services with Church Related Events such as Weddings in the State and County Agricultural Zoning Districts on Approximately 11 Acres of Land Located at 800 Haumana Road, Haiku, Maui, Hawaii; Maui Tax Map Key No. (2) 2-8-004:032 | Findings of Fact, Conclusions of Law and Decision and Order Denying Docket No. SUP2 2012/0032; Certificate of Service |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
DECISION AND ORDER DENYING
A STATE LAND USE COMMISSION SPECIAL PERMIT
FOR THE SPIRIT OF ALOHA TEMPLE/FREDRICK R. HONIG**

On March 25, 2014, the Maui Planning Commission ("Commission"), pursuant to Section 205-6, , Hawaii Revised Statutes ("HRS"), held a public hearing regarding an application for a State Land Use Commission Special Permit No. SUP2 2012/0032 submitted by Fredrick R. Honig/Spirit of Aloha Temple ("Applicant") and denied SUP2 2012/0032. Subsequently, on April 8, 2014, the Commission considered a request by Mr. Honig to rescind the Commission's March 25, 2014, denial of SUP2 2012/0032, and the Commission took action to rescind said denial. On April 8, 2014, the Commission received further evidence and testimony, and after further deliberation denied SUP2 2012/0032. The effective date of this decision and order is April 8, 2014. The Commission makes the following Findings of Fact and Conclusions of Law, based on the record in this case, including all documents submitted and testimony provided to the

EXHIBIT "D"

Commission, as well as all other items of record properly brought before the Commission:

## FINDINGS OF FACT

1.    To the extent that any finding of fact is more properly characterized as a conclusion of law, the Commission adopts it as such.

2.    On November 21, 2012, an application for a State Land Use Commission Special Permit (SUP2 2012/0032) (collectively, the "Application") was filed by Mr. Fredrick R. Honig/Spirit of Aloha Temple ("Applicant").

3.    The Application originally requested three uses:  living classroom for horticulture and nature guardian skills for up to 23 people up to 4 times per week ("Living Classroom"); weekly church service for up to 20 people held on Saturdays from 10 AM to 2 PM ("Services"); and, sacred programs, educational, inspirational, or spiritual including Hawaiian cultural events, and spiritual commitment ceremonies such as weddings for up to 80 persons 24 times per year and up to 40 persons 24 times per year ("Special Events") to be held at 800 Haumana Road, Haiku, Maui, Hawaii ("Property").  (A true and correct copy of the Planning Department's Report and Recommendation ("Staff Report"), is attached hereto and made a part hereof as Exhibit A, along with Exhibits 1-25 to the Staff Report.)

4.    The Property is approximately 11 acres and is located at 800 Haumana Road, Haiku, Maui, Hawaii, further described as Tax Map Key No. (2) 2-8-004:032. The Property is located in the State Agricultural District, Paia-Haiku Community Plan with a Land Use Category of Agriculture, and County Agricultural Zone and is located within the Special Management Area.

5.    The Property contains a main farm dwelling, second farm dwelling, and other structures described by the Applicant as the Spirit of Aloha Temple, the Waterfall Pavilion, the Potting Shed and other buildings accessory to agricultural functions.  The uses described in Paragraph 3, above, were proposed for the Spirit of Aloha Temple, the Waterfall Pavilion, the

## EXHIBIT "D"

Potting Shed and the outdoor gardens.

6.     On February 11, 2014, the Maui Planning Department ("Department") deemed the Application complete and mailed a notice to the Applicant and appropriate State and County agencies that a public hearing ("Hearing") was scheduled on the Application before the Maui Planning Commission on March 25, 2014.

7.     On February 21, 2014, the Applicant mailed a "Notice of Public Hearing" and location map to all owners and lessees adjacent to the Property and across the street describing the Application and notifying them of the scheduled public hearing date, time and place by either certified or registered mail.

8.     On February 21, 2014, a notice of hearing on the application was published in the Maui News by the Department.

9.     There was no petition to intervene filed by any person related to the Application.

10.    Commission members present at the March 25, 2014, Commission meeting were Chair Ivan Lay, Vice-Chair Warren Shibuya, Sandra Duvauchelle, Jason Medeiros, Penny Wakida, Maxwell Tsai, and Jack Freitas.   Commission members absent and excused were Keone Ball and Wayne Hedani.

11.    Department Staff Planner Kurt Wollenhaupt provided the Commission with an overview of the Application speaking to the reasons for the public hearing and explaining the criteria the Commission was to use regarding the State Land Use Commission Special Permit. Special emphasis was placed on access to the Property via Haumana Road, history of the Property, the resolution of past violations via two Settlement Agreements, resolution of Coastal Lands Case MA-0-12, and state and county agency review comments regarding potable water availability, wastewater capacity, traffic, police and fire department access, archaeology, and adherence with the agricultural zoning of the Property.   The Planner did indicate that the Applicant amended the Application as to the following number and type of Special Events

# EXHIBIT "D"

described in Paragraph 3: 12 events per year for up to 20 people, 12 events per year for up to 40 people, 12 events per year for up to 60 people, and 12 events per year for up to 80 people. Supplements 1 through 8 were provided to the Maui Planning Commission to add to the Staff Report and Recommendation and are attached hereto as Exhibit B.

12.   The Applicant's Consultant, Mr. Kevin Hoeke, gave a presentation regarding the proposed Spirit of Aloha Temple operation and provided extensive comments regarding project operations and concerns about noise and traffic. Mr. Hoeke verbally amended the Application's proposed number and type of Special Events as follows: an annual total of 48 Special Events were proposed, 24 of which would be for up to 40 persons or less and 24 of which would be for up to 24 persons or less through the year, with a maximum of four (4) such events per month. No amendments were made to the number and type of Living Classroom and Church Services described in Paragraph 3 under Findings of Fact.

13.   The Applicant addressed the Commission, gave a detailed history of the Property, and answered questions regarding project operations for the Spirit of Aloha Temple. There was a technical difficulty with Applicant's PowerPoint presentation rendering it unable to be presented.

14.   At the Hearing, testimony for and against the Application was provided and has been recorded in the minutes and other records of the March 25, 2014, meeting. (A copy of the minutes of the March 25, 2014, Commission meeting is attached hereto as Exhibit C.) Testifiers included neighbors and people familiar with the surrounding properties. Extensive written testimony in opposition to and in support of the Application was presented in both the Staff Report dated March 25, 2014, and in supplemental letters submitted at the Commission meeting. (See Exhibits A and B.) Geographic reference maps of support and opposition letters were provided to the Commission. Supplement 1 of the Staff Report contained 18 support letters and 6 objection letters with a response by the Applicant. (See Exhibit B.)

15.   Members of the public testified at the Hearing, including Ms. Jessica Caudill of

EXHIBIT "D"

450/490 Haumana Road, who opined to her concern that proposed uses would result in a dramatic increase in traffic and potential negative effects on pedestrian safety due to Haumana Road being narrow and winding and with only one access/egress. Ms. Caudill testified that the occupants of Haumana Road used it for walking and that children regularly accessed properties across the street. She expressed concern with children's safety and the possible impact of strangers to the area. (See Exhibit C, pages 61-62.)

16.    Mr. Antonio Piazza of 410 N. Holokai Road testified that the Applicant has previously used the Property for unpermitted commercial wedding operations, which involve alcohol and noise. He expressed safety concerns related to the 50-foot cliff fronting the Property. Mr. Piazza expressed concerns related to increased traffic, emergency access, and road safety. Mr. Piazza opined that the Applicant was unlikely to comply with potential permit conditions as Mr. Piazza testified that unpermitted activities had been conducted on the Property. (See Exhibit C, pages 63-64 and pages 66-69.)

17.    Planning Director William Spence provided information as to the resolution of Notices of Violation related to prior illegal activities on the Property.

18.    Ms. Nancy Gilgoff of 411 Haumana Road opined on the increase in traffic and vehicular and pedestrian safety, the impact to the neighborhood of the proposed number of events in the Application, and dangerous roadway conditions after rain events. Ms. Gilgoff expressed concern that persons attending events would use alcohol. She stated that the only person not impacted by the increase in traffic would be Mr. Honig, as the Property is at the end of Haumana Road. (See Exhibit C, pages 64-65.)

19.    Ms. Stephanie Gilgoff of 411 Haumana Road opined to her desire for any proposed events to be concluded before dark, was concerned about roadway safety issues, and expressed concerns over possible impacts to the quiet rural character of the neighborhood. (See Exhibit C, pages 65-66.)

EXHIBIT "D"

20.    Mr. William Knowlton of 380 N. Holokai Road opined to concerns regarding cliffside weddings blocking ocean access, archeological concerns, past operations of illegal commercial weddings and transient vacation rentals and yoga classes on the Property.  (See Exhibit C, page 69.)

21.    Mr. Daniel Mizner of 455 Haumana Road expressed concerns regarding roadway limitations, stated that Haumana Road is 10 feet wide in some areas. He expressed concerns about pedestrian safety and the increase in traffic due to the proposed uses, stating that children walk home from the school bus stop near the top of Haumana Road, and that residents use the road for walking and bicycling. Mr. Mizner stated that lands in the Agricultural zone should be used for agriculture and that the proposed weddings were incompatible. Mr. Mizner expressed concern as to the effect of the uses on the rural character of the neighborhood.. (See Exhibit C, pages 69-70.)

22.    Ms. Lani Starr attested to the character and sincerity of the Applicant and supported the Application. Ms. Starr stated that expansion of Haumana Road should be considered for public response vehicle access. (See Exhibit C, pages 70-71.)

23.    The Commission engaged in a discussion on particular uses allowed on agricultural properties such as botanical gardens, the proposed capacity of the wastewater system, the adequacy of the fire suppression system, the potability of on-site water and the concerns raised by the State Department of Health and its Safe Drinking Water Branch and the Environmental Health Services Division/Maui Sanitation Branch.

24.    The Commission was concerned about the number of objection letters received from property owners in the nearby neighborhood and noted the paucity of support letters from adjacent neighbors.  The Commission inquired about the efforts the Applicant made to contact adjacent neighbors who had concerns about this Application.

25.    Deputy Corporation Counsel Richelle Thomson provided information about the Religious Land Use and Institutional Persons Act ("RLUIPA"), in order that the Commissioners

# EXHIBIT "D"

were aware of RLUIPA and its potential applicability to the Commissioners' analysis of the Application.

26.   The Commission went into executive session from approximately 3:52 PM to 4:31 PM, and the meeting reconvened at 4:32 PM.

27.   The Department gave its Recommendation to the Commission recommending approval of the Application with 21 conditions.

28.   Commission Freitas made a motion to deny the SUP2 based upon concerns about the safety of pedestrians, motorists, and residents on Haumana Road should this Application be approved.  (See Exhibit C, page 80.)

29.   Commission Wakida expressed concerns about traffic safety on Haumana Road and also was concerned about issues raised on the availability of potable water and the capacity of the wastewater system.  (See Exhibit C, page 80.)

30.   Commission Medeiros seconded the motion to deny based upon concerns about the increase in traffic along Haumana Road and impacts to human health and safety.  (See Exhibit C, pages 80-81.)

31.   After deliberation, the Commission voted to deny the Applicant's request for a State Land Use Commission Special Permit (SUP2).  There were six (6) ayes voting for denial with two (2) excused.  Assenting to Motion to Deny – J. Freitas, J. Medeiros, M. Tsai, S. Duvauchelle, P. Wakida, W. Shibuya.  Excused – K. Ball, W. Hedani.

32.   The Applicant by letter requested that his denial be reviewed and rescinded by the Maui Planning Commission and that the SUP2 be reviewed with additional information regarding the Application.  (See Exhibit D – Supplement 9.)

33.   The following item was placed on the agenda for the April 8, 2014, Maui Planning Commission meeting: "Notice of Motion to Rescind or Motion to Amend the State Land Use Commission Special Use Permit denial action by the Maui Planning Commission on March 25,

# EXHIBIT "D"

2014, to operate a classroom and hold Spirit of Aloha Temple church services with church related events such as weddings in the State and County Agricultural Zoning Districts on approximately 11 acres of land located at 800 Haumana Road, TMK: 2-8-004: 032, Haiku, Island of Maui."

34.    Commission members present at the April 8, 2014, Commission meeting were Chair Ivan Lay, Vice-Chair Keone Ball, Jason Medeiros, Penny Wakida, Maxwell Tsai, Wayne Hedani, Richard Higashi, and Jack Freitas.    Commission member excused was Sandra Duvauchelle.

35.    Supplements 9 - 12 were submitted to the Maui Planning Commission to add to the record.    Supplements included: letter from Applicant; additional agency comments; and, additional support and objection letters. (See Exhibit D.)

36.    Numerous individuals testified in support and opposition of the Application.    (A copy of the minutes of the April 8, 2014, Commission meeting is attached hereof as Exhibit E.)

37.    Mr. William Knowlton of 380 N. Holokai Road spoke about advertisements for yoga retreats, transient vacation rentals, and weddings for the Property which he believed are not legally allowable uses on the Property.    Mr. Knowlton testified as to the Applicant's prior requests for approval of a helicopter pad and transient vacation accommodations. (See Exhibit E, pages 6-7.)

38.    The Applicant spoke to his request for rescission of the May 25, 2014 denial and subsequent reconsideration of his Application and spoke to the merits of the Application. The Applicant submitted a reduction in Special Events as follows: 6 programs per month for up to 4 hours and for up to 24 participants, from 10 a.m. to 4 p.m., and 2 programs per month for up to 6 hours and up to 40 participants (1 from 10 a.m. to 4 p.m., and 1 from 10 a.m. to 8 p.m.). (See Exhibit E, pages 9-11)

39.    Ms. Charlotte McLaughlin spoke to the merits of the Application opining that she believes that Haumana Road provided safe access to the Property. (See Exhibit E, pages 11-

# EXHIBIT "D"

12.)

40.   Ms. Lani Starr spoke to the merits of the Application opining that she believes Haumana Road provided safe access to the property and that the Application should be reviewed with particular attention to RLUIPA.  (See Exhibit E, pages 12-13.)

41.   Ms. Aerie Waters spoke to the merits of the Application opining that this Application should be considered under the rubric of RLUIPA.  (See Exhibit E, pages 13-14.)

42.   Mr. Sean Clancy stated that he would continue to read from a document prepared by the Applicant, stated that he was acquainted with the Applicant for four or five months, and that he was not a member of the Spirit of Aloha. Mr. Clancy spoke to the merits of the Application opining that this Application should be considered under the rubric of RLUIPA.  Mr. Clancy opined that safety concerns on  Haumana Road may be due to encroachment by adjoining property owners.  (See Exhibit E, pages, 14-16.)

43.   Mr. Kevin Hoeke testified that he had been a member of the Spirit of Aloha for many years.  He spoke to the merits of the Application, stating that the proposed uses are low impact, and that safety concerns regarding the Application had been addressed and confirmed by agency comment letters.  (See Exhibit E, pages 16-18.)

44.   Mr. Chaz Paul identified himself as a member of the Spirit of Aloha and testified to the merits of the Application opining that he believed greater attention should have been given to the connection of this Application with RLUIPA and that the Applicant was unable to give a full presentation of the May 25, 2014 meeting.  (See Exhibit E, pages 18-19.)

45.   Ms. Arjuna Nour stated that she has known the Applicant briefly and had been to the Property twice. She testified that she is not a member of the Spirit of Aloha. Ms. Nour continued to read from the Applicant's prepared statement and spoke to the merits of the Application opining on five reasons for the Commission to reconsider the project.  She opined that the photographs of Haumana Road portrayed the road as being narrower than it actually is.

EXHIBIT "D"

(See Exhibit E, pages 19-21.)

46. The Commission voted to go into Executive Session, pursuant to Section 92-5(4), HRS, to consult with its attorney regarding the Commission's powers, duties, privileges, immunities, and liabilities as relating to the implications on the Commission's analysis of the Application pursuant to RLUIPA, Religious Land Use and Institutionalized Persons Act.

47. Ms. Nancy Gilgoff of 411 Haumana Road testified as to her concerns about the safety of Haumana Road during a storm/rain period. She showed a brief video of road conditions during a rain event opining that these conditions were challenging to road safety for drivers and potential visitors to the Property. Ms. Gilgoff testified that the road is one lane only in areas, with blind curves, and that children walk home from school along the road. (See Exhibit E, pages 21-23.)

48. Ms. Teresa Hill testified in support of the Application opining that she has driven Haumana Road and believes it to be safe and easy to drive. Ms. Hill presented photos that she testified were taken by the Applicant. (See Exhibit E, pages 23-27.)

49. Ms. Lisa Kasprizyeki former tenant at 411 Haumana Road testified as to her concerns about roadway safety especially to people unfamiliar with Haumana Road. (See Exhibit E, pages 27-28.)

50. Mr. Daniel Mizner of 455 Haumana Road spoke to his concerns over the Application and specifically about road safety and indicated that in his opinion nothing had changed since the March 25, 2014, MPC meeting to retract or change his concerns about the Application. (See Exhibit E, page 28.)

51. The Maui County Department of Public Works provided information that Haumana Road is 11 to 18 feet wide, and the standard rural/agricultural road is 22 feet wide, with a total 40 foot right of way.

52. Public testimony was closed.

53. Commissioner Madeiros made a Motion to Rescind the March 25, 2014, denial by

EXHIBIT "D"

the Commission.

54.   Commissioner Hedani seconded the Motion.

55.   The Motion to Rescind the Denial passed by a vote of 5 to 1 with 2 excused. Assenting – J. Madeiros, W. Hedani, M. Tsai, P. Wakida, and R. Higashi.   Dissenting – J. Freitas.   Excused – S. Duvauchelle, I. Lay.

56.   The Applicant, along with Mr. Hoeke proceeded to give a detailed review of the Application and the proposed uses, addressing Haumana Road safety concerns, traffic, Spirit of Aloha Temple goals, drinking water availability, wastewater capacity, food sustainability, and comments from the Fire and Police Departments.

57.   The Applicant presented his PowerPoint presentation describing the Property and goals for the Spirit of Aloha Temple and Gardens.

58.   Mr. Hoeke orally amended the Application to reduce the proposed number of Special Events to include eight (8) events per month with a maximum of ten (10) cars per event. Two (2) of these events could have up to 40 people and the remaining six (6) events could have up to 24 people. Seven of the 8 events would end by 4 p.m., with the remaining event ending by 8 p.m.  (See Exhibit E, pages 40-41.)

59.   Further discussion involved details of on-site water potability and written comments from the Department of Health.

60.   Further discussion involved the use of the Property for botanical tours and the details of such tours.

61.   Further discussion involved control over limiting the number of vehicles that could be traveling to the Property for events, event noise control, land stewardship, and archaeological review of historical sites identified on Property including taro fields.

62.   The Department of Planning recommended approval of the Application, subject to conditions. Department Planner Kurt Wollenhaupt began to review potential conditions of

# EXHIBIT "D"

approval for the Application with Commission discussion focused on enforcement of potential conditions and on revising the number of permitted Special Events on Property.

63. After Commission deliberation, Commissioner Freitas made a Motion to Deny the Application for an SUP2 permit with a Second made by Commissioner Hedani. (See Exhibit E, page 78.)

64. Commissioner Medeiros dissented on the proposed Motion to Deny opining that permitting a reduced number of events per year would be his preference and that he recognized the unique position of religious organizations. (See Exhibit E, page 78.)

65. Commissioner Freitas indicated that his Motion to Deny was based upon safety concerns regarding passage of visitors along Haumana Road to the Property for the uses proposed under the Application. (See Exhibit E, page 78.)

66. Commissioner Hedani opined that granting this permit would affect every single property along Haumana Road. He commented upon safety issues of Haumana Road, blind curves and narrowness of the Road, and potential pedestrian safety concerns. He opined that permit conditions would be difficult to enforce and that Haumana Road is too dangerous to allow an increase in traffic. (See Exhibit E, page 78-79.)

67. The Motion to Deny the State Land Use Commission Special Use Permit vote passed as follows. Assenting – J. Freitas, W. Hedani. Abstaining – M. Tsai, I. Lay, K. Ball. Dissenting – J. Medeiros, P. Wakida, R. Higashi. Excused – S. Duvauchelle. By the Maui Planning Commission Rules of Practice and Procedure, an abstention without a valid conflict of interest counts as a vote in favor of the motion being considered.

68. The Commission finds that there is evidence of record that the proposed uses expressed in this Application should they be approved would increase vehicular traffic on Haumana Road, which is narrow, winding, one-lane in areas, and prone to flooding in inclement weather. The Commission finds that Haumana Road is regularly used by pedestrians, including children who use the road to access the bus stop at the top of the road. The Commission finds

# EXHIBIT "D"

that granting the Application would adversely affect the health and safety of residents who use the roadway, including endangering human life. The Commission finds that the health and safety of the residents' and public's use of Haumana Road is a compelling government interest and that there is no less restrictive means of ensuring the public's safety while granting the uses requested in the Application.

69.     The Commission received evidence that the Property was being used for agricultural purposes in keeping with the uses allowed under the State Land Use Agricultural District.

70.     Any proposed findings of fact submitted by the Applicant or Petitioner not already ruled upon by the Commission by adoption herein, or rejected by clearly contrary findings of fact herein, are hereby denied and rejected.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Commission hereby enters the following Conclusions of Law:

1.     To the extent that any conclusion of law is more property characterized as a finding of fact, the Commission adopts it as such.

2.     Section 205-6, Hawaii Revised Statutes, states that the county planning commission may permit certain unusual and reasonable uses within the agricultural and rural districts other than those for which the district is classified.

3.     Section 15-15-95 of the Hawaii Administrative Rules, lists the following guidelines established in determining an "unusual and reasonable use."

> (1)     The use shall not be contrary to the objectives sought to be accomplished by chapters 205 and 205A, HRS, and the rules of the Land Use Commission;

# EXHIBIT "D"

(2)   The desired use would not adversely affect surrounding property;

(3)   The use would not unreasonably burden public agencies to provide roads and streets, sewers, water, drainage, and school improvements, and police and fire protection;

(4)   Unusual conditions, trends and needs have arise since the district boundaries and rules were established; and,

(5)   The land upon which the proposed use is sought is unsuited for the uses permitted within the district.

4.   After hearing testimony from neighbors that live adjacent to or nearby the Property, and after questioning of the Applicant and Consultant, the Commission concluded that the uses requested in the Application did not constitute an "unusual and reasonable" use in the Agricultural district.

5.   The Commission found that the uses proposed in the Application would adversely affect the surrounding properties, in conflict with 15-15-95(2), HAR. The Commission received substantial negative written testimony from nearby property owners on Haumana Road and North Holokai Road.   Additionally, during the hearing, nearby property owners submitted additional oral, visual, and written testimony regarding concerns about the safety of Haumana Road for both potential visitors to the Property and property owners along Haumana Road. The Commission found such testimony reliable and compelling.

6.   The Commission found that granting the uses would increase traffic and burden public agencies providing roads and streets, police, and fire protection, in conflict with 15-15-95(3), HAR, and gave the following reasons for a denial of the Application on that basis: significant concerns about the narrowness of Haumana Road and vehicle and pedestrian safety both of potential visitors to the Property and property owners along Haumana Road and the fact that the Property is at the terminus of Haumana Road and therefore traffic to the Property would negatively impact residents' safety and use of Haumana Road.

# EXHIBIT "D"

7.    The Commission received no evidence that unusual conditions, trends and needs had arisen since the State Land Use district boundaries and rules were established.

8.    The Commission found that agricultural uses on the Property are not precluded by the current condition of the Property which conflicts with Section 15-15-95, HAR, in determining whether an "unusual and reasonable use" should be allowed under a Special Permit, as the land which the proposed use is sought is suitable for the uses allowed in the Agricultural District.

9.    The Religious Land Use and Institutional Persons Act ("RLUIPA"), 42 U.S.C. §2000cc(a)(1), requires that a state or local government may not impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution unless the government demonstrates that the burden is in furtherance of a compelling governmental interest and is the "least restrictive means" of furthering that interest. The Commission found that the county has a compelling interest in protecting the health, lives, and safety of the public. The Commission further found that Haumana Road did not meet the standard requirements regarding width of agricultural or rural roads, and additionally that it was one lane in sections and winding, which impaired sight distance and accessibility. The Commission further found that there were compelling public health and safety issues implicated by the likely significant increase in traffic attributable to the uses proposed by the Application, creating conditions that would be foreseeably dangerous or potentially deadly to drivers and pedestrians, including children walking on the road to and from the bus stop at the top, using the small rural roadway. The Commission found that inclement weather would increase the likelihood of accidents and human injuries or death. The Commission found that these compelling public health and safety issues could not be adequately addressed by the implementation of any permit condition or use restriction.

10.    If any Conclusion of Law is later deemed to be a Finding of Fact, it shall be so deemed.

EXHIBIT "D"

11.   The effective date of this Decision and Order is April 8, 2014.

## DECISION AND ORDER

Therefore, pursuant to the authority of the Commission as set forth in Section 205-6, Hawaii Revised Statutes, Fredrick R. Honig/Spirit of Aloha Temple's request for a State Land Use Commission Special Permit at 800 Haumana Road, Haiku, Maui, Hawaii is hereby DENIED.

The Commission's action to deny the Application and effective date of this Decision and Order is April 8, 2014.

The parties are advised of their right to appeal this Decision and Order pursuant to Section 91-14, Hawaii Revised Statutes, and Section 12-201-32, Rules of Practice and Procedure for the Maui Planning Commission.

Dated this ___28th___ day of _October_, 2014, Wailuku, Maui, Hawaii.

# EXHIBIT "D"

**IN AGREEMENT**

JOHN "KEONE" BALL
Acting Chairman
Maui Planning Commissioner

JACK FREITAS
Maui Planning Commissioner

WAYNE HEDANI
Maui Planning Commissioner

**ABSTAINED/DID NOT VOTE**

ABSTAINED/DID NOT VOTE

MAXWELL "MAX" TSAI
Maui Planning Commissioner

ABSTAINED/DID NOT VOTE

IVAN LAY
Maui Planning Commissioner

**NOT IN AGREEMENT**

JASON MEDEIROS
Maui Planning Commissioner

PENNY WAKIDA
Maui Planning Commissioner

RICHARD HIGASHI
Maui Planning Commissioner

**NOT PRESENT/EXCUSED ABSENCE**

NOT PRESENT/EXCUSED ABSENCE

SANDRA DUVAUCHELLE
Maui Planning Commissioner

**EXHIBIT "D"**

## CERTIFICATE OF SERVICE

In The Matter of The Application of

**FREDRICK R. HONIG**
**SPIRIT OF ALOHA TEMPLE**

To Obtain a State Land Use Commission
Special Use Permit to Operate a Classroom
and hold Spirit of Aloha Temple Church
Services with Church Related Events such
as Weddings in the State and County
Agricultural Zoning Districts on
Approximately 11 Acres of Land Located at
800 Haumana Road, Haiku, Maui, Hawaii;
Maui Tax Map Key No. (2) 2-8-004:032

DOCKET NO.
SUP2 2012/0032

FREDRICK R. HONIG
SPIRIT OF ALOHA TEMPLE

Findings of Fact, Conclusions of Law and
Decision and Order Denying Docket No.
SUP2 2012/0032; Certificate of Service

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was duly served today, in the manner

indicated below, upon the following parties by depositing the same with the U.S. mail, postage

prepaid, addressed as follows:

FREDRICK R. HONIG
800 Haumana Road
Haiku, HI 96708

By Certified Mail No. <u>7013 1710 0002 37</u>90 9220
(Return Receipt Requested)

Dated: Wailuku, Maui, Hawaii, <u>October 30,</u> , 2014

**WILLIAM SPENCE**
Director of Planning
Department of Planning
County of Maui

(SUP2 2012/0032)
(K:\WP_DOCS\PLANNING\SUP2\2012\0032_SpiritofAlohaTemple\Legal_Documents\Decision_&_Order_Spirit_Aloha_MPC_28-Oct-2014.doc)

# EXHIBIT "D"

EXHIBIT "B"

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 41 of 81   PageID
Case 1:14-cv-00535-SOM-RLP   Document 406   Filed 01/27/16   Page 1 of 38   PageID #:
1243

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SPIRIT OF ALOHA TEMPLE AND FREDRICK R. HONIG, | ) ) ) | CIVIL NO. 14-00535 SOM/RLP |
| Plaintiffs, | ) ) ) | ORDER GRANTING MOTION TO DISMISS AND/OR FOR PARTIAL SUMMARY JUDGMENT |
| vs. | ) ) | |
| COUNTY OF MAUI AND MAUI PLANNING COMMISSION, | ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING MOTION TO DISMISS AND/OR FOR PARTIAL SUMMARY JUDGMENT**

**I.      INTRODUCTION.**

Plaintiffs Spirit of Aloha Temple and Fredrick R. Honig applied for a State Land Use Commission Special Permit to build a church and hold religious events on a parcel of land located in the County of Maui. After the application was denied by Defendant Maui Planning Commission, Plaintiffs filed their Complaint in this court, asserting federal and state claims against both the Planning Commission and Defendant County of Maui.

Before the court is Defendants' Motion to Dismiss and/or for Partial Summary Judgment, requesting that the Planning Commission be dismissed from the action, or all claims against it be dismissed with prejudice. The motion to dismiss is granted.

**EXHIBIT "D"**

## II.        BACKGROUND.

Spirit of Aloha is a 501(c)(3) tax-exempt organization that was incorporated as a church in 2007 to promote "Integral Yoga." See ECF No. 1, PageID #s 5, 7. Honig is a licensed minister and teacher of Integral Yoga. See id., PageID # 6.

Spirit of Aloha owns an eleven-acre parcel located in Haiku, Maui. See id., PageID # 9. The parcel is zoned "Agriculture" and is in a Special Management Area. See id. The property is being used for limited "secular" purposes, including a botanical garden, bird sanctuary, and staff housing. See id.

In 2010, Plaintiffs applied for a special use permit to use the property as a church. See id., PageID #s 10-11. Churches are permitted as a special use in an agricultural district. See id., PageID # 13. Plaintiffs propose to use the property for religious services, meetings, lectures, and events such as weddings. See id., PageID #s 10-11. Plaintiffs' application was denied by the Planning Commission on various grounds. See id., PageID #s 10-11.

On November 21, 2012, Plaintiffs filed another application for a special permit to use the property for the same religious purposes. See id., PageID # 10. The Maui Planning Department issued a report and recommendation that the permit be issued. See id., PageID # 22. However, after a public hearing in which several residents in the surrounding area expressed

2

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 43 of 81   PageID
Case 1:14-cv-00535-SOM-RLP   Document 104   Filed 01/27/16   Page 3 of 38   PageID #:
1245

concern about road safety given increased traffic to and from the
property, various zoning violations by Plaintiffs, and the impact
of increased numbers of visitors on community resources, see id.,
PageID #s 26-27, the Planning Commission voted to deny the
application, see id., PageID # 28.  The Planning Commission set
forth its findings and conclusions in its Decision and Order of
October 30, 2014 ("October 2014 Decision").  See id., PageID #s
29-30.

　　　After its application was denied, Plaintiffs chose not
to seek review of the October 2014 Decision in state court under
Haw. Rev. Stat. § 91-14.  Instead, Plaintiffs filed their
Complaint in this court on November 26, 2014.  See ECF No. 1.
The Complaint asserts claims for violations of federal law under
the Religious Land Use and Institutionalized Persons Act of 2000
and 42 U.S.C. § 1983, and violations of the Hawaii constitution.
See id., PageID #s 35-44.  In addition, Count X seeks review of
the Planning Commission's October 2014 Decision pursuant to Haw.
Rev. Stat. § 91-14.[1]  See id., PageID # 44.  Plaintiffs seek
monetary damages, injunctive relief, and attorney's fees from
both the County and the Planning Commission.  See id., PageID #s
44-46.

---

[1]    The numbering of the counts in the Complaint includes
an error, as the Complaint does not include a Count III.  ECF No.
1, PageID # 36.  This order uses the count numbers in the
Complaint.

3

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 44 of 81      PageID
Case 1:14-cv-00535-SOM-RLP   Document 106   Filed 01/27/16   Page 4 of 38     PageID #:
1246

Defendants filed the present motion to dismiss the Planning Commission because it is not an independent legal entity that can be sued separately from the County.  See ECF No. 33, PageID # 146.

**III.      STANDARD.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  Courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted

4

**EXHIBIT "D"**

deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. <u>Sprewell</u>, 266 F.3d at 988; <u>Syntex Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); <u>accord</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. The complaint must "state a

**EXHIBIT "D"**

claim to relief that is plausible on its face." Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## IV.      ANALYSIS.

### A.   Dismissal of Counts I to IX Against the Planning Commission.

Defendants seek dismissal of all claims against the Planning Commission, arguing that the Planning Commission is not an independent legal entity apart from the County that is capable of being sued.  See ECF No. 33, PageID # 154.  The parties appear to have agreed that the Planning Commission can be dismissed as a party as to Counts I through IX.  At the hearing on the motion, Plaintiffs stated they would agree to the dismissal of these counts if the County agreed to stand by any judgment or injunctive order applicable to the Planning Commission.  See ECF No. 47, PageID #s 220-23; ECF No. 80, PageID # 521.  The County agreed to this proposal.  See ECF No. 80, PageID # 522.  Under these circumstances, the court grants Defendants' motion to dismiss the Planning Commission as a Defendant in Counts I to IX. Counts I to IX remain pending against the County.

### B.   Count X.

Count X seeks appellate review of the October 2014 Decision pursuant to Haw. Rev. Stat. § 91-14.  See ECF No. 1,

6

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 47 of 81   PageID
#: 4069
Case 1:14-cv-00535-SOM-RLP   Document 109   Filed 01/27/16   Page 7 of 38   PageID #:
1249

PageID #s 40-44.  Defendants argue that this court lacks the
jurisdiction to entertain such an action.  See ECF No. 52, PageID
#s 241, 244-45.  This court concludes that it has supplemental
jurisdiction over Count X.  However, this court declines to
exercise its discretion to retain supplemental jurisdiction over
the claim.

### 1.   The Court Has Supplemental Jurisdiction over Count X.

City of Chicago v. International College of Surgeons,
522 U.S. 156 (1997), addressed whether a federal district court
may exercise supplemental jurisdiction over a claim seeking
federal court review of a state administrative agency action.
Id. at 174.  The City of Chicago had removed to federal court a
lawsuit that included claims raising federal questions as well as
state-law claims seeking review of a city agency's denial of the
plaintiff's request to redevelop two historic buildings.  Id. at
159-61.  The city argued that the applicable ordinance, which
resembles Haw. Rev. Stat. § 91-14 in providing that judicial
review of a municipal agency decision lies with the state court,
deprived the federal district court of jurisdiction to conduct
deferential appellate review of the agency action.  Id. at 159,
166.  The federal district court exercised supplemental
jurisdiction over the state-law claims and ruled on them.  Id. at
161.  The Seventh Circuit reversed and remanded the case to state
court, concluding that the district court had been without

7

# EXHIBIT "D"

jurisdiction.  Id.

The Supreme Court reversed.  Id. at 174.  The Court explained that a federal district court has supplemental jurisdiction to review state administrative challenges so long as those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Id. at 165 (quoting 28 U.S.C. § 1367).

The Court nonetheless clarified that just because a district court may exercise supplemental jurisdiction over a cross-system appeal does not mean that it always should.  The Court noted that a federal district court's decision to assert supplemental jurisdiction was a discretionary one:

> Of course, to say that the terms of § 1367(a) authorize the district courts to exercise supplemental jurisdiction over state law claims for on-the-record review of administrative decisions does not mean that the jurisdiction must be exercised in all cases.  Our decisions have established that pendent jurisdiction "is a doctrine of discretion, not of plaintiff's right," [United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)], and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons, id., at 726-27.

522 U.S. at 172-73 (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("As articulated by Gibbs, the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in

8

**EXHIBIT "D"**

the manner that most sensibly accommodates a range of concerns and values.")).

In addition, <u>City of Chicago</u> noted that principles of comity may warrant abstention:

> In addition to their discretion under § 1367(c), district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by this Court applies. Those doctrines embody the general notion that "federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, for example where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996) (citations and internal quotation marks omitted).

522 U.S. at 174. The Court cautioned that "there may be situations in which a district court should abstain from reviewing local administrative determinations even if the jurisdictional prerequisites are otherwise satisfied." <u>Id.</u>

There is no dispute that this court has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331. Accordingly, under <u>City of Chicago</u> and 28 U.S.C. § 1367, this court may exercise supplemental jurisdiction over the state administrative claim so long as it and the other claims "form part of the same case or controversy," as evidenced by the sharing of a common nucleus of operative facts. 28 U.S.C.

**EXHIBIT "D"**

§ 1367; City of Chicago, 522 U.S. at 165.  The state administrative review claim and the federal claims in this action share a common nucleus of operative facts; they all arise out of Plaintiffs' attempts to obtain a special use permit to use its property as a church.

Defendants do not attack this aspect of the jurisdictional analysis, but maintain that there are other problems requiring this court to refrain from exercising supplemental jurisdiction over Count X.  Defendants allege that Plaintiffs' appeal of the October 2014 Decision was untimely and inadequate.  They note that Rule 72 of the Hawaii Rules of Civil Procedure required Plaintiffs to satisfy several steps, including the filing of its appeal within thirty days of the October 2014 Decision, the serving of a certified copy of the notice of appeal on Defendants, and the designating of the record on appeal. Defendants contend that these requirements have not been met. See ECF No. 52, PageID #s 242-43.

It is clear, however, that at least in this court it is the Federal Rules of Civil Procedure that govern Count X, not the Hawaii Rules of Civil Procedure.  See, e.g., Nathan v. Boeing Co., 116 F.3d 422, 423 (9th Cir. 1997) (Federal Rules of Civil Procedure govern state law claims over which courts have supplemental jurisdiction); Laidlaw Waste Sys., Inc. v. Mallinckrodt, Inc., 925 F. Supp. 624, 634 (E.D. Mo. 1996)

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 51 of 81      PageID
#: 1053
Case 1:14-cv-00535-SOM-RLP   Document 109-3   Filed 01/27/16   Page 11 of 38      PageID #:
1253

("Federal courts apply the Federal Rules of Civil Procedure to
matters of procedure when considering non-federal questions,
whether in a diversity action or as here when a state claim is
heard under supplemental jurisdiction."); New.Net, Inc. v.
Lavasoft, 356 F. Supp. 2d 1090, 1099 (C.D. Cal. 2004) (same).

There is no federal equivalent to Rule 72 of the Hawaii
Rules of Civil Procedure.  Plaintiffs say that it would be absurd
to require them to perfect their appeal in this court by
preparing and presenting a designation to the clerk of the state
circuit court, as required by Rule 72 of the Hawaii Rules of
Civil Procedure.  See ECF No. 55-1, PageID # 261.  This court
concludes that Plaintiffs' noncompliance with Rule 72 does not
affect this court's jurisdiction over Count X.

While this court concludes that it has the power to
exercise supplemental jurisdiction in this case, that does not
mean this court should exercise that power.

### 2. The Court Declines to Exercise Supplemental Jurisdiction Over the State Law Claims.

Unlike federal question or diversity jurisdiction,
supplemental, or pendent, jurisdiction is not mandatory.  The
power to adjudicate state-law claims "need not be exercised in
every case in which it is found to exist.  It has consistently
been recognized that pendent jurisdiction is a doctrine of
discretion, not of plaintiff's right." Gibbs, 383 U.S. at 726.
In weighing whether to exercise supplemental jurisdiction over a

11

# EXHIBIT "D"

state-law claim, courts should factor in "considerations of judicial economy, convenience and fairness to litigants . . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."

Id.

Under 28 U.S.C. § 1367(c), a court may decline to exercise supplemental jurisdiction over a state-law claim if:

> (1)  the claim raises a novel or complex issue of State law,
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or
> (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

City of Chicago noted that the "statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" 522 U.S. at 173 (citation omitted).

"Each of the section 1367(c) bases is an independent reason through which a court may decline supplemental jurisdiction." Wisey's # 1 LLC v. Nimellis Pizzeria LLC, 952 F. Supp. 2d 184, 189 (D.D.C. 2013).

**EXHIBIT "D"**

Gase 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 53 of 81   PageID
#: 4695
Case 1:14-cv-00535-SOM-RLP   Document 105   Filed 01/27/16   Page 13 of 38   PageID #:
1255

###### a.   § 1367(c)(1).

Section 1367(c)(1) asks if the state-law claim presents novel and complex issues of state law.  Count X does.

Plaintiffs say there is nothing novel about the state-laws issues in this case, given the more than a thousand Hawaii cases that refer to Haw. Rev. Stat. § 91-14.  See ECF No. 91, PageID # 823.  This argument is inapposite.  Haw. Rev. Stat. § 91-14 merely provides the procedural requirements a party must follow, and the standards of review a state circuit court must apply when it considers an appeal from an administrative agency's decision.  Haw. Rev. Stat. § 91-14 says nothing about the substantive law in each case, which is what this court must analyze in determining whether there are novel or complex issues of state law under § 1367(c)(1).

The state law implicated in Count X is clearly complex.  Although Plaintiffs characterize the October 2014 Decision as being as "mundane an administrative decision as one finds in municipal decision-making," see ECF No. 91, PageID # 820, Plaintiffs seek a special use permit in a special management area for a religious use.  This is not the typical appeal.

In fact, Plaintiffs acknowledge in their Complaint that the Planning Commission could only grant a special use permit if all of the following criteria were met:

> 1.   The proposed request meets the intent of
>      the general plan and the objectives and

# EXHIBIT "D"

policies of the applicable community plan of the county;

2. The proposed request is consistent with the applicable community plan land use map of the county;

3. The proposed request meets the intent and purpose of the applicable district;

4. The proposed development will not adversely affect or interfere with public or private schools, parks, playgrounds, water systems, sewage and solid waste disposal, drainage, roadway and transportation systems, or other public requirements, conveniences and improvements;

5. The proposed development will not adversely impact the social, cultural, economic, environmental, and ecological character and quality of the area;

6. That the public shall be protected from the deleterious effects of the proposed use;

7. That the need for public service demands created by the proposed use shall be fulfilled; and

8. If the use is located in the state agricultural and rural district, the commission shall review whether the use complies with the guidelines established in section 15-15-95 of the rules of the land use commission of the State.

See ECF No. 1, PageID #s 15-16 (alleging that "Maui County Code § 19.510.070(B) states that the standards for a special use permit to be used by the planning commission required that each of the following criteria must be met"). This list of criteria makes it clear that the reviewing court must engage in a

14

**EXHIBIT "D"**

complicated assessment of multiple factors that are not only highly factual, but also involve the interplay among various state, county, and community land use policies.  By itself, section 19.510.070(B) raises complex issues of state and local law.

However, because Plaintiffs' property is located in a state agricultural district, this court would additionally have to review the Planning Commission's decision in light of the guidelines established in section 15-15-95 of the rules of the State of Hawaii's Land Use Commission.  See Maui County Code § 19.510.070(B); Haw. Admin. R. § 15-15-95.  Section 15-15-95(c) required the Planning Commission to determine whether Plaintiffs' proposal was an "unusual and reasonable use" under the following guidelines:

(1)   The use shall not be contrary to the objectives sought to be accomplished by chapters 205 and 205A, HRS, and the rules of the commission;

(2)   The proposed use would not adversely affect surrounding property;

(3)   The proposed use would not unreasonably burden public agencies to provide roads and streets, sewers, water drainage and school improvements, and police and fire protection;

(4)   Unusual conditions, trends, and needs have arisen since the district boundaries and rules were established; and

(5)   The land upon which the proposed use is sought is unsuited for the uses permitted within the district.

Haw. Admin. R. § 15-15-95(c).

# EXHIBIT "D"

Gase 1:14-cv-00535-SOM-WRP    Document 215-5    Filed 02/14/19    Page 56 of 81    PageID
Case 1:14-cv-00535-SOM-RLP    Document 138    Filed 01/27/16    Page 16 of 38    PageID #:
1258

The need for this analysis, apart from further complicating this court's task, would also inject into the case what appears to be an unsettled issue of law.  In <u>Save Sunset Beach Coal. v. City & County of Honolulu</u>, 102 Haw. 465, 78 P.3d 1 (2003), the Hawaii Supreme Court instructed that "guidelines" in an ordinance or statute "denote individual factors that are not mandatory in themselves, but instead provide direction or guidance with respect to the ultimate decision[.]"  78 P.3d at 15.  Subsequently, in an unpublished opinion, the Hawaii Supreme Court relied on this proposition to hold that the Hawaii County Planning Commission's omission of a conclusion directly addressing the suitable-use guideline in Haw. Admin. R. § 15-15-95(b)(5) did not invalidate its decision.  See <u>Geiger v. Hawai'i County Planning Comm'n</u>, 109 Haw. 295, 125 P.3d 1060 (2005).[2]

---

[2] This court is aware of federal, Ninth Circuit, and Hawaii rules that prohibit the citation of unpublished opinions filed prior to a certain date as precedent.  See Fed. R. App. P. 32.1; Ninth Circuit Rule 36-3; Haw. R. App. P. 35(c)(1).  This court cites to <u>Geiger</u>, a 2005 unpublished Hawaii Supreme Court case, not for its precedential value, but instead to show that there appears to be a lack of precedent in Hawaii's appellate courts regarding whether Haw. Admin. R. § 15-15-95(c)(1) must be directly addressed by a planning commission in deciding a special use permit application.  Recognizing that Ninth Circuit Rule 36-1 and Rule 32.1 of the Federal Rules of Appellate Procedure do not speak to this citation, as they are limited to the citation of unpublished federal cases, this court acknowledges the citation restrictions in Rule 35(c)(1) of the Hawaii Rules of Appellate Procedure, but concludes that citing <u>Geiger</u> here does not conflict with the apparent purpose of that rule.

16

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 57 of 81   PageID
Case 1:14-cv-00535-SOM-RLP   Document 109   Filed 01/27/16   Page 17 of 38   PageID #:
1259

It is still unclear to this court, however, whether
section 15-15-95(1), unlike section 15-15-95(b)(5) and the other
"guidelines," must be directly addressed.  After all, section
15-15-95(c)(1) is distinct in that it uses the mandatory
directive "shall" in stating, "The use <u>shall</u> not be contrary to
the objectives sought to be accomplished by chapters 205 and
205A, HRS, and the rules of the commission."  (Emphasis added).
<u>See</u> <u>Malahoff v. Saito</u>, 111 Haw. 168, 191, 140 P.3d 401, 424
(2006), <u>as corrected</u> (Sept. 19, 2006) ("It is well-established
that, where a statute contains the word 'shall,' the provision
generally will be construed as mandatory.").  While section 15-
15-95(1) is an administrative rule rather than an ordinance or
statute, it appears to articulate a mandatory directive.

The Planning Commission, in denying the application,
cited to some of the guidelines set forth in Haw. Admin. R. § 15-
15-95 and concluded that the proposed use was not an "unusual and
reasonable use."  <u>See</u> ECF No. 76, PageID # 473.  But the Planning
Commission never directly addressed section 15-15-95(c)(1).  <u>See</u>
<u>id.</u>  If this court adjudicated the appeal, this court might have
to decide whether the Planning Commission's omission of a
conclusion directly addressing this subsection invalidated the
decision.  While a state court would similarly lack clear
guidance on this issue from the Hawaii Supreme Court, a state
trial court would know that its decision could be appealed to a

17

**EXHIBIT "D"**

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 58 of 81     PageID
Case 1:14-cv-00535-SOM-RLP   Document 109   Filed 01/27/16   Page 18 of 38     PageID #:
1260

state appellate court.  By contrast, in the absence of an

existing controlling state precedent, a federal district court

would hear from a state appellate court only if the federal

district court certified a question to the Hawaii Supreme Court.

     The obstacles to a special use permit are formidable.

As the Hawaii Supreme Court noted in <u>Curtis v. Board of Appeals,</u>

<u>County of Hawai'i</u>, 90 Haw. 384, 397, 978 P.2d 822, 835 (1999), <u>as</u>

<u>amended</u> (June 15, 1999), "such a permit is appropriate only in an

'exceptional situation' that does not contravene the general

purpose of an agricultural district."  Despite what Plaintiffs

say, Count X brings with it the need to engage in a complex

analysis of statutes, ordinances, and rules as applied to the

facts of this case, not to mention the policy objectives

influencing every level of state government.  Such novel and

complex state-law issues are better resolved, in the first

instance, in a state court.

          **b.   § 1367(c)(2).**

     Under § 1367(c)(2), this court may decline to exercise

supplemental jurisdiction over a state-law claim that

"substantially predominates over the claim or claims over which

the district court has original jurisdiction."  28 U.S.C.

§ 1367(c)(2).  "[I]f it appears that the state issues

substantially predominate, whether in terms of proof, of the

scope of the issues raised, or of the comprehensiveness of the

# EXHIBIT "D"

remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." Gibbs, 383 U.S. at 726. This court concludes that Count X substantially predominates over the claims over which the district court has original jurisdiction.

First, Count X substantially predominates in terms of "the scope of the issues raised." Indeed, the heart of Plaintiffs' Complaint is that the Planning Commission's denial of their special use permit application was unconstitutional:

> Plaintiffs allege that the Planning Commission's denial of the Permit—which satisfied all criteria under the relevant zoning regulations—was based on misapplication of state and local laws, ad hoc factors specifically and specially designed to prevent religious exercise on the Property, and unequal treatment as compared to similarly situated entities in Maui County.
>
> Plaintiffs further allege that the denial of the Permit, which would allow Plaintiffs to operate a place of worship for religious observance, services and education, substantially burdens the Plaintiffs' religious exercise without using the least restrictive means of achieving the compelling governmental interest that the Planning Commission alleges exists to deny the Permit.
>
> Plaintiffs also allege that the Planning Commission's application of unwritten and ad hoc "standards," particularly with respect to traffic standards, to deny the Permit constitutes a prior restraint on the Plaintiffs' protected First Amendment activity, does not provide reasonable notice to Permit applicants of whether proposed places of worship meet the standards for a

**EXHIBIT "D"**

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 60 of 81   PageID
Case 1:14-cv-00535-SOM-RLP   Document 106   Filed 01/27/16   Page 20 of 38   PageID #:
1262

> Permit, and is therefore vague and allows for
> unbridled discretion on the part of the
> Commission.

ECF No. 1, PageID #s 3-4.

For instance, Plaintiffs' federal claim for

unconstitutional prior restraint, in violation of 42 U.S.C.

§ 1983, alleges:

> The standards set forth in the County of
> Maui's zoning regulations governing special
> permits for places of worship, and the
> standards applied by the Commission in
> reviewing and denying Spirit of Aloha Temple
> and Frederick Honig's Special Use Permit do
> not provide a person of ordinary intelligence
> a reasonable opportunity to understand
> whether such land uses are permitted or
> prohibited and, as such, constitutes an
> unconstitutional prior restraint on
> Plaintiff's protected expression and
> religious exercise under the First Amendment.
> Such standards unconstitutionally afford the
> Commission unbridled discretion in its review
> of a Special Use Permit application for a
> place of worship.

See ECF No. 1, PageID # 37. This court, in fact, is unable to

discern from Plaintiffs' Complaint any theory of liability with

regard to the federal claims that does not rely on the October

2014 Decision.

Given these circumstances, if the court retained

supplemental jurisdiction over Count X, the court would likely

address the merits of the administrative appeal before addressing

the merits of the federal claims.  If this court affirmed the

October 2014 Decision, it is hard to see how Plaintiffs could

**EXHIBIT "D"**

Gase 1:14-cv-00535-SOM-WRP    Document 215-5    Filed 02/14/19    Page 61 of 81      PageID
Case 1:14-cv-00535-SOM-RLP    Document 103    Filed 01/27/16    Page 21 of 38      PageID #:
1263

succeed on their federal claims.

Second, Count X predominates in terms of "the comprehensiveness of the remedy sought." Plaintiffs' federal claims, although also seeking money damages, primarily seek to invalidate the October 2014 Decision, and to have their special permit application approved.

Third, even in terms of proof, the administrative appeal predominates, both because the federal claims turn on the administrative record, and because Count X would likely require the most extensive review of the administrative record. Haw. Rev. Stat. § 91-14 provides:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1)    In violation of constitutional or statutory provisions; or
> (2)    In excess of the statutory authority or jurisdiction of the agency; or
> (3)    Made upon unlawful procedure; or
> (4)    Affected by other error of law; or
> (5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Haw. Rev. Stat. § 91-14(g).

Count X alleges that the Planning Commission's decision

21

**EXHIBIT "D"**

was based on clearly erroneous findings.  <u>See</u> ECF No. 1, PageID # 40.  Under Haw. Rev. Stat. § 91-14(5), the reviewing court must determine whether the findings at issue are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."  That is, Count X requires a court to review the entire record to determine whether the Planning Commission's findings were clearly erroneous.  Although the administrative record is not presently before the court, the record apparently is voluminous, spanning seven years of proceedings, hearings, and other evidence, such as lengthy county and state agency comments, written testimony by various stakeholders, settlement agreements between the county and Spirit of Aloha, extensive draft and final plans, and other reports by local departments and the parties themselves.  <u>See</u> ECF Nos. 67-80; ECF No. 66, PageID # 340.

Relatedly, the Hawaii Supreme Court has instructed, with regard to Haw. Rev. Stat. § 91-14:  "'Where the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action.'"  <u>Nihi Lewa, Inc. v. Dep't Of Budget And Fiscal Services</u>, 103 Haw. 163, 168, 80 P.3d 984, 989 (2003) (quoting <u>Agsalud v. Lee</u>, 66 Haw. 425, 430, 664 P.2d 734, 738 (1983)).  To accomplish what Plaintiffs request, which is the vacating of the Planning Commission's decision, this court would first have to consider whether there were other factual or legal reasons to affirm the

22

# EXHIBIT "D"

Planning Commission's ruling, which would necessitate an exhaustive legal and factual inquiry. The court points this out not in aid of skirting any duty, but rather as strong evidence that Count X predominates over the federal claims.

### c.   Other factors.

Comity presents another reason for this court to decline jurisdiction over this cross-system appeal. "Comity 'reflects a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.'" Levin v. Commerce Energy, Inc., 560 U.S. 413, 130 S.Ct. 2323, 2330 (2010). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." Thatcher Enterps. v. Cache Cnty. Corp., 902 F.2d 1472, 1478 (10th Cir. 1990).

Comity is especially important when a state claim concerns an area of substantial state or local interest such as land use planning. Cf. Mission Oaks Mobile Home Park v. City of Hollister, 989 F.2d 359, 360 (9th Cir. 1993), overruled on other grounds by Green v. City of Tucson, 255 F.3d 1086 (9th Cir. 2001) (staying proceedings because they implicated important state interest in enforcing its own land use regulations). This court

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 64 of 81     PageID
Case 1:14-cv-00535-SOM-RLP   Document 196   Filed 01/27/16   Page 24 of 38     PageID #:
1266

is mindful that retaining Count X would not only deprive the
parties of the opportunity to litigate the claim before a state
circuit court that is more experienced in handling such matters,
it would also deprive the state appellate courts of the
opportunity to weigh in on the complex legal and factual issues
of state concern, if the decision were appealed.  This court once
again turns to the guidance provided in Gibbs, 383 U.S. at 726,
which stated, "Needless decisions of state law should be avoided
both as a matter of comity and to promote justice between the
parties, by procuring for them a surer-footed reading of
applicable law."

Nor does this court find that considerations of
fairness or convenience tip the balance in favor of retaining
jurisdiction.  Considerations of fairness would favor retention
of Count X if, for example, Plaintiffs were unable to pursue
their administrative appeal in another forum.  But this is not
the case.  Under 28 U.S.C. § 1367(d), the period of limitation is
tolled while Count X is pending in this court and for thirty days
after it is dismissed, unless state law provides for a longer
time period.  Plaintiffs therefore appear to be able to assert
Count X in state court upon dismissal by this court.

Furthermore, it is not at all clear that dismissing
Count X and staying the case will prejudice Plaintiffs.  The
record does not suggest that a dismissal by this court will

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP    Document 215-5    Filed 02/14/19    Page 65 of 81    PageID
Case 1:14-cv-00535-SOM-RLP    Document 109    Filed 01/27/16    Page 25 of 38    PageID #:
1267

materially delay resolution of Count X.  There is no reason for
this court to think that its own decision-making calendar is
different from that of a state court.  In fact, this court may
well take longer than a state court to reach a trial of this case
because federal trial dates in civil cases are on occasion
continued to allow the court to try criminal cases in accordance
with 18 U.S.C. § 3161.  By contrast, state circuit courts have
divisions reserved exclusively for civil cases that are not
susceptible to such delays and thus may be able to provide the
parties with firmer and earlier civil trial dates than this
court.

      Dismissal of Count X would not materially inconvenience
the parties.  Although Plaintiffs insist that dismissal of Count
X would result in the hardship of having to litigate on two
fronts, this is not the case.  As discussed below, the court
intends to stay the remaining claims pending the resolution in
state court of the administrative appeal.  Count X is more
properly addressed in state courts.

      **C.**    **This Court Abstains from Deciding The
Constitutional Issues Pending Resolution of Count
X in State Court.**

      Because the court declines to exercise supplemental
jurisdiction over Count X and dismisses it so that Plaintiffs may
raise the claim in state court, the court must decide whether it
should abstain from adjudicating and stay Plaintiffs' other

# EXHIBIT "D"

claims pending resolution of the administrative appeal.  Although the parties have not moved for abstention, federal courts may raise the issue <u>sua sponte</u>.  <u>See, e.g.</u>, <u>Bellotti v. Baird</u>, 428 U.S. 132, 143-44 n. 10 (1976).  This court has already permitted the parties to address the possibility of a stay, meaning that, while raising the issue <u>sua sponte</u>, this court is not deciding it <u>sua sponte</u>.

Plaintiffs, citing to 28 U.S.C. § 1367(d), submit that there is no reason to stay the other claims pending the resolution of the state administrative agency appeal because Plaintiffs "would likely not file such action in state court unless and until they were unsuccessful on their federal claims and after an appeal was decided."  <u>See</u> ECF No. 91, PageID # 829.

Section 1367(d) provides, "The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  28 U.S.C. § 1367(d).  If Plaintiffs do not file in state court until the federal claims are decided, their administrative appeal may well become time-barred.

Plaintiffs insist that, even if this court dismisses Count X, the statute of limitations will be tolled for as long as

**EXHIBIT "D"**

Case 1:14-cv-00535-SOM-WRP    Document 215-5    Filed 02/14/19    Page 67 of 81    PageID
#: 4069
Case 1:14-cv-00535-SOM-RLP    Document 159    Filed 01/27/16    Page 27 of 38    PageID #:
1269

the other claims remain pending in federal court.  For this
proposition, Plaintiffs cite to the California Court of Appeals'
statement in Kendrick v. City of Eureka, 98 Cal. Rptr. 2d 153,
154 (Cal. Ct. App. 2000), that "section 1367(d) continues to toll
the state statute of limitations during the federal appeal period
provided as a matter of statutory right, but tolling ceases once
the district court decision is affirmed by the federal appellate
court."

Plaintiffs assign broad meaning to Kendrick.  In making
the above statement, the California court was only noting that
§ 1367(d) tolls a state statute of limitations through an appeal
to a federal court of appeals, but not during the time until the
Supreme Court denies a petition for writ of certiorari.  Id. at
156-57.  Kendrick did not say that a limitations period is stayed
with respect to a dismissed claim when a litigant chooses to let
the thirty-day period in § 1367(d) expire with respect to a claim
that is arguably no longer "pending" in federal court.  Kendrick
does not address the issue of whether a claim can be said to be
"pending" once it is dismissed if the remainder of the case is
stayed and no appeal is taken from the partial dismissal.
Plaintiffs are free to rely on the possibility that the Ninth
Circuit will agree with them that Kendrick indeed stands for that
proposition, but if they consequently do not file an
administrative appeal within thirty days of dismissal, they may

27

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 68 of 81   PageID
Case 1:14-cv-00535-SOM-RLP   Document 109   Filed 01/27/16   Page 28 of 38   PageID #:
1270

be risking losing the opportunity for judicial review of the
October 2014 Decision.

This court analyzes the issue of whether to stay the
remaining claims in light of Railroad Commission of Texas v.
Pullman Co., 312 U.S. 496 (1941). A federal court may apply
Pullman abstention to "postpone the exercise of federal
jurisdiction when 'a federal constitutional issue . . . might be
mooted or presented in a different posture by a state court
determination of pertinent state law.'" VH Prop. Corp. v. City
of Rancho Palos Verdes, 622 F. Supp. 2d 958, 962 (C.D. Cal. 2009)
(quoting Pearl Inv. Co. v. City and Cnty. of San Francisco, 774
F. 2d 1460, 1462 (9th Cir. 1985), and C-Y Dev. Co. v. City of
Redlands, 703 F.2d 375, 377 (9th Cir. 1983)). Pullman abstention
is an "equitable doctrine that allows federal courts to refrain
from deciding sensitive federal constitutional questions when
state law issues may moot or narrow the constitutional
questions." San Remo Hotel v. City and Cnty. of San Francisco,
145 F.3d 1095, 1104 (9th Cir. 1998). It is also a discretionary
doctrine that flows from the court's equity powers. Potrero
Hills Landfill, Inc. v. Cnty. of Solano, 657 F.3d 876, 888 (9th
Cir. 2011) (citing Baggett v. Bullitt, 377 U.S. 360, 375 (1964),
and Smelt v. Cnty. of Orange, 447 F.3d 673, 678 (9th Cir. 2006)).

Pullman abstention is warranted if three conditions are
satisfied: "(1) the federal plaintiff's complaint requires

28

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 69 of 81   PageID
#: 4851
Case 1:14-cv-00535-SOM-RLP   Document 403-1   Filed 01/27/16   Page 29 of 38   PageID #:
1271

resolution of a sensitive question of federal constitutional law;
(2) the constitutional question could be mooted or narrowed by a
definitive ruling on the state law issues; and (3) the possibly
determinative issue of state law is unclear." <u>Potrero Hills
Landfill</u>, 657 F.3d at 888 (quoting <u>Spoklie v. Montana</u>, 411 F.3d
1051, 1055 (9th Cir.2005)).

This court has recently had occasion to abstain
pursuant to <u>Pullman</u> in an unrelated case in which a state
agency's ruling was at the core of the dispute. See <u>Bridge Aina
Le'a, LLC v. Hawaii Land Use Comm'n</u>, No. CIV. 11-00414 SOM, 2012
WL 1109046 (D. Haw. Mar. 30, 2012), <u>aff'd</u>, <u>Bridge Aina Le'a, LLC
v. Chock</u>, 590 Fed. Appx. 705 (9th Cir. 2014). The present case
similarly presents both federal constitutional law claims and
state-law claims relating to an administrative decision. <u>Pullman</u>
abstention is equally called for here.

### 1.   This Case Involves Sensitive Question of Federal Constitutional Law.

The Ninth Circuit has consistently held that "land use
planning is a sensitive area of social policy that meets the
first requirement for <u>Pullman</u> abstention." <u>San Remo Hotel</u>, 145
F.3d at 1105 (quoting <u>Sinclair Oil Corp. v. Cnty. of Santa
Barbara</u>, 96 F.3d 401, 409 (9th Cir. 1996), and citing <u>Sederquist
v. City of Tiburon</u>, 590 F.2d 278, 281-82 (9th Cir. 1978), and
<u>Rancho Palos Verdes Corp. v. City of Laguna Beach</u>, 547 F.2d 1092,
1094-95 (9th Cir. 1976)). <u>See also</u> <u>VH Prop.</u>, 622 F. Supp. 2d at

29

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 70 of 81   PageID
Case 1:14-cv-00535-SOM-RLP   Document 105-2 Filed 01/27/16   Page 30 of 38   PageID #:
1272

962.  This case directly implicates land use planning, as
Plaintiffs are asking this court to determine whether an action
taken by the Planning Commission violated various federal
constitutional rights as well as state law.  The first <u>Pullman</u>
requirement is therefore satisfied.

### 2.    A State Court Ruling May Narrow or Alter Some Federal Constitutional Issues.

The second <u>Pullman</u> abstention requirement involves a
"state law question that has the potential of at least altering
the nature of the federal constitutional questions." <u>C-Y Dev.</u>,
703 F.2d at 378.  "In land use cases, the Ninth Circuit has
frequently found this requirement satisfied where a favorable
decision on a state law claim would provide plaintiff with some
or all of the relief he seeks." <u>VH Prop.</u>, 622 F. Supp. 2d at
963.

In <u>VH Property</u>, the plaintiffs alleged that the City of
Rancho Palos Verdes had violated their rights under the United
States and California constitutions and California law by denying
land development applications submitted by VH.  <u>Id.</u> at 960.  The
court found the second requirement satisfied: "it is possible
that resolution of VH's state constitutional takings claim in its
favor will obviate the need to rule on its federal claims,
particularly if VH finds the compensation awarded by the state
court satisfactory." <u>Id.</u> at 963.  The court noted,
"Alternatively, the state court may issue a writ of mandamus

30

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 71 of 81      PageID
#: 4093
Case 1:14-cv-00535-SOM-RLP   Document 103   Filed 01/27/16   Page 31 of 38      PageID #:
1273

directing the City to approve VH's development plans, mooting

VH's federal claims to the extent they seek redress for a

permanent, rather than temporary, deprivation of property

rights." Id.

VH Property relied on two Ninth Circuit cases, Sinclair

Oil, 96 F.3d at 405, and C-Y Development, 703 F.2d at 378-80,

both of which addressed challenges to land use decisions. C-Y

Development is particularly relevant here. As explained in VH

Property:

> [I]n C-Y Development, plaintiff challenged
> the City of Redlands' denial of its
> applications for building permits, seeking,
> among other things, a writ of mandamus
> requiring the city to issue the permits. C-Y
> Development, 703 F.2d at 378. The court held
> that the second requirement for Pullman
> abstention was met, observing that a writ of
> mandate directing the city to issue the
> permits would moot some of the federal issues
> in the case. Id. at 380. The fact that
> "following such hypothetical state
> adjudication [plaintiff] might return to
> federal court to seek damages for the alleged
> temporary deprivation of its property rights"
> did not render Pullman abstention
> inappropriate. Id.

622 F. Supp. 2d at 963.

If Plaintiffs prevail in their administrative appeal,

they will obtain some of the relief they seek in this case. That

might moot out, or at least affect, some of the constitutional

claims. In their federal claims in this action, Plaintiffs seek

injunctive and monetary relief. They seek an order invalidating

31

**EXHIBIT "D"**

the Planning Commission's decision, as well as an order directing the Planning Commission to grant its special use permit.  A state court's decision in favor of Plaintiffs on Count X would presumably ensure that the denial would be voided, or may even direct the Planning Commission to approve the permit, mooting out at least some of the injunctive relief claims.  Furthermore, "The fact that 'following such hypothetical state adjudication plaintiff might return to federal court to seek damages for the alleged temporary deprivation of its property rights' [does] not render Pullman abstention inappropriate.'"  VH Prop., 622 F. Supp. 2d at 963.

As the Ninth Circuit noted in Sinclair Oil, 96 F.3d at 409, a ruling by a state court need not be "absolutely certain to obviate the need for considering federal constitutional issues." It is enough for purposes of satisfying the second Pullman abstention requirement if "state law issues might 'narrow' the federal constitutional questions."  Id.  The second Pullman abstention requirement is met here.

### 3.   How the State-Law Issues Will Be Resolved is Uncertain.

The third Pullman factor goes to the uncertainty of issues of state or local law.  "Relying on the local nature of land use claims, and the fact that they involve interpretation of various state and local land use laws, the Ninth Circuit has required only a minimal showing of uncertainty to satisfy the

**EXHIBIT "D"**

Case 1:14-cv-00535-SOM-WRP    Document 215-5    Filed 02/14/19    Page 73 of 81    PageID
Case 1:14-cv-00535-SOM-RLP    Document 405    Filed 01/27/16    Page 33 of 38    PageID #:
1275

third Pullman factor in land use cases." VH Prop., 622 F. Supp.

2d. at 964 (discussing Sinclair Oil).  In determining whether

determinative issues of state or local law are uncertain, the

Ninth Circuit says that "a local government's enactment of land

use regulations 'is by nature a question turning on the peculiar

facts of each case in light of the many [applicable] local and

state-wide land use laws . . . .'" Sinclair Oil, 96 F.3d at 410

(quoting Santa Fe Land Improvement Co. v. City of Chula Vista,

596 F.2d 838, 841 (9th Cir. 1979)).

        In Sinclair Oil, the Ninth Circuit, addressing whether

abstention was appropriate in a case asserting takings claims

under the United States and California constitutions, found the

third requirement satisfied even though the state takings claim

was not "particularly extraordinary or unique."  96 F.3d at 410

(citing Kollsman v. City of Los Angeles, 737 F.2d 830, 826 n.18

("[A]bstention often will be appropriate when state land use

regulations are challenged on state and federal grounds.")).

        In San Remo Hotel, the Ninth Circuit similarly found

the third requirement met, noting that the plaintiff's claim

could be rendered moot under a local law that was being addressed

in a pending state-court action.  145 F.3d at 1105.  That case

involved an ordinance that imposed conditions on converting a

hotel from one that housed permanent residents to one that served

transient tourists.  The owners of the San Remo Hotel were

# EXHIBIT "D"

required by the ordinance to obtain a permit to convert hotel units to nonresidential, or tourist, use.  Id. at 1099.  In addition, local zoning laws required conditional use authorization to establish a tourist hotel.  Id.  Because the San Remo Hotel had been zoned for solely residential use before the zoning law was enacted (even though it had actually been used as both a residential and tourist hotel), the City Planning Commission, affirmed by the Board of Permit Appeals, rejected the plaintiffs' argument that operating as a tourist hotel would be a "prior non-conforming use" and required the plaintiffs to obtain a conditional use permit to convert the hotel rooms to "tourist use."  Id. at 1099-1100.  The plaintiffs ultimately obtained the required permit, but it was subject to three conditions.  Id. at 1100.

The plaintiffs then filed two actions, seeking, ultimately, to unconditionally convert the rooms to tourist use. The first action sought a writ of mandamus in state court challenging the Board of Permit Appeals' determination that the hotel was properly zoned for only residential use.  Id.  The second action, filed in federal court, asserted, among other claims, that the ordinance constituted a facial taking without just compensation under the United States Constitution.  Id.

The Ninth Circuit remanded the case and instructed the district court to abstain with respect to the takings challenge.

**EXHIBIT "D"**

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 75 of 81     PageID
Case 1:14-cv-00535-SOM-RLP   Document 437   Filed 01/27/16   Page 35 of 38     PageID #:
1277

Characterizing the plaintiffs' case as a challenge to "the applicability of the [ordinance] and the need to obtain a conditional use permit," the Ninth Circuit noted that the case hinged on the designation of the San Remo Hotel as "residential," the precise subject of the pending state mandamus action. Id. at 1106. The third Pullman abstention requirement was met because the state mandamus action required the state court to interpret an ordinance and municipal zoning laws, as well as to determine what effect to give particular facts. Id. The Ninth Circuit concluded that those were "uncertain issues of state law." Id.

The special use permit application in this case has not yet been challenged in state court. VH Prop., 622 F. Supp. 2d at 964; see also Sinclair Oil, 96 F.3d at 410. While there is no pending companion case in state court for this court to take note of, the state claims present issues of unsettled state law. How a state court will decide the issues in Count X is unclear. Plaintiffs' appeal will turn, at least in part, on how the state court interprets state and local laws and administrative rules, and what effect the state court gives to the actions taken by the Planning Commission. For example, the reviewing court will have to determine whether the proposal by Plaintiffs constitutes an "unusual and reasonable use" under Haw. Admin. R. § 15-15-95 and whether the application satisfies every criterion under Maui County Code § 19.510.070(B). This court does "not claim the

35

**EXHIBIT "D"**

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 76 of 81     PageID
Case 1:14-cv-00535-SOM-RLP   Document 408   Filed 01/27/16   Page 36 of 38     PageID #:
1278

ability to predict whether a state court would decide that the
[Planning Commission] here abused its discretion" or otherwise
erred.  Sinclair Oil, 96 F.3d at 410.  Whether the Commission
complied with state and local law presents uncertain issues of
state law.

This court, concluding that all three requirements are
met, abstains under Pullman with respect to Plaintiffs' federal
claims.  Permitting a Hawaii court to determine the state and
local issues underlying the Complaint may potentially narrow the
federal constitutional issues presented.  The principles of
comity and federalism underlying Pullman therefore support this
court's decision to abstain.  VH Prop., 622 F. Supp. 2d at
966-67.

Moreover, this court sees no reason that it cannot also
stay the state claims in Counts I to IX against the County that
this court is exercising supplemental jurisdiction over pursuant
to 28 U.S.C. § 1367.  The state-law claims are similar to the
federal claims in that both are based on allegations that the
Planning Commission's decision violated religious and other
rights.  This court has the discretion to manage this case in an
orderly and efficient manner.  Thus, the court stays Plaintiffs'
state claims in the interest of sensible management of this case.
Appropriate abstention, unlike dismissal or remand, "does not
constitute abnegation of judicial duty."  Louisiana Power & Light

36

# EXHIBIT "D"

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 77 of 81   PageID
#: 4069
Case 1:14-cv-00535-SOM-RLP   Document 400   Filed 01/27/16   Page 37 of 38   PageID #:
1279

<u>Co. v. City of Thibodaux</u>, 360 U.S. 25, 29 (1959).  When

warranted, abstention may be a productive "postponement of

decision for its best fruition."  <u>Id.</u>

**V.      CONCLUSION.**

Counts I to IX against the Planning Commission are

dismissed, and those counts against the County are stayed.  The

court declines to exercise supplemental jurisdiction over Count X

and dismisses Count X without prejudice to Plaintiffs' pursuing

of that claim in state court pursuant to 28 U.S.C. § 1367(d).

The court stays the present case pending the state circuit

court's determination of the matters raised in Count X.  The

court administratively closes this case and terminates all

pending motions.  All scheduled matters, including the settlement

conference set for March 1, 2016, are taken off the calendar.

The case will be reopened upon the parties' submission of written

statements either attaching a final state-court decision, or

explaining a change in circumstances that warrants the reopening

of this case.

When this case is reopened, any unadjudicated matter

stayed by this order may, upon written request by a party, be

reset for such supplemental briefing and/or hearing as may be

appropriate, without the need to refile papers already in the

case file.

**EXHIBIT "D"**

Case 1:14-cv-00535-SOM-WRP   Document 215-5   Filed 02/14/19   Page 78 of 81     PageID
#: 4380
Case 1:14-cv-00535-SOM-RLP   Document 180   Filed 01/27/16   Page 38 of 38     PageID #:
1280

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 27, 2016.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

Spirit of Aloha Temple, et al. v. County of Maui, et al., Civ. No. 14 00535
SOM/RLP; ORDER GRANTING MOTION TO DISMISS AND/OR FOR PARTIAL SUMMARY JUDGMENT

**EXHIBIT "D"**

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| SPIRIT OF ALOHA TEMPLE AND FREDRICK R. HONIG, | Civil No. _____ |
| | Agency Docket/Case No. SUP2 2012/0032 |
| Applicants-Appellants, | DESIGNATION OF RECORD ON APPEAL |
| vs. | |
| COUNTY OF MAUI AND MAUI PLANNING COMMISSION, | |
| Agencies-Appellees | |

## DESIGNATION OF RECORD ON APPEAL

COME NOW Spirit of Aloha Temple and Fredrick R. Honig, by and through their undersigned attorneys, pursuant to Hawaii Revised Statues § 91-14 and Rule 72 of the Hawaii Rules of Civil Procedure, hereby designates and requests the following be submitted to the Circuit Court as the record on appeal: the entire record relating to the matter of the Maui Planning Commission Docket No. SUP2 2012/0032. This includes, but is not limited to, all papers, notices, pleadings, transcripts of proceedings, reports, minutes and executive session minutes of the Appellees Maui Planning Commission and the Planning Department and all e-mails, letters, maps, drawings and evidence received or considered related to such actions.

DATED: Honolulu, Hawai'i, February 25, 2016

JONATHAN S. DURRETT
ADAM G. LANG
SHAUNA L. SILVA BELL
Attorneys for Applicants-Appellants
SPIRIT OF ALOHA TEMPLE and
FREDRICK R. HONIG

# EXHIBIT "D"

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| SPIRIT OF ALOHA TEMPLE AND FREDRICK R. HONIG,<br><br>          Applicants-Appellants,<br><br>  vs.<br><br>COUNTY OF MAUI AND MAUI PLANNING COMMISSION,<br><br>          Agencies-Appellees | Civil No. _____<br><br>Agency Docket/Case No. SUP2 2012/0032<br><br>ORDER FOR CERTIFICATION AND TRANSMISSION OF RECORD |

**ORDER FOR CERTIFICATION AND TRANSMISSION OF RECORD**

TO:  COUNTY OF MAUI AND MAUI PLANNING COMMISSION

      In accordance with section 91-14(d) Hawai'i Revised Statues, and Rule 72(d) of the

Hawai'i Rules of Civil Procedure, you are hereby ordered to certify and transmit to this Court,

within twenty (20) calendar days of the date of this Order, or within such further time as may be

allowed by this Court, the entire record as defined by section 91-9(e), Hawaii Revised Statues,

and as set forth in the Designation of Record on Appeal. Any request to enlarge time shall be

submitted to the Court prior to the expiration of the above 20-day period.

      DATED:  Wailuku, Maui, Hawai'i, February _____ 2016

F. OTAKE

FIRST CIRCUIT COURT
SEAL
STATE OF HAWAII

FEB 2 5 2016

EX OFFICIO   CLERK OF THE ABOVE-ENTITLED COURT

# EXHIBIT "D"

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAII

SPIRIT OF ALOHA TEMPLE AND
FREDRICK R. HONIG,

                Applicants-Appellants,

    vs.

COUNTY OF MAUI AND MAUI
PLANNING COMMISSION,

                Agencies-Appellees

Civil No. _____

Agency Docket/Case No. SUP2 2012/0032

CERTIFICATE OF SERVICE

## CERTIFICATE OF SERVICE

        The undersigned hereby certifies that a copy of the foregoing document was served upon the individuals listed below via first class mail.

        PATRICK K. WONG
        Corporation Counsel
        BRIAN A. BILBERRY
        THOMAS W. KOLBE
        Deputies Corporation Counsel
        200 South High Street
        Wailuku, Maui, Hawaii 96793
        Attorneys for Appellees
        COUNTY OF MAUI and MAUI PLANNING COMMISSION

        DATED:  Honolulu, Hawai'i, February _25_, 2016

                          JONATHAN S. DURRETT
                          ADAM G. LANG
                          SHAUNA L. SILVA BELL
                          Attorneys for Applicants-Appellants
                          SPIRIT OF ALOHA TEMPLE and
                          FREDRICK R. HONIG

# EXHIBIT "D"