IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SPIRIT OF ALOHA TEMPLE AND FREDRICK R. HONIG, | ) ) | CIVIL NO. 14-00535 SOM/RLP |
| Plaintiffs, | ) ) ) | ORDER GRANTING DEFENDANT STATE OF HAWAII'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT |
| vs. | ) ) | TO COUNT V AND DEFENDANT COUNTY OF MAUI'S JOINDER |
| COUNTY OF MAUI, | ) ) | THEREIN, RULING THAT ONLY "AS APPLIED" CHALLENGES ARE |
| Defendant, | ) ) | ASSERTED WITH RESPECT TO REMAINING CLAIMS, AND |
| and | ) ) | DENYING COUNTER MOTION FOR SUMMARY JUDGMENT WITH RESPECT |
| STATE OF HAWAII, | ) ) | TO COUNT V |
| Intervenor-Defendant | ) ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT STATE OF HAWAII'S MOTION FOR
SUMMARY JUDGMENT WITH RESPECT TO COUNT V AND DEFENDANT COUNTY OF
MAUI'S JOINDER THEREIN, RULING THAT ONLY "AS APPLIED"
CHALLENGES ARE ASSERTED WITH RESPECT
TO REMAINING CLAIMS, AND DENYING COUNTER MOTION FOR
SUMMARY JUDGMENT WITH RESPECT TO COUNT V**

I.      INTRODUCTION.

Plaintiff Fredrick R. Honig bought land on Maui zoned

for agricultural use and leased that land to Plaintiff Spirit of

Aloha Temple, which, among other things, conducted a commercial

wedding operation on the agricultural land until the County of

Maui told it to stop.  Thereafter, Plaintiffs applied for a

Special Use Permit to build a church and hold religious events,

including weddings, on the agriculture land, uses not allowed

without a Special Use Permit.  After the requested Special Use

Permit was denied, Plaintiffs filed this action, asserting

federal and state claims against the Maui Planning Commission and the County of Maui.

On January 27, 2016, this court dismissed the Planning Commission as a party and declined to exercise supplemental jurisdiction over Count X, which asked this court to resolve an appeal from the Planning Commission's denial of the Special Use Permit. This court stayed the remaining claims as a matter of *Pullman* abstention, allowing Plaintiffs to appeal the denial of the Special Use Permit through the state courts.

In the state court, Plaintiffs reserved their right to have their federal claims decided by this court, informing the state trial court that the only claim before the state court involved the appeal of the Planning Commission's decision. On November 17, 2016, the state trial court affirmed the Planning Commission's decision. No further appeal was filed. This court subsequently dissolved the stay so that the remaining claims could be addressed.

The State of Hawaii, which intervened in this action, now moves for summary judgment, arguing that res judicata bars the prior restraint claim asserted in Count V and that, even if res judicata does not apply, there was no impermissible prior restraint as a matter of law. Plaintiffs filed a counter motion for summary judgment with respect to the prior restraint claim. This court rules that res judicata does not bar the prior

restraint claim and turns to the merits of that claim, granting the State of Hawaii's motion and the County of Maui's Joinder therein with respect to the merits of that claim.

The state also seeks partial summary judgment with respect to Counts I, II, IV, VI, VII, VIII, and IX (no Count III is asserted in the Complaint), arguing that Plaintiffs are only asserting as applied challenges in those counts, not facial challenges.  Plaintiffs do not oppose this part of the motion, and this court therefore rules that only as applied challenges are pled in those counts.  The court leaves the merits of those challenges for later proceedings.

**II.        BACKGROUND.**

The factual background for this case was set forth in this court's Order Denying Motions for Summary Judgment of July 20, 2018.  *See* 322 F. Supp. 3d 1051.  That background is incorporated by reference and is summarized and supplemented below.

In September 1994, Frederick Honig purchased agricultural property on Haumana Road in Haiku, Hawaii.

In September 2007, Spirit of Aloha Temple, Inc., was incorporated; Honig was listed as its Senior Minister.  Honig and Spirit of Aloha Temple practice "Integral Yoga."  For purposes of these motions, no party contests the validity of Honig's religion or the sincerity of his beliefs.

3

On October 12, 2007, Spirit of Aloha Temple, through Honig, applied for a Special Use Permit for the property to be used for a "Church, church operated bed and breakfast establishment, weddings, special events, day seminars, and helicopter landing pad." ECF No. 183-3, PageID # 2592. On June 30, 2008, Spirit of Aloha Temple amended the Special Use Permit application to define Spirit of Aloha Temple's activities as including "a weekly service, classes, special events, day programs and weddings." ECF No. 183-3, PageID # 2593.

On March 30, 2010, the Planning Commission for the County of Maui held a hearing on the Special Use Permit application. *See* Findings of Fact, Conclusions of Law and Decision and Order of Maui Planning Commission. *See* ECF No. 183-3, PageID # 2583. The Maui Planning Commission voted 5 to 3 to deny the application. *Id.*, PageID #s 2586-87; 2590.

In September 2012, the County of Maui issued Honig three notices of violation for building a structure without a proper permit, conducting transient vacation rentals on property where such rentals were not allowed, and conducting commercial weddings on property where such weddings were not allowed. The County of Maui ordered Honig to cease and desist the conduct. *See* ECF No. 183-8, PageID #s 2877-78. The County of Maui and Honig ultimately settled these matters. *See id.*, PageID #s 2877-83.

On November 21, 2012, Spirit of Aloha Temple, through Honig, submitted a second Special Use Permit application to use the property for church activities. ECF No. 183-6, PageID #2803. Spirit of Aloha Temple sought to use the property for a classroom on weekdays; a weekly church service; and educational, inspirational, and spiritual events, including "Hawaiian Cultural Events, such as Hula performances, Seminars on Hawaiian Plant Based Nutrition, Cultural Music Performances, and Spiritual commitment ceremonies including weddings." *Id.*, PageID # 2811.

The Maui Planning Commission denied the 2012 Special Use Permit application, stating:

> The Commission finds that there is evidence of record that the proposed uses expressed in this Application should they be approved would increase vehicular traffic on Haumana Road, which is narrow, winding, one-lane in areas, and prone to flooding in inclement weather. The Commission finds that Haumana Road is regularly used by pedestrians, including children who use the road to access the bus stop at the top of the road. The commission finds that granting the Application would adversely affect the health and safety of residents who use the roadway, including endangering human life. The Commission finds that the health and safety of the residents' and public's use of Haumana Road is a compelling government interest and that there is no less restrictive means of ensuring the public's safety while granting the uses requested in the Application.

ECF No. 185-9, PageID # 3288-89.

The Maui Planning Commission noted that section 205-6 of Hawaii Revised Statutes allows certain "unusual and reasonable

uses" within agricultural and rural districts, in addition to
uses for which the property is classified. *Id.*, PageID # 3289.
The Maui Planning Commission stated that, to determine whether a
proposed use is an "unusual and reasonable use," section 15-15-95
of Hawaii Administrative Rules sets forth "guidelines" for the
granting of an exception to agricultural restrictions. It was
the Maui Planning Commission's understanding that a Special Use
Permit application could be denied if any of those "guidelines"
was not satisfied. *See* Depo. of William Spence at 31 (Feb. 5,
2018), ECF No. 215-18, PageID # 4649.

In allowing "[c]ertain 'unusual and reasonable' uses
within agricultural . . . districts other than those for which
the district is classified . . . ,"
http://luc.hawaii.gov/wp-content/uploads/2012/09/LUC-Admin-Rules_
Chapter15-15_2013.pdf) (Nov. 2, 2013), section 15-15-95(c)
provides five "guidelines" for determining uses that "may" be
permitted:

> (1) The use shall not be contrary to the
> objectives sought to be accomplished by
> chapters 205 and 205A, HRS, and the rules of
> the commission;
>
> (2) The proposed use would not adversely
> affect surrounding property;
>
> (3) The proposed use would not unreasonably
> burden public agencies to provide roads and
> streets, sewers, water drainage and school
> improvements, and police and fire protection;

> (4) Unusual conditions, trends, and needs
> have arisen since the district boundaries and
> rules were established; and
>
> (5) The land upon which the proposed use is
> sought is unsuited for the uses permitted
> within the district.

*Id.* These "guidelines" are at the heart of the parties' dispute in this case.

The Commission concluded that subsections 15-15-95(c)(2) and (3) were not satisfied.[1] With respect to subsection 15-15-95(c)(2), the Commission concluded that the proposed uses "would adversely affect the surrounding properties" given concerns about the safety of Haumana Road. *Id.*, PageID # 3290. With respect to subsection 15-15-95(c)(3), the Commission concluded that the proposed uses would increase traffic and burden public agencies providing roads and streets, police and fire protection. The Commission stated that it had "significant concerns about the narrowness of Haumana Road and vehicle and pedestrian safety both of potential visitors to the

---

[1] The Commission did not specifically discuss subsection 15-15-95(c)(1)--whether the use was contrary to the objectives sought to be accomplished by chapters 205 and 205A of Hawaii Revised Statutes and the rules of the Land Use Commission. It noted that it had received no evidence with respect to subsection 15-15-95(c)(4)--whether there were unusual conditions, trends, and needs that had arisen since the State Land Use district boundaries and rules were established. It also determined that subsection 15-15-95(c)(5) supported the issuance of the permit in that "the land which the proposed use is sought is suitable for the uses allowed in the Agricultural District." ECF No. 185-9, PageID # 3291.

Property and property owners along Haumana Road and the fact that the Property is at the terminus of Haumana Road and therefore traffic to the Property would negatively impact residents' safety and use of Haumana Road." *Id.*

On November 26, 2014, Plaintiffs filed the Complaint in this matter. *See* ECF No. 1. Count X sought to appeal the Maui Planning Commission's denial of the 2012 Special Use Permit application. The Complaint asserted other federal and state claims, including a prior restraint claim based on the Maui Planning Commission's allegedly unbridled discretion to grant or deny the Special Use Permit. *See* Complaint, Count V, ECF No. 1, PageID # 37.

On January 27, 2016, this court declined to exercise supplemental jurisdiction over the agency appeal claim asserted in Count X. The court stayed the remaining claims under *Pullman* abstention. *See* ECF No. 109, PageID # 1279 ("The court stays the present case pending the state circuit court's determination of the matters raised in Count X.").

In state court, Plaintiffs clearly announced three times that, while pursuing the administrative appeal in state court, they were reserving their right to have their federal claims adjudicated in federal court. First, on February 25, 2016, in their notice of appeal with respect to the agency decision, they told the state court in a footnote:

> Appellants reserve for independent
> adjudication in the federal courts all
> federal questions, including but not limited
> to any federal First or Fourteenth Amendment
> claims, and claims arising under the
> Religious Land Use and Institutionalized
> Persons Act, 42 U.S.C. § 2000cc *et seq*, for
> adjudication before the United States
> District Court. *See England v La. State Bd.
> of Med. Exam'rs*, 375 U.S. 411 (1964).

ECF No. 215-5, PageID # 4308 n.1.

Second, in their Opening Brief filed in state court on April 25, 2016, Plaintiffs reiterated that reservation. ECF No. 215-6, PageID # 4387. This time, Plaintiffs added, "The only cause of action to be determined in this state court agency appeal is Maui County's violation of the Hawaii State Administrative Procedures Act, Hawaii Revised Statutes, Chapter 91 *et seq.*" *Id.*

Third, in oral argument in state court, Plaintiffs stated:

> We are required under the Federal Court
> doctrine to preserve our federal claims as
> well as our constitutional claims, US
> constitutional claims, so that we do not
> waive them if we end up before the Federal
> Court again.
>
> So we just want to reiterate for the
> record our preservation under the US Supreme
> Court case England vs. Louisiana Board of
> Medical Examiners . . . that we are
> preserving the claims, specifically regarding
> the Federal Religious Land Use and
> Institutionalized Persons Act, 42 USC, as
> well as our claims under the First Amendment
> for religious freedom and the Fourteenth
> Amendment, and we will not be arguing those

> claims today but, you know, not waive those
> arguments if we need to make them again at
> the Federal Court.

ECF No. 215-7, PageID # 4417.

On November 17, 2016, the Circuit Court of the Second
Circuit, State of Hawaii, affirmed the Maui Planning Commission's
decision, but did not adjudicate any of the claims that this
court had retained but stayed. *See* ECF No. 183-14. The state
court did not "find clear error in the Maui Planning Commission's
factual findings or error in its legal conclusions. Moreover,
the Commission's decision does not appear to be arbitrary,
capricious, or an abuse of discretion." *Id.*, PageID # 3005. The
state court further noted:

> In reviewing the findings of fact, the
> Commission's decision, the record on appeal,
> and applying Maui County Code § 19.510.07 and
> Hawai`i Administrative Rules § 15-15-95,
> there is more than sufficient basis for the
> Planning Commission's denial of the Special
> Use Permit.
>
> The Applicants-Appellants argue it was
> clear error for the Commission to base its
> denial on traffic and road safety concerns.
> The Commission had more than enough evidence
> to be concerned about traffic and road
> safety. Numerous individuals expressed
> concern about traffic and road safety.

*Id.* The state court went on to determine that

> traffic and road safety were not the only
> concerns of the Commission. The Commission
> found, among other things, the proposed uses
> would adversely affect surrounding properties
> in conflict with Hawai`i Administrative Rules
> § 15-15-95(c)(2). The record contains

10

> significant evidence of the negative impact
> the proposed uses would inflict upon
> surrounding properties.

*Id.*, PageID #s 3005-06.  No appeal was filed and the state-court

agency appeal is now a final decision on the merits.

      The stay of the remaining claims before this court has

been dissolved and the State of Hawaii has intervened as a

Defendant.  *See* ECF Nos. 114 and 207.

**III.**       **SUMMARY JUDGMENT STANDARD.**

      On July 20, 2018, this court denied motions for summary

judgment.  *See* ECF 200.  The summary judgment standard was set

forth in that order and is incorporated here by reference.

**IV.**       **ANALYSIS.**

      Before the court are counter motions for summary

judgment and a joinder with respect to the prior restraint claim

asserted in Count V, and the State of Hawaii's unopposed partial

summary judgment motion seeking a determination that only factual

(i.e., as applied) challenges are raised in the remaining counts.

As discussed in the following pages, the State of Hawaii's motion

with respect to Count V and the County of Maui's joinder therein

are granted, and Plaintiffs' counter motion is denied.

**A. Because Plaintiffs Reserved Their Right to Have This Court Adjudicate The Prior Restraint Claim Asserted in Count V, the State of Hawaii's Res Judicata Argument is Unpersuasive.**

The State of Hawaii seeks summary judgment with respect to the prior restraint claim asserted in Count V, arguing that the state court judgment with respect to the agency appeal should have res judicata effect and thus bars Count V. This court disagrees.

At the outset, this court notes that it stayed this case pending the state court's determination of Count X, in which Plaintiffs challenged the Planning Commission's denial of the permit application. This court did not direct Plaintiffs to seek a state court determination of any other count pled in this case, and Plaintiffs filed an administrative appeal in state court limited to the matters raised in Count X. *See* ECF No. 215-5.

Nor does the doctrine of res judicata operate to bar litigation of counts other than Count X.

The res judicata doctrine precludes parties or their privies from relitigating claims that were or could have been raised in an earlier action in which there is a final judgment on the merits. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). Here, while the state court has issued a final judgment with respect to the agency appeal, that final judgment has no res judicata effect with respect to the federal claims originally asserted in this court. The federal claims were stayed pursuant to this court's

12

exercise of *Pullman* abstention, and Plaintiffs specifically told the state court they were reserving those federal claims for this court to adjudicate.

In *England v. Louisiana State Board of Medical Examiners*, the Supreme Court noted that the "right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." 375 U.S. 411, 415 (1964) (quotation marks and citation omitted). It further noted that abstention is a judge-made doctrine "according appropriate deference to the respective competence of the state and federal court systems." *Id.* (quotation marks and citation omitted). When this court abstains in favor of allowing a state court to decide state-law claims (*Pullman* abstention), this court, far from abdicating its jurisdiction, only postpones it. *Id.* As the Ninth Circuit explains:

> The *England* rule is a salutary one. It preserves the role of state courts as the final expositors of state law as recognized by the abstention doctrine, as well as the interests of putative federal litigants who have the right to choose a Federal court where there is a choice.

*Los Altos El Granada Inv'rs v. City of Capitola*, 583 F.3d 674, 685 (9th Cir. 2009) (quotation marks, alterations, and citations omitted).

*England* provides that "a litigant who has properly invoked the jurisdiction of a Federal District Court to consider

federal constitutional claims" should not be "compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims."  375 U.S. at 415. *England* notes that a litigant may therefore "reserve" the right to return to federal court to have federal claims adjudicated. *Id.* at 421-22.  However, the litigant may forgo the right to have federal claims decided by a federal court by "freely and without reservation" submitting the claims for adjudication by a state court.  *Id.* at 419.

In *United Parcel Service, Inc. v. California Public Utilities Commission*, 77 F.3d 1178, 1186 (9th Cir. 1996), the Ninth Circuit held that a footnote reservation made on the first page of a nine-page motion was a sufficient *England* reservation. In the present case, Plaintiffs' three "reservations" exceeded that sufficient *United Parcel Service* reservation.  Plaintiffs' statements were not equivalent to something buried on the 149th page of a motion.  *See Lurie v. Cal.*, 633 F.2d 786, 787-88 (9th Cir. 1980).  Instead, Plaintiffs told the state court in the Notice of Appeal and Opening Brief:

> Appellants reserve for independent
> adjudication in the federal courts all
> federal questions, including but not limited
> to any federal First or Fourteenth Amendment
> claims, and claims arising under the
> Religious Land Use and Institutionalized
> Persons Act, 42 U.S.C. § 2000cc *et seq*, for
> adjudication before the United States
> District Court.  *See England v La. State Bd.
> of Med. Exam'rs*, 375 U.S. 411 (1964).

ECF No. 215-5, PageID # 4308 n.1; ECF No. 215-6, PageID # 4387.
The Opening Brief went on to say, "The only cause of action to be
determined in this state court agency appeal is Maui County's
violation of the Hawaii State Administrative Procedures Act,
Hawaii Revised Statutes, Chapter 91 *et seq.*"  *Id.*

        The State of Hawaii argues that Plaintiffs essentially
waived their first two reservations with respect to the federal
prior restraint claim when, in oral argument, they supposedly
limited the reservation to claims under "the Federal Religious
Land Use and Institutionalized Persons Act, 42 USC, as well as .
. . claims under the First Amendment for religious freedom and
the Fourteenth Amendment."  ECF No. 215-7, PageID # 4417.  But
Plaintiffs appear to have simply been incomplete during oral
argument, as they had earlier said, "We are required under the
Federal Court doctrine to preserve our federal claims as well as
our constitutional claims, US constitutional claims, so that we
do not waive them if we end up before the Federal Court again."
*Id.*  Having told the state court that it was only being asked to
adjudicate the agency appeal, Plaintiffs cannot be said to have
freely and without reservation agreed to submit more than the
agency appeal to the state court.

        Reading the three "reservations" together with
Plaintiffs' statement to the state court that it was only being
asked to adjudicate the agency appeal and not any federal claim,

this court concludes that Plaintiffs reserved their prior
restraint claim. This court rejects the State of Hawaii's
assertion that Plaintiffs' reservation was not good enough
because it did not specifically mention the prior restraint
claim. Plaintiffs told the state court that this court had
stayed their federal claims pending the outcome of the state-
court agency appeal. At the same time, Plaintiffs informed the
state court that they were reserving all of their federal claims
for adjudication by this court. Plaintiffs' reservations were
sufficient to inform the state court that they were seeking
federal judicial resolution of their prior restraint claim.[2]

Of course, while ruling that Plaintiffs' *England*
reservation makes the res judicata doctrine inapplicable to the
prior restraint claim, this court is not ignoring the collateral
estoppel issue. To the extent a necessary issue may have been
fully litigated in state court that is identical to an issue
before this court, Plaintiffs are precluded from taking a second
bite of the apple. An *England* reservation does not "prevent[]
the operation of the issue preclusion doctrine." *San Remo Hotel,*

---

[2]Plaintiffs also have pled in the present case state
constitutional claims. Count VII alleges a violation of their
free exercise of religion under Hawaii's constitution, and Count
IX alleges an equal protection violation under Hawaii's
constitution. No party addresses any res judicata issue with
respect to these counts, which the parties agree assert claims of
invalidity as to the application of state law. This court
therefore does not discuss here any prior restraint issue in
connection with any state constitutional claim.

*L.P. v. San Francisco City & Cty.*, 364 F.3d 1088, 1095 (9ᵗʰ Cir.

2004) (quotation marks and citation omitted).  Additionally,

under the circumstances presented here, no party may relitigate

the merits of the agency appeal.  *See Allen*, 449 U.S. at 94.

> **B.  Summary Judgment is Granted in Favor of Intervenor-Defendant State of Hawaii With Respect to the Prior Restraint Claim Asserted in Count V.**

Both the State of Hawaii and Plaintiffs seek summary

judgment with respect to the merits of the prior restraint claim

asserted in Count V.  The court grants summary judgment in favor

of the State of Hawaii with respect to that count.

Count V asserts that the County of Maui's second denial

of the Special Use Permit to Honig and Spirit of Aloha Temple

amounts to a prior restraint in violation of their First

Amendment free speech and free exercise rights, actionable under

42 U.S.C. § 1983.  *See Moonin v. Tice*, 868 F.3d 853, 858 (9ᵗʰ

Cir. 2017) (examining First Amendment prior restraint claim

asserted under § 1983); *Outdoor Media Grp., Inc. v. City of

Beaumont*, 506 F.3d 895, 903 (9ᵗʰ Cir. 2007) (same).

The First Amendment provides that "Congress shall make

no law respecting an establishment of religion, or prohibiting

the free exercise thereof; or abridging the freedom of speech, or

of the press; or the right of the people peaceably to assemble,

and to petition the Government for a redress of grievances."

U.S. Const. amend. I.  Given the First Amendment, the Supreme

Court in *Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969), explained that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." Id. at 150-51.

The Ninth Circuit has further explained that a regulation is an unconstitutional prior restraint if it "vests unbridled discretion in a government official over whether to permit or deny expressive activity." *Kreisner v. City of San Diego*, 1 F.3d 775, 805 (9ᵗʰ Cir. 1993) (quotation marks and citation omitted). An ordinance or regulation that makes the peaceful enjoyment of First Amendment rights "contingent upon the uncontrolled will of an official--as by requiring a permit or license which may be granted or withheld in the discretion of such official--is an unconstitutional censorship or prior restraint." *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1222 (9ᵗʰ Cir. 2017). "That is, absent definite and objective guiding standards, permit requirements present a threat of content-based, discriminatory enforcement." *Id.* (quotation marks and citation omitted). "While permitting guidelines need not eliminate all official discretion, they must be sufficiently specific and objective so as to effectively place some limits on the authority of City officials to deny a permit." *Id.* (quotation marks and citation omitted).

The question before this court with respect to Count V is whether the Maui Planning Commission had unbridled discretion to deny Plaintiffs' second Special Use Permit application.  To answer this question, the court must analyze the statutes and regulations governing the Planning Commission.  Section 205-4.5(a) of Hawaii Revised Statutes sets forth permissible uses of property located in agricultural districts, such as the Haumana Road property at issue here.  These uses do not include churches or wedding operations.  With certain exceptions, section 205-4.5(b) of Hawaii Revised Statutes prohibits uses that are not expressly permitted under section 205-4.5(a).  The exception applicable here is a Special Use Permit granted by a county planning commission, as set forth in section 205-6 of Hawaii Revised Statutes.

In considering whether to grant or deny Plaintiffs a Special Use Permit, the Maui Planning Commission was guided by Maui County Code, Title 19, Article II, Chapter 19.30A. https://library.municode.com/hi/county_of_maui/codes/code_of_ordinances?nodeId=TIT19ZO_ARTIICOZOPR_CH19.30AAGDI_19.30A.060SPUS. Under section 19.30A.060.A.9, churches and religious institutions are permitted in an agricultural district "if a special use permit, as provided in section 19.510.070[B] of this title, is obtained."  Under that section, the Maui Planning Commission may approve such a permit by "review[ing] whether the use complies

with the guidelines established in section 15-15-95 of the rules of the land use commission of the State." *Id.* (available at https://library.municode.com/hi/county_of_maui/codes/code_of_ordinances?nodeId=TIT19ZO_ARTVADEN_CH19.510APPR_19.510.070SPUSPE). Section 15-15-95(c) includes five guidelines for determining whether a proposed use is an "unusual and reasonable use" that "may" be permitted. Plaintiffs challenge section 15-15-95(c) as conferring unbridled discretion.

1. **Plaintiffs Lack Constitutional Standing to Assert A Facial Challenge to Ordinance Sections That Were Not Applied.**

An ordinance may be facially unconstitutional in one of two ways: (1) by seeking to prohibit such a broad range of protected activity that it is unconstitutionally overbroad; or (2) by being unconstitutional in every conceivable application and incapable of ever being applied in a valid manner because it is unconstitutionally vague or impermissibly restricts a protected activity. *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1271 (9th Cir. 2017); *Vlasak v. Superior Court of Cal. ex rel. Cty. of Los Angeles*, 329 F.3d 683, 688 (9th Cir. 2003)*; Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)).

Courts recognize facial overbreadth when "conduct has required official approval under laws that delegated standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment

rights." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). The overbreadth type of facial challenge is at issue here; Plaintiffs assert that section 15-15-95(c) amounts to an unconstitutional prior restraint by giving the Maui Planning Commission standardless discretionary power to grant or deny Special Use Permit applications. *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1082 (9th Cir. 2006) ("The prior restraint doctrine requires review of both the law's procedural guarantees and the discretion given to law enforcement officials. . . . To avoid impermissible discretion, the challenged ordinance should contain adequate standards to guide the official's decision and render it subject to effective judicial review." (quotation marks and citation omitted)).

In adjudicating Plaintiffs' overbreadth challenge based on alleged unbridled discretion amounting to a prior restraint, this court is mindful that its power to declare a statute or regulation unconstitutional derives from its power and duty to decide cases and controversies. That is, to satisfy Article III's case and controversy requirement, Plaintiffs must have the "irreducible minimum" of "constitutional standing," meaning they must have: 1) an injury in fact that is "actual, concrete, and particularized," 2) a causal connection between defendant's conduct and the plaintiff's injury, and 3) a likelihood that the injury can be redressed by the court. *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992); *Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886, 891 (9th Cir. 2007). Federal courts supplement this "constitutional standing" with the doctrine of "prudential standing," which requires Plaintiffs' claims to be "sufficiently individualized to ensure effective judicial review." *Get Outdoors II*, 506 F.3d at 891.

Prudential standing issues are not applicable to cases involving First Amendment freedom of expression. *See Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 129 (1992) ("It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable."); *Get Outdoors II*, 506 F.3d at 891 ("When a plaintiff states an overbreadth claim under the First Amendment . . . , we suspend the prudential standing doctrine because of the special nature of the risk to expressive rights.").

A First Amendment overbreadth challenge "operates as a narrow exception permitting the lawsuit to proceed on the basis of 'a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Id.* (quoting *Broadrick*, 413 U.S. at 612). Accordingly, one who is subject to a law or ordinance requiring a license or permit to conduct

expressive activity may facially challenge the statute or ordinance as vesting unbridled discretion in a government official without having applied for the license or permit. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755-56 (1988) ("our cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license"); *Thornhill v. State of Alabama*, 310 U.S. 88, 97 (1940) ("Proof of an abuse of power in the particular case has never been deemed a requisite for attack on the constitutionality of a statute purporting to license the dissemination of ideas."); *Gaudiya Vaishnava Soc. v. City & Cty. of San Francisco*, 952 F.2d 1059, 1062 (9th Cir. 1990) ("Because this case involves a licensing ordinance which allegedly vests unbridled discretion in a government official over whether to deny or permit expressive activity, the nonprofits may challenge it facially without the necessity of first applying for, and being denied, a permit.").

In other words, "facial attacks on the discretion granted a decisionmaker are not dependent on the facts surrounding any particular permit decision." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1020 (9th Cir. 2009) (quotation marks, alterations, and citation omitted).

23

Courts allow challenges to prior restraints of protected expression because of "the evil inherent in a licensing system.  The power of the licensor . . . is pernicious not merely by reason of the censure of particular comments but by reason of the threat to censure comments on matters of public concern.  It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion."  *Thornhill*, 310 U.S. at 97 (1940).  "[T]he mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused."  *City of Lakewood*, 486 U.S. at 757; *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1221 (9ᵗʰ Cir. 2017) ("such restraints may have a chilling effect on protected speech because potential speakers may choose to self-censor rather than either acquire a license or risk sanction for speaking without one").  Additionally,

> the absence of express standards makes it
> difficult to distinguish, "as applied,"
> between a licensor's legitimate denial of a
> permit and its illegitimate abuse of
> censorial power.  Standards provide the
> guideposts that check the licensor and allow
> courts quickly and easily to determine
> whether the licensor is discriminating
> against disfavored speech.  Without these
> guideposts, *post hoc* rationalizations by the
> licensing official and the use of shifting or
> illegitimate criteria are far too easy,
> making it difficult for courts to determine
> in any particular case whether the licensor

>     is permitting favorable, and suppressing
>     unfavorable, expression.

*City of Lakewood*, 486 U.S. at 758; *Epona*, 876 F.3d at 1221

("where a regulation lacks clear standards for the issuance of a

permit, an as-applied challenge may fail to provide sufficient

protection against content-based censorship").

While "prudential standing" requirements are relaxed

for First Amendment overbreadth challenges, the Ninth Circuit

requires this court to nevertheless "ask whether the plaintiff

has suffered an injury in fact and can satisfactorily frame the

issues on behalf of . . . non-parties." *Get Outdoors II*, 506

F.3d at 891. That is, the Ninth Circuit requires the *Lujan*

elements for "constitutional standing" to be satisfied even when

a plaintiff is asserting an overbreadth challenge. *Id.*

*Get Outdoors II* is instructive. Get Outdoors II

submitted billboard permit applications to the City of San Diego.

The city denied the applications based on an ordinance

prohibiting new billboards, the failure of the applicant to

submit key documents, and the size and height of the proposed

billboards. *Id.* at 889-90. Get Outdoors II argued that the

billboard regulations were overbroad and constituted an

impermissible prior restraint because officials had unbridled

discretion to grant or deny the billboard permits. *Id.* at 890.

After recognizing that "prudential standing" concerns

are relaxed for overbreadth claims, the Ninth Circuit ruled that

Get Outdoors II lacked "constitutional standing" to assert its claims. *Id.* at 891, 895.  While a party subject to a licensing statute that provides unbridled discretion to a government official may challenge the statute without first applying for the permit, the Ninth Circuit ruled that, to comport with "constitutional standing" principles, the plaintiff still had to be "'[o]ne who might have had a license for the asking.'" *Id.* (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940)).  Get Outdoors II's billboard applications were denied on grounds that were constitutionally valid (*e.g.*, the proposed billboards exceeded the number, height, and size limitations).  Moreover, Get Outdoors II indicated no intent to submit applications for billboards that complied with the requirements.  The Ninth Circuit therefore ruled that Get Outdoors II was not genuinely threatened by an unconstitutional prior restraint. *Id.*  That is, Get Outdoors II, if it stuck with its original application, was not a plaintiff who "might have had a license for the asking." *Id.*

The reasoning of *Get Outdoors II* has been criticized. *See, e.g., Nitanny Outdoor Advertising, LLC v. College Township*, 22 F. Supp. 3d 392, 410 (M.D. Pa. 2014) (saying the Ninth Circuit's approach seems "misguided").  But whatever complications are presented, this court is committed to following

the binding precedent in *Get Outdoors II* and the tenets announced in Supreme Court and other applicable Ninth Circuit decisions.

For example, the Supreme Court has stated that, in exercising jurisdiction, courts will not "anticipate a question of constitutional law in advance of the necessity of deciding it" and will not "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *United States v. Raines*, 362 U.S. 17, 21 (1960). "Kindred to these rules is the rule that one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *Id.* Thus, a defendant who was not sentenced to death may not challenge a death penalty statute. *Houston v. Roe*, 177 F.3d 901, 907 (9th Cir. 1999). Similarly, a defendant may not challenge a prohibition on selling bald eagle parts as violative of his First Amendment freedom of religion rights when selling such eagle parts is not actually part of his religion. *United States v. Top Sky*, 547 F.2d 486, 488-89 (9th Cir. 1976).

Given the "constitutional standing" requirements applicable to First Amendment overbreadth claims, courts have limited plaintiffs to challenging only the portions of ordinances that actually cause them injury:

> Because those three provisions are the only
> sections of the code upon which the City

actually relied in denying plaintiffs' permit
application, plaintiffs must establish
standing--injury, causation and
redressability-with respect to those
provisions.  Plaintiffs may not challenge any
other provisions . . . because none of those
provisions, including the restrictions on
political speech, caused them injury.  That
plaintiffs may have standing to challenge the
provisions of the sign ordinance that caused
their injury "does not provide [them] with a
passport to explore the constitutionality of
every provision of the [sign ordinance]."
*Covenant Media of S. Car., LLC v. City of N.
Charleston*, 493 F.3d 421, 429 (4th Cir.2007);
*see Get Outdoors II*, 506 F.3d at 893 ("Get
Outdoors II cannot leverage its injuries
under certain, specific provisions to state
an injury under the sign ordinance
generally.").

*Herson v. City of San Carlos*, 714 F. Supp. 2d 1018, 1024 (N.D.

Cal. 2010); *accord Get Outdoors II, LLC v. City of El Cajon*, 2007

WL 4170230, at *5 (S.D. Cal. Nov. 20, 2007) (holding that,

because billboard sign applicant never showed that it would have

been genuinely threatened by a prior restraint given its failure

to propose billboard within height and size limitations,

applicant lacked standing to pursue claims), *aff'd sub nom. Get

Outdoors II, LLC v. City of El Cajon, Cal.*, 403 F. App'x 284 (9th

Cir. 2010) (affirming in memorandum decision determining

plaintiff's lack of standing for failure to "show how this court

could act to overturn denial of the permits, and thereby redress

those injuries").

Put another way, in analyzing the causation component

of standing, a court should look at whether the plaintiff has

shown that its injury is "fairly traceable" to a challenged statutory provision. *Republican Party of Minn. v. Klobucher*, 381 F.3d 785, 792 (8th Cir. 2004).

Here, Plaintiffs challenge subsections (1) through (4) of section 15-15-95. The court notes that Plaintiffs are not challenging subsection 15-15-95(c)(5) in this action. See ECF No. 225, PageID #s 4876-77 (indicating that Plaintiffs are only challenging subsections 15-15-95(c)(1) through (4)). This court notes that the Planning Commission made no findings with respect to subsections (1) and (4) and does not appear to have considered them in denying Plaintiff the requested permit. Having suffered no injury tied to subsections (1) and (4), Plaintiffs lack constitutional standing to challenge those subsections. More fundamentally, Plaintiffs appear to have misapplied the very concept of a facial challenge in the context of a challenge to all or any part of section 15-15-95(c). As explained in the following paragraphs, section 15-15-95(c), by its terms, speaks to the Planning Commission's discretion in granting a Special Use Permit, which is not the act Plaintiffs complain about.

> **2.    Section 15-15-95(c)'s Statement of When the Maui Planning Commission "May" Grant a Special Use Permit Does Not Vest the Commission With Unbridled Discretion to Deny a Permit.**

Section 15-15-95(c) provides, "Certain 'unusual and reasonable' uses within agricultural and rural districts other

29

than those for which the district is classified may be permitted." (emphasis added).  Plaintiffs argue that the word "may" impermissibly vests the Maui Planning Commission with unbridled discretion to decline to issue a Special Use Permit. This purported facial challenge fails.

On its face, section 15-15-95(c) speaks to the Planning Commission's ability to deviate from the overarching restriction on nonagricultural uses in an agricultural district.  Any discretion articulated by section 15-15-95(c) is thus the discretion to grant an exception to or variance from the "default" prohibition on nonagricultural issues.  If this discretion could be viewed as unbridled, as Plaintiffs allege, any facial challenge should come in the context of the *granting* of a variance.  Thus, for example, a person purporting to be aggrieved by the granting of a Special Use Permit to a neighboring business might bring a facial challenge to section 15-15-95(c).

Plaintiffs instead bring a purported facial challenge to section 15-15-95(c) in the context of the *denial* of a permit application.  Because section 15-15-95(c) on its face goes to discretion to *grant* a permit, a challenge to section 15-15-95(c) in the context of a denial must be a challenge to the application of the provision.

Even if Plaintiffs could be said to be raising a facial
challenge to the discretion implicit in the use of the word "may"
in section 15-15-95(c), that challenge would fail.

In *Thomas v. Chicago Park District*, 534 U.S. 316
(2002), the Supreme Court examined a Chicago ordinance that
provided that "the Park District may deny an application for
permit" on any one of a number of grounds. *Id.* at 319, n.1. The
Supreme Court rejected the argument that the ordinance failed to
contain adequate standards to guide an official's decision and
render it subject to effective judicial review. *Id.* at 324. The
Court noted that an application could be denied

> when the application is incomplete or
> contains a material falsehood or
> misrepresentation; when the applicant has
> damaged Park District property on prior
> occasions and has not paid for the damage;
> when a permit has been granted to an earlier
> applicant for the same time and place; when
> the intended use would present an
> unreasonable danger to the health or safety
> of park users or Park District employees; or
> when the applicant has violated the terms of
> a prior permit.

*Id.* The Supreme Court stated, "These grounds are reasonably
specific and objective, and do not leave the decision to the whim
of the administrator." *Id.* (quotation marks and citation
omitted).

The Court specifically rejected the contention "that
the criteria set forth in the ordinance are insufficiently
precise because they are described as grounds on which the Park

District 'may' deny a permit, rather than grounds on which it must do so."  *Id.* at 324-25 (stating, "we think the permissive nature of the ordinance furthers, rather than constricts, free speech").  The use of the word "may" in section 15-15-95(c), like the use of the word "may" in the ordinance in *Thomas*, does not, by itself, provide the Maui Planning Commission with improper unbridled discretion, quite apart from the problem noted earlier with the focus in section 15-15-95(c) on when a variance may be *granted*.

*Gaudiya Vaishnava Society v. City & County of San Francisco*, 952 F.2d 1059, 1060 (9th Cir. 1990), relied on by Plaintiffs, is distinguishable.  *Gaudiya* examined an ordinance providing that San Francisco's "Chief of Police may issue a permit" to nonprofits wishing to sell merchandise.  *Id.* at 1065. Because the ordinance lacked specific grounds for granting or denying a permit, the Ninth Circuit concluded that it improperly gave the Chief of Police unfettered discretion.  *Id.* at 1065-66. *Gaudiya* does not stand for the proposition that any permit ordinance using the word "may" improperly gives officials unfettered discretion.

### 3. Section 15-15-95(c)'s Reference to "Guidelines" Does Not Provide the Maui Planning Commission With Unbridled Discretion.

Plaintiffs also argue that the reference in section 15-15-95(c) to "guidelines" simply provides guidance that the Maui Planning Commission was free to accept or reject, rather than the "definite and objective guiding standards" required by the Ninth Circuit's decision in *Epona*, 876 F.3d at 1222. This court is unpersuaded.

This court has previously noted,

> In *Save Sunset Beach Coal. v. City & County of Honolulu*, 102 Haw. 465, 78 P.3d 1 (2003), the Hawaii Supreme Court instructed that "guidelines" in an ordinance or statute "denote individual factors that are not mandatory in themselves, but instead provide direction or guidance with respect to the ultimate decision[.]" 78 P.3d at 15.

*Spirit of Aloha Temple v. Cty. of Maui*, 2016 WL 347298, at *6 (D. Haw. Jan. 27, 2016).

But *Epona* recognized that "permitting guidelines need not eliminate all official discretion." *Id.* Instead, guidelines "must be sufficiently specific and objective so as to effectively place some limits on the authority of City officials to deny a permit." *Id.* (quotation marks and citation omitted). As discussed in more detail later in this order, the language of section 15-15-95(c) is specific enough that the reference to

"guidelines" does not render the provision an impermissible prior restraint.

### 4. Section 15-15-95(c)'s Lack of a Time-Frame Is Not Properly Before This Court.

Plaintiffs' counter motion seeks summary judgment with respect to the prior restraint claim asserted in Count V on the additional ground that section 15-15-95 lacks the procedural safeguard of a requirement that a decision be timely. But no such alleged defect is pled in the Complaint.

Count V incorporates the previous paragraphs of the Complaint and then states:

> The standards set forth in the County of Maui's zoning regulations governing special permits for places of worship, and the standards applied by the Commission in reviewing and denying Spirit of Aloha Temple and Frederick Honig's Special Use Permit do not provide a person of ordinary intelligence a reasonable opportunity to understand whether such land uses are permitted or prohibited and, as such, constitutes an unconstitutional prior restraint on Plaintiff's protected expression and religious exercise under the First Amendment. Such standards unconstitutionally afford the Commission unbridled discretion in its review of a Special Use Permit application for a place of worship.

ECF No. 1, PageID # 37. Count V puts Defendants on notice that the "standards" allegedly provided the Maui Planning Commission with unbridled discretion, but does not put them on notice of any alleged lack of procedural safeguards. Nothing in Count V puts Defendants on notice that Plaintiffs believe the ordinance is

invalid because it lacks a time-frame in which the commission must decide whether to grant or deny the permit. Instead, the allegation goes to alleged unbridled discretion in the substance of a decision. *See id.*

Plaintiffs argue that, pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, pleadings need only put opposing parties on notice of claims. *See Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001). They say that "[s]pecific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." They argue that Paragraphs 85, 91, 112, 120, and 132 put Defendants on notice of their claim that section 15-15-95 lacks the procedural safeguard of requiring a timely decision. The court disagrees; none of these allegations gives any inkling that Plaintiffs might be challenging any provision on the basis of its alleged lack of a timeliness safeguard.

Paragraph 85 alleges the date on which Plaintiffs filed their Special Use Permit application, as well as some of the details of that application. *See* ECF No. 1, PageID #s 18-19. Paragraph 91 alleges that the Maui Planning Commission scheduled a public hearing for March 25, 2014. *Id.*, PageID # 21. Paragraph 112 alleges that the hearing was held on March 25, 2014. *Id.*, PageID # 26. Paragraph 120 alleges that, on April 8, 2014, the Maui Planning Commission reconsidered the Special Use

Permit application.  While these paragraphs discuss the dates of various actions with respect to the application, nothing in the Complaint puts Defendants on notice that Plaintiffs are challenging the absence of any deadline.

*Fontana*, cited by Plaintiffs, recognizes that pleadings must put opposing parties on notice of a claim.  262 F.3d at 877.  While Plaintiffs were not required to allege their legal theories, "doing so makes it more likely that the opposing party will have notice and [a] better understanding of what is at issue."  *Id.*  At the very least, the factual allegations relied on should be sufficient to provide notice.  The dates of certain events do not put an opposing party on notice that Plaintiffs are claiming the process was allowed to be slow.

> **5.  Subsection 15-15-95(c)(3) Did Not Give the Maui Planning Commission Unbridled Discretion to Deny Plaintiffs' Special Use Permit Application.**

This court turns now to an examination of a specific guideline relied on by the Maui Planning Commission.  Earlier in this order, this court discussed the mismatch between Plaintiffs' facial challenge to section 15-15-95(c) and the actual language of subsection 15-15-95(c), which speaks to the *granting* of Special Use Permits, not to the denial Plaintiffs complain about.  Even assuming that that lack of "fit" were not fatal to Plaintiffs' facial challenge, Plaintiffs do not show an

actionable constitutional defect in the language of subsection 15-15-95(c)(3).

Subsection 15-15-95(c)(3) provides that an "unusual and reasonable use" may be permitted if the "proposed use would not unreasonably burden public agencies to provide roads and streets, sewers, water drainage and school improvements, and police and fire protection." Plaintiffs argue that this guideline provided the Maui Planning Commission with unbridled discretion with respect to denying Plaintiffs' Special Use Permit application.

As discussed above, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth*, 394 U.S. at 150-51. Thus, an ordinance making "the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official--as by requiring a permit or license which may be granted or withheld in the discretion of such official--is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Id.* Even when permitting schemes are content-neutral on their face, "the mere existence of the licensor's unfettered discretion" may intimidate parties into self-censoring their speech. *Id.*

"Licensing regimes whose sole purpose is to regulate competing uses of public space are evaluated as a content-neutral time, place, and manner permitting scheme," rather than "the extraordinary procedural requirements governing traditional prior restraints." *Seattle Affiliate of Oct. 22nd Coal. to Stop Police Brutality, Repression & Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 798 (9th Cir. 2008). To be a valid time, place, and manner restriction for purposes of the First Amendment, a permitting ordinance "(1) must not delegate overly broad discretion to a government official; (2) must not be based on the content of the message; (3) must be narrowly tailored to serve a significant governmental interest; and (4) must leave open ample alternatives for communication." *Id.* at 798.

In analyzing ordinances that do not require officials to explain the permitting decision and do not provide for review of the decision, courts "look to the totality of the factors to assess whether this Ordinance contains adequate safeguards to protect against official abuse." *Id.* at 799.

In *City of Lakewood*, the Supreme Court explained:

> Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech. Without these guideposts, post hoc rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is

38

permitting favorable, and suppressing
unfavorable, expression.

*Id.* at 758.

Unless an ordinance has "definite and objective guiding standards, permit requirements present a threat of content-based, discriminatory enforcement." *Epona*, 876 F.3d at 1222. Permitting guidelines "must be sufficiently specific and objective so as to effectively place some "limits on the authority of City officials to deny a permit." *Id.* (quotation marks and citations omitted). Whether an ordinance is "sufficiently specific and objective" requires a "context specific" analysis. *Id.*

In *Shuttlesworth*, the Supreme Court held that a statute granted excessive discretion in allowing a city to deny a parade permit if "the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused." 394 U.S. at 149-50. The Supreme Court ruled that the parade statute conferred upon officials "virtually unbridled and absolute power" to prohibit parades, as the officials were guided "only by their own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience.'" *Id.* at 150. The Supreme Court ruled that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Id.* at 150-51.

The Ninth Circuit has established that an ordinance is unconstitutionally vague when it provides an official with discretion to deny a permit based on ambiguous and subjective reasons. For example, in *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 817-19 (9th Cir. 1996), the Ninth Circuit invalidated a sign permit ordinance requiring city officials to find that a sign "will not have a harmful effect upon the health or welfare of the general public and will not be detrimental to the welfare of the general public and will not be detrimental to the aesthetic quality of the community or the surrounding land uses." The Ninth Circuit ruled that this language contained

> no limits on the authority of City officials to deny a permit. City officials have unbridled discretion in determining whether a particular structure or sign will be harmful to the community's health, welfare, or "aesthetic quality." Moreover, City officials can deny a permit without offering any evidence to support the conclusion that a particular . . . sign is detrimental to the community. Thus, we conclude that the permit requirement is unconstitutional.

*Id.* at 819. The Ninth Circuit described the ordinance as improperly giving city officials "discretion to deny a permit on the basis of ambiguous and subjective reasons." *Id.* at 818.

Similarly, in *Seattle Affiliate of the October 22nd Coalition*, the Ninth Circuit invalidated a parade ordinance giving the chief of police unbridled discretion to force an

organization to march on sidewalks, rather than in the streets.
While the ordinance granted no discretion in issuing a parade
permit, it allowed the chief of police to "modify the place and
hour of formation, the proposed line of movement or march, and
the scheduled starting time in the interest of vehicular or
pedestrian traffic safety."  550 F.3d at 791, 803.  The Ninth
Circuit explained:

> the very absence of clear standards in the
> Parade Ordinance, the lack of any decision-
> making trail for us to review and the absence
> of any administrative appeals process
> underscore the obvious risk that officials
> could engage in content-based discrimination
> that would be effectively immune from
> judicial scrutiny.  It is this very risk of
> abuse that is intolerable under the First
> Amendment.

*Id.*, 550 F.3d at 802-03.  Because the chief of police had
unbridled discretion with respect to the details of the parade,
such as moving a parade off the streets and onto a sidewalk, the
parade ordinance violated the First Amendment.  *Id.* at 803.

While *Shuttlesworth*, *City of Moreno Valley*, and *Seattle
Affiliate of the October 22nd Coalition* invalidated provisions,
the Ninth Circuit, in *G.K. Ltd. Travel v. City of Lake Oswego*,
436 F.3d 1064 (9th Cir. 2006), held that there was no First
Amendment violation with respect to a sign ordinance that
regulated the type, size, and design of signs.  "In addition to
regulating the dimensions and characteristics of all signs in the
City, the Code includes a permit and design review process that

41

requires those seeking to erect a sign to allow City officials to review the sign for readability, clarity and compatibility" and provides for an appeal process. *Id.* at 1069. The sign ordinance did not provide officials with unbridled discretion:

> The City may deny permits only when the sign does not comport with the Code's reasonably specific size and type criteria or is not compatible with the surrounding environment. Both reference to the surrounding environment and the "compatibility" determination are explicitly defined in the Code. Officials are to look only to the proposed sign's relationship with other nearby signs, other elements of street and site furniture and with adjacent structures. In determining whether the sign is compatible, the Code instructs permitting officials to consider a limited and objective set of criteria, namely "form, proportion, scale, color, materials, surface treatment, overall sign size and the size and style of lettering."

*Id.* at 1083 (quotation marks and citation omitted).

The Ninth Circuit distinguished the "aesthetic quality of the community" ordinance at issue in *City of Moreno*, noting that the sign ordinance in *G.K. Ltd.* required officials to examine whether a sign was "compatible with the surrounding environment," as defined in the ordinance, required the officials to explain their decision, and provided for review of the decision. *Id.* at 1083-84. "Although the design review criteria are somewhat elastic and require reasonable discretion to be exercised by the permitting authority, this alone does not make the Sign Code an unconstitutional prior restraint." *Id.* at 1084.

Three other Ninth Circuit cases are particularly helpful in defining when a provision runs afoul of the prohibition on unbridled discretion. First, *Desert Outdoor Advertising, Inc. v. City of Oakland*, 506 F.3d 798 (9th Cir. 2007), examined a prior restraint claim arising out of a freeway sign ordinance with standards falling between the amorphous health and welfare requirements invalidated in *City of Moreno* and the "compatible with the surrounding environment" ordinance approved in *G.K. Ltd.* The Oakland officials were allowed to grant a sign variance if three conditions were met:

> First, strict compliance would have to "result in practical difficulty or unnecessary hardship inconsistent with the purposes of the zoning restrictions, due to unique physical or topographic circumstances or conditions of design." Second, strict compliance would have to "deprive the applicant of the privileges enjoyed by owners of similarly zoned property." . . . [Third], a variance could "not constitute a grant of special privilege."

506 F.3d at 801.[3] The Ninth Circuit noted that these three variance conditions "are significantly more concrete and allow far less subjectivity" than the "abstract standards" invalidated in *City of Moreno*. *Id.* at 807.

---

[3]A fourth condition was dropped during the pendency of the appeal. That condition stated that "a variance could 'not adversely affect the character, livability, or appropriate development of abutting properties or the surrounding area, and [could] not be detrimental to the public welfare.'" *City of Oakland,* 506 F.3d at 801 (quoting Oakland Planning Code § 17.148.050(A)).

The Ninth Circuit explained:

> Whether denial of a variance "would deprive
> the applicant of privileges enjoyed by owners
> of similarly zoned property" depends on
> objective comparisons to similarly situated
> properties.  Whether a variance constitutes a
> "grant of special privilege" likewise turns
> on an objective inquiry: whether the variance
> allows the applicant to engage in conduct
> otherwise forbidden by the City.  Questions
> of "practical difficulty" and "unnecessary
> hardship" are less concrete, but
> § 17.148.050(A) defines these criteria
> specifically in terms of "unique physical or
> topographic circumstances or conditions of
> design."  This limitation is "reasonably
> specific," *G.K. Ltd. Travel*, 436 F.3d at
> 1083, and sufficiently constrains "the
> authority of City officials to deny a
> permit."  *Moreno Valley*, 103 F.3d at 818.

*Id.* at 807.

Second, *Outdoor Media Group, Inc. v. City of Beaumont*,
506 F.3d 895 (9th Cir. 2007), upheld a billboard ordinance
against a First Amendment unbridled discretion challenge.  The
ordinance instructed the official to "ensure that any sign
proposal is in conformance with this Chapter and is consistent
with its intent and purpose."  *Id.* at 904.  "The city's
delineated intent and purpose includes encouraging 'a desirable
urban character which has a minimum of overhead clutter,'
enhancing the 'economic value of the community and each area
thereof through the regulation of the size, number, location,
design and illumination of signs,' and encouraging 'signs which
are compatible with on-site and adjacent land uses.'" *Id.*  The

44

ordinance also required "all signs to be 'compatible with the style or character of existing improvements upon lots adjacent to the site,' including incorporating specific visual elements such as type of construction materials, color, or other design detail." *Id.* The Ninth Circuit held that "these restrictions sufficiently cabined the Director of Planning's discretion by providing adequate standards to guide the official's decision." *Id.* (quotation marks and citation omitted).

Third, *Epona v. County of Ventura*, 876 F.3d 1214 (9th Cir. 2017), also presented a situation between the "abstract standards" invalidated in *City of Moreno* and the sufficient standards of *G.K. Ltd.* In *Epona*, to obtain a permit, an applicant had to prove to the satisfaction of the decision-making authority that seven conditions were satisfied. The proposed use had to be:

> (a) consistent with the intent and provisions of the County's General Plan and of Division 8, Chapters 1 and 2, of the Ventura County Ordinance Code;
>
> (b) compatible with the character of surrounding, legally established development;
>
> (c) not obnoxious or harmful, and must not impair the utility of neighboring property or uses;
>
> (d) not detrimental to the public interest, health, safety, convenience, or welfare;
>
> (e) compatible with existing and potential land uses in the general area where the development is to be located;

(f) on a legal lot; and

(g) approved in accordance with the
California Environmental Quality Act and all
other applicable laws.

*Epona*, 876 F.3d at 1223-24 (quotation marks, alterations, and
citation omitted). Because the ordinance required that each of
the seven conditions had to be met, the Ninth Circuit invalidated
the ordinance, ruling that, "if one condition confers an
impermissible degree of discretion, the specificity of a separate
condition will not save the scheme." *Id.* at 1224.[4] *Epona* ruled
that conditions (a) through (e) did not provide sufficient
guidance to permitting officials. *Id.* In particular, the Ninth
Circuit concluded without analysis that conditions (c) and (d)
mirrored those struck down in *City of Moreno*. *Id.*

In the present case, Plaintiffs challenge the
"guidelines" for "unusual and reasonable" uses within an
agricultural district set forth in subsections 15-15-95(c)(1) to
(4). Subsection (5) is not being challenged in this case. *See*
*Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d
1022, 1025 n.1 (9th Cir. 2006) (referring to judicial review of
"only those portions [of permit ordinances and regulations] that

---

[4]The statement in *Epona* recognizing that "if one condition
confers an impermissible degree of discretion, the specificity of
a separate condition will not save the scheme" applied to the
context in which all seven conditions had to be met before a
permit issued. *Epona* differs from the present case, which
involves a regulation that does not require satisfaction of all
five guidelines.

46

[parties] specifically challenge," and cautioning against viewing a court as "having reviewed or approved aspects of the ordinances or implementing regulations not here challenged").

The guidelines say that a Special Use Permit may be granted upon consideration of matters such as the following:

> (1) The use shall not be contrary to the objectives sought to be accomplished by chapters 205 [Land Use Commission] and 205A [Coastal Zone Management], HRS, and the rules of the commission;

> (2) The proposed use would not adversely affect surrounding property;

> (3) The proposed use would not unreasonably burden public agencies to provide roads and streets, sewers, water drainage and school improvements, and police and fire protection;

> (4) Unusual conditions, trends, and needs have arisen since the district boundaries and rules were established; and

> (5) The land upon which the proposed use is sought is unsuited for the uses permitted within the district.

The Maui Planning Commission believed it could deny Plaintiffs' Special Use Permit application if any one of the "guidelines" was not satisfied. *See* Depo. of William Spence at 31 (Feb. 5, 2018), ECF No. 215-18, PageID # 4649. Plaintiffs have not claimed that nonsatisfaction of more than one guideline was required to deny a permit.

The Maui Planning Commission's belief that section 15-15-95(c) was instructive as to the *denial* of a permit actually

involves an extrapolation from the language of section 15-15-95(c). Section 15-15-95(c) speaks to guidelines for the *granting* of a Special Use Permit. Plaintiffs appear to agree with this extrapolation. In any event, the court sees no reason to conclude that the invalidation of one of the "guidelines" would necessarily invalidate the whole permitting scheme. As the Ninth Circuit noted in *City of Moreno*, "[g]enerally, only that part of an ordinance that is constitutionally infirm will be invalidated, leaving the rest intact." 103 F.3d at 821; *see also City of Oakland*, 506 F.3d at 802 ("we are obligated to interpret a statute, if it is fairly possible, in a manner that renders it constitutionally valid").

The guideline in subsection 15-15-95(c)(3) for determining whether a Special Use Permit should be granted for an "unusual and reasonable" use points to consideration of the proposed use as "not unreasonably burden[ing] public agencies to provide roads and streets, sewers, water drainage and school improvements, and police and fire protection." The required examination of the burden on agencies with respect to "roads and streets, sewers, water drainage and school improvements, and police and fire protection" provides a sufficiently specific, narrow, objective, and definite standard for the Maui Planning Commission to consider. Comparing this standard to those examined in *City of Moreno* and *G.K. Ltd.*, this court concludes

that subsection 15-15-95(c)(3) is much more like the provision in
*G.K. Ltd.*, which found no First Amendment violation with respect
to a sign ordinance that regulated the type, size, and design of
signs--a limited and objective set of criteria going to "form,
proportion, scale, color, materials, surface treatment, overall
sign size and the size and style of lettering."  436 F.3d at
1083.

In trying to frame its challenge as a facial one,
Plaintiffs seek to steer this court away from considering the
factual context of this case.  The record indicates that the
road leading to Plaintiffs' property, Haumana Road, is so narrow
in many spots that two cars cannot pass each other unless one
pulls off the road.  If cars park on the side of the road,
emergency vehicles cannot get through.  The Maui Police
Department recommended that the road be widened if Plaintiffs
were going to be allowed to conduct religious activities,
including wedding ceremonies, at their property, given the
anticipated increase in traffic on the road.  With the road as
is, Plaintiffs appear to be in a position similar to that of Get
Outdoors II, whose proposed billboards exceeded the allowable
number, height, and size.  If Plaintiffs' proposed use exceeds
the allowable use of the road, that may well place an
unreasonable burden on the County of Maui.

Subsection 15-15-95(c)(3)'s requirement that the Maui Planning Commission examine whether an "unreasonable burden" would be placed on agencies to provide "roads and streets, sewers, water drainage and school improvements, and police and fire protection" is a limit on the Maui Planning Commission's discretion.  In *Thomas*, the Supreme Court noted that the permissive nature of an ordinance furthered, rather than constricted, free speech.  *Thomas*, 534 U.S. at 325.  Subsection 15-15-95(c)(3)'s use of the word "unreasonably" similarly furthers free speech.  Had subsection 15-15-95(c)(3) only required the Maui Planning Commission to examine whether any burden at all was placed on agencies providing "roads and streets, sewers, water drainage and school improvements, and police and fire protection," the Maui Planning Commission could have ruled on a Special Use Permit application based on even a miniscule burden on those agencies.  This would have removed the Maui Planning Commission's discretion to grant an application.  As written, subsection 15-15-95(c)(3) allows the granting of a permit when the burden on the items is not "unreasonable."  This standard provides the Maui Planning Commission with some, but not unbridled, discretion to grant a permit, thus furthering free speech.

*Trewhella v. City of Lake Geneva, Wisconsin*, 249 F. Supp. 2d 1057 (E.D. Wis. 2003), is instructive on this point.

*Trewhella* examined a challenge to supposedly "unfettered power to deny a permit" unless the permit granter found that "The parade or public assembly is scheduled to move from its point of origin to its point of termination expeditiously and without unreasonable delays in route." *Id.* at 1076. Trewhella argued that "delays in route" gave the permit granters unbridled discretion to grant or deny a permit. *Id.* The district court disagreed, ruling that "delays in route" was modified by the word "unreasonable," which limited the permit granter's discretion. As in *Trewhella*, the use of "unreasonable" in subsection 15-15-95(c)(3) places a limit on the Maui Planning Commission's exercise of discretion.

Section 15-15-95(c)(3)'s "unreasonable burden" language is distinguishable from the "without unreasonable delay" language invalidated in *United States v. Frandsen*, 212 F.3d 1231, 1240 (11th Cir. 2000). In *Frandsen*, a superintendent was required to issue a permit "without unreasonable delay." *Id.* The Eleventh Circuit stated that "without unreasonable delay" did not put a real time limit on the decision maker, noting:

> A park superintendent could receive a permit
> request well in advance of a planned
> political demonstration and then fail to act
> on the permit request until after the date of
> the demonstration, deciding on his own that
> he was acting "without unreasonable delay."
> A park superintendent who does not agree with
> the political message to be espoused could
> allow the permit request to sit on his desk

for an indefinite period of time--resulting
in speech being silenced by inaction.

*Id.* Subsection 15-15-95(c)(3)'s "unreasonable burden" language
does not allow the same potential abuse by the Maui Planning
Commission. The language is more akin to that in *Trewhella* in
that it actually places a limit on the Planning Commission's
exercise of discretion and furthers free speech by allowing the
issuance of a Special Use Permit when it would not "unreasonably"
burden certain objective items.

At the hearing on the motions, Plaintiffs argued that
the Maui Planning Commission did not actually find an
"unreasonable burden" in this case. This argument fails for a
number of reasons. To the extent Plaintiffs bring a facial
challenge to the provision, this court does not examine whether
the ordinance, as applied, passes constitutional muster. More
importantly, to the extent Plaintiffs argue that the Maui
Planning Commission's ruling did not satisfy the requirements of
the provision, that argument should have been made to the Hawaii
Circuit Court in Plaintiffs' agency appeal. In determining that
the Maui Planning Commission properly denied the requested
Special Use Permit, the Hawaii Circuit Court necessarily decided
that the regulatory requirements for denying the permit had been
satisfied. This court does not sit in review of a state court
determination that there was sufficient evidence in the record
before the Maui Planning Commission supporting its determination

with respect to the "unreasonable burden" on agencies providing "roads and streets, sewers, water drainage and school improvements, and police and fire protection."  Plaintiffs may not relitigate here the matter of whether there were sufficient facts to support "unreasonable burden" requirement of subsection 15-15-95(c)(3).  *See Allen*, 449 U.S. at 94 (res judicata doctrine precludes parties or their privies from relitigating claims that were or could have been raised in an earlier action in which there is a final judgment on the merits).

> **6.    If a Permit Denial Under Subsection 15-15-95(c)(3) is Not an Unconstitutional Prior Restraint, Plaintiffs Were Not Constitutionally Entitled to a Permit Even if Subsection 15-15-95(c)(2) is Defective.**

Plaintiffs also contend that subsection 15-15-95(c)(2) is facially invalid.  That provision includes a guideline for granting a Special Use Permit going to whether the proposed use would not adversely affect surrounding property.  Assuming that Plaintiffs may bring a facial challenge to this guideline notwithstanding its express focus on guidelines for the *granting* of a Special Use Permit, this court recognizes that this subsection presents a closer call than subsection 15-15-95(c)(3) as to whether the challenged language vests the Maui Planning Commission with unbridled discretion.  But even if subsection 15-15-95(c)(2) does run afoul of the First Amendment (something this court is expressly not ruling on), that would not give

Plaintiffs an entitlement to receive the requested permit because subsection 15-15-95(c)(3) would still present an impediment to such a grant. *Get Outdoors II* is instructive here.

*Get Outdoors II* noted that "an unfavorable decision on the merits of one claim may well defeat standing on another claim if it defeats the plaintiff's ability to seek redress." 506 F.3d at 893. In this case, assuming the Special Use Permit application could have been denied based on any one of the guidelines in section 15-15-95(c), a judicial invalidation of subsection 15-15-95(c)(2) would not address the constitutionality of any other subsection. Given that circumstance, this court sees no need to address the constitutionality of subsection 15-15-95(c)(2).

This court has carefully examined the decision of the Maui Planning Commission and the appeal of its decision. The Maui Planning Commission's Conclusions of Law state:

> The Commission found that granting the uses would increase traffic and burden public agencies providing roads and streets, police, and fire protection, in conflict with 15-15-95(3), HAR, **and gave the following reasons for a denial of the Application on that basis:** significant concerns about the narrowness of Haumana Road and vehicle and pedestrian safety both of potential visitors to the Property and property owners along Haumana Road and the fact that the Property is at the terminus of Haumana Road and therefore traffic to the Property would negatively impact resident's safety and use of Haumana Road.

ECF No. 185-9, PageID # 3290 (emphasis added).

In concluding that the proposed uses would adversely affect surrounding properties in conflict with subsection 15-15-95(c)(2), the Commission appears to have been focused on how the proposed uses would increase traffic and pose a safety hazard without road mitigation. These concerns caused the Commission to determine that the proposed uses would burden public agencies providing roads and streets, police, and fire protection in conflict with subsection 15-15-95(c)(3). *See* ECF No. 185-9, PageID # 3290. The Commission concluded that the proposed uses "did not constitute an 'unusual and reasonable' use in the Agricultural district." *Id.* It is not at all clear that the Commission's reliance on subsection 15-15-95(c)(2) was anything more than a reiteration of its concerns under subsection 15-15-95(c)(3). That is, this court cannot conclude from the record that subsection 15-15-95(c)(2) was a necessary component of the denial such that, without subsection 15-15-95(c)(2), the Commission would have granted the permit.

In any event, as *Get Outdoors II* notes, to comport with the required "constitutional standing" principles, Plaintiffs must have had a possibility of getting a permit for the asking. *See* 506 F.3d at 895. If Plaintiffs could be denied a permit under subsection 15-15-95(c)(3), the court questions their standing to challenge subsection 15-15-95(c)(2), as any ruling

55

favorable to them on subsection 15-15-95(c)(2) would not redress any injury they suffered.  *See Get Outdoors II*, 506 F.3d at 895 (discussing the need for a plaintiff to have been eligible to get a permit "for the asking" to challenge an allegedly unconstitutional provision).

In *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985), the Supreme Court noted that "a federal court should not extend its invalidation of a statute [or ordinance] further than necessary to dispose of the case before it."  *Brockett*, examining whether partial invalidation of a statute was appropriate, noted that a "statute may forthwith be declared invalid to the extent that it reaches too far, but otherwise left intact."  472 U.S. at 504.  This court is performing the corollary task of determining whether provisions are valid.  The parties have not explained why, if even one of the provisions relied on by the Commission is valid, this court must analyze whether other provisions are unconstitutional even if invalidation of those other provisions would not entitle Plaintiffs to the requested permit.  That is, absent evidence that the Commission deemed subsection 15-15-95(c)(2) as necessary to its denial (as opposed to, for example, just an additional ground for reiterating concerns raised under subsection 15-15-95(c)(3)), this court does not rule on the purported facial challenge to subsection 15-15-95(c)(2).

**C.    Plaintiffs Do Not Oppose the State of Hawaii's Motion to the Extent it Argues that the Remaining Claims are Factual, Rather than Facial, Challenges.**

The State of Hawaii seeks summary judgment with respect to whether the remaining counts assert factual challenges for which the State of Hawaii need not participate in this lawsuit. Plaintiffs do not oppose this part of the motion. Accordingly, the court rules that the remaining counts assert only factual challenges. Whether the State of Hawaii participates further involves the scope of its intervention. The State may refrain from participating if it so chooses.

**V.    CONCLUSION.**

For the reasons set forth above, the court grants the State of Hawaii's motion for summary judgment and the County of Maui's joinder therein and denies Plaintiffs' counter motion for summary judgment. That is, the court grants summary judgment in favor of Defendants with respect to the prior restraint claim asserted in Count V. With respect to the remaining counts, only factual challenges remain. The State of Hawaii is, of course,

free to limit its intervention to defending against facial challenges only.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 23, 2019.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Spirit of Aloha Temple, et al. v. County of Maui*, Civ. No. 14-00535 SOM/RLP; ORDER GRANTING DEFENDANT STATE OF HAWAII'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO COUNT V AND DEFENDANT COUNTY OF MAUI'S JOINDER THEREIN, RULING THAT ONLY "AS APPLIED" CHALLENGES ARE ASSERTED WITH RESPECT TO REMAINING CLAIMS, AND DENYING COUNTER MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO COUNT V