IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPIRIT OF ALOHA TEMPLE AND FREDRICK R. HONIG,<br><br>        Plaintiffs,<br><br>   vs.<br><br>COUNTY OF MAUI,<br><br>        Defendant,<br><br>  and<br><br>STATE OF HAWAII,<br><br>        Intervenor-Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 14-00535 SOM/RLP<br><br>ORDER GRANTING DEFENDANT STATE OF HAWAII'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO COUNT V AND DEFENDANT COUNTY OF MAUI'S JOINDER THEREIN; ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION WITH RESPECT TO COUNT V |

**ORDER GRANTING DEFENDANT STATE OF HAWAII'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO COUNT V AND DEFENDANT COUNTY OF MAUI'S JOINDER THEREIN; ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION WITH RESPECT TO COUNT V**

**I.      INTRODUCTION.**

Plaintiff Fredrick R. Honig bought agriculturally zoned land on Maui and leased that land to his own entity, Plaintiff Spirit of Aloha Temple.  Spirit of Aloha, among other things, conducted a commercial wedding operation on the agricultural land until the County of Maui told it to stop.  Plaintiffs then applied for a Special Use Permit to build a church and hold religious events, including weddings, uses not allowed on agricultural land without a Special Use Permit.

Hawaii Administrative Rules section 15-15-95(c) provides five guidelines for determining uses that may be allowed via a Special Use Permit.  The Maui Planning Commission denied

Plaintiffs' Special Use Permit application, relying on subsections 15-15-95(c)(2) and (c)(3).  Specifically, the commission determined that Plaintiffs' proposed use "would adversely affect the surrounding properties" such that subsection 15-15-95(c)(2) was unsatisfied.  The commission also determined that Plaintiffs' proposed use would increase traffic and burden public agencies providing roads and streets, as well as police and fire protection, such that subsection 15-15-95(c)(3) was unsatisfied.

After the requested Special Use Permit was denied, Plaintiffs filed this action, asserting federal and state claims against the Maui Planning Commission and the County of Maui.  The State of Hawaii intervened as a Defendant, as Plaintiffs were challenging the state regulatory scheme under which the Maui Planning Commission had denied Plaintiffs' Special Use Permit application.  In Count V of the Complaint, a prior restraint claim, Plaintiffs contend that the standards governing their Special Use Permit application violated the First Amendment by giving county officials unbridled discretion.  Plaintiffs' Complaint asserted that subsections 15-15-95(c)(1) to (c)(4) violated their constitutional rights.  No challenge was asserted to subsection 15-15-95(c)(5).

In April 2019, this court ruled that Plaintiffs lacked standing to challenge subsections 15-15-95(c)(1) and (c)(4), as

the commission had not applied those subsections when denying Plaintiffs' Special Use Permit application.  The court then ruled that the regulatory scheme governing Special Use Permits was constitutional and that Hawaii Administrative Rules subsection 15-15-95(c)(3) did not provide unbridled discretion to county planning agencies.  This court concluded that, because subsection 15-15-95(c)(3) was not an unconstitutional prior restraint, Plaintiffs were not automatically entitled to the requested Special Use Permit even if subsection 15-15-95(c)(2) was defective.

Plaintiffs appealed.  They did not challenge this court's ruling with respect to subsection 15-15-95(c)(3).  On appeal, the Ninth Circuit ruled that Plaintiffs were properly asserting a facial challenge to section 15-15-95(c) and that subsection 15-15-95(c)(2) unconstitutionally provided county agencies unbridled discretion in deciding whether to issue a Special Use Permit.  In remanding the case, the Ninth Circuit left it to this court to determine whether subsection 15-15-95(c)(2) was severable from the rest of section 15-15-95(c). This court rules that it is severable.

This court has already ruled that subsection 15-15-95(c)(3) is not an unconstitutional prior restraint.  The Maui Planning Commission was therefore allowed to rely on subsection 15-15-95(c)(3) in denying Plaintiffs' Special Use Permit

application.  Plaintiffs indicated at the hearing on the present matters that they are no longer challenging the constitutionality of subsection 15-15-95(c)(3).  Before this court are the State's summary judgment motion addressing what remains of Count V, and the County of Maui's joinder in that motion.  Also before this court is Plaintiffs' motion seeking injunctive relief with respect to Count V.  The court grants Defendants' summary judgment motion concerning the remainder of Count V, and denies Plaintiffs' motion for preliminary injunction with respect to the remainder of Count V.

## II.    BACKGROUND.

The factual background for this case was set forth in the Ninth Circuit's Opinion of September 22, 2022.  *See* 49 F.4th 1180, 1184-87 (9th Cir. 2022).  That background is incorporated by reference and is summarized in relevant part below.

Section 205-2 of Hawaii Revised Statutes describes the four major land use districts in Hawaii--urban, rural, agricultural, and conservation.  In relevant part, section 205-2(c) describes the types of activities and uses that are allowed on land zoned for agricultural use.  Section 205-4.5 of Hawaii Revised Statutes further lists uses permitted on land zoned for agricultural use.  Sections 205-6(a) and (c) allow a county planning commission to "permit certain unusual and reasonable uses within agricultural . . . districts other than those for

4

which the district is classified," subject to protective

restrictions.

To determine whether a proposed use is an "unusual and

reasonable use," section 15-15-95(c) of the Hawaii Administrative

Rules sets forth five guidelines for the granting of an exception

to agricultural restrictions:

> (1) The use shall not be contrary to the
> objectives sought to be accomplished by
> chapters 205 and 205A, HRS, and the rules of
> the commission;
>
> (2) The proposed use would not adversely
> affect surrounding property;
>
> (3) The proposed use would not unreasonably
> burden public agencies to provide roads and
> streets, sewers, water drainage and school
> improvements, and police and fire protection;
>
> (4) Unusual conditions, trends, and needs
> have arisen since the district boundaries and
> rules were established; and
>
> (5) The land upon which the proposed use is
> sought is unsuited for the uses permitted
> within the district.

http://luc.hawaii.gov/wp-content/uploads/2012/09/LUC-Admin-Rules_

Chapter15-15_2013.pdf) (Nov. 2, 2013).  There is no dispute that

a Special Use Permit application may be denied if any one of

those guidelines is not satisfied.  *See* Depo. of William Spence

at 31 (Feb. 5, 2018), ECF No. 215-18, PageID # 4649.  Maui County

Code § 19.30A.060.A.9 provides that "[c]hurches and religious

institutions" are allowed on agriculturally zoned land that is

fifteen acres or less so long as a Special Use Permit is obtained

5

pursuant to chapter 205 of Hawaii Revised Statutes and Maui County Code § 19.30A.070.B.8, which gives the Maui Planning Commission the job of determining whether a use complies with the guidelines in section 15-15-95(c).

Honig purchased eleven acres of Maui land nearly thirty years ago. That land was and is still zoned for agricultural use. *Id.* at 1184. Plaintiffs continue to seek authorization to use the agriculturally zoned property for religious purposes, as noted by the Ninth Circuit.

> Honig developed the land without permits. He cleared and graded the land, cut roads on the property, changed the contours of coastal conservation land, and altered the route of a natural watercourse. He appears to have built illegal structures, including housing structures, and installed cesspools near drinking water wells. Although several Hawaiian archeological sites existed on the property, including an agricultural terrace, burial crypt, and irrigation ditch, Honig failed to provide the requisite monitoring plans for their preservation. Through a nonprofit entity, Honig also used the property as a venue to conduct commercial weddings, vacation rentals, retreats, and events--all without the requisite permits. By late 2015, around 550 weddings were performed on the property.

49 F.4th at 1184.

Despite having been repeatedly told that his activities required appropriate permits, Honig continued to violate land use regulations. *Id.* In 2007, Honig formed Spirit of Aloha Temple and applied for a Special Use Permit for a "church,

6

church[-]operated bed and breakfast establishment, weddings, special events, day seminars, and helicopter landing pad." *Id.* at 1185. The Maui Planning Commission denied that application, reasoning that buildings on Honig's land lacked permits, that there were problems with the helicopter pad's location, and that there were potential adverse impacts to surrounding properties. *Id.* at 1185.

Plaintiffs worked with local agencies to address these concerns, and the county's planning department recommended that the Maui Planning Commission approve a second application subject to certain conditions. *Id.* In 2012, Plaintiffs filed their second application, seeking to hold weekly church services, as well as sacred, educational, inspirational, or spiritual programs, "including Hawaiian cultural events, and spiritual commitment ceremonies such as weddings," with limitations on the number of attendees. *Id.*

The Maui Planning Commission denied the second Special Use Permit application, but rescinded that denial when it received a letter from Plaintiffs' attorneys warning that the denial violated the Religious Land Use and Institutionalized Persons Act. *Id.* The Maui Planning Commission then conducted a hearing, before again denying the second application, making the following finding (#68):

> The Commission finds that there is evidence
> of record that the proposed uses expressed in

this Application should they be approved
would increase vehicular traffic on Haumana
Road, which is narrow, winding, one-lane in
areas, and prone to flooding in inclement
weather.  The Commission finds that Haumana
Road is regularly used by pedestrians,
including children who use the road to access
the bus stop at the top of the road.  The
commission finds that granting the
Application would adversely affect the health
and safety of residents who use the roadway,
including endangering human life.  The
Commission finds that the health and safety
of the residents' and public's use of Haumana
Road is a compelling government interest and
that there is no less restrictive means of
ensuring the public's safety while granting
the uses requested in the Application.

ECF No. 185-9, PageID # 3288-89.

The Maui Planning Commission concluded that the
application ran afoul of subsections 15-15-95(c)(2) and (c)(3).[1]
With respect to subsection 15-15-95(c)(2), the Commission
concluded that the proposed uses "would adversely affect the
surrounding properties" given concerns about the safety of
Haumana Road, which provided access to Plaintiffs' property.  ECF
No. 185-9, PageID # 3290.  With respect to subsection 15-15-

---

[1]The Maui Planning Commission did not specifically discuss
subsection 15-15-95(c)(1)--whether the use was contrary to the
objectives sought to be accomplished by chapters 205 and 205A of
Hawaii Revised Statutes and the rules of the Land Use Commission.
It noted that it had received no evidence with respect to
subsection 15-15-95(c)(4)--whether there were unusual conditions,
trends, and needs that had arisen since the State Land Use
district boundaries and rules were established.  It also
determined that subsection 15-15-95(c)(5) supported the issuance
of the permit in that "the land which the proposed use is sought
is suitable for the uses allowed in the Agricultural District."
ECF No. 185-9, PageID # 3291.

8

95(c)(3), the Maui Planning Commission concluded that the proposed uses would increase traffic and burden public agencies providing roads and streets, as well as police and fire protection.  The commission stated that it had "significant concerns about the narrowness of Haumana Road and vehicle and pedestrian safety both of potential visitors to the Property and property owners along Haumana Road and the fact that the Property is at the terminus of Haumana Road and therefore traffic to the Property would negatively impact residents' safety and use of Haumana Road."  *Id.*

On November 26, 2014, Plaintiffs filed the Complaint in this matter.  *See* ECF No. 1.  Count V of the Complaint asserts a First Amendment prior restraint claim under 42 U.S.C. § 1983.  After incorporating by reference the previous paragraphs of the Complaint, paragraph 172 of the Complaint alleges:

> The standards set forth in the County of Maui's zoning regulations governing special permits for places of worship, and the standards applied by the Commission in reviewing and denying Spirit of Aloha Temple and Frederick Honig's Special Use Permit do not provide a person of ordinary intelligence a reasonable opportunity to understand whether such land uses are permitted or prohibited and, as such, constitutes an unconstitutional prior restraint on Plaintiff's protected expression and religious exercise under the First Amendment. Such standards unconstitutionally afford the Commission unbridled discretion in its review of a Special Use Permit application for a place of worship.

ECF No. 1, PageID # 37.  The Complaint's Prayer for Relief seeks
(a) a declaration that the denial of Plaintiffs' Special Use
Permit application is void, invalid, and unconstitutional; (b) a
declaration that the standards set forth in the land use
regulations and the standards governing Special Use Permit
applications and the standards applied by the Maui Planning
Commission are unconstitutional; (c) an order directing the Maui
Planning Commission to grant Plaintiffs' Special Use Permit
application; (d) an order enjoining Defendants from applying the
alleged unconstitutional regulations and specifically requiring
Defendants to "approve all plans and applications submitted by
the Plaintiffs . . . without delay"; (e) compensatory damages;
and (f) an award of costs and attorneys' fees.  *See* ECF No. 1,
PageID #s 45-46.

On April 23, 2019, this court granted summary judgment
in favor of Intervenor-Defendant State of Hawaii with respect to
the prior restraint claim asserted in Count V, as well as
Defendant County of Maui's joinder therein.  *See* 348 F. Supp. 3d
1231, 1240 (D. Haw. 2019).  This court ruled that Plaintiffs
lacked standing to assert a facial challenge to subsections 15-
15-95(c)(1) and (c)(4) and that Plaintiffs were not challenging
subsection 15-15-95(c)(5).  *Id.* at 1242-45.  The court further
ruled that neither section 15-15-95(c)'s use of the word "may"
nor its reference to guidelines vested the Maui Planning

Commission with unbridled discretion.  *Id.* at 1245-47.  The court ruled that subsection 15-15-95(c)'s lack of a time frame was not pled in the Complaint.  *Id.* at 1247-48.  In the part of the order relevant to the current motions, the court ruled that subsection 15-15-95(c)(3) did not give the Maui Planning Commission unbridled discretion to deny Plaintiffs' Special Use Permit application.  *Id.* at 1248-55.  Because subsection 15-15-95(c)(3) was not an unconstitutional prior restraint, this court ruled that Plaintiffs were not entitled to a Special Use Permit even if subsection 15-15-95(c)(2) was constitutionally infirm. *Id.* at 1253, 1255-56.

Plaintiffs argued on appeal that this court had erred in holding that section 15-15-95(c) is not an unconstitutional prior restraint on religious expression and argued that they should be granted summary judgment on that claim.  *See* Appellants' Brief at 48 and 69 of 141, No. 19-16839 (Feb. 28, 2020).  Plaintiffs argued that the guidelines in section 15-15-95(c) provide unlimited discretion to the Maui Planning Commission by (1) providing no guidance as to how they should be applied (*id.* at 51 to 54 of 141); (2) allowing the denial of a Special Use Permit application even when all of the guidelines are satisfied (*id.* at 54 to 57 of 141); (3) containing provisions that are not narrow, objective, or definitive enough (*id.* at 57 to 66 of 141); and (4) lacking procedural safeguards (i.e., time

limits on the issuance or denial of a permit) (*id.* at 66 to 56 of
141).  Plaintiffs' third argument (that the guidelines are not
sufficiently narrow, objective or definite) is relevant to the
present motions.

     With respect to Plaintiffs' third argument, they
contended on appeal that section 15-15-95(c) "is replete with
terms that provide unbridled discretion to the county Planning
Commission."  *Id.* at 57 of 141.  Plaintiffs then argued that
subsection 15-15-95(c)(1) (referring to a use "not . . . contrary
to the objectives sought"), subsection 15-15-95(c)(2) (referring
to a proposed use that "would not adversely affect surrounding
property"), and subsection 15-15-95(c)(4) (referring to "Unusual
conditions, trends, and needs [that] have arisen since the
district boundaries and rules were established") were too
subjective and did not sufficiently provide definite standards.
*Id.* at 58 of 141.

     On appeal, while focusing on subsection 15-15-95(c)(2),
Plaintiffs did not specifically argue that subsection 15-15-
95(c)(3) provided too much discretion with respect to
determinations on whether to grant Special Use Permits.  That is,
Plaintiffs did not specifically challenge this court's ruling
that subsection 15-15-95(c)(3) did not give the Maui Planning
Commission unbridled discretion to deny Plaintiffs' Special Use
Permit application.  At the hearing on the present motions,

12

Plaintiffs clarified that they are no longer challenging the constitutionality of subsection 15-15-95(c)(3).

In the brief they filed with the Ninth Circuit, Plaintiffs spent several pages arguing that subsection 15-15-95(c)(2) provided unbridled discretion.  Plaintiffs then argued that, because subsection 15-15-95(c)(2) was not severable from the rest of section 15-15-95(c), the entire regulation failed. *Id.* at 64 to 66 of 141.

On September 22, 2022, the Ninth Circuit reversed this court's grant of summary judgment to Defendants with respect to Count V.  *See* 49 F.4th 1180 (9th Cir. 2022).  The Ninth Circuit held that Plaintiffs could proceed with their facial prior restraint challenge to the permitting scheme governing their Special Use Permit application, then ruled that that challenge succeeded.  *Id.* at 1191.  The Ninth Circuit explained that subsection 15-15-95(c)(2) improperly granted county planning commissions "unbridled discretion to rely only on an arbitrary guideline--whether '[t]he proposed use would not adversely affect surrounding property'--to deny a special use permit application. This use of 'adversely affect' is as general, flimsy, and ephemeral as 'health or welfare' or 'aesthetic quality.'" *Id.* at 1192.

In ruling that subsection 15-15-95(c)(2) improperly granted county planning commissions unbridled discretion, the

13

Ninth Circuit majority did not expressly discuss this court's
determination that subsection 15-15-95(c)(3) survived Plaintiffs'
prior restraint challenge. *See* 348 F. Supp. 3d at 1253-54. Nor
did the Ninth Circuit expressly discuss this court's
determination that, "even if subsection 15-15-95(c)(2) does run
afoul of the First Amendment (something this court is expressly
not ruling on), that would not give Plaintiffs an entitlement to
receive the requested permit because subsection 15-15-95(c)(3)
would still present an impediment to such a grant." *See* 348 F.
Supp. 3d at 1255. Instead, in Footnote 5, the majority stated:

> Plaintiffs have not preserved a challenge
> against the other guidelines in the Code of
> Hawai'i Rules § 15-15-95(c), and here, we do
> not consider the validity of the permitting
> scheme as a whole. Even if the adverse
> effects guideline [in subsection
> 15-15-95(c)(2)] is unconstitutional, "a
> federal court should not extend its
> invalidation . . . further than necessary to
> dispose of the case before it." *See Brockett
> v. Spokane Arcades, Inc.*, 472 U.S. 491, 502,
> 105 S. Ct. 2794, 86 L. Ed.2d 394 (1985). It
> is left for the district court whether
> § 15-15-95(c)(2) is severable. *See Long
> Beach [*Area Peace Network v. City of Long
> Beach*]*, 574 F.3d [1011,] 1044 (9th Cir.
> 2009).

49 F.4th at 1192 n.5.

The dissent stated: "When the procedural protections
afforded by the permit scheme are properly accounted for, the
challenged guideline sufficiently fetters governmental

decisionmakers." *Id.*, 49 F.4th at 1197 (Clifton, J.).  The dissent then provided the following guidance:

> Even if the "adverse effects" guideline
> [, H.A.R. § 15-15-95(c)(2),] affords the
> government with an unconstitutional degree of
> discretion, the whole permitting scheme is
> likely salvageable, and the plaintiffs are
> not necessarily entitled to the relief they
> seek.  The other challenged guideline, H.A.R.
> § 15-15-95(c)(3), the "unreasonable burden"
> guideline, is not unconstitutional, as the
> district court correctly held.  The impact on
> Plaintiffs' claims may be considered on
> remand.

49 F.4th at 1197-98.

**III.     LEGAL STANDARDS.**

On January 18, 2023, Defendant State of Hawaii filed a motion requesting that summary judgment be entered as follows:

> 1.   That Hawai'i Administrative Rule ("HAR")
> § 15-15-95(c)(2) be deemed severable from the rest of the rule
> (i.e., HAR § 15-15-95(c));

> 2.   That HAR § 15-15-95(c)(3) be held to be
> constitutional; and

> 3.   That judgment be entered in favor of the
> State as to Count V (the First Amendment
> Prior Restraint claim), thereby dismissing
> Count V from the case.

ECF No. 473, PageID # 11247.

Also on January 18, 2023, Defendant County of Maui filed a substantive joinder in the state's motion, requesting that summary judgment be granted in its favor on Count V (the prior restraint claim).  *See* ECF No. 475, PageID # 11506.

On February 1, 2023, Plaintiffs filed a motion for preliminary injunction, specifically seeking an order:

> 1.  Enjoining the Defendants, County of Maui and Maui Planning Commission, from application and enforcement of H.A.R. § 15-15-95(c) and any implementing County laws with respect to Plaintiffs; and/or
>
> 2.  Alternatively, entering an Order compelling the County to issue the Plaintiffs a Special Use Permit under the conditions recommended by the County's Planning Department and accepted by the Plaintiffs.

ECF No. 482-1, PageID # 11615.

## A.   **Summary Judgment Standard.**

This court set forth the summary judgment standard in an order filed on July 20, 2018, in this case.  *See* ECF 200. That standard is incorporated here by reference.

## B.   **Preliminary Injuction Standard.**

To obtain a preliminary injunction, a party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The Ninth Circuit has noted that "[l]ikelihood of success on the merits is the most important factor." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (quotations omitted).  If a movant fails to meet this

"threshold inquiry," this court need not consider the other factors. *Id.*

There is also a "sliding scale" variant of the *Winter* standard. *See Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021). Under this variation, a preliminary injunction may also issue when there are serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff "'so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'" *Id.* (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

## IV.    ANALYSIS.

### A.    The Unconstitutional Subsection 15-15-95(c)(2) Is Severable From the Rest of Section 15-15-95(c).

Given Plaintiffs' facial challenge to subsection 15-15-95(c)(2) and the Ninth Circuit's determination that it is unconstitutional, Defendants are forbidden from applying it in deciding whether to issue any Special Use Permit. The motions before this court ask for a determination as to whether subsection 15-15-95(c)(2) is severable from the other guidelines in section 15-15-95(c). If subsection 15-15-95(c)(2) is severable, then Defendants were allowed to rely on the remainder of section 15-15-95(c) in determining whether to issue a Special

17

Use Permit.  The effect of this is that Plaintiffs would not be entitled to the requested permit because their permit application was properly denied under subsection 15-15-95(c)(3), a subsection Plaintiffs are no longer challenging as unconstitutional. However, if subsection 15-15-95(c)(2) is not severable from the rest of section 15-15-95(c), then Defendants could not rely on any part of section 15-15-95(c) in determining whether to issue a Special Use Permit.

       Severability is a matter of state law.  *See Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996).  "Generally, only that part of an ordinance that is constitutionally infirm will be invalidated, leaving the rest intact."  *Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 821 (9th Cir. 1996).  The Hawaii Supreme Court has explained that, "'if the parts are severable and if the part which remains can be enforced when standing by itself, and still carry out the intent of the legislature, it can be upheld as constitutional.'"  *State v. Pacquing*, 139 Haw. 302, 319, 389 P.3d 897, 914 (2016) (quoting *Hawaiian Trust Co. v. Smith*, 31 Haw. 196, 202 (1929)); *see also Nat'l Advert. Co. v. City of Orange*, 861 F.2d 246, 250 (9th Cir. 1988) ("Whether partial invalidation is appropriate depends on the intent of the City in passing the ordinance and whether the balance of the ordinance can function independently.").  When a portion of legislation is unconstitutional and the rest is not,

> [t]he ordinary rule . . . is that "where the
> provisions are so interdependent that one may
> not operate without the other, or so related
> in substance and object that it is impossible
> to suppose that the legislature would have
> passed the one without the other, the whole
> must fall; but if, when the unconstitutional
> portion is stricken out, that which remains
> is complete in itself and capable of being
> executed in accordance with the apparent
> legislative intent, it must be sustained."

*Pacquing*, 139 Haw. at 318, 389 P.3d at 913 (quoting *Hawaiian Trust Co.*, 31 Haw. at 202).

The court begins its analysis with a short examination of the statutory and regulatory scheme governing agricultural districts in Hawaii.  Section 205-1 of Hawaii Revised Statutes establishes the Land Use Commission, charging it with promulgating rules guiding its conduct and making it a part of the State of Hawaii Department of Business, Economic Development, and Tourism.  Section 205-7 of Hawaii Revised Statutes requires Hawaii's Land Use Commission to adopt, amend, and repeal rules relating to matters within its jurisdiction pursuant to chapter 91 of Hawaii Revised Statutes, which governs administrative procedures.

Section 205-2 of Hawaii Revised Statutes establishes four major land use districts (urban, rural, agricultural, and conservation) and charges the Land Use Commission with grouping contiguous land areas into one of the four land use districts. Section 205-2(d) of Hawaii Revised Statutes describes sixteen

19

types of land uses that fall within agricultural districts. These include, for example, cultivation of crops, farming, aquaculture, wind-generated energy, biofuel production, agricultural tourism, and geothermal resource exploration and development. Section 205-4.5(a) of Hawaii Revised Statutes expressly lists twenty-two permissible uses within agricultural districts. Section 205-4.5(b) of Hawaii Revised Statutes prohibits uses not listed in section 205-4.5(a), except as provided in sections 205-6 (Special Use Permits) and 205-8 (nonconforming uses) of the Hawaii Revised Statutes.

Section 205-6(a) allows county planning commissions such as the Maui Planning Commission to "permit certain unusual and reasonable uses within agricultural . . . districts other than those for which the district is classified." It allows an owner of land to petition the local county planning commission for a Special Use Permit for "unusual and reasonable uses." Section 205-6(c) states that "county planning commission[s] may, under such protective restrictions as may be deemed necessary, permit the desired use, but only when the use would promote the effectiveness and objective of this chapter," Chapter 205 of Hawaii Revised Statutes.

The Hawaii Supreme Court has explained:

a special permit allows the owner to put his land to a use expressly permitted by ordinance or statute on proof that certain facts and conditions exist, without altering

20

> the underlying zoning classification.  Its
> essential purpose, as explained by the state
> Attorney General, is to provide landowners
> relief in exceptional situations where the
> use desired would not change the essential
> character of the district nor be inconsistent
> therewith.

*Neighborhood Bd. No. 24 (Waianae Coast) v. State Land Use Comm'n*,
64 Haw. 265, 271, 639 P.2d 1097, 1102 (1982) (citing 1963 Op.
Att'y Gen. 63-37).

As noted earlier, section 15-15-95(c) of the Hawaii
Administrative Rules sets forth five guidelines for the granting
of an exception to agricultural restrictions.  Subsection 15-15-
95(c)(2) having been found unconstitutional, the resulting
section reads:

> (1) The use shall not be contrary to the
> objectives sought to be accomplished by
> chapters 205 and 205A, HRS, and the rules of
> the commission;
>
> (2) The proposed use would not adversely
> affect surrounding property;
>
> (3) The proposed use would not unreasonably
> burden public agencies to provide roads and
> streets, sewers, water drainage and school
> improvements, and police and fire protection;
>
> (4) Unusual conditions, trends, and needs
> have arisen since the district boundaries and
> rules were established; and
>
> (5) The land upon which the proposed use is
> sought is unsuited for the uses permitted
> within the district.

http://luc.hawaii.gov/wp-content/uploads/2012/09/LUC-Admin-Rules_
Chapter15-15_2013.pdf) (Nov. 2, 2013) (striking out text
identified by the Ninth Circuit as unconstitutional).

        The second guideline in section 15-15-95(c) is
unenforceable as unconstitutional, given the Ninth Circuit's
ruling in this case.  This court now examines whether the Land
Use Commission would still intend the remaining guidelines to be
in effect without subsection 15-15-95(c)(2).  To determine
whether subsection 15-15-95(c)(2) is severable under Hawaii law,
this court considers whether the remaining guidelines are
complete and enforceable while carrying out their purpose.  They
are.  The remaining provisions still provide county planning
commissions with guidance as to when to grant a Special Use
Permit application for an "unusual and reasonable use" of
agricultural land that is not otherwise authorized.

        Citing *Neighborhood Board No. 24 (Waianae Coast)*, 64
Haw. at 271, 639 P.2d at 1102, Plaintiffs argue that county
planning commissions are required to examine whether a proposed
change in land use would "change the essential character of the
district" without being "inconsistent therewith."  Plaintiffs
argue that subsection 15-15-95(c)(2) is the only subsection that
examines effects on a surrounding neighborhood and that without
it the entirety of section 15-15-95(c) is meaningless.

22

Plaintiffs nevertheless concede that subsection 15-15-95(c)(3) (examining whether a proposed use would "unreasonably burden public agencies to provide roads and streets, sewers, water drainage and school improvements, and police and fire protection") addresses local impacts.  *See* ECF No. 483, PageID # 11661.  Moreover, Plaintiffs' heavy reliance on the Hawaii Supreme Court's explanation of the "essential purpose" of Special Use Permits takes a narrow view without looking at the purpose of land use regulations in general.  This court does not read the Hawaii Supreme Court's opinion as having invited such a narrow view.

In Title 15, chapter 15, of the Hawaii Administrative Rules, the State of Hawaii Land Use Commission promulgated rules governing its practices and procedures and stated that the chapter "shall be liberally construed to preserve, protect, and encourage the development and preservation of lands in the State for those uses to which they are best suited in the interest of public health and welfare of the people of the State of Hawai`i." H.A.R. § 15-15-01.  Thus, while the "essential purpose" of Special Use Permits involves an examination of a change to the "essential character of the district," that "essential purpose" is not the only purpose at issue.  The regulations themselves provide a broader purpose that the remaining guidelines were intended to address.

23

Plaintiffs assert that the legislative history of
section 205-6 of Hawaii Revised Statutes demonstrates that the
legislature intended county planning commissions to focus on
local interests in adjudicating Special Use Permit applications.
*See* ECF No. 483, PageID # 11660.  This court therefore examines
that legislative history.

In 1961, the Hawaii legislature established Hawaii's
Land Use Commission, charging it with grouping contiguous land
into three land classifications.  The legislature allowed the
State Land Use Commission to permit "certain unusual and
reasonable uses other than those for which the district is
classified."  *See* Act 187, Secs. 2, 3, 8, Sess. Laws of Hawaii,
First State Legislature (Reg. Sess. 1961); Rev. Laws of Haw.
§ 98H-2, -3, and -7 (1961 Supp).  The legislature's purpose was
"to protect and conserve through zoning the urban, agricultural,
and conservation lands within all the counties . . . ."  Senate
Journal, Standing Committee Report 1031 re. House Bill 1279 (1961
gen. sess.).  The three major land use districts were established
as part of implementing a "General Plan."  *Id.*

In 1963, "experience and research" caused the
legislature to amend the land use laws to clarify the division of
authority between the State Land Use Commission and the counties,
as well to take into account the "hardship caused to land owners
who wish to develop lands included in agricultural districts but

24

where such lands are not at all suitable for agricultural uses." Act 205, Sec. 1, Sess. Laws. of Hawaii, Second State Legislature (Reg. Sess. 1963).  The legislature added a rural classification as a fourth land category.  Act 205, Sec. 2, Sess. Laws. of Hawaii, Second State Legislature (Reg. Sess. 1963) (amending Rev. Laws of Haw. § 98H-2).  It then allowed county planning commissions (or the zoning board of appeals for Honolulu) "to permit certain unusual and reasonable uses within agricultural . . . districts other than those for which the district is classified."  *Id.* (amending Rev. Laws of Haw. § 98H-6).  The legislature provided that a county planning commission (or the zoning board of appeals for Honolulu) could, "under such protective provisions as may be deemed necessary, permit such desired use, but only when such use would promote the effectiveness and objectives of this chapter."  *Id.* (amending Rev. Laws of Haw. § 98H-7).

In 1970, the legislature renumbered the Special Use Permit law, codifying it at section 205-6 of Hawaii Revised Statutes.  *See* Act 136, Sec. 1, Sess. Laws of Hawaii, Fifth State Legislature (Reg. Sess. 1970).  The county planning commissions were charged with permitting "certain unusual and reasonable uses within agricultural . . . districts other than those for which the district is classified."  *Id.*

25

In 1976 and again in 1978, the legislature amended
section 205-6 of Hawaii Revised Statutes to change Land Use
Commission procedures.  *See* Act 4 (1976 Reg. Sess.) (allowing the
Land Use Commission to visit and view property subject to
applications and changing time requirements); Act 166 (1978 Reg.
Sess.) (allowing counties to establish fees for Special Use
Permit applications and changing time requirements).

In Act 221 (Reg. Sess. 1979), the legislature provided
that only Special Use Permit requests involving more than fifteen
acres of land that were approved by a county planning commission
had to also be approved by the State Land Use Commission.  Senate
Standing Committee Report No. 640 (Res. Sess. 1979) (regarding
House Bill 1232) explained that section 205-6 was being amended
to provide "that only those Special Use Permit requests involving
lands with an area greater than fifteen acres shall be subject to
the approval by the land use commission.  All other Special Use
Permits shall only be subject to approval by the appropriate
county planning commission."  The committee explained "that land
use decisions whose impact is limited to a particular county
should be decided by that particular county."  It noted that this
would result in a 75 percent decrease in Special Use Permit
requests that had to be examined by the Land Use Commission,
allowing it to concentrate on those applications that had "a
greater impact of a statewide nature."  House Standing Committee

26

Report No. 572 (Reg. Sess. 1979) (regarding House Bill 1232) mirrored its Senate counterpart.

While section 205-6 has been amended several times since then, its current version still provides for county planning commissions to adjudicate Special Use Permit applications, except when land greater than fifteen acres is involved. *See* Haw. Rev. Stat. § 205-6(d). Nevertheless, in adjudicating Special Use Permit applications for land of fifteen acres or less, county planning commissions are not restricted to examining only local impacts. Subsection 15-15-95(c)(1), for example, directs county planning commissions to examine whether proposed uses would be "contrary to the objectives sought to be accomplished by chapters 205 and 205A . . . and the rules of the commission." It is therefore clear that Hawaii's Land Use Commission did not intend section 15-15-95(c) to limit county planning commissions to consideration of only local impacts.

The court is unpersuaded by Plaintiffs' argument that, in the absence of a severability provision, there is a presumption that Hawaii's Land Use Commission intended section 15-15-95(c) to exist only with all five guidelines intact. Plaintiffs cite to no Hawaii law establishing such a presumption. While there is no Hawaii Supreme Court law on such a presumption, the Intermediate Court of Appeals for the State of Hawaii has stated:

> When a court determines that a provision of a
> law is unconstitutional, prior to
> invalidating the entirety of the law, the
> court must first start with a presumption
> that the unconstitutional enactment is
> severable from the remainder of the section
> or act.  As a general rule, courts are to
> refrain from invalidating more of a statute
> than is necessary, because a ruling of
> unconstitutionality frustrates the intent of
> the elected representatives of the people.
> The presumption of severability is overcome
> only if something in the statute's text or
> historical context makes it evident that: the
> Legislature, faced with the limitations
> imposed by the Constitution, would have
> preferred no statute at all to a statute with
> the invalid part excised.  In conducting this
> inquiry, we must retain those portions of the
> Act that are (1) constitutionally valid,
> (2) capable of functioning independently, and
> (3) consistent with the Legislature's basic
> objectives in enacting the statute."  The
> Legislature's intent serves as the basis for
> this severability test

*State v. Tran*, 138 Haw. 298, 303–04, 378 P.3d 1014, 1019–20 (Ct.

App. 2016), as corrected (Sept. 9, 2016) (alterations, brackets,

quotation marks, and citations omitted).  Thus, the highest state

court in Hawaii to have spoken on the matter has determined that

Hawaii law has a presumption of severability, the opposite of the

presumption posited by Plaintiffs.

Plaintiffs are unpersuasive in citing Hawaii

Administrative Rules section 16-186-105 (a severability clause)

and *Russellow v. United States*, 464 U.S. 16, 23 (1983), for the

proposition that the Land Use Commission's failure to have a

severability clause in its regulations demonstrates the Land Use

28

Commission's purposeful intent to omit it.  *See* ECF No. 482-1,
PageID # 11633.  Section 16-186-105 was promulgated by a
different regulatory agency than the Land Use Commission.  This
court cannot infer the Land Use Commission's intent from rules
promulgated by a different agency.

Moreover, Hawaii has a general severability statute,
section 1-23 of Hawaii Revised Statutes.  That statute provides,
"If any provision of Hawaii Revised Statutes, or the application
thereof to any person or circumstances, is held invalid, the
remainder of the Hawaii Revised Statutes, or the application of
the provision to other persons or circumstances, shall not be
affected thereby."  Section 91-16 of Hawaii's Administrative
Procedure Act (through which the Land Use Commission promulgated
its rules) similarly provides, "If any provision of this chapter
or the application thereof to any person or circumstance is held
invalid, the invalidity shall not affect other provisions or
applications of the chapter which can be given effect without the
invalid provision or application, and to this end the provisions
of this chapter are declared to be severable."  The Land Use
Commission's rules are arguably applications of sections 205-
1(c), 205-7, and chapter 91 of Hawaii Revised Statutes.

"[I]f, when the unconstitutional portion is stricken
out, that which remains is complete in itself and capable of
being executed in accordance with the apparent legislative

29

intent, it must be sustained." *Pacquing*, 139 Haw. at 318, 389
P.3d at 913 (quoting *Hawaiian Trust Co.*, 31 Haw. at 202).
Subsections 15-15-95(c)(1), (3)-(5), provide guidance that any
special use not be contrary to Hawaii's land use regulations
while taking into account local impacts such as unreasonable
burdens to public agencies providing "roads and streets, sewers,
water drainage and school improvements, and police and fire
protection."  When subsection 15-15-95(c)(2) is stricken, the
remainder of section 15-15-95(c) can clearly still be enforced
and executed.  That remainder is (1) constitutionally valid,
(2) capable of functioning independently, and (3) consistent with
the Land Use Commission's basic objectives in promulgating
section 15-15-95(c).  In short, striking only subsection 15-15-
95(c)(2) and leaving the remainder of section 15-15-95(c) intact
gives effect to the Land Use Commission's intent.  *See Kauai
Springs, Inc. v. Plan. Comm'n of Cnty. of Kauai*, 133 Haw. 141,
163, 324 P.3d 951, 973 (2014) (noting that, when construing a
statute, the court's foremost obligation is to give effect to
legislative intent).

The State argues that, if this court strikes the
entirety of section 15-15-95(c) because subsection 15-15-95(c)(2)
is not severable, every Special Use Permit application would have
to be granted until such time as new guidelines are implemented.
Thus, the State argues, the Land Use Commission would

30

unquestionably prefer to have the remainder of section 15-15-95(c) to provide guidance with respect to Special Use Permits over having no guidance whatsoever.  *See* ECF No. 490, PageID # 12098.  It is not clear to this court that the chaos the State envisions would actually ensue, as amendments could possibly be adopted within a matter of months.  This court nevertheless severs subsection 15-15-95(c)(2) for the reasons stated earlier in this order.

This court does, of course, recognize that Plaintiffs are bringing a facial challenge to the guidelines and that their Complaint specifically requests that this court declare the guidelines unconstitutional and enjoin their application.  *See* ECF No. 1, PageID #s 45-46.  Any ruling that any part of the guidelines is unconstitutional would preclude the State from applying the unconstitutional part in all future applications of section 15-15-95(c).  With a facial challenge, a ruling that section 15-15-95(c) is unconstitutional would govern Defendants' conduct in the future not only as to Plaintiffs but as to others.

Under the circumstances presented here, the court rules that subsection 15-15-95(c)(2) is severable from the rest of section 15-15-95(c).  There is no assertion now before this court that subsection 15-15-95(c)(3) is unconstitutional.  This court's previous determination that there was no constitutional prohibition in applying subsection 15-15-95(c)(3) to Plaintiffs'

31

Special Use Permit application means that Plaintiffs have not to
date established an entitlement to a Special Use Permit on
constitutional grounds.

   **B.   Plaintiffs Have Standing With Respect to Their
          Prior Restraint Claim Under Section 15-15-95(c).**

        Plaintiffs' Complaint seeks a declaration that the
guidelines set forth in section 15-15-95(c) are unconstitutional.
*See* ECF No. 1, PageID #s 45-46.  The Ninth Circuit has ruled that
subsection 15-15-95(c)(2) is unconstitutional and remanded the
case "for further proceedings consistent with our decision."  49
F.3d at 1196.

        The State argues that, if the court determines on
remand that subsection 15-15-95(c)(2) is severable from the rest
of section 15-15-95(c), this court should make no declaration
that subsection 15-15-95(c)(2) is unconstitutional.  The State
argues that, despite the unconstitutionality of subsection 15-15-
95(c)(2), once this court deems subsection 15-15-95(c)(2)
severable, it loses jurisdiction to issue a declaration to that
effect because Plaintiffs' Special Use Permit application can
still be denied based on subsection 15-15-95(c)(3).  The State
says that this means Plaintiffs lack standing to seek a
declaration that subsection 15-15-(c)(2) is unconstitutional.
See ECF No. 473, PageID #s 11274-76; *Get Outdoors II, LLC v. City
of San Diego, Cal*., 506 F.3d 886, 895 (9th Cir. 2007) (discussing
the need for a plaintiff to have been eligible to get a permit

"for the asking" to challenge an allegedly unconstitutional
provision).

The Ninth Circuit has already ruled that Plaintiffs are
asserting a facial challenge to section 15-15-95(c) and that
Plaintiffs' challenge "succeeds" with respect to subsection 15-
15-95(c)(2).  This court's present determination on the merits
that subsection 15-15-95(c)(2) is severable such that the
remainder of section 15-15-95(c) remains in effect does not
foreclose this court from recognizing, consistent with the Ninth
Circuit's decision, that subsection 15-15-95(c)(2) is
unconstitutional.  Indeed, this court is certainly required to do
that.  To say that Plaintiffs lack standing to obtain the very
declaration they won before the Ninth Circuit makes no sense.
This court declines to grant the State's request that the court
dismiss Count V for lack of standing when the Ninth Circuit has
already determined that Plaintiffs' facial challenge to
subsection 15-15-95(c)(2) succeeds.

While this court in this order recognizes that the Maui
Planning Commission was still allowed to rely on subsection 15-
15-95(c)(3) in denying Plaintiffs' Special Use Permit
application, that only means that the unconstitutionality of
subsection 15-15-95(c)(2) does not automatically entitle
Plaintiffs to the requested remedy of a permit.  It would
conflate the concept of standing with the separate issue of

remedies to say that Plaintiffs therefore cannot obtain from this court the very declaration the Ninth Circuit gave them.

**V.        CONCLUSION.**

Defendants may not apply the unconstitutional subsection 15-15-95(c)(2), given the Ninth Circuit's decision that Plaintiffs succeed on the portion of Count V challenging subsection 15-15-95(c)(2).

The court grants the State of Hawaii's motion for summary judgment with respect to the remainder of Count V and the County of Maui's joinder therein and denies Plaintiffs' motion for a preliminary injunction.  Hawaii Administrative Rules subsection 15-15-95(c)(2), which the Ninth Circuit has determined to be unconstitutional, is severable from the remainder of section 15-15-95(c).  Subsection 15-15-95(c)(3) may therefore be applied in determining Plaintiffs' eligibility for the requested Special Use Permit.  The Maui Planning Commission was allowed to rely on subsection 15-15-95(c)(3) in denying the requested permit.  Accordingly, Defendants are entitled to summary judgment on the remaining portion of Court V that asks this court to award Plaintiffs the requested Special Use Permit on the ground that section 15-15-95(c) is entirely unconstitutional.  Because Defendants are entitled to summary judgment with respect to that part of Count V, Plaintiffs have no likelihood of success on that

34

part of their claim and so are not entitled to the requested preliminary injunction.

In light of this order, Plaintiffs and the State are directed to confer as to the procedures applicable to the State's involvement or lack of involvement as this case moves forward. Either a stipulation or position papers on this point must be submitted to this court no later than May 1, 2023. Between now and that date, the State need not participate in matters in this case unless the matters directly concern the State.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 31, 2023.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Spirit of Aloha Temple, et al. v. County of Maui*, Civ. No. 14-00535 SOM/RLP; ORDER GRANTING DEFENDANT STATE OF HAWAII'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO COUNT V AND DEFENDANT COUNTY OF MAUI'S JOINDER THEREIN; ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION WITH RESPECT TO COUNT V