IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SPIRIT OF ALOHA TEMPLE AND FREDRICK R. HONIG, | ) ) ) | CIVIL NO. 14-00535 SOM/RLP |
| Plaintiffs, | ) ) | ORDER GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS ON THE ISSUE OF |
| vs. | ) ) | WHETHER THE COUNTY OF MAUI'S DENIAL OF THE SPECIAL USE |
| COUNTY OF MAUI, | ) ) | PERMIT SATISFIED STRICT SCRUTINY WITH RESPECT TO |
| Defendant. | ) ) | COUNTS I, VI, AND VIII, BUT DENYING SUMMARY JUDGMENT ON |
| _____ | ) | ALL REMAINING ISSUES AND CLAIMS |

**ORDER GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS
ON THE ISSUE OF WHETHER THE COUNTY OF MAUI'S DENIAL OF
THE SPECIAL USE PERMIT SATISFIED STRICT SCRUTINY
WITH RESPECT TO COUNTS I, VI, AND VIII, BUT DENYING
SUMMARY JUDGMENT ON ALL REMAINING ISSUES AND CLAIMS**

## I.        INTRODUCTION

Before the court are dueling requests for summary judgment.  This case involves claims of religious discrimination in the denial of a Special Use Permit relating to purported religious uses of agriculturally zoned land on Maui.  Plaintiffs seek summary judgment on three counts–Counts I, VI, and VIII. The County of Maui, arguing that Plaintiffs Frederick R. Honig and Spirit of Aloha Temple are actually seeking a permit to conduct a commercial wedding business, has filed a counter motion for summary judgment with respect to Counts I, VI, and VIII, as well as a separate summary judgment motion on all remaining counts (Counts I, II, VI, VII, VIII, and IX).  The County says

that its actions satisfy strict scrutiny such that it is not liable on any of Plaintiffs' claims.

This court disagrees with the County on the strict scrutiny issue, determining that the County's actions do not satisfy strict scrutiny in the context of Counts I, VI, and VIII. This court therefore grants summary judgment to Plaintiffs on that issue for those counts, while finding that questions of fact preclude summary judgment on other elements of Counts I, VI, and VIII, and also preclude the granting of summary judgment to the County on any matter the County moves on.

## II.   BACKGROUND SUMMARY.

The factual background for this case was set forth in the Ninth Circuit's Opinion of September 22, 2022. *See* 49 F.4th 1180, 1184-87 (9th Cir. 2022). That background is incorporated by reference and is summarized and supplemented only as necessary.

In 1994, Honig bought land on Maui zoned for agricultural use. Honig then developed that land without having obtained proper permits. For years, Honig and another entity that he controlled, Well Being International Inc., operated a commercial business on the property. In 2005, Honig leased the property to Well Being International. Honig was repeatedly notified that he needed to obtain permits, but he continued his unpermitted activities. *See id.*

2

In 2007, Honig formed Spirit of Aloha Temple, a nonprofit organization that is a branch of the Integral Yoga movement.  Integral Yoga is a modern branch of the ancient Hindu yogic tradition.  Although the property was leased by Honig to Well Being International at the time, it was Spirit of Aloha Temple that applied for a Special Use Permit for a "church, church[-]operated bed and breakfast establishment, weddings, special events, day seminars, and helicopter landing pad."  Those uses were not permitted on the agriculturally zoned land without a Special Use Permit.  The permit application was denied in 2010. *See id.*

In December 2011, Honig leased the property to Spirit of Aloha Temple.  In November 2012, Spirit of Aloha Temple submitted a second application for a Special Use Permit to build a church and hold religious events on the agriculturally zoned land, uses not allowed without a Special Use Permit.  *See id.* After the second requested Special Use Permit was denied, Plaintiffs filed this action, asserting the following:

> **Count I**--Substantial Burden on the exercise of religion in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C § 2000cc(a);
>
> **Count II**--RLUIPA Nondiscrimination violation of 42 U.S.C. § 2000cc(b)(2);
>
> **Count III**--No claim asserted (a presumed numbering error);
>
> **Count IV**--Equal Terms violation of RLUIPA;

> **Count V**--First Amendment prior restraint
> violation;
>
> **Count VI**--First Amendment free exercise
> violation;
>
> **Count VII**--Fourteenth Amendment equal
> protection violation;
>
> **Count VIII**--Hawaii state constitutional
> violation of free exercise of religion clause
> of article I, section 4; and
>
> **Count IX**---Hawaii state constitutional
> violation of equal protection clause of
> article I, section 5; and
>
> **Count X**--appeal of County agency denial of
> Special Use Permit.

*See* Complaint, ECF No. 1.

This case has a lengthy history.  On January 27, 2016, the court dismissed Count X without prejudice to Plaintiffs' pursuit of their appeal of the agency decision in state court. The court stayed this case with respect to Counts I through IX pending that appeal.  *See* ECF No. 109.  The stay was lifted on February 13, 2017, after the state court affirmed the administrative denial of the Special Use Permit.  *See* ECF Nos. 114, 116.

In July 2018, the court denied summary judgment motions filed by both parties.  *See* 322 F. Supp. 3d 1051 (D. Haw. 2018). In relevant part, this court ruled that, with respect to the RLUIPA substantial burden claim asserted in Count I, a genuine issue of material fact existed as to whether the County of Maui's

4

denial of the requested Special Use Permit imposed a substantial burden on Plaintiffs' exercise of their religion.  In particular, the court ruled that there was a question of fact as to whether, when Plaintiffs obtained an interest in the land, they did or did not have a reasonable expectation that they could build a religious institution there.  *See id.* at 1065.  The court additionally ruled that there was a question of fact as to whether the County of Maui used the least restrictive means in denying Plaintiffs' Special Use Permit application.  *See id.*

On April 23, 2019, the court granted partial summary judgment with respect to Counts I, II, IV, VI, VII, VIII, and IX, ruling that Plaintiffs were asserting only "as applied" challenges in those counts.  The merits of those "as applied" challenges were left for further adjudication.  *See* 384 F. Supp. 3d 1231, 1234 (D. Haw. 2019).  The court also granted summary judgment against Plaintiffs with respect to Count V, rejecting Plaintiffs' contention that § 15-15-95(c) of the Hawaii Administrative Rules amounted to a prior restraint.  *Id.* at 1249-55.  In so ruling, this court expressly upheld the validity of § 15-15-95(c)(3).  Although Plaintiffs also challenged the constitutionality of § 15-15-95(c)(2), this court declined to address that challenge because the permit denial could rest on a single subsection, such as § 15-15-95(c)(3), which the court found valid.

On June 22, 2019, the court granted summary judgment against Plaintiffs with respect to all remaining claims except for Count IV, ruling that the Maui Planning Commission's fact finding and decision were entitled to collateral estoppel effect. *See* 409 F. Supp. 3d 889 (D. Haw. 2019).

At trial in 2019, the County of Maui prevailed on the lone count remaining at the time, Count IV. *See* Verdict Form, ECF No. 392. The advisory jury[1] determined that Plaintiffs had failed to prove by a preponderance of the evidence that Spirit of Aloha Temple was a religious assembly or institution and that Defendants had similarly failed to prove by a preponderance of the evidence that Spirit of Aloha Temple was not a religious assembly or institution. The advisory jury found that Spirit of Aloha Temple failed to show that it had been treated on less than equal terms compared to the County's treatment of a similarly situated nonreligious entity, and that, in fact, the County had shown that there was no such unequal treatment. *Id.* The court entered final judgment in favor of the County of Maui as a result.

Plaintiffs did not challenge the judgment in favor of County of Maui with respect to Count IV, but they did appeal this court's summary judgment rulings. On September 22, 2022, the

---

[1] The jury was advisory because Count IV sought equitable relief under RLUIPA. Although only Count IV was tried, a jury had been demanded when jury-eligible claims were asserted.

Ninth Circuit reversed in part.  With respect to the facial challenge to the land use ordinance asserted in Count V, the Ninth Circuit ruled that Plaintiffs succeeded on their prior restraint claim because part of the ordinance, § 15-15-95(c)(2), granted unbridled discretion to the Maui Planning Commission in allowing the commission to examine adverse effects on surrounding property.  *See* 49 F.4th 1180, 1192-93 (9th Cir. 2022).  This was a provision that this court had declined to address.  The Ninth Circuit left it to this court to determine whether that unconstitutional section could be severed from the rest of the ordinance.  *See id.* at 1192, n.5.  The Ninth Circuit also ruled that this court had erred in giving collateral estoppel effect to the planning commission's decision.  *Id.* at 1193-95.

On remand, this court, in light of the Ninth Circuit's ruling on the matter, ruled that § 15-15-95(c)(2) could not be applied.  This court also ruled that § 15-15-95(c)(2) was severable from the rest of § 15-15-95(c) and that the Maui Planning Commission could rely on § 15-15-95(c)(3) in denying the requested Special Use Permit.  Because the requested permit could be denied if any part of § 15-15-95(c) was not satisfied, the court granted summary judgment against Plaintiffs with respect to the remainder of the prior restraint claim in Count V.  2023 WL 2752790, at *12 (D. Haw. Mar. 31, 2023).  Issues raised by that grant of summary judgment are on appeal before the Ninth Circuit

7

in the context of this court's denial of Plaintiffs' motion for preliminary injunction raising the same issues.

In light of this procedural history, Counts I, II, VI, VII, VIII, and IX remain for adjudication.  Before the court is a motion for partial summary judgment filed by Plaintiffs with respect to Counts I (RLUIPA substantial burden), VI (Free Exercise Clause of First Amendment), and VIII (free exercise clause under article I, section 4, of the Hawaii constitution). Plaintiffs are not seeking partial summary judgment with respect to the discrimination claims asserted in Counts II (RLUIPA nondiscrimination), VII (Equal Protection Clause of the 14th Amendment), and IX (equal protection under the Hawaii constitution).

Also before the court is the County of Maui's motion for summary judgment with respect to all remaining counts (Counts I, II, VI, VII, VIII, and IX) and a counter motion by the County in response to Plaintiffs' motion on Counts I, VI, and VIII.

With respect to Counts I, VI, and VIII, this court rules that the denial of the requested Special Use Permit fails strict scrutiny analysis because it was neither narrowly tailored nor the least restrictive means of furthering a compelling governmental interest.  This ruling addresses only one issue relevant to Counts I, VI, and VIII.  As detailed later in this order, questions of fact preclude summary judgment for either

8

party with respect to other issues raised by Counts I, VI, and VIII.  With respect to Counts II, VII, and IX, summary judgment is denied in light of factual issues.

III.     **SUMMARY JUDGMENT STANDARD.**

This court set forth the summary judgment standard in an order filed on July 20, 2018, in this case.  *See* 322 F. Supp. 3d at 1065.  That standard is incorporated here by reference.

IV.     **ANALYSIS.**

A.   **Strict Scrutiny Applies to All Claims Now Before This Court Except Count II.**

Plaintiffs seek summary judgment in their favor with respect to Counts I, VI, and VIII, arguing that the denial of the requested permit fails to survive strict scrutiny.  The County seeks summary judgment on those counts as well as on Counts II, VII, and IX.

The exact contours of judicial scrutiny of government intrusions on constitutional rights have been articulated in different terms based on the claim asserted and the facts of the case.  For example, in *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 171 (2015), the Supreme Court examined content-based restrictions on speech, stating that, to survive strict scrutiny, the government must prove that the restrictions further a compelling interest that is narrowly tailored to achieve that interest.  Content-based regulation of constitutionally protected

speech must use the least restrictive means of furthering the
articulated compelling interest.  *See Foti v. City of Menlo Park*,
146 F.3d 629, 637 (9th Cir. 1998).  When government intrusion on
speech is content-neutral, however, the analysis examines only
whether the intrusion is narrowly tailored to serve the
government's legitimate interests, but the intrusion need not be
the least restrictive or least intrusive means of doing so.  *See
Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).  These
Supreme Court cases, all involving government intrusion on
protected speech, demonstrate the need to examine the level of
scrutiny with respect to each claim asserted.  The court
therefore begins by examining what level of judicial scrutiny is
required with respect to each claim now before this court.

The three counts on which both Plaintiffs and the
County move for summary judgment-Counts I, VI, and VIII--trigger
strict scrutiny.

With respect to the RLUIPA substantial burden claim
asserted in Count I for a violation of 42 U.S.C. § 2000cc(a)(1),
Congress has placed the burden on a governmental entity to prove
that a land use regulation that imposes a substantial burden on
the religious exercise of a person "(A) is in furtherance of a
compelling governmental interest; and (B) is the least
restrictive means of furthering that compelling governmental
interest."

In requiring strict scrutiny, the RLUIPA substantial burden claim in Count I contrasts with the RLUIPA equal terms claim asserted in Count IV under 42 U.S.C. § 2000cc(b)(1). Count IV, the claim tried to an advisory jury, did not require strict scrutiny. The Ninth Circuit says that RLUIPA calls for an examination of a "compelling governmental interest" and "least restrictive means" only with respect to a RLUIPA substantial burden claim under 42 U.S.C. § 2000cc(a)(1), such as the claim in Count I. *See Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1172 (9th Cir. 2011). The RLUIPA equal terms claim in Count IV and the RLUIPA substantial burden claim in Count I arise under different statutory subsections. Thus, at trial, Count IV's RLUIPA equal terms claim focused on equality of treatment. *See id.*

The court looks next at the alleged violation of the Free Exercise Clause of the First Amendment asserted in Count VI. A plaintiff bringing such a claim must show that a government entity has burdened the plaintiff's sincere religious practice. Once such a showing is made, the government may escape liability "by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421–22 (2022). In the context of a free exercise claim, the Supreme Court has also stated that a government may justify an intrusion on

religious liberty "by showing that it is the least restrictive means of achieving some compelling state interest." *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 718 (1981).

Plaintiffs' free exercise claim asserted in Count VIII under the Hawaii constitution, article I, section 4, applies a similar standard.  Under Hawaii law, when the government "imposes a burden upon the free exercise of religion . . . , the regulation must be justified with a compelling government interest, and the government has the burden of demonstrating that no alternative forms of regulation would combat such abuses without infringing First Amendment rights." *State v. Armitage*, 132 Haw. 36, 59, 319 P.3d 1044, 1067 (2014) (quotation marks and citation omitted).

Only the County (not Plaintiffs) moves for summary judgment on Counts II, VII, and IX.  Of those three counts, Counts VII and IX trigger strict scrutiny, while Count II does not.

The RLUIPA discrimination claim asserted in Count II asserts a violation of 42 U.S.C. § 2000cc(b)(2).  That provision is located in the same subsection that addresses a RLUIPA equal terms claim.  Because the Ninth Circuit does not apply strict scrutiny to a RLUIPA equal terms claim, *see Centro Familiar Cristiano Buenas Nuevas*, 651 F.3d at 1172, it appears that the Ninth Circuit would not apply strict scrutiny to a RLUIPA

12

discrimination claim.  Instead, the analysis should focus on
whether a land use regulation is discriminating "against any
assembly or institution on the basis of religion or religious
denomination."  42 U.S.C. § 2000cc(b)(2).  Of course, whether a
land use regulation is narrowly tailored to further a compelling
governmental interest may inform any decision with respect to
whether the regulation is discriminating based on the basis of
religion or religious denomination.

        With respect to the alleged violation of the Equal
Protection Clause of the Fourteenth Amendment asserted in
Count VII, a government's unequal treatment based on religion
must meet strict scrutiny.  That is, government classifications
based on religion "will be sustained only if they are suitably
tailored to serve a compelling state interest."  *City of
Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985);
*see also Al Saud v. Days*, 50 F.4th 705, 709–10 (9th Cir. 2022)
("The Equal Protection Clause prohibits the government from
classifying people based on suspect classes, unless the
classification is narrowly tailored to satisfy a compelling
governmental interest (i.e., the government's action passes
strict scrutiny).").

        The equal protection claim under the Hawaii
constitution, article I, section 5, asserted in Count IX applies
a similar analysis.  *See Baehr v. Lewin*, 74 Haw. 530, 580, 852

13

P.2d 44, 67 (1993), *abrogated on other grounds by Obergefell v. Hodges*, 576 U.S. 644 (2015).  In *Baehr*, the Hawaii Supreme Court ruled that, with respect to suspect classifications for purposes of equal protection analysis under article I, section 5, of the Hawaii constitution, strict scrutiny requires an analysis of whether a classification is justified by compelling state interests and narrowly drawn to avoid unnecessary abridgments of constitutional rights.  *Id.*

Under any formulation of the strict scrutiny analysis, this court agrees with Plaintiffs that, with respect to the three counts Plaintiffs move on (Counts I, VI, and VIII), the denial of the requested Special Use Permit does not survive strict scrutiny.  The denial was neither narrowly tailored nor the least restrictive means of furthering any compelling governmental interest.  This court therefore grants partial summary judgment in favor of Plaintiffs limited to the strict scrutiny issue raised by those counts.  As described below, however, genuine issues of fact with respect to other matters raised by Counts I, VI, and VIII preclude summary judgment in Plaintiffs' favor on the entirety of those three counts.

In opposing Plaintiffs' motion, the County of Maui repeats an earlier argument that the denial of Plaintiffs' requested Special Use permit satisfied strict scrutiny.  In 2018, this court ruled that it could not "determine that, as a matter

of law, the County of Maui used the least restrictive means in denying the permit application.  Whether viable less restrictive means were available is yet another question of fact."  322 F.3d at 1065-66.  In 2019, trial on those issues of fact was obviated by this court's determination that the Maui Planning Commission's factual and legal rulings with respect to the denial of the requested Special Use Permit (ECF No. 513-6), including its rulings with respect to strict scrutiny, had collateral estoppel effect.  *See* 409 F. Supp. 3d 889, 905 (D. Haw. 2019).  The Maui Planning Commission had determined that "there were health and safety issues implicated by the likely significant increase in traffic attributable to the uses proposed by the Application" and that "inclement weather would increase the likelihood of accidents and human injuries or death."  ECF No. 513-6, PageID # 12926.  The Maui Planning Commission, despite having a recommendation by the Maui Planning Department (ECF No. 511-3) to the contrary, ruled "that these compelling public health and safety issues could not be adequately addressed by the implementation of any permit condition or use restriction."  *Id.* In addition to ruling that the commission's findings and decision had preclusive effect, this court noted that it would not hesitate to recognize that protecting the public was a compelling governmental interest.  *See* 409 F. Supp. 4th at 905.

15

On appeal, the Ninth Circuit ruled that this court had erred in giving collateral estoppel effect to the Maui Planning Commission's decision.  49 F.4th 1180, 1193-95 (9th Cir. 2022). While the County of Maui again seeks to have this court treat the Maui Planning Commission's factual findings as having preclusive effect, that approach would flout the Ninth Circuit's ruling. The court gives no preclusive effect to those findings.  This, of course, still allows the court to consider the underlying undisputed facts.

The County of Maui has identified two compelling public safety interests that it says justify the denial of Plaintiffs' Special Use Permit application.  First, the County points to the Maui Planning Commission's identification of road safety as a compelling interest justifying the denial of the requested permit:

> The Commission finds that there is evidence
> of record that the proposed uses expressed in
> this Application should they be approved
> would increase vehicular traffic on Haumana
> Road, which is narrow, winding, one-lane in
> areas, and prone to flooding in inclement
> weather.  The Commission finds that Haumana
> Road is regularly used by pedestrians,
> including children who use the road to access
> the bus stop at the top of the road.  The
> commission finds that granting the
> Application would adversely affect the health
> and safety of residents who use the roadway,
> including endangering human life.  The
> Commission finds that the health and safety
> of the residents' and public's use of Haumana
> Road is a compelling government interest and
> that there is no less restrictive means of

ensuring the public's safety while granting
the uses requested in the Application.

ECF No. 185-9, PageID # 3288-89.

Second, the County argues that the lack of sufficient
wastewater facilities and potable water also amounts to a public
health concern qualifying as a compelling interest.  Water
concerns were not cited by the Maui Planning Commission as a
basis for the second permit denial, although the lack of
wastewater facilities and potable water were raised before the
commission.  This court raised with the parties the issue of
whether, during the present litigation, the County could seek the
same result it obtained from the Maui Planning Commission but on
water safety grounds not ultimately relied on by the commission.
The matter not having been thoroughly briefed or argued by the
parties, the court is not in a position to rule on that issue in
this order.  Possibly, because the commission's findings and
decision have no preclusive effect in this lawsuit, the County
may add water concerns.  For purposes of this order, it does not
matter, as with or without water concerns, in the context of the
claims that Plaintiffs seek summary judgment on, the County does
not satisfy strict scrutiny.

In short, even if the court deems road safety and the
lack of wastewater facilities and potable water to indeed be
compelling interests identified by the County, the undisputed
facts demonstrate that the denial of the permit application was

17

not narrowly tailored or the least restrictive means of
furthering those interests.

Since this court's earlier rulings, this case has gone
to trial on Plaintiffs' RLUIPA equal terms claim asserted in
Count IV.  Thus, this court now has a different record than when
it earlier denied summary judgment motions with respect to strict
scrutiny.  While the trial was on a different claim, the evidence
at trial unequivocally demonstrated that the denial of the
requested Special Use Permit was not narrowly tailored or the
least restrictive means of furthering a compelling governmental
interest.  At trial, the Maui Planning Department's
recommendation to the Maui Planning Commission was discussed at
length.  For example, Randall Okaneku, a licensed civil engineer
with a concentration in traffic engineering, testified at trial.
*See* ECF No. 436, PageID #s 137-38.[2]  The court qualified Okaneku
as an expert in the field of traffic engineering, including
traffic safety.  *Id.*, PageID # 9609.

Okaneku testified about the Maui Planning Department's
recommendation.  *See id.*, PageID #s 9703-09.  In its proposed
condition No. 12, the department had stated:

> That in order to reduce the amount of traffic
> on Haumana Road [, where Plaintiffs' property
> was located, Plaintiffs] . . . shall use a
> shuttle system (vans and limousines) to bring

------

[2] Plaintiffs attach excerpts of this testimony as ECF No.
518-3.

event guests to and from the property for all
events that will have more than 25 persons in
attendance.  Every effort should be taken to
shuttle or carpool event guests to all
activities.  Shuttles shall use privately
owned facilities, such as hotels, for their
operations such as drop-offs and pick-ups.

ECF No. 511-3, PageID # 12440.  That recommendation was received

as part of Plaintiffs' Exhibit 8 at trial.  *See* ECF No. 435,

PageID # 9286-87.

The County of Maui argues that any discussion of

"reducing" traffic makes no sense because any additional people

going to the property would actually increase traffic on Haumana

Road.  *See* ECF No. 534, PageID # 14870-71.  The County

misconstrues the concept of "reducing" traffic as meaning

avoiding all traffic over and above existing traffic.  But the

Maui Planning Department was clearly looking at controlling the

additional traffic that would result from Plaintiffs' proposed

activities.  The Maui Planning Department was considering

measures to limit vehicles traveling to and from Plaintiffs'

property via Haumana Road.  Rather than allowing every person

visiting the property to drive a private vehicle, the department

suggested that guests carpool and that shuttles be used.  Okaneku

opined that "these mitigation measures would minimize the amount

of traffic increase on Haumana Road" caused by granting

Plaintiffs' requested Special Use Permit and that these

conditions were reasonable.  ECF No. 437, PageID #s 9706, 9708.

19

In addition, Okaneku testified that he would also
recommend the installation of pullouts so that a vehicle could
pull over to let another vehicle driving in the opposite
direction pass, as well as appropriate signs saying that cars
should yield to oncoming traffic.  *Id.*, PageID # 9709.
Installing pullouts may well be difficult; the County points out
that they would have to be installed on private property owned by
Honig's neighbors.  *See* ECF No. 534, PageID # 14874.  Okeneku's
lack of familiarity with the feasibility of his pullout
suggestion goes to his credibility and familiarity with the
conditions of the narrow road.  But Okeneku's opinion that
mitigation measures could minimize traffic and thereby reduce the
danger arising from cars traveling on Haumana Road appears
supported by the evidence in the record.

William Spence, the County of Maui planning director,
testified at trial.  *See* ECF Nos. 438, 439.[3]  Spence also
testified about the conditions that the Maui Planning Department
was recommending with respect to the requested Special Use
Permit.  For example, the Maui Planning Department recommended in
Condition # 7 that classes be limited to 24 attendees and to 4
sessions per week between 10 a.m. and 4 p.m.  Similarly, church
services were to be limited to 24 attendees once per week between

_____

[3] Plaintiffs attach excerpts of this testimony as ECF No.
518-6.

10 a.m. and 2 p.m.  Church-related events such as weddings were
to be limited to 40 attendees and 48 events per year, with no
more than 4 in any month.  Shuttles were to be used when events
had 25 or more people.  *See* ECF No. 511-3, PageID # 12438.
Spence testified that these conditions would limit the activity
on the property, which would, in turn, limit the volume of
vehicles on Haumana Road.  ECF No. 439, PageID #s 10105-06.  The
County's focus on the application's proposed number of attendees
per month disregards the possible limitations that could be
imposed as conditions of granting the Special Use Permit
application.  That is, the County focuses on the initial numbers
of attendees proposed by the application, without truly
discussing whether any conditions could be placed on those
attendees to further any identified compelling interest.  *See,
e.g.,* ECF No. 534, PageID #s 14867-68.  Spence specifically noted
that the shuttle requirement would limit traffic on the road and
thereby lessen traffic conflicts on it.  *Id.*, PageID #s 10107,
10112.  At trial, Honig testified that Plaintiffs had agreed to
limit the number of attendees and to require the use of shuttles
for events involving more than 25 people.  *See* ECF No. 435,
PageID #s 9290-93.

        In addition to traffic safety concerns and conditions
to reduce those concerns, Spence testified about health concerns
and safety measures that could be implemented.  For example,

21

based on discussions with the Department of Health and the limitations of Plaintiffs' existing septic system, the Maui Planning Department recommended in Condition # 8 restrictions on the number of people attending events.  This condition was to ensure that Plaintiffs' wastewater system remained functional such that it did not overflow and cause a health hazard.  *See* ECF No. 439, PageID # 10108.  Honig testified at trial that Plaintiffs had agreed to Condition # 8.  *See* ECF No. 435, PageID #s 9294.

Spence also testified that, in recommended Condition # 10, the Maui Planning Department sought to limit food preparation on Plaintiffs' property.  Spence testified that this condition was based on the Department of Health's concern that food might be washed with water or prepared in a kitchen that was not certified.  ECF No. 439, PageID #s 10110-11.  The State Department of Health, Safe Drinking Water Branch, had commented on Plaintiffs' Special Use Permit application that, with respect to catering events, caterers had to provide potable water for a hand sink and could not use water from the property given the quality of the water on the property.  *See* ECF No. 183-9, PageID # 2902.  This concern may have arisen because Honig appears to have "installed cesspools near drinking water wells."  49 F.4th at 1184.  Additionally, the Maui Planning Department noted that the "availability of potable water on the site for event guests

is highly restricted, requiring purified water from outside the property to be brought on site.  Essentially no potable water for consumption by event attendees is available from the private water supply on property."  ECF No. 511-3, PageID # 12410.  The Planning Department's recommended Condition # 11 required Plaintiffs to test water from a well on Plaintiffs' property to make sure that it was safe to use.

        To address concerns about public safety with respect to traveling on Haumana Road and the cleanliness of facilities on the property, Okaneku's and Spence's testimony and the Maui Planning Department's recommendations established that there were conditions that could have been imposed as prerequisites for the Special Use Permit that would have furthered the County's interest in public safety.  Plaintiffs have indicated that they were and are "willing to comply with any reasonable conditions of approval for [their] special use permit."  Honig Decl. ¶ 44, ECF No. 511-4, PageID # 12819.  Specifically, instead of denying the permit application because of concerns about the number of attendees driving on Haumana Road, the record establishes that limits on the number of attendees, carpools, and the required use of shuttles for events larger than 25 people, could control the number of people driving on the road and therefore mitigate road safety concerns.  These conditions are precisely the kind of narrow tailoring required by strict scrutiny.  While not having

any additional drivers on the road would completely eliminate any road safety issue, the County has not established that precluding all additional drivers is the only way of furthering road safety. The Maui Planning Commission was clearly concerned with the safety of pedestrians on the road.  But its conclusion that it needed to preclude any additional cars on the road was overbroad and unjustified by the record.

Similarly, the County fails to establish that precluding all attendees is the only way of furthering its concerns about the lack of wastewater facilities and potable water.  To the contrary, the Maui Planning Department noted that Plaintiffs' wastewater facilities are sufficient to handle 40 people on the property for 6 hours.  *See* ECF No. 511-3, PageID # 12410.  Limiting the number of attendees could ensure that there would be no problem with the wastewater facilities.  The Maui Planning Department also noted that potable water could be brought on site.  *Id.*  Thus, even though Plaintiffs may have resisted such a requirement, *see* ECF No. 183-13, PageID # 3001 (email from Honig demanding "our rights to operate as a Private Water System and as a 501c3 Church"), requiring potable water to be brought to the property until Plaintiffs demonstrated the safety of their well water could have been a condition furthering public health concerns.

The narrowly tailored prong requires this court to "verify" that the government's action was "necessary" to achieve its identified interest.  *See generally Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 312 (2013) (stating, in examining an equal protection claim, "Narrow tailoring also requires a reviewing court to verify that it is 'necessary' for the university to use race to achieve the educational benefits of diversity.").  Given the availability of conditions that would have furthered the County's identified interests, the County's outright denial of the permit was not narrowly tailored to advance those interests, as the outright denial of the permit was not "necessary" to achieve those interests.

Similarly, given the availability of conditions on the Special Use Permit that would have furthered the identified compelling interests, the outright denial of the Special Use Permit was not the least restrictive means of furthering those interests.  *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014) ("The least-restrictive-means standard is exceptionally demanding," requiring the Government to demonstrate that it "lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting parties in these cases."); *see also Holt v. Hobbs*, 574 U.S. 352, 365 (2015) (stating that, with respect to the issue of the least restrictive means, "[i]f a less restrictive means is

25

available for the Government to achieve its goals, the Government must use it." (quotation marks and citation omitted)).

The County of Maui's mere consideration of or reference to alternatives does not satisfy the least restrictive means requirement. *See* ECF No. 525, PageID # 14807. Instead, the uncontroverted facts before this court demonstrate that the outright denial of the requested permit was neither narrowly tailored nor the least restrictive means of furthering public safety, even assuming that public safety qualifies as a compelling government interest for purposes of the strict scrutiny analysis. Accordingly, the court grants Plaintiffs partial summary judgment on the strict scrutiny issue in the context of Counts I, VI, and VIII. The court rules that, in the context of Counts I, VI, and VIII, Plaintiffs establish that the denial of the requested Special Use Permit fails any applicable strict scrutiny analysis. The court stresses that this ruling affects only a portion of the matters Plaintiffs must prove to prevail on Counts I, VI, and VIII, as detailed later in this order.

**B.    Count I--Substantial Burden Under RLUIPA.**

Both parties seek summary judgment with respect to Count I, which asserts that the County of Maui's imposition and implementation of land use regulations to deny Plaintiffs' requested Special Use Permit for "CHURCH ACTIVITIES" amounted to

a substantial burden on Honig's and Spirit of Aloha Temple's

religious exercise, in violation of 42 U.S.C. § 2000cc(a).  That

statutory provision states:

> (1) General rule
>
> No government shall impose or implement a
> land use regulation in a manner that imposes
> a substantial burden on the religious
> exercise of a person, including a religious
> assembly or institution, unless the
> government demonstrates that imposition of
> the burden on that person, assembly, or
> institution–
>
> > (A) is in furtherance of a compelling
> > governmental interest; and
> >
> > (B) is the least restrictive means of
> > furthering that compelling governmental
> > interest.

42 U.S.C.A. § 2000cc(a).

The Ninth Circuit directs that RLUIPA substantial

burden claims proceed in two sequential steps:

> First, the plaintiff must demonstrate that a
> government action has imposed a substantial
> burden on the plaintiff's religious exercise.
> Second, once the plaintiff has shown a
> substantial burden, the government must show
> that its action was "the least restrictive
> means" of "further[ing] a compelling
> governmental interest."

*Int'l Church of Foursquare Gospel v. City of San Leandro*, 673

F.3d 1059, 1066 (9th Cir. 2011); *see also New Harvest Christian

Fellowship v. City of Salinas*, 29 F.4th 596, 601 (9th Cir. 2022)

(stating that only when a plaintiff proves that the denial of an

application imposed a substantial burden on its religious

27

exercise does the burden shift to the government to show that its denial was narrowly tailored to accomplish a compelling governmental interest); 42 U.S.C. § 2000cc-2(b) ("If a plaintiff produces prima facie evidence to support a claim alleging a . . . a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.").

While the County of Maui has failed to show that the denial of the requested permit was narrowly tailored or was the least restrictive means of furthering a compelling governmental interest, that does not end the RLUIPA substantial burden inquiry.  To succeed on their RLUIPA substantial burden claim, Plaintiffs must still establish that the challenged land use regulation imposed a substantial burden on their exercise of religion.[4]  In adjudicating that issue, courts "examine the particular burden imposed by the implementation of the relevant

---

[4] The advisory verdict that determined that Spirit of Aloha Temple had failed to prove that it was a "religious assembly or institution" does not preclude Plaintiffs from maintaining their RLUIPA substantial burden claim, as RLUIPA prohibits "a substantial burden on the religious exercise of a person, including a religious assembly or institution."  A plaintiff may be able to establish that the plaintiff is such person, even if the plaintiff is not a "religious assembly or institution."

zoning code on the claimant's religious exercise and determine, on the facts of each case, whether that burden is 'substantial.'" *Int'l Church of Foursquare Gospel*, 673 F.3d at 1066.  "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise."  *Holt v. Hobbs*, 574 U.S. 352, 361-62 (2015).

RLUIPA requires that it "be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc-3(g).  It defines "religious exercise" as "includ[ing] any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).

RLUIPA itself does not define "substantial burden." *Nance v. Miser*, 700 F. App'x 629, 631 (9th Cir. 2017); *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).  The Ninth Circuit has held:

> [A] substantial burden must place more than inconvenience on religious exercise.  For a land use regulation to impose a substantial burden, it must be oppressive to a significantly great extent.  That is, a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.  A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.

*Int'l Church of Foursquare Gospel*, 673 F.3d at 1067 (quotation
marks, alterations, and citations omitted); *see also New Harvest
Christian Fellowship*, 29 F.4th at 602.  When a religious
institution has no ready alternatives, or when the alternatives
require substantial delay, uncertainty, and expense, the complete
denial of a permit application "might be indicative of a
substantial burden."  *Int'l Church of Foursquare Gospel*, 673 F.3d
at 1068.  In other words, a burden need not be insuperable or
insurmountable to be substantial.  *Id.* at 1069.

In *Guru Nanak Sikh Society of Yuba City v. County of
Sutter*, 456 F.3d 978, 981 (9th Cir. 2006), the Ninth Circuit
considered a substantial burden challenge under RLUIPA, holding
that the denial of a permit substantially burdened the
plaintiff's religious exercise.  The plaintiff had applied for a
conditional use permit to allow the construction of a temple on
residential land.  *Id.* at 982.  The planning division recommended
to the planning commission that the conditional use permit be
granted with conditions.  The planning commission denied the
permit, citing concerns that resulting noise and traffic would
interfere with the neighborhood.  *Id.*

The plaintiff then acquired a different property zoned
for agricultural use and sought a conditional use permit to allow
the construction of a temple and assembly hall on the second
property.  That second property was surrounded by other

30

agricultural land, where the plaintiff proposed to hold worship services and weddings.  *Id.*  The plaintiff agreed to various conditions articulated by County and state departments, including a "no development" buffer area, landscaping, and holding all ceremonies indoors.  *Id.* at 983.  The planning commission approved the permit, but neighboring property owners appealed. The Board of Supervisors then reversed the approval, reasoning that the property had been agricultural and should remain so, that the proposed use of the property would not promote orderly growth, and that the proposed temple would be detrimental to surrounding agricultural uses.  *Id.* at 983-84.

Guru Nanak Sikh Society challenged the denial of the permit.  The United States District Court for the Eastern District of California invalidated the permit denial, and the Ninth Circuit affirmed.  The Ninth Circuit determined that the County of Sutter had imposed a substantial burden on Guru Nanak Sikh Society.  The Ninth Circuit expressly stated that it was not deciding whether the failure of a government to provide a religious institution "with a land use entitlement for a new facility for worship necessarily constitutes a substantial burden pursuant to RLUIPA."  However, it determined that, under the circumstances presented, the County of Sutter had imposed a substantial burden given two considerations:

> (1) that the County's broad reasons given for
> its tandem denials could easily apply to all

31

> future applications by [the plaintiff]; and
> (2) that [the plaintiff] readily agreed to
> every mitigation measure suggested by the
> Planning Division, but the County, without
> explanation, found such cooperation
> insufficient.

*Id.* at 989.

Plaintiffs in the present case contend that the denial

of the requested Special Use Permit allowing their church on

agricultural land is similarly a substantial burden on their

exercise of their religion, especially because they are willing

to comply with all reasonable conditions imposed as a condition

of that permit.  Plaintiffs, however, ignore this court's

previous summary judgment order on this issue.  In 2018, this

court ruled that, with respect to the RLUIPA substantial burden

claim asserted in Count I, a genuine issue of material fact

existed as to whether the County of Maui's denial of the

requested Special Use Permit imposed a substantial burden on

Plaintiffs' exercise of religion.  In particular, this court

ruled that there was a question of fact as to whether Plaintiffs

obtained an interest in the land without a reasonable expectation

of being allowed to build a religious institution on it.  *See* 322

F. Supp. 3d at 1065:

> Courts of appeal outside the Ninth Circuit
> have held that a plaintiff's own actions may
> be relevant with respect to the substantial
> burden analysis.  In *Livingston Christian
> Schools. v. Genoa Charter Township*, 858 F.3d
> 996, 1004 (6th Cir. 2017), the Sixth Circuit
> stated:

> [W]hen a plaintiff has imposed a
> burden upon itself, the government
> cannot be liable for a RLUIPA
> substantial-burden violation.  For
> example, when an institutional
> plaintiff has obtained an interest
> in land without a reasonable
> expectation of being able to use
> that land for religious purposes,
> the hardship that it suffered when
> the land-use regulations were
> enforced against it has been deemed
> an insubstantial burden.

The Fourth and Seventh Circuits have
similarly ruled that, when a plaintiff
obtains an interest in land without a
reasonable expectation that it will be
allowed to build a religious institution on
the property, any burden imposed on the
religious institution is self-imposed and not
a substantial burden caused by a government
entity.  *See Andon, LLC v. City of Newport
News, Va.*, 813 F.3d 510, 515 (4th Cir. 2016)
(ruling that because, when the property was
purchased, a church was not a permissible use
and a church would have violated a setback
requirement, a religious group could not have
had a reasonable expectation that a variance
would be granted to allow the building of a
church on the property); *Petra Presbyterian
Church v. Village of Northbrook*, 489 F.3d
846, 851 (7th Cir. 2007) (the plaintiff was
not substantially burdened when it purchased
property in an industrial zone for use as a
church after having been told that its
special-use application would be denied).

Honig purchased the land in issue here
in September 1994, knowing that it was zoned
for agricultural and conservation use.  In
2011, after its initial Special Use Permit
application was denied, Spirit of Aloha
Temple entered into an agreement to lease the
property from Honig.  It arguably knew or
should have known that it might not get a
Special Use Permit for the proposed temple.
Spirit of Aloha Temple may have reasonably

33

> believed that it would nevertheless receive
> the permit because it was amenable to any
> reasonable condition and it actually orally
> amended the permit application to have fewer
> events and to end most of those events during
> daylight hours.  But whether it was
> reasonable for Spirit of Aloha Temple to
> expect that it would get the Special Use
> Permit under these circumstance or whether it
> created its own burden are questions of fact
> not resolvable on the present record.

*Id.*

The record before this court now is not materially different with respect to this issue of fact.  Honig did admit at trial that, when he first leased the property to Spirit of Aloha Temple, he knew that Spirit of Aloha's first Special Use Permit application had already been denied.  *See* ECF No. 438, PageID # 9964.  However, that admission does not establish one way or the other whether it was reasonable for Spirit of Aloha Temple to expect that it would get the Special Use Permit or whether it created its own burden by entering into a lease when it knew that a previous Special Use Permit application had been denied.  Accordingly, Plaintiffs fail on the present motion to establish that the undisputed facts demonstrate that the denial of their Special Use Permit application is a substantial burden on their exercise of religion.  For that reason, their motion is denied with respect to Count I.  At trial, if Plaintiffs succeed in demonstrating that the denial of the requested permit substantially burdened their exercise of religion, Plaintiffs

will succeed on their RLUIPA substantial burden claim.  As
discussed above, the denial of the permit application was not the
least restrictive means of furthering a compelling governmental
interest.

### C.    Count VI--Free Exercise of Religion.

Count VI, on which both sides seek summary judgment,
asserts that the County of Maui deprived and is depriving
Plaintiffs of their First Amendment right to freely exercise
their religion, actionable under 42 U.S.C. § 1983.  The Free
Exercise Clause of the First Amendment, which applies to states
through the Fourteenth Amendment, provides that "Congress shall
make no law respecting an establishment of religion, or
prohibiting the free exercise thereof . . . ."  It has been
extended to cities enacting ordinances.  *See Church of the Lukumi
Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).  A
plaintiff asserting a First Amendment free exercise of religion
claim "must show that the government action in question
substantially burdens the person's practice of her religion."
*Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015); *Temple of
1001 Buddhas v. City of Fremont*, 588 F. Supp. 3d 1010, 1022 (N.D.
Cal. 2022) ("A state actor violates the Free Exercise Clause of
the First Amendment when it substantially burdens the person's
practice of their religion." (quotation marks and citation
omitted)).  For purposes of a free exercise of religion claim, a

"substantial burden places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones*, 791 F.3d at (alterations, quotation marks, and citation omitted).

To succeed on a free exercise of religion claim, a plaintiff has the burden of establishing 1) that the claimant's proffered belief is sincerely held, as the First Amendment does not extend to "religions" that are obviously shams and whose members are patently devoid of religious sincerity; and 2) that the claim is "rooted in religious belief, not in 'purely secular' philosophical concerns." *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981); *see also Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015).

The County of Maui claims that, even if Plaintiffs meet their burden of demonstrating a free exercise of religion claim, the County has no liability because its actions pass judicial scrutiny. When a government restricts the free exercise of religion, the court must determine what level of scrutiny should be applied to such a restriction. "[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* A law that

36

is not neutral or is not one of general applicability, on the other hand, must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest. *Id.* at 531-32; *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Because the challenged restrictions are not 'neutral' and of 'general applicability,' they must satisfy 'strict scrutiny,' and this means that they must be 'narrowly tailored' to serve a 'compelling' state interest."); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993) ("A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny. To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." (quotation marks and citation omitted)).

In 2021, the Supreme Court held that "[a] law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton v. City of Philadelphia, PA*, 141 S. Ct. 1868, 1877 (2021) (quotation marks, alterations, and citations omitted). *Fulton* explained, "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any

exceptions have been given, because it invites the government to decide which reasons for not complying with the policy are worthy of solicitude--here, at the Commissioners sole discretion." *Id.* at 1879 (quotation marks, alterations, and citation omitted). The court therefore turns to examining whether the Special Use Permit application process in this case amounts to "a formal mechanism for granting exceptions" for land uses in agriculturally zoned land in Hawaii.

Section 205-2 of Hawaii Revised Statutes describes the four major land use districts in Hawaii--urban, rural, agricultural, and conservation.  In relevant part, § 205-2(c) describes the types of activities and uses that are allowed on land zoned for agricultural use.  Section 205-4.5 of Hawaii Revised Statutes further lists uses permitted on land zoned for agricultural use.  Sections 205-6(a) and (c) allow a county planning commission to "permit certain unusual and reasonable uses within agricultural . . . districts other than those for which the district is classified," subject to protective restrictions.

To determine whether a proposed use is an "unusual and reasonable use," § 15-15-95(c) of the Hawaii Administrative Rules provides five "guidelines" for granting an exception to agriculturally zoned land restrictions:

> (1) The use shall not be contrary to the
> objectives sought to be accomplished by

38

chapters 205 and 205A, HRS, and the rules of
the commission;

(2) The proposed use would not adversely
affect surrounding property;

(3) The proposed use would not unreasonably
burden public agencies to provide roads and
streets, sewers, water drainage and school
improvements, and police and fire protection;

(4) Unusual conditions, trends, and needs
have arisen since the district boundaries and
rules were established; and

(5) The land upon which the proposed use is
sought is unsuited for the uses permitted
within the district.

http://luc.hawaii.gov/wp-content/uploads/2012/09/LUC-Admin-Rules_
Chapter15-15_2013.pdf) (Nov. 2, 2013).  As noted earlier in this
order, the Ninth Circuit has recently determined that the second
"adverse affect" guideline is unconstitutional.  *See* 49 F.4th at
1192-93.

Under § 19.30A.060.A.9 of the Maui County Code,
churches and religious institutions are expressly permitted in an
agricultural district "if a special use permit, as provided in
§ 19.510.070[B] of this title, is obtained."

https://library.municode.com/hi/county_of_maui/codes/code_of_ordi
nances?nodeId=TIT19ZO_ARTIICOZOPR_CH19.30AAGDI_19.30A.060SPUS.
Under § 19.510.070.B.8, the Maui Planning Commission may approve
such a permit by "review[ing] whether the use complies with the
guidelines established in section 15-15-95 of the rules of the
land use commission of the State."  *Id.* (available at

https://library.municode.com/hi/county_of_maui/codes/code_of_ordi
nances?nodeId=TIT19ZO_ARTVADEN_CH19.510APPR_19.510.070SPUSPE).

Given the individualized examination of a church's or
religious institution's Special Use Permit application pursuant
to § 19.30A.060.A.9 of the Maui County Code, § 15-15-95(c) of the
Hawaii Administrative Rules, and § 205-6(a) and (c) of Hawaii
Revised Statutes, the application of these land use regulations
and statutes does not involve law of general applicability for
which rational review would be applied. Instead, the
individualized examination of circumstances relating to the
granting of an exception for religious use of property in
agriculturally zoned land, under *Fulton*, requires application of
a strict scrutiny analysis. *See San Jose Christian Coll.,* 360
F.3d at 1031.

The County of Maui seeks summary judgment in its favor
with respect to Count VI, arguing that it satisfies the strict
scrutiny analysis required by that count. Plaintiffs, on the
other hand, seek summary judgment in their favor with respect to
Count VI, arguing that strict scrutiny is not satisfied. While
the court agrees that, as discussed above, strict scrutiny is not
satisfied in the context of Count VI, Plaintiffs are not entitled
to summary judgment with respect to the entirety of Count VI
because a question of fact remains as to whether Plaintiffs were
exercising religious rights that were substantially burdened.

40

In the deposition of the County of Maui's witness under Rule 30(b)(6) of the Federal Rules of Civil Procedure, the County's counsel stated that "the county is not arguing in this lawsuit the Mr. Honig's--the sincerity of Mr. Honig's beliefs one way or the other." Thus, the court turns to whether Plaintiffs' claim is "rooted in religious belief, not in 'purely secular' philosophical concerns." In its counter motion for summary judgment, the County of Maui argues that it is not.[5] That is, the County claims that Plaintiffs are not operating a church based on religious beliefs, but instead are operating a commercial wedding and tourist destination business. *See Founding Church of Scientology of Washington, D. C. v. United States*, 409 F.2d 1146, 1160 (D.C. Cir. 1969) ("It might be possible to show that a self[-]proclaimed religion was merely a commercial enterprise, without the underlying theories of man's nature or his place in the Universe which characterize recognized religions. Though litigation of the question whether a given group or set of beliefs is or is not religious is a delicate business, our legal system sometimes requires it so that secular

---

[5] Plaintiffs argue that this counter motion is untimely as it was filed after the dispositive motions cutoff. ECF No. 523, PageID # 14688 n.1. However, counter motions are allowed pursuant to Local Rule 7.7 ("Any motion raising the same subject matter as an original motion may be filed by the responding party together with the party's opposition and may be noticed for hearing on the same date as the original motion, provided that the motions would otherwise be heard by the same judge.").

enterprises may not unjustly enjoy the immunities granted to the sacred.").

There are some facts, as noted in this court's 2018 order, tending to support the County's contention.  Honig purchased the Haumana Road property in September 1994.  Well Being International Inc. was incorporated in February 1993 to perform research and instruction for individual and global peace, harmony, and health.  322 F.3d at 1054.  From 2002 through 2007, Honig applied for various trade names so that Well Being International could advertise for weddings or sacred unions on the property.  *Id.* at 1054-55.  In 2005, Honig leased the Haumana Road Property to Well Being International.  *Id.* at 1055.  Spirit of Aloha Temple was formed in September 2007 and sought its first Special Use Permit for the Haumana Road property in October 2007.  At that time, Well Being International was still leasing the property from Honig.  *Id.*  By late 2015, about 550 weddings had been performed on the property.  *See* 49 F.4th at 1184; ECF No. 438, PageID # 9964 (Honig testifying at trial that the first Special Use Permit application had been denied by the time he leased the property to Spirit of Aloha Temple).  Additionally, in the earlier trial Plaintiffs failed to prove that Spirit of Aloha Temple was a religious assembly or institution.  *See* Verdict Form, ECF No. 392, PageID # 7139.

Plaintiffs, on the other hand, argue that the County has already conceded that their claim is rooted in religious belief, pointing to the deposition testimony of the County's Rule 30(b)(6) representative.  William Spence testified, "I would say that some [of Plaintiffs' proposed uses for the land we]re religious in nature" and that some, like the a commercial wedding business and helicopter flights, were not religious in nature. ECF No. 511-3, PageID #s 12369-70.  The County is not challenging the sincerity of Plaintiffs' religious beliefs, so the fact that the 2012 Special Use Permit application sought to use the property for "CHURCH ACTIVITIES," including Sunday services, tends to support Spence's notation that some of the proposed uses were religious in nature.  *See* Land Use Commission Special Use Permit Application, ECF No. 183-6, PageID #s 2803-04.

With respect to Rule 30(b)(6) deponents, however, the Ninth Circuit has stated:

> "the testimony of a Rule 30(b)(6) deponent does not absolutely bind the corporation in the sense of a judicial admission, but rather is evidence that, like any other deposition testimony, can be contradicted and used for impeachment purposes.  The Rule 30(b)(6) testimony also is not binding against the organization in the sense that the testimony can be corrected, explained and supplemented, and the entity is not 'irrevocably' bound to what the fairly prepared and candid designated deponent happens to remember during the testimony."

*Snapp v. United Transportation Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) (quoting 7 James Wm. Moore, et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016)).  Moreover, the Ninth Circuit says, "[A] Rule 30(b)(6) deponent's own interpretation of the facts or legal conclusions do not bind the entity."  *Id.*

Even if the County were bound by Spence's statement that he "would say some of [the proposed uses] are religious in nature," that does not necessarily mean that Plaintiffs were exercising religious rights as opposed to operating a for-profit business.  And even a for-profit business might sometimes exercise religious rights.  *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 719 (2014) (recognizing that a for-profit closely held corporation may assert claims under the Religious Freedom Restoration Act of 1993).

At trial it may become clear that Plaintiffs were exercising religious rights rather than operating a purely commercial business.  Plaintiffs, after all, sought the permit to hold religious services and ceremonies.  But the County raises sufficient questions of fact such that summary judgment is denied with respect to the free exercise of religion claim asserted in Count VI.  That is, the trial factfinder must determine whether Plaintiffs' claim is "rooted in religious belief, not in 'purely secular' philosophical concerns."  *Callahan*, 658 F.2d at 683; *accord Walker*, 789 F.3d at 1138.

44

Plaintiffs may be exercising sincere religious beliefs (e.g., holding church services).  *See* 42 U.S.C. § 2000cc-5(7)(B) ("The use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose.").  Even if a partial motive for obtaining the Special Use Permit is to conduct a commercial business, Plaintiffs might at trial satisfy the second requirement that the claim be "rooted in religious belief, not in 'purely secular' philosophical concerns."  In that event, Plaintiffs would likely meet their burden of proving their free exercise of religion claim under the First Amendment.  *Jones*, 791 F.3d at 1031 ("A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion.").

If Plaintiffs are actually exercising religious rights, then the denial of the requested Special Use Permit would likely impose a substantial burden on Plaintiffs' religious exercise, as having a place to worship is at the core of the free exercise of religion.  *See Int'l Church of Foursquare Gospel*, 673 F.3d at 1070 (quoting *Vietnamese Buddhism Study Temple in Am. v. City of Garden Grove*, 460 F. Supp. 2d 1165, 1171 (C.D. Cal. 2006) ("[A] place of worship . . . is at the very core of the free exercise of religion . . . [and] [c]hurches and synagogues cannot function

without a physical space adequate to their needs and consistent
with their theological requirements.  The right to build, buy, or
rent such a space is an indispensable adjunct of the core First
Amendment right to assemble for religious purposes."), and citing
*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F.
Supp. 2d 1203, 1226 (C.D. Cal. 2002) ("Preventing a church from
building a worship site fundamentally inhibits its ability to
practice its religion.  Churches are central to the religious
exercise of most religions.  If Cottonwood could not build a
church, it could not exist.").

> **D.** **Summary Judgment is Denied With Respect to Count VIII--Free Exercise of Religion Claim Under the Hawaii Constitution.**

The parties also seek summary judgment with respect to
the free exercise of religion claim asserted under article I,
section 4, of the Hawaii constitution, which states: "No law
shall be enacted respecting an establishment of religion, or
prohibiting the free exercise thereof, or abridging the freedom
of speech or of the press or the right of the people peaceably to
assemble and to petition the government for a redress of
grievances."

> In order to find an unconstitutional
> infringement on Appellants' religious
> practices, it is necessary to examine whether
> or not the activity interfered with by the
> state was motivated by and rooted in a
> legitimate and sincerely held religious
> belief, whether or not the parties' free
> exercise of religion had been burdened by the

46

> regulation, the extent or impact of the
> regulation on the parties' religious
> practices, and whether or not the state had a
> compelling interest in the regulation which
> justified such a burden.

*Dedman v. Bd. of Land & Nat. Res.*, 69 Haw. 255, 260, 740 P.2d 28,

32 (1987) (quotation marks, alterations, and citation omitted).

In *State v. Armitage*, 132 Haw. 36, 58-59, 319 P.3d

1044, 1066 (2014), the Hawaii Supreme Court analyzed free

exercise of religion claims under the Hawaii and the federal

Constitutions, applying the same standard to both.  It stated

that "a generally applicable law is not subject to First

Amendment attack unless (1) it interferes with the Free Exercise

Clause in conjunction with other constitutional protections, or

(2) it creates a mechanism that calls for individualized

governmental assessment of the reasons for the relevant conduct.

*Id.* (quotation marks, alterations, and citation omitted).  The

Hawaii Supreme Court noted that, when there is an individualized

assessment, "if a particular law imposes a burden upon the free

exercise of religion, judicial scrutiny is triggered, the

regulation must be justified with a compelling government

interest, and the government has the burden of demonstrating that

no alternative forms of regulation would combat such abuses

without infringing First Amendment rights."   *Id.* (quotation

marks and citation omitted).

That is, when the government has burdened the free exercise of religion through an individualized assessment, a court applies strict scrutiny to any free exercise of religion claim relating to that burden.  *See Doe v. Doe*, 116 Haw. 323, 335, 172 P.3d 1067, 1079 (2007) ("In order to survive strict scrutiny, the statute must be justified by a compelling state interest, and drawn sufficiently narrowly that it is the least restrictive means for accomplishing that end." (quotation marks and citation omitted)).

For the reasons set forth above with respect to the free exercise of religion claim under the First Amendment, summary judgment is denied with respect to the free exercise of religion claim asserted under article I, section 4, of the Hawaii constitution.

> ### E.   The Court Denies the County of Maui's Motion for Summary Judgment With Respect To the Discrimination Claims Asserted in Counts II, VII, and IX.

Paragraphs 152 through 157 of the Complaint assert that the County of Maui discriminated against Plaintiffs on the basis of their religion.  The Complaint alleges that organized wedding services are conducted at a minimum of five botanical gardens on Maui, presumably with appropriate approvals from the County of Maui.  The Complaint further alleges that § 19.30A.050.B.11 of the Maui County Code permits gatherings of many types without size limitations in agriculturally zoned land.  It alleges that

48

the County of Maui's refusal to allow Plaintiffs to worship on their Haumana Road property therefore discriminates against Plaintiffs on the basis of their religion, as botanical gardens are allowed to conduct wedding ceremonies and nonreligious entities have no size limitation.  *See* ECF No. 1, PageID #s 33-34.

This court turns to Counts II, VII, and IX, on which only the County (not Plaintiffs) seeks summary judgment.  This court denies summary judgment on Counts II, VII, and IX, noting that issues of fact must be tried.  Two of those counts (Counts VII and IX) implicate a strict scrutiny issue akin to the strict scrutiny issue on which this court granted summary judgment to Plaintiffs in the context of Counts I, VI, and VIII.  Plaintiffs not having made any motion with respect to Counts II, VII, and IX, and the County not having established entitlement to summary judgment in any respect, the court entirely denies summary judgment on those counts, and they remain for trial.[6]

---

[6] Under Rule 56(f) of the Federal Rules of Civil Procedure and Local Rule 56.1(i), a court may grant summary judgment to a nonmoving party after giving notice and a reasonable time to reply.  No such notice was provided here.

 1.   **Count II--RLUIPA Nondiscrimination Violation
      of 42 U.S.C. § 2000cc(b)(2).**

RLUIPA, 42 U.S.C. § 2000cc(b)(2), prohibits religious
discrimination against assemblies and institutions through land
use regulations.  Specifically, it prohibits a government from
imposing or implementing "a land use regulation that
discriminates against any assembly or institution on the basis of
religion or religious denomination."

While the advisory jury from the earlier trial
determined that neither Plaintiffs nor the County had proved by a
preponderance of the evidence that Spirit of Aloha Temple was or
was not a "religious assembly or institution" in connection with
a RLUIPA equal terms claim, that advisory jury did not determine
whether Spirit of Aloha Temple was an "assembly or institution"
that was discriminated against *based on religion*.  *See* Verdict
Form, ECF No. 392, PageID # 7139.  An "assembly or institution"
may possibly assert religious rights, even when the "assembly or
institution" is not religious in nature, making it possible for a
government to discriminate against that "assembly or institution"
based on the assertion of those religious rights.  *See Burwell v.
Hobby Lobby Stores, Inc*., 573 U.S. 682, 719 (2014) (recognizing
that a for-profit closely held corporation may assert religious
rights); *cf. 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2313
(2023) (recognizing a company's First Amendment right to be free

of compulsion to create content going against its owner's

religious belief that a marriage must unite a man and a woman).

No law provides that an entity that is not a "religious

assembly or institution" cannot be an "assembly or institution"

that has been discriminated against based on religion.

In examining a RLUIPA equal terms claim, the Eleventh

Circuit noted that RLUIPA does not define the terms "assembly" or

"institution."  The Eleventh Circuit therefore construed those

terms in accordance with their ordinary and natural meanings:

> An "assembly" is "a company of persons
> collected together in one place [usually] and
> usually for some common purpose (as
> deliberation and legislation, worship, or
> social entertainment)," WEBSTER'S 3D NEW
> INT'L UNABRIDGED DICTIONARY 131 (1993); or
> "[a] group of persons organized and united
> for some common purpose." BLACK'S LAW
> DICTIONARY 111 (7th ed. 1999).  An
> institution is "an established society or
> corporation: an establishment or foundation
> esp. of a public character," WEBSTER'S 3D NEW
> INT'L UNABRIDGED DICTIONARY 1171 (1993); or
> "[a]n established organization, esp. one of a
> public character...."  BLACK'S LAW DICTIONARY
> 801 (7th ed.1999).

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214,

1230-31 (11th Cir. 2004) (alterations in *Midrash*).

In connection with the earlier trial on Count IV in

this case, only Spirit of Aloha Temple, not Honig, sought to be

deemed a "religious assembly or institution."  *See* ECF No. 298,

PageID # 6110.  Similarly, because Honig is not an "assembly or

institution" under the ordinary meanings of those terms, only

Spirit of Aloha Temple may assert the RLUIPA discrimination claim
under 42 U.S.C. § 2000cc(b)(2) asserted in Count II.

With an exception not relevant to Spirit of Aloha
Temple's nondiscrimination claim under RLUIPA, RLUIPA states, "If
a plaintiff produces prima facie evidence to support . . . a
violation of section 2000cc of this title, the government shall
bear the burden of persuasion on any element of the claim . . .
." 42 U.S.C. § 2000cc-2(b). In examining a summary judgment
motion relating to 42 U.S.C. § 2000cc-2(b), the Ninth Circuit
explained that, "[w]hen the moving party also bears the burden of
persuasion at trial, to prevail on summary judgment it must show
that the evidence is so powerful that no reasonable jury would be
free to disbelieve it." *Shakur v. Schriro*, 514 F.3d 878, 890
(9th Cir. 2008) (quotation marks and citation omitted).

The Supreme Court has referred to the "burden of
persuasion" as "specifying which party loses if the evidence is
balanced." *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91,
100 (2011) (stating that, historically, the term "burden of
proof" encompasses "two separate burdens: the 'burden of
persuasion' (specifying which party loses if the evidence is
balanced), as well as the 'burden of production' (specifying
which party must come forward with evidence at various stages in
the litigation)"). Thus, at trial, Spirit of Aloha Temple must
produce prima facie evidence of a violation of 42 U.S.C.

§ 2000cc(b)(2).  That is, Spirit of Aloha Temple must introduce
at trial sufficient evidence to survive a motion for judgment as
a matter of law following the close of its case in chief.  *See* F.
R. Civ. P. 50(a)(1) (allowing courts to grant a motion for
judgment as a matter of law when "a reasonable jury would not
have a legally sufficient evidentiary basis to find for the party
on that issue").  Spirit of Aloha Temple must show that it was
treated differently from a similarly situated organization.

Additionally, because the challenged land use
regulation is neutral on its face, Spirit of Aloha Temple must
produce evidence of the County of Maui's "discriminatory intent,"
which may be inferred from circumstantial evidence.  The evidence
may include the events leading up to the denial of the Special
Use Permit application, the context in which that decision was
made, whether the decision departed from established norms,
statements made by the commission and community members, reports
issued by the commission, whether a discriminatory impact was
foreseeable, and whether less discriminatory avenues were
available.  *See Calvary Chapel Bible Fellowship v. Cnty. of
Riverside*, 2017 WL 6883866, at *12 (C.D. Cal. Aug. 18, 2017),
*aff'd*, 948 F.3d 1172 (9th Cir. 2020) (citing *Chabad Lubavitch of
Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768
F.3d 183, 198 (2d Cir. 2014) ("establishing a claim under
RLUIPA's nondiscrimination provision, as with the Supreme Court's

53

equal protection precedent, requires evidence of 'discriminatory intent'"")); *see also Alive Church of the Nazarene, Inc. v. Prince William Cnty., Virginia*, 59 F.4th 92, 104 (4th Cir. 2023) ("Unlike the equal terms or substantial burden provisions of RLUIPA, the nondiscrimination provision requires evidence of discriminatory intent to establish a claim" such as the direct and circumstantial evidence discussed in *Arlington Heights v. Metro. Housing Development*, 429 U.S. 252, 266-68 (1977), which suggested courts look at the historical background, sequence of events, departures from normal procedure, and statements of decisionmakers); *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty., Maryland*, 915 F.3d 256, 263 (4th Cir. 2019) ("a plaintiff must demonstrate that the government decision was motivated at least in part by discriminatory intent").

If Spirit of Aloha Temple meets its prima facie burden, then the burden shifts to the County of Maui to prove by a preponderance of the evidence that a violation of 42 U.S.C. § 2000cc(b)(2) did not occur. That is, to prevail once the burden has shifted, the County of Maui must show by a preponderance of the evidence that its land use regulation did not discriminate against Spirit of Aloha Temple on the basis of religion or religious denomination.

In seeking summary judgment, the County of Maui argues that it satisfies strict scrutiny with respect to Spirit of Aloha

Temple's discrimination claim under 42 U.S.C. § 2000cc(b)(2).  As
noted earlier in this order, it appears that the Ninth Circuit
would not apply a strict scrutiny analysis to a RLUIPA
discrimination claim.  Instead, the analysis focuses on whether
Maui Planning Commission discriminated against Spirit of Aloha
Temple on the basis of religion when the commission denied the
requested Special Use Permit.  Possibly, the absence of narrow
tailoring or of the imposition of the least restrictive means of
furthering an identified compelling interest may affect any
finding at trial on whether the County of Maui had
"discriminatory intent" in denying the requested Special Use
Permit.  For now, there are factual issues that preclude summary
judgment.

> ## 2.    Count VII--Equal Protection Clause of the
> Fourteenth Amendment.

In Count VII, Honig and Spirit of Aloha Temple assert
that the County of Maui, in violation of 42 U.S.C. § 1983,
deprived them of "equal protection of the laws, as secured by the
Fourteenth Amendment to the United States Constitution, by
discriminating against Plaintiffs in the imposition and
implementation of their land use regulations."  ECF No. 1, PageID
# 39.  The Equal Protection Clause of the Fourteenth Amendment
provides that no State shall "deny to any person within its
jurisdiction the equal protection of the laws."  U.S. Const.
amend. XIV, § 1.  Pursuant to the Equal Protection Clause, the

government must treat all similarly situated persons alike.
*Green v. City of Tucson*, 340 F.3d 891, 896 (9th Cir. 2003).

"To state a claim under 42 U.S.C. § 1983 for a
violation of the Equal Protection Clause of the Fourteenth
Amendment, a plaintiff must show that the defendants acted with
an intent or purpose to discriminate against the plaintiff based
upon membership in a protected class." *Shooter v. Arizona*, 4
F.4th 955, 960 (9th Cir. 2021) (alterations, quotation marks, and
citation omitted).  "A showing that a group was singled out for
unequal treatment on the basis of religion may support a valid
equal protection argument." *Alpha Delta Chi-Delta Chapter v.
Reed*, 648 F.3d 790, 804 (9th Cir. 2011) (quotation marks and
citation omitted).

Alternatively, Plaintiffs may assert a "class of one"
equal protection claim.  That is, rather than premising their
equal protection claim on a classification, they may premise it
on unique treatment."  In order to demonstrate a violation of
equal protection in a "class of one" case, a plaintiff must
establish that the government intentionally, and without rational
basis, treated the plaintiff differently from other similarly
situated people or entities. *See N. Pacifica LLC v. City of
Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).  In a "class of one"
claim, a plaintiff asks the factfinder to infer discrimination
based solely on a lack of any rational explanation for the

56

differential treatment.  *See Green Genie, Inc. v. City of Detroit, Mich.,* 63 F.4th 521, 528 (6th Cir. 2023)*; Joglo Realties, Inc. v. Seggos*, 229 F. Supp. 3d 146, 153 (E.D.N.Y. 2017).

The County of Maui contends that even if it treated Plaintiffs differently from similarly situated nonreligious entities, it cannot be liable for a federal equal protection violation because it satisfies strict scrutiny review.  When conduct burdens a fundamental right or makes a distinction based on a suspect classification, the court employs strict scrutiny review.  *See Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002).  When conduct that is based on religious rights is in issue, a suspect classification is involved.  *See Friedman v. Rogers*, 440 U.S. 1, 17 (1979).  The County of Maui does not meet its burden of showing that it is entitled to summary judgment based on strict scrutiny review.  It does not point to narrow tailoring that furthered any compelling governmental interest.

      **3.**    **Count IX--Violation of the Equal Protection Clause of Article I, Section 5, of the Hawaii Constitution.**

Count IX asserts that the County of Maui violated Honig's and Spirit of Aloha Temple's rights under the equal protection clause of the Hawaii constitution, article I, section 5, "by discriminating against Plaintiffs in the imposition and

57

implementation of their land use regulations."  ECF No. 1, PageID
# 40.

Article I, section 5, of the Hawaii constitution
provides that "[n]o person shall be deprived of life, liberty or
property without due process of law, nor be denied the equal
protection of the laws, nor be denied the enjoyment of the
person's civil rights or be discriminated against in the exercise
thereof because of race, religion, sex or ancestry."  Like its
federal counterpart, Hawaii's equal protection clause mandates
that all similarly situated persons be treated alike.  *See Tax
Found. of Hawai'i v. State*, 144 Haw. 175, 205, 439 P.3d 127, 157
(2019); *Mahiai v. Suwa*, 69 Haw. 349, 360, 742 P.2d 359, 368
(1987).  Accordingly, to prove a claim of discriminatory
enforcement, Plaintiffs have the burden of demonstrating by a
preponderance of the evidence 1) that the County of Maui has
treated Plaintiffs differently from similarly situated
individuals or entities (i.e., the County granted Special Use
Permits to similarly situated individuals or entities but not to
Plaintiffs); and 2) that the differential treatment was
deliberately based on an unjustifiable standard such as religion.
*See State v. Villeza*, 85 Haw. 258, 267, 942 P.2d 522, 531 (1997);
*Mahiai*, 69 Haw. at 361, 742 P.2d at 368.  Alternatively, it
appears that the Hawaii Supreme Court would recognize a "class of
one" equal protection claim when a plaintiff demonstrates that

the plaintiff has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. *See DW Aina Lea Dev., LLC v. Bridge Aina Lea, LLC.*, 134 Haw. 187, 220, 339 P.3d 685, 718 (2014) (assuming that a "class of one" theory is applicable under Hawaii law, but determining that the plaintiff had no "class of one" claim).

The County of Maui contends that even if it treated Plaintiffs differently from similarly situated nonreligious entities for purposes of an equal protection claim under the Hawaii constitution, it is not liable because it satisfies strict scrutiny review. *See Nagle v. Bd. of Educ.*, 63 Haw. 389, 392, 629 P.2d 109, 111-12 (1981) (noting that Hawaii courts apply a strict scrutiny standard "where equal protection challenges involve 'suspect' classifications or fundamental rights"). The County of Maui does not show on its motion that it satisfies strict scrutiny review. It does not establish on the present record any narrow tailoring that furthered any identified compelling governmental interest. Summary judgment on Count IX is denied.

## V.        CONCLUSION.

For the reasons set forth above, the court denies the motions for summary judgment filed by both parties in this case. While summary judgment is not granted on the entirety of any

59

claim, the court grants summary judgment to Plaintiffs on one issue implicated by Counts I, VI, and VIII—that the complete denial of the permit fails strict scrutiny analysis. In addition, only Spirit of Aloha Temple, not Honig, may pursue Count II, the RLUIPA nondiscrimination claim. All other matters remain for trial. This order disposes of the motions filed as ECF Nos. 511 (Plaintiffs' motion for partial summary judgment), 513 (Defendant's concise statement in support of its motion for summary judgment that was incorrectly filed as a motion), 514 (Defendant's motion for summary judgment), 520 (Defendant's counter motion for summary judgment), and 521 (Defendant's counter motion for summary judgment, which does not appear to add much to its other counter motion).

The parties are ordered to immediately contact the Magistrate Judge assigned to this case to schedule a settlement conference. The court is conscious that Plaintiffs have an appeal pending in the Ninth Circuit of this court's denial of Plaintiffs' request for preliminary injunctive relief, which relates to the issue of whether the unconstitutional administrative provision is severable from other provisions. This appeal is not necessarily an impediment to settlement. The parties could, for example negotiate a conditional settlement, agreeing to certain terms if the pending appeal results in an affirmance, and different terms if the result is a reversal. In

any event, the parties are directed to engage in settlement discussions.

                          IT IS SO ORDERED.

                          DATED: Honolulu, Hawaii, August 11, 2023.



                          /s/ Susan Oki Mollway
                          Susan Oki Mollway
                          United States District Judge

*Spirit of Aloha Temple, et al. v. County of Maui*, Civ. No. 14-00535 SOM/RLP; ORDER GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS ON THE ISSUE OF WHETHER THE COUNTY OF MAUI'S DENIAL OF THE SPECIAL USE PERMIT SATISFIED STRICT SCRUTINY WITH RESPECT TO COUNTS I, VI, AND VIII, BUT DENYING SUMMARY JUDGMENT ON ALL REMAINING ISSUES AND CLAIMS